# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION

MCAD Docket No. 18BEM03326

|  |  |
|---|---|
| ALLAN CHIOCCA,<br>      Complainant,<br><br>v.<br><br>TOWN OF ROCKLAND, DIERDRE<br>HALL, EDWARD KIMBALL, LARRY<br>RYAN, MICHAEL MULLEN, JR.,<br>MICHAEL O'LOUGHLIN, RICHARD<br>PENNEY and KARA NYMAN,<br>      Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## POSITION STATEMENT OF RESPONDENTS, TOWN OF ROCKLAND, LARRY RYAN, MICHAEL MULLEN, JR., MICHAEL O'LOUGHLIN, RICHARD PENNEY & KARA NYMAN

Respondents, Town of Rockland, Larry Ryan, Michael Mullen, Jr., Michael O'Loughlin, Richard Penney and Kara Nyman (collectively "Rockland"), set forth their Position Statement in response to Complainant's First Amended Charge of Discrimination dated December 10, 2018. In his First Amended Charge, the Complainant, Allan Chiocca, alleges that Rockland violated Mass. Gen. Laws c. 151B, §§ 4(1), 4(4), 4(4A), 4(5), 4(16A) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Rockland denies the charges brought by the Complainant, as discussed in greater detail below.

## BACKGROUND









## <u>RESPONDENTS' ANSWER TO COMPLAINANT'S ALLEGATIONS</u>

By way of his First Amended Charge, Complainant alleges that Rockland violated Mass.

Gen. Laws c. 151B, §§ 4(1), 4(4), 4(4A), 4(5), 4(16A) and Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq*. Rockland contends that Complainant cannot establish a prima

facie case that Rockland violated his rights.  In responding to the Charge, Rockland responds to the allegations contained therein, paragraph by paragraph, as follows:

## THE PARTIES

1.     Complainant Mr. Chiocca is a resident of Bridgewater, Massachusetts and has served as the Town Administrator for the Town of Rockland since 2008.

**Response No. 1:**     The Respondents admit the allegations contained in Paragraph 1.

2.     Respondent the Town of Rockland is a municipality located in Plymouth County. The Town is governed by a five-member Board of Selectmen.

**Response No. 2:**     The Respondents admit the allegations contained in Paragraph 2.

3.     Respondent Mrs. Hall is a resident of Rockland, Massachusetts, and a former member and former Vice Chairman of the BOS.

**Response No. 3:**     The Respondents admit the allegations contained in Paragraph 3.

4.     Respondent Mr. Kimball is a resident of Rockland, Massachusetts, and a former member and former Chairman of the BOS.

**Response No. 4:**     The Respondents admit the allegations contained in Paragraph 4.

5.     Respondent Mr. Ryan is a resident of Rockland, Massachusetts, and a current member and current Chairman of the BOS.

**Response No. 5:**     The Respondents admit the allegations contained in Paragraph 5.

6.     Respondent Michael Mullen Jr. ("Mr. Mullen") is a resident of Rockland, Massachusetts, and a current member of the BOS.

**Response No. 6:**     The Respondents admit the allegations contained in Paragraph 6.

7.     Respondent Michael O'Loughlin ("Mr. O'Loughlin") is a resident of Rockland, Massachusetts, and a current member and current Vice Chairman of the BOS.

**Response No. 7:**     The Respondents admit the allegations contained in Paragraph 7.

8.     Respondent Richard Penney ("Mr. Penney") is a resident of Rockland, Massachusetts, and a current member of the BOS.

**Response No. 8:**     The Respondents admit the allegations contained in Paragraph 8.

9.     Respondent Kara Nyman ("Ms. Nyman") is a resident of Rockland, Massachusetts, and a current member of the BOS.

**Response No. 9:**     The Respondents admit the allegations contained in Paragraph 9.

### SUBSTANTIVE ALLEGATIONS

10.     On January 5, 2016, Mr. Chiocca entered into a three-year contract ("the Contract") with the Town to serve as Town Administrator through June 30, 2019.

**Response No. 10:**     The Respondents admit the allegations contained in Paragraph 10.

11.     In or about spring 2018, Mr. Chiocca began discussing a raise and contract extension with the BOS.

**Response No. 11:**     The Respondents admit the allegations contained in Paragraph 11.

12.     Indeed, he did so because over the course of Mr. Chiocca's 10-year employment with the Town, Town counsel John Clifford ("Attorney Clifford") and others repeatedly advised him to begin negotiating a contract extension with the Town whenever his contract had slightly over one year remaining in the term.

**Response No. 12:**     The Respondents lack sufficient information to admit or deny why Mr. Chiocca decided to begin discussing a raise and contract extension at that particular point in time, as alleged in Paragraph 12 and call upon the Complainant to prove same.

13.   This contract extension and raise was the first one for Mr. Chiocca considered by the BOS since Mrs. Hall was elected to the BOS.

**Response No. 13:**   The Respondents admit the allegations contained in Paragraph 13.

14.   As a member of the BOS, Mrs. Hall was one of Mr. Chiocca's supervisors.

**Response No. 14:**   The Respondents admit the allegations contained in Paragraph 14.

15.   In or about spring 2018, Mrs. Hall confided in Delshaune Flipp ("Ms. Flipp") (the Town's Board of Health Senior Assistant) and Stacia Callahan ("Ms. Callahan") (the Town's Human Resource Coordinator), that "marriage is difficult", and that Mrs. Hall found it hard to be with one person even though she loves her husband.

**Response No. 15**   The Respondents lack sufficient information to admit or deny the particulars of the conversation described in Paragraph 15 and call upon the Complainant to prove same.

16.   At or around this same time, Mrs. Hall declared her candidacy for State Representative, and Mr. Kimball worked with Mrs. Hall on her campaign.

**Response No. 16:**   The Respondents admit the allegations contained in Paragraph 16.

17.   During this time (i.e. March and April 2018), Mrs. Hall and Mr. Kimball were involved in an intense physical and emotional affair, at which time Mrs. Hall professed her love for Mr. Kimball.

**Response No. 17**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 17 and call upon the Complainant to prove same.

18.     Mr. Kimball's wife, Dawn Kimball ("Mrs. Kimball"), believed Mr. Kimball's relationship with Mrs. Hall had been going on for at least a year but confirmed her suspicion on April 28, 2018.

**Response No. 18**     The Respondents lack sufficient information to admit or deny what Dawn Kimball believed, as described in Paragraph 18, and call upon the Complainant to prove same.

19.     On May 1, 2018, Mr. Kimball did not attend the scheduled BOS meeting because, after learning of the affair, Mrs. Kimball "was feeling vulnerable and betrayed."

**Response No. 19:**     The Respondents admit that Mr. Kimball did not attend the May 1, 2018 BOS meeting but lack sufficient information to admit or deny why Mr. Kimball did not attend or what Dawn Kimball was feeling, as described in Paragraph 19, and call upon the Complainant to prove same.

20.     Mrs. Kimball first confronted Mrs. Hall about the affair through a text message sent to Mrs. Hall while Mrs. Hall was chairing the May 1, 2018 BOS meeting (because of Mr. Kimball's absence).

**Response No. 20**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 20 and call upon the Complainant to prove same.

21.     At 6:58 p.m., Mrs. Kimball texted Mrs. Hall, "I know what happened. You make me sick."

**Response No. 21**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 21 and call upon the Complainant to prove same.

22.     The May 1, 2018 BOS meeting concluded at approximately 7:30 p.m. and the members briefly stood on Town Hall plaza chatting when Mr. Chiocca stated that he was going to the Rockland Bar and Grill ("RBG").

**Response No. 22**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 22 and call upon the Complainant to prove same.

23.     Indeed, it was common for BOS members and other individuals to go to the RBG after BOS meetings, and individuals would frequently head over to the RBG without knowing who else intended to go.

**Response No. 23**      The Respondents deny that Larry Ryan, Michael Mullen, Jr. and Michael O'Loughlin would "frequently head over to the RBG." The Respondents lack sufficient information to admit or deny the remaining allegations described in Paragraph 23 and call upon the Complainant to prove same.

24.     Nonetheless, Mrs. Hall stated on the plaza that she intended to go to the RBG.

**Response No. 24**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 24 and call upon the Complainant to prove same.

25.     Mr. Chiocca and Mrs. Hall separately drove to the RBG, and ultimately nobody else joined them.

**Response No. 25**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 25 and call upon the Complainant to prove same.

26.     Mr. Chiocca and Mrs. Hall each arrived at the RBG at approximately 8:00 p.m.

**Response No. 26**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 26 and call upon the Complainant to prove same.

27.    When they arrived, Mrs. Hall ordered a glass of wine and Mr. Chiocca ordered a beer.

**Response No. 27**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 27 and call upon the Complainant to prove same.

28.    At approximately 8:33 p.m., Mrs. Kimball texted Mrs. Hall and stated, "Yes this is Dawn. Did you really think I wouldn't find out? You're a disgusting human being. The both of you are disgusting. I'm not about threatening anyone just so you know. But I haven't decided how I am going to handle this. 35 years of marriage now means nothing and I have you to thank for that."

**Response No. 28**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 28 and call upon the Complainant to prove same.

29.    Mrs. Hall did not respond to Mrs. Kimball's texts.

**Response No. 29**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 29 and call upon the Complainant to prove same.

30.    However, after receiving the texts from Mrs. Kimball, Mrs. Hall became concerned about the impact the news of the affair would have on her candidacy for State Representative should Mrs. Kimball post it on social media.

**Response No. 30**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 30 and call upon the Complainant to prove same.

31.   Mrs. Hall was not concerned that her husband would find out about her affair with Mr. Kimball.

**Response No. 31**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 31 and call upon the Complainant to prove same.

32.   While at RBG with Mr. Chiocca, Mrs. Hall received a call from Mr. Kimball who assured her that Mrs. Kimball would not post news of the affair on social media.

**Response No. 32**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 32 and call upon the Complainant to prove same.

33.   Mrs. Hall then asked Mr. Chiocca if she could use his cell phone because she wanted to check social media to see if Mrs. Kimball posted anything.

**Response No. 33**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 33 and call upon the Complainant to prove same.

34.   Mr. Chiocca asked Mrs. Hall why she wanted to use his phone and Mrs. Hall explained that Mr. Chiocca's phone had access to a Facebook page that hers did not and she wanted to check for a specific posting.

**Response No. 34**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 34 and call upon the Complainant to prove same.

35.    During this explanation, Mrs. Hall divulged to Mr. Chiocca that she was in love with Mr. Kimball and had been having an affair with him since March 2018. Mrs. Hall further explained that Mrs. Kimball, who recently became aware of the affair, had forbidden Mr. Kimball from communicating with her.

**Response No. 35**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 35 and call upon the Complainant to prove same.

36.    Prior to Mrs. Hall telling this to Mr. Chiocca, Mr. Chiocca had no knowledge that Mrs. Hall and Mr. Kimball were having an affair.

**Response No. 36**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 36 and call upon the Complainant to prove same.

37.    During their conversation, Mrs. Hall explained to Mr. Chiocca that she was upset that her relationship with Mr. Kimball was ending, and she complained that she felt restricted in her marriage and no longer wanted to be monogamous.

**Response No. 37**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 37 and call upon the Complainant to prove same.

38.    Mrs. Hall and Mr. Chiocca remained at RBG for approximately two hours, during which time they engaged in conversation about different subjects, including Mrs. Hall's

relationship with Mr. Kimball, Mrs. Hall's desire to not be monogamous even though she loved her husband, and Mrs. Kimball's response to learning of the affair. Mrs. Hall and Mr. Chiocca also discussed the BOS meeting, Mrs. Hall's performance as the acting chairperson, and whether Mrs. Hall preferred being called madam "chairperson" or "chairwoman" and other topics.

**Response No. 38**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 38 and call upon the Complainant to prove same.

39.   After her second glass of wine Mrs. Hall began to make sexually suggestive comments to Mr. Chiocca and began to rub his leg and touch his arm. She reiterated she wanted to step out of her marriage and felt restricted. Mrs. Hall told Mr. Chiocca that she "just wanted some cock."

**Response No. 39**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 39 and call upon the Complainant to prove same.

40.   Mr. Chiocca immediately rebuffed Mrs. Hall's inappropriate demand by alluding to a medical condition he has and repeatedly stating, "I'm not your guy, even if I wanted to, I'm not your guy."

**Response No. 40**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 40 and call upon the Complainant to prove same.

41.    Notwithstanding Mr. Chiocca's rebuffs, Mrs. Hall continued to aggressively pursue him. Mrs. Hall stated that she didn't understand why people have to be with only one person, and that her husband was OK with an open marriage.

**Response No. 41**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 41 and call upon the Complainant to prove same.

42.    Mrs. Hall again stated that she "just wanted some cock," and Mr. Chiocca repeatedly told her no and that even if he wanted to, that he was incapable on Tuesdays.

**Response No. 42**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 42 and call upon the Complainant to prove same.

43.    After Mr. Chiocca finished his third beer, he told Mrs. Hall he wanted to leave.

**Response No. 43**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 43 and call upon the Complainant to prove same.

44.    However, Mrs. Hall asked Mr. Chiocca to stay, and Mr. Chiocca felt compelled to do so because Mrs. Hall was his supervisor and would be voting on his raise and extension.

**Response No. 44**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 44 and call upon the Complainant to prove same.

45.    At approximately 9:45 p.m. Mrs. Hall texted her husband, "Be ready for me. Cause I am going to want you."

**Response No. 45**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 45 and call upon the Complainant to prove same.

46.      At 9:56 p.m., Mr. Chiocca paid the bill at RBG, after Mrs. Hall asked if they could go for a ride in his truck before they went home.

**Response No. 46**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 46 and call upon the Complainant to prove same.

47.      Again, feeling obliged to satisfy his supervisor, Mr. Chiocca agreed and they drove around town for 20-30 minutes.

**Response No. 47**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 47 and call upon the Complainant to prove same.

48.      Tired of driving to no specific destination for over 20 minutes, Mr. Chiocca pulled into a parking space next to the Banner Pub where the two continued to talk.

**Response No. 48**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 48 and call upon the Complainant to prove same.

49.      While they were parked, Mrs. Hall reached over and began rubbing Mr. Chiocca's leg and arm.

**Response No. 49**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 49 and call upon the Complainant to prove same.

50.     Mr. Chiocca again stated, "I'm not your guy" and tried to reject Mrs. Hall's advances.

**Response No. 50**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 50 and call upon the Complainant to prove same.

51.     Despite Mr. Chiocca's attempt to reject her, Mrs. Hall responded and again stated that she "just want[ed] some cock," and stated Mr. Chiocca that she was his boss and would be voting on his contract extension.

**Response No. 51**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 51 and call upon the Complainant to prove same.

52.     Mr. Chiocca then told Mrs. Hall that she was "acting like a predator," and again stated, "I'm not your guy," but was concerned that if he thwarted her advances, she would not vote in favor of his contract extension and raise.

**Response No. 52**        The Respondents lack sufficient information to admit or deny the allegations as to what was said between Mr. Chiocca and Mrs. Hall as described in Paragraph 50 and call upon the Complainant to prove same. The Respondents deny that Mr. Chiocca had any legitimate fear of not getting a contract extension "if he thwarted her advances."

53.     Before leaving the Banner Pub parking space, Mrs. Hall stated that she had to go to the bathroom but that she did not want to use the facilities at the Banner Pub because she felt that they were not clean.

**Response No. 53**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 53 and call upon the Complainant to prove same.

54.     Because it was nearby, Mr. Chiocca offered to take Mrs. Hall to Rockland Town Hall so that she could use the bathroom there. Mrs. Hall agreed that would be fine.

**Response No. 54**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 54 and call upon the Complainant to prove same.

55.     Mr. Chiocca and Mrs. Hall arrived at Town Hall at approximately 10:45 p.m.

**Response No. 55**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 55 and call upon the Complainant to prove same.

56.     Mrs. Hall, who was wearing high heel shoes, was able to traverse the walkway and stairs from the lower lot to Town Hall without any assistance from Mr. Chiocca. At some points on their way into Town Hall, Mr. Chiocca walked in front of Mrs. Hall, and at other points Mrs. Hall walked in front of Mr. Chiocca.

**Response No. 56**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 56 and call upon the Complainant to prove same.

57.     When Mrs. Hall and Mr. Chiocca entered Town Hall they each walked directly to the bathrooms.

**Response No. 57**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 57 and call upon the Complainant to prove same.

58.      Mr. Chiocca exited the bathroom first and waited in the hallway for Mrs. Hall.

**Response No. 58**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 58 and call upon the Complainant to prove same.

59.      After Mrs. Hall exited the bathroom, she approached Mr. Chiocca and told him that she did not want to go home.

**Response No. 59**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 59 and call upon the Complainant to prove same.

60.      Nonetheless, the two then exited Town Hall and started to walk across the plaza towards the stairs leading down to the parking lot where Mr. Chiocca's truck was parked.

**Response No. 60**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 60 and call upon the Complainant to prove same.

61.      As the two arrived at the top of the stairs that lead down to the parking lot, Mrs. Hall, who was walking ahead of Mr. Chiocca, stopped, turned to face him, and placed her body in front of his, preventing Mr. Chiocca from accessing the stairs.

**Response No. 61**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 61 and call upon the Complainant to prove same.

62.     Mrs. Hall and Mr. Chiocca then engaged in conversation at the top of the staircase for approximately seven minutes.

**Response No. 62**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 62 and call upon the Complainant to prove same.

63.     During this conversation Mrs. Hall again continued to pressure Mr. Chiocca and aggressively stated that she "want[ed] to suck his cock," and reiterated that she was his supervisor who would be voting on his contract and raise.

**Response No. 63**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 63 and call upon the Complainant to prove same.

64.     Feeling pressure to oblige, Mr. Chiocca finally acquiesced to Mrs. Hall's advance and the two returned to Town Hall.

**Response No. 64**        The Respondents deny that Mr. Chiocca engaged in sexual relations with Mrs. Hall based upon any legitimate fear of not getting a contract extension.

65.     After they entered the building, the two went to Mr. Chiocca's office and closed the door.

**Response No. 65**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 65 and call upon the Complainant to prove same.

66.     Shortly after entering his office, Mr. Chiocca realized that he left his phone in his truck, and Mrs. Hall realized she left her purse in the bathroom.

**Response No. 66**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 66 and call upon the Complainant to prove same.

67.      Mrs. Hall asked Mr. Chiocca to retrieve her purse, after which Mr. Chiocca first went to his truck and retrieved his cell phone, and then went to the bathroom and retrieved Mrs. Hall's purse.

**Response No. 67**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 67 and call upon the Complainant to prove same.

68.      Mr. Chiocca returned to his office and sat down in a chair next to the conference table in the office.

**Response No. 68**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 68 and call upon the Complainant to prove same.

69.      Mrs. Hall then asked Mrs. Chiocca to open the bottle of wine sitting on the refrigerator in Mr. Chiocca's office that was given to him that day by Marcy Birmingham ("Ms. Birmingham") (then a Project Coordinator for the Town) as an early birthday present.

**Response No. 69**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 69 and call upon the Complainant to prove same.

70.      As Mr. Chiocca opened the bottle and poured two small cups of wine, Mrs. Hall pulled up the chair she was sitting in so that she was directly next to Mr. Chiocca.

**Response No. 70**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 70 and call upon the Complainant to prove same.

71.      Mr. Chiocca finished pouring the wine, after which one of the cups spilled.

**Response No. 71**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 71 and call upon the Complainant to prove same.

72.      Mrs. Hall and Mr. Chiocca did not consume any of the alcohol, because immediately after Mr. Chiocca finished pouring the wine, Mrs. Hall spread her legs open, grabbed Mr. Chiocca's hand, and placed it over the front of her panties.

**Response No. 72**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 72 and call upon the Complainant to prove same.

73.      Mr. Chiocca stated, "please don't do this, I can't even if I wanted to."

**Response No. 73**      The Respondents deny that Mr. Chiocca engaged in sexual relations with Mrs. Hall based upon any legitimate fear of not getting a contract extension.

74.      After making Mr. Chiocca rub her vagina, Mrs. Hall stood up and took off her panties, instructed Mr. Chiocca to stand up, and told him that she could "make it hard."

**Response No. 74**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 74 and call upon the Complainant to prove same.

75.      Mrs. Hall then pulled down Mr. Chiocca's pants and performed oral sex on him.

**Response No. 75**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 75 and call upon the Complainant to prove same.

76.     After Mrs. Hall completed oral sex on Mr. Chiocca, Mrs. Hall told Mr. Chiocca that she wanted him to perform oral sex on her.

**Response No. 76**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 76 and call upon the Complainant to prove same.

77.     Mr. Chiocca briefly obliged for no more than a few seconds but stopped because he did not want to continue.

**Response No. 77**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 77 and call upon the Complainant to prove same.

78.     Mrs. Hall then demanded that Mr. Chiocca please her with his hands, and Mr. Chiocca complied.

**Response No. 78**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 78 and call upon the Complainant to prove same.

79.     At or around 2:00 a.m., after attempting to satisfy Mrs. Hall with his hands, Mr. Chiocca stopped and stated, "it's 2:00 a.m., please let me go home."

**Response No. 79**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 79 and call upon the Complainant to prove same.

80.     Mrs. Hall finally agreed to leave and at approximately 2:13 a.m., Mrs. Hall and Mr.
        Chiocca exited Mr. Chiocca's office.

**Response No. 80**          The Respondents lack sufficient information to admit or deny the
                             allegations described in Paragraph 80 and call upon the Complainant to
                             prove same.

81.     Mr. Chiocca and Mrs. Hall then walked across the plaza to the lower parking lot at a casual
        pace with no obvious signs of intoxication or distress.

**Response No. 81**          The Respondents lack sufficient information to admit or deny the
                             allegations described in Paragraph 81 and call upon the Complainant to
                             prove same.

82.     After leaving Town Hall, Mr. Chiocca drove Mrs. Hall back to RBG so that she could get
        her vehicle.

**Response No. 82**          The Respondents lack sufficient information to admit or deny the
                             allegations described in Paragraph 82 and call upon the Complainant to
                             prove same.

83.     Upon arriving at RBG, Mr. Chiocca watched as Mrs. Hall got into her vehicle and drove
        away without incident.

**Response No. 83**          The Respondents lack sufficient information to admit or deny the
                             allegations described in Paragraph 83 and call upon the Complainant to
                             prove same.

84.     Mrs. Hall arrived home at approximately 2:20 a.m.

**Response No. 84**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 84 and call upon the Complainant to prove same.

85.     Mr. Hall was in bed at the time, but he walked downstairs when he heard Mrs. Hall arrive home.

**Response No. 85**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 85 and call upon the Complainant to prove same.

86.     While downstairs, Mr. Hall observed Mrs. Hall's car in the driveway backed into the assigned spot, and then observed Mrs. Hall in the bathroom texting.

**Response No. 86**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 86 and call upon the Complainant to prove same.

87.     At 2:25 a.m., Mrs. Hall texted her husband, "love you, it gonna be a tough ride the next couple of weeks ttyl."

**Response No. 87**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 87 and call upon the Complainant to prove same.

88.     Mr. Hall then asked Mrs. Hall how things went that night and Mrs. Hall explained that at Mrs. Kimball's request, that Mr. Kimball did not attend the BOS meeting and that she served as the acting Chair and moved through the agenda quickly. Following the meeting she explained that she went to RBG for drinks.

**Response No. 88**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 88 and call upon the Complainant to prove same.

89.     Mrs. Hall also told her husband that Mrs. Kimball texted her while she was at RBG that she was disgusting, and that she texted Mrs. Kimball back that she was sorry.

**Response No. 89**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 89 and call upon the Complainant to prove same.

90.     Mrs. Hall then explained to her husband that she had been having an emotional but not sexual relationship with Mr. Kimball.

**Response No. 90**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 90 and call upon the Complainant to prove same.

91.     Mrs. Hall then raised the issue of Mr. Chiocca's contract extension and began concocting her fabricated version of events.

**Response No. 91**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 91 and call upon the Complainant to prove same.

92.     Specifically, Mrs. Hall lied to her husband by stating that Mr. Chiocca told her, "normally how this works is I ask for a raise, you give me a blowjob."

**Response No. 92**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 92 and call upon the Complainant to prove same.

93.     During this conversation, Mrs. Hall never complained of being upset or uncomfortable with
        how the night went or of any inappropriate behavior by Mr. Chiocca.

**Response No. 93**        The Respondents lack sufficient information to admit or deny the
                           allegations described in Paragraph 93 and call upon the Complainant to
                           prove same.

94.     The Halls then discussed an appointment that was scheduled for that morning, and Mrs.
        Hall agreed to attend the appointment.

**Response No. 94**        The Respondents lack sufficient information to admit or deny the
                           allegations described in Paragraph 94 and call upon the Complainant to
                           prove same.

95.     Also, because Mrs. Hall was so late arriving home that evening, Mr. Hall contacted his
        employer and called out sick for the day.

**Response No. 95**        The Respondents lack sufficient information to admit or deny the
                           allegations described in Paragraph 95 and call upon the Complainant to
                           prove same.

96.     After approximately 30-45 minutes of talking downstairs, the Halls went upstairs to their
        bedroom.

**Response No. 96**        The Respondents lack sufficient information to admit or deny the
                           allegations described in Paragraph 96 and call upon the Complainant to
                           prove same.

97.     At that time, Mrs. Hall confessed to her husband that her relationship with Mr. Kimball
        was more than emotional and that they had been involved in a physical relationship as well.

**Response No. 97**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 97 and call upon the Complainant to prove same.

98.      Mr. Hall asked Mrs. Hall if the relationship was over and Mrs. Hall stated that it was.

**Response No. 98**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 98 and call upon the Complainant to prove same.

99.      Mr. Hall indicated to Mrs. Hall that he was not happy about her having an affair with Mr. Kimball. The two discussed this for 15-20 minutes and then went to bed at approximately 3:30 a.m.

**Response No. 99**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 99 and call upon the Complainant to prove same.

100.      Later that morning Mr. Chiocca arrived at Town Hall so that he could clean up his office. Mr. Chiocca poured out what was left in the wine bottle.

**Response No. 100**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 100 and call upon the Complainant to prove same.

101.      At 8:02 a.m., Mrs. Hall emailed Mr. Chiocca to ask if they could talk for 15 minutes before her 9:00 a.m. meeting. At 8:05 a.m., Mr. Chiocca responded in the affirmative.

**Response No. 101**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 101 and call upon the Complainant to prove same.

102.   When the two met in Mr. Chiocca's office at 8:55 a.m., Mrs. Hall asked Mr. Chiocca for "discretion" about what happened and they both agreed they would not tell anyone.

**Response No. 102**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 102 and call upon the Complainant to prove same.

103.   During their discussion, Mrs. Hall never told Mr. Chiocca she was upset with what happened earlier that morning or the night before, nor did she inquire of him as to what had taken place.

**Response No. 103**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 103 and call upon the Complainant to prove same.

104.   During their discussion, Mr. Chiocca referred to Mrs. Hall as a "predator" and "the aggressor." Mrs. Hall later contended that these comments caused her to first have an "inkling" that she engaged in sexual relations with Mr. Chiocca, despite the fabricated story she told Mr. Hall the morning of May 2nd.

**Response No. 104**      The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 104 and call upon the Complainant to prove same.

105.   Later that day Mr. Kimball spoke with Mr. Chiocca and confided in Mr. Chiocca that he did not go to the BOS meeting the prior evening because he had been involved in an affair with Mrs. Hall and that his wife had just learned of it and "was on the warpath."

**Response No. 105**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 105 and call upon the Complainant to prove same.

106.    As a result, Mr. Kimball told Mr. Chiocca, he was going to take a "less active role on the BOS."

**Response No. 106**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 106 and call upon the Complainant to prove same.

107.    Mr. Chiocca recommended that Mr. Kimball step down from the BOS or give up the Chair position.

**Response No. 107**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 107 and call upon the Complainant to prove same.

108.    After May 1st, Mr. Chiocca told Ms. Birmingham and Ms. Callahan that he did not want to be left alone in his office with Mrs. Hall, and to make sure that his office door stayed open when she came to Town Hall.

**Response No. 108**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 108 and call upon the Complainant to prove same.

109.    Mr. Chiocca specifically told Ms. Birmingham that because Susan Ide ("Ms. Ide"), the Executive Assistant to the BOS who sits right outside Mr. Chiocca's office, was on vacation the second week in May, that if he called Ms. Birmingham up to his office (who

worked on the floor below), that she was to come right away because it meant that Mrs. Hall was there and Mr. Chiocca did not want to be alone with her.

**Response No. 109**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 109 and call upon the Complainant to prove same.

110.     On May 4, 2018 at 7:07 a.m., Mrs. Hall emailed Mr. Chiocca and again requested an opportunity to meet with Mr. Chiocca. Mr. Chiocca agreed.

**Response No. 110**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 110 and call upon the Complainant to prove same.

111.     When the two met, they again discussed the evening of May 1st, and again Mr. Chiocca told Mrs. Hall that she was a "predator" and "the aggressor". At this meeting, Mrs. Hall did not complain of a lack of memory of her May 1st encounter with Mr. Chiocca or that she had been suffering from diminished capacity.

**Response No. 111**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 111 and call upon the Complainant to prove same.

112.     In neither conversation between Mrs. Hall and Mr. Chiocca on May 1st or May 4th did Mrs. Hall ever tell Mr. Chiocca that she blacked out or that she did not consent to any sexual acts.

**Response No. 112**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 112 and call upon the Complainant to prove same.

113.   Following these conversations, Mrs. Hall clearly understood that she had engaged in sexual activities with Mr. Chiocca (even though the truth is that she has always known the entire time).

**Response No. 113**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 113 and call upon the Complainant to prove same.

114.   Despite this clear understanding, Mrs. Hall never made any complaints, nor did she report any concerns about her interactions with Mr. Chiocca to anyone.

**Response No. 114**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 114 and call upon the Complainant to prove same.

115.   On May 4, 2018, Mr. Hall and Mrs. Kimball met to discuss their spouses' extramarital relationship with each other. They both agreed that Mrs. Hall and Mr. Kimball could go to BOS meetings and events together and Mrs. Kimball would not show up because she did not want to set off "red flags" and draw attention to her husband's relationship with Mrs. Hall. Indeed, it was most important to Mrs. Kimball to not let the public know about the affair.

**Response No. 115**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 115 and call upon the Complainant to prove same.

116.   The following week was filled with usual communications regarding Town business, both in person and by email, between Mr. Chiocca and Mrs. Hall, and they did not discuss the May 1st encounter.

**Response No. 116**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 116 and call upon the Complainant to prove same.

117.     The annual Town Meeting was held on May 7, 2018 and Mr. Chiocca, Mr. Kimball, Mrs. Hall and others went out for drinks to China Plaza without incident.

**Response No. 117**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 117 and call upon the Complainant to prove same.

118.     On May 11, 2018, Attorney Clifford sent an email to the BOS members regarding Mr. Chiocca's contract, suggesting that before they decided on whether to grant the contract extension at the BOS meeting on May 15, 2018, they have a candid discussion with him about any concerns they had with his job performance.

**Response No. 118**     The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

119.     During the week of May 14, 2018, Mrs. Hall came into Town Hall to see Mr. Chiocca more frequently than she ever had in the past. In fact, she was present more than any BOS member, but Mr. Chiocca avoided all interaction with her.

**Response No. 119**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 119 and call upon the Complainant to prove same.

120.     At this time, Mr. Chiocca began to apply for jobs outside of the Town because he did not think he could work with Mrs. Hall after what happened on the evening of May 1st.

**Response No. 120**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 120 and call upon the Complainant to prove same.

121.    In fact, on May 15, 2018, Mr. Chiocca learned that he had been granted an interview for the Town of Marblehead Town Administrator position, which was scheduled for May 21, 2018.

**Response No. 121**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 121 and call upon the Complainant to prove same.

122.    On May 14, 2018, Mr. Chiocca and Ms. Birmingham had planned to attend a ceremony at the State House for recognition for a grant that the Town received. That morning Mrs. Hall announced that she would join them, and for this reason Mr. Chiocca opted out. Instead, Ms. Birmingham and Ms. Hall went to the event without Mr. Chiocca.

**Response No. 122**     The Respondents lack sufficient information to admit or deny the allegations described in the first two sentences of Paragraph 122 and call upon the Complainant to prove same.  The Respondents admit that Ms. Birmingham and Ms. Hall went to the event without Mr. Chiocca.

123.    The May 15, 2018 BOS meeting was very contentious. Just prior to the meeting at 4:12 p.m., Mr. Kimball sent an email to the BOS members and announced that Mrs. Hall was named the school liaison, a position for which Mr. O'Loughlin was told by Mr. Kimball he would be selected.

**Response No. 123**     The Respondents lack sufficient information to admit or deny whether the May 15, 2018 BOS meeting "was very contentious" as described in the first

sentence of Paragraph 123 and call upon the Complainant to prove same. The second sentence of Paragraph 123 references a written document which speaks for itself.

124.   Also, at the BOS meeting, Mr. Ryan and Mr. O'Loughlin were blindsided by communications that Mrs. Hall had with the School Superintendent.

**Response No. 124**   The Respondents admit there were discussions at the BOS meeting about communications Mrs. Hall had with the School Superintendent, but deny the characterization that Mr. Ryan and Mr. O'Loughlin were "blindsided."

125.   The BOS also discussed Mr. Chiocca's contract in Executive Session.

**Response No. 125**   The Respondents admit the allegations contained in Paragraph 125.

126.   The following day, May 16, 2018, Mr. Ryan sent an email at approximately 12:42 p.m. to the BOS members expressing his frustration with the meeting the evening prior and he was critical of Mrs. Hall.

**Response No. 126**   Paragraph 126 references a written document which speaks for itself.

127.   That same day, Mr. Ryan also went to Town Hall and asked Mr. Chiocca what was going on with the BOS and why was he blindsided at the meeting the evening prior. Mrs. Hall was in the room when Mr. Ryan asked this question. At that time, Mr. Chiocca asked Mr. Ryan if he wanted to go to lunch and talk but he declined.

**Response No. 127**   The Respondents admit that a conversation occurred between Mr. Ryan and Mr. Chiocca but deny the characterization of same.

128.   Mrs. Hall then called Mr. Mullen and told him that after the May 1st BOS meeting she went to RBG with Mr. Chiocca and they had a lot to drink. Mrs. Hall went on to tell Mr. Mullen that she didn't remember much but thinks she got into Mr. Chiocca's truck and drove

around for a while and thinks they went to Town Hall. Mrs. Hall then expressed concerns that this would be on video. Mrs. Hall was not upset or crying but was matter of fact in telling Mr. Mullen this. She then described Mr. Chiocca as evil, though she never mentioned anything about a concern that Mr. Chiocca may have engaged in inappropriate sexual behavior with her without her consent.

**Response No. 128**       The Respondents admit the allegations contained in Paragraph 128.

129.   Later in the evening of May 16, 2018, at approximately 8:45 p.m., Mrs. Hall went to RBG. Upon seeing Mr. Chiocca at a table with two other males who had been involved in a meeting at Town Hall earlier that evening she walked over and sat next to Mr. Chiocca.

**Response No. 129**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 129 and call upon the Complainant to prove same.

130.   The four individuals remained seated together until 9:13 p.m. when Mr. Chiocca left the RBG, leaving Mrs. Hall with the two males.

**Response No. 130**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 130 and call upon the Complainant to prove same.

131.   Mrs. Hall and the two males exited the RBG 48 minutes later.

**Response No. 131**       The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 131 and call upon the Complainant to prove same.

132.    The following day, on May 17, 2018 there was an MAPC meeting which was held in Rockland. Mr. Chiocca was planning on attending the event with Ms. Birmingham because it was a great public relations opportunity for him and the Town.

**Response No. 132**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 132 and call upon the Complainant to prove same.

133.    Mrs. Hall announced that morning that she was going to join them at the MAPC event and Mr. Chiocca again decided not to attend. No other selectman attended the meeting.

**Response No. 133**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 133 and call upon the Complainant to prove same.

134.    That same day at 11:03 a.m., Mr. Ryan sent another email to the members of the BOS that included the following comments: "Ms. Hall is making her own deals with the school committee", "maybe we should revisit the VC and liaison positions at our next meeting", "Ms. Hall yells when she has no back up data but doesn't supply any when she is in charge. This was a board dividing move and we should correct it."

**Response No. 134**    Paragraph 134 references a written document which speaks for itself.

135.    At about that time, Mrs. Hall contacted Mr. Kimball and she told him that something happened on May 1, 2018 after the BOS meeting with Mr. Chiocca. Mrs. Hall then proceeded to lie and told Mr. Kimball that she had two drinks and then there was a void and the next day he said thank you for the birthday present, but she had not given him a present.

**Response No. 135**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 135 and call upon the Complainant to prove same.

136.     Mrs. Hall has admitted that she never would have told this to Mr. Kimball if she knew that Mr. Chiocca would have kept the May 1st incident a secret.

**Response No. 136**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 136 and call upon the Complainant to prove same.

137.     After Mrs. Hall told Mr. Kimball about the May 1st incident with Mr. Chiocca, Mr. Kimball was furious and kept repeating that he needed to process what she had told him.

**Response No. 137**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 137 and call upon the Complainant to prove same.

138.     Mr. Kimball then went to Town Hall and met with the Town Accountant/IT Director Eric Hart ("Mr. Hart") and asked Mr. Hart to pull the security video from May 1, 2018. Mr. Kimball and Mr. Hart then watched the video together and saw the view from the lobby with Mrs. Hall and Mr. Chiocca entering Town Hall.

**Response No. 138**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 138 and call upon the Complainant to prove same.

139.     That afternoon Mr. Kimball asked Mrs. Hall to meet him and they went for a 40-minute walk on the rail trail. Mr. Kimball was so angry at Mrs. Hall that Mrs. Hall was afraid he might hurt her. Mrs. Hall was also upset because she felt that she had disappointed Mr.

Kimball. Mr. Kimball explained that he viewed the tapes from Town Hall security and saw Mrs. Hall and Mr. Chiocca at Town Hall on May 1st. Mrs. Hall was embarrassed, and Mr. Kimball was furious with Mrs. Hall, and told her that he felt like he was being played by her.

**Response No. 139**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 139 and call upon the Complainant to prove same.

140.   Mrs. Hall was upset because she did not want anyone to know about what happened on May 1, 2018 because she thought she would be perceived as a "whore and a drunk."

**Response No. 140**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 140 and call upon the Complainant to prove same.

141.   Later that night Mr. Kimball texted Mrs. Hall and told her that he was going to approach Mr. Chiocca the following day and Mrs. Hall asked him not to. Mrs. Hall replied, "please call we should not be putting this in writing." In response Mr. Kimball insisted that he be told the whole truth and that he did not want to be played. Mrs. Hall texted Mr. Kimball back and told him that she would tell him but not through text messages. Mr. Kimball and Mrs. Hall then had a phone conversation during which Mrs. Hall allegedly did not divulge any new details about the May 1st incident with Mr. Chiocca.

**Response No. 141**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 141 and call upon the Complainant to prove same.

142.    Mr. Kimball then spoke with Mr. Hall, who reiterated to Mr. Kimball that when Mrs. Hall arrived home after being out for drinks with Mr. Chiocca on May 1st, that she told him that Mr. Chiocca stated, "the way we do things around here is I ask for a contract, you give me a blowjob and I get the contract."

**Response No. 142**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 142 and call upon the Complainant to prove same.

143.    That evening Mr. Kimball called and spoke with Mr. Chiocca. Mr. Kimball informed Mr. Chiocca that Mr. Hall wanted to know if the Town Administrator gets a blowjob with his raise and then told Mr. Chiocca that they would talk in the morning.

**Response No. 143**        The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 143 and call upon the Complainant to prove same.

144.    The next morning, May 18, 2018, Mr. Kimball contacted Attorney Clifford and told him that Mr. Chiocca had stated to Mrs. Hall on May 1st that it is standard operating procedure to give the obligatory blowjob to the Town Administrator during contract negotiations. Mr. Kimball expressed concern for the safety of the town employees who were in contract negotiations. Mr. Kimball then told Attorney Clifford that Mrs. Hall alleged that Mr. Chiocca did something inappropriate to her on May 1, 2018 at Town Hall.

**Response No. 144**        The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

145.   As a result, Attorney Clifford and Mr. Kimball met with Mr. Chiocca and he admitted to having engaged in sexual activities with Mrs. Hall at Town Hall on the evening of May 1st but denied any conversation about blowjobs for contracts.

**Response No. 145**   The Respondents admit the allegations contained in Paragraph 145.

146.   Mr. Chiocca then insisted to Attorney Clifford and Mr. Kimball that Mrs. Hall had initiated and pursued the sexual encounter that evening and that Mrs. Hall was a "predator and the aggressor."

**Response No. 146**   The Respondents admit the allegations contained in Paragraph 146 that Mr. Chiocca made such a statement..

147.   At that time, Mr. Kimball "strongly suggested" that Mr. Chiocca take vacation time and encouraged him to resign from his employment. Mr. Chiocca agreed to take vacation time.

**Response No. 147**   The Respondents admit the allegations contained in Paragraph 147.

148.   Mr. Kimball then met with Mrs. Hall to see if she would enter into a nondisclosure agreement and sign a release with the town, and Mrs. Hall agreed to comply with this request.

**Response No. 148**   The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 148 and call upon the Complainant to prove same.

149.   The following day, May 19, 2018, Mrs. Hall, Mr. Hall, Mr. Kimball and Mrs. Kimball met at Reeds Pond to discuss the allegations against Mr. Chiocca and they all agreed to keep Mrs. Hall and Mr. Kimball's relationship a secret. Mrs. Kimball reiterated the conversation she had with Mr. Kimball on May 4, 2018 that they could not let their relationship be leaked to the public. Mr. and Mrs. Kimball did not want their family's reputation to be ruined and

Mrs. Hall was concerned about her candidacy for State Representative and knew it would ruin her chances of winning.

**Response No. 149**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 149 and call upon the Complainant to prove same.

150.    Mr. Chiocca took the next week off as vacation time.

**Response No. 150**     The Respondents admit the allegations contained in Paragraph 150.

151.    On or about May 23, 2018, the news media learned of May 1st encounter between Mr. Chiocca and Mrs. Hall.

**Response No. 151**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 151 and call upon the Complainant to prove same.

152.    On May 29, 2018, Mr. Chiocca was placed on administrative leave per a letter from Mr. Kimball. In relevant part, the letter reads:

> Please allow this letter to serve as formal notice that you have been placed on paid administrative leave pending the outcome of an investigation effective immediately. The matters under investigation include allegations of improper conduct toward a member of the Town of Rockland Board of Selectmen.
> . . . .
> Throughout the duration of this administrative leave, you are directed and ordered to not visit Town Hall or any other buildings or property owned [sic] the Town of Rockland and are directed and ordered to refrain from the performance of any of your duties and responsibilities as Town Administrator for the Town until such time as you are scheduled to return to work or are otherwise notified.

**Response No. 152**     The Respondents admit the allegations contained in the first sentence of Paragraph 152. The second sentence of Paragraph 152 references a written document which speaks for itself.

153.    On May 30, 2018, Mr. Chiocca's counsel Adam Shafran ("Attorney Shafran") wrote to

Attorney Clifford regarding the Town's decision to place Mr. Chiocca on administrative

leave. In relevant part, Attorney Shafran wrote:

I am in receipt of Mr. Kimble's [sic] letter to Mr. Chiocca dated May 29, 2018
confirming that the Town of Rockland has placed Mr. Chiocca on paid
administrative leave effective immediately. Please be advised that Mr. Chiocca
considers his placement on administrative leave to be a suspension in violation of
his procedural due process rights under Section 2.18 of the Town of Rockland
Charter.
. . . .
Mr. Kimble's [sic] letter makes clear that Mr. Chiocca's placement on
administrative leave is in fact a suspension because Mr. Chiocca is not permitted to
"perform[] . . . any of [his] duties and responsibilities as Town Administrator for
the Town until such time as [he] is scheduled to return to work or otherwise
notified." . . . . The Town's failure to comply with these procedural requirements
and placement of Mr. Chiocca on immediate suspension, has damaged, and will
continue to damage his reputation.

**Response No. 153**    The Respondents admit the allegations contained in first sentence of

Paragraph 153. The second sentence of Paragraph 153 references a written

document which speaks for itself.

154.    The same day, Mrs. Hall announced publicly on her Facebook page "Committee to Elect

Deirdre Hall" that BOS voted to initiate an investigation into her allegations of

inappropriate behavior towards her by Mr. Chiocca.

**Response No. 154**    The Respondents admit the allegations contained in Paragraph 154.

155.    Specifically, Mrs. Hall's statement read in relevant part:

Last evening, **at my request**, the Rockland Board of Selectmen initiated an internal
investigation involving an allegation of **inappropriate behavior by the Town
Administrator towards me**. Soon after the incident, I reported this matter to two
members of the Board of Selectmen. I am cooperating fully with this process and I
hope to see a thorough and fair investigation by the Board.

**Response No. 155**     The allegations contained in Paragraph 155 reference a written document which speaks for itself.

156.    On May 31, 2018, Attorney Clifford responded to Attorney Shafran's May 30, 2018 letter.

**Response No. 156**     The Respondents admit the allegations contained in Paragraph 156.

157.    Per Attorney Clifford's letter and in violation of the Town Charter, the BOS refused to provide Mr. Chiocca with a written resolution setting forth the specific reasons for his suspension, inappropriately placed the burden on Mr. Chiocca to declare the BOS's actions towards him a suspension (even though no such burden is placed upon him by the Charter, and despite the fact that Mr. Chiocca had already taken the position that the BOS suspended him per Attorney Shafran's May 30, 2018 letter), and falsely asserted that Mr. Chiocca admitted to engaging in conduct that impaired his ability serve as Town Administrator (even though Mr. Chiocca had never remotely made any such admissions).

**Response No. 157**     The Respondents deny the allegations contained in Paragraph 157.

158.    In relevant part, Attorney Clifford wrote:

> If you wish to consider the Board's action a suspension, you are free to request a public hearing under the Charter. I will request that the Board provide him with a notice detailing the allegations against him, and then convene a public hearing to provide him with the procedural due process you feel he has been denied.
> . . . .
>
> [Mr. Chiocca] has admitted to conduct [sic] significantly impairs his ability to function as Town Administrator, leaving the Town with no alternative but to place him on paid administrative leave while an investigation is performed.

**Response No. 158**     The allegations contained in Paragraph 158 reference a written document which speaks for itself.

159.   Five days later, on June 5, 2018, and after Mr. Chiocca was no longer permitted at Town

Hall, Mrs. Hall reiterated her allegations at the publicly televised BOS meeting. In relevant

part she stated:

I recently reported an incident of **inappropriate behavior by the Town
Administrator**, and since the weeks that those allegations have emerged it has been
very challenging for me and my family. False rumors and gossip have spread,
particularly on social media, about me, about the devotion to my spouse, my
husband Chris, and our children and our town. Indeed, I no longer feel that my
children, my son, is comfortable taking the bus, and I feel that my kids often times
are not safe or comfortable participating in some community activities. And this is
a deeply disappointing consequence of **my decision** to stand up for myself in a
situation where **I believe I was treated improperly**.

**Response No. 159**   The Respondents admit that Mrs. Hall made a statement at the June 5, 2018

BOS meeting.  The Respondents lack sufficient information to admit or

deny whether Paragraph 159 accurately quotes Mrs. Hall's statement.

160.   At this same time (i.e. early June 2018), Attorney Ryan of Discrimination and Harassment

Solutions LLC began her investigation.

**Response No. 160**   The Respondents admit the allegations contained in Paragraph 160.

161.   Upon information and belief, on or about June 7, 2018, the Town received public record

requests for copies of Town Hall video surveillance from the evening on May 1, 2018.

**Response No. 161**   The Respondents admit the allegations contained in Paragraph 161.

162.   On June 13, 2018, while Attorney Ryan was in the midst of her investigation, Mrs. Hall

filed suit in Plymouth County Superior Court against the Town of Rockland and related

parties to block the Town from releasing the surveillance footage.

**Response No. 162**   The Respondents admit Mrs. Hall filed suit as alleged in Paragraph 162, but

neither admit nor deny the contents of same as it is a written document

which speaks for itself.

163.    Mrs. Hall's complaint made numerous knowingly false and defamatory statements and insinuations about Mr. Chiocca and was supported by a surreptitiously obtained and knowingly false affidavit submitted by Mr. Kimball.

**Response No. 163**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 163 and call upon the Complainant to prove same.

164.    Mr. Kimball's affidavit insinuated that Mr. Chiocca and/or Mr. Hart tampered with the May 1, 2018 Town Hall video surveillance footage, and asserted that his prior review of the surveillance footage "revealed critical missing segments of activities, including a minute long gap when Hall made active attempts to leave the premises after stating unequivocally on camera that '[she] needed to go home.'"

**Response No. 164**    The allegations contained in Paragraph 164 reference a written document which speaks for itself.

165.    Just two days later, on June 15, 2018, knowing that it was frivolous Mrs. Hall voluntarily dismissed her complaint.

**Response No. 165**    The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 165 and call upon the Complainant to prove same.

166.    Later that day, Attorney Clifford issued a press release at the behest of the BOS.

**Response No. 166**    The Respondents admit the allegations contained in Paragraph 166.

167.    In relevant part, Attorney Clifford stated:

[T]he following statement is being issued at the behest of the Board of Selectmen. On May 17th, a member of the Board of Selectmen was made aware of potentially serious misconduct by two high ranking Town officials. Due to the seriousness of the allegations, the Town engaged an independent investigator to interview

witnesses and review any evidence related to the alleged misconduct. The investigation is ongoing.

. . . .

Unfortunately, there has been a steady stream of information improperly disseminated during the investigation, much of which was false. **The release of false and/or misleading information has only served to hamper our efforts to get this investigation done**.

On Wednesday, June 13th, a motion for an emergency restraining order was filed on behalf of Ms. Hall. Much of the information contained in that filing was **misleading, based on conjecture, or just false**. It was my intention to appear in Brockton Superior Court this afternoon and make it clear that the facts and legal conclusions contained in that filing **were not only wrong, but obtained in an improper manner**. The circumstances surrounding the filing [sic] this motion are troubling from a legal perspective, and even though the matter was voluntarily dismissed by the plaintiff, the Town will be reviewing all of its options and may take further action in response to the filing of that motion.

It is the Board's position that the surveillance video from the night of the incident is a public record, and would be released in response to a valid public records request. . . . Unfortunately, the documents filed in Brockton Superior Court on Wednesday contain assertions that the video was tampered with or altered in some way.

. . . .

At this time, there is no credible evidence that the video has been tampered with or edited in some fashion.

**Response No. 167**     The allegations contained in Paragraph 167 reference a written document

which speaks for itself.

168.   On June 19, 2018, while Attorney Ryan's investigation was still ongoing, the BOS held a

regularly scheduled meeting.

**Response No. 168**     The Respondents admit the allegations contained in Paragraph 168.

169.   Without providing the legally required notice, and in an attempt to undermine the Town's

investigation, Mr. Kimball knowingly and intentionally violated the Massachusetts Open

Meeting Law (G.L. c. 30A, § 20(b)) by speaking on topics related to the ongoing

investigation that were not on the agenda.

**Response No. 169**     The Respondents admit Mr. Kimball spoke on matters not on the agenda, but lack sufficient information to admit or deny the remainder of the allegations in Paragraph 169 and call upon the Complainant to prove same.

170.    As Mr. Kimball began to speak on issues related to the investigation, Attorney Clifford expressly advised him that he was "discussing something that was not on the agenda that impacts the rights of others involved."

**Response No. 170**     The Respondents admit the allegations contained in Paragraph 170.

171.    In response, Mr. Kimball stated, "I can discuss what I like," and instructed Attorney Clifford to "hold his words."

**Response No. 171**     The Respondents admit the allegations contained in Paragraph 171.

172.    Mr. Kimball then proceeded to bring a motion to refer the Town's investigation to the Rockland Police Department and repeatedly berated the other Board Members who were present to vote on his motion, and stated that he is going on the record "that the three other members of the Board do not want to go through and have an investigation."

**Response No. 172**     The Respondents admit that Mr. Kimball called for the Rockland Police to conduct the investigation and generally accused the other Board members of a cover-up. The Respondents lack sufficient information to admit or deny the remainder of the allegations in Paragraph 172 and call upon the Complainant to prove same

173.    Mr. Kimball then stated that the Town's investigation was a "sham," suggested that Mr. Chiocca engaged in criminal conduct, including evidence tampering and sexual assault, and repeatedly stated that he stands by the "after-David" [sic] that he submitted with Mrs. Hall's complaint.

**Response No. 173**     The Respondents admit the allegations contained in Paragraph 173.

174.    Mr. Kimball engaged in this conduct while knowing that all parties impacted by his statements were not present, were not given notice that he would be making such comments, and with the intent to hinder Attorney Ryan's ongoing investigation because he knew that the investigation was uncovering his affair with Mrs. Hall.

**Response No. 174**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 174 and call upon the Complainant to prove same.

175.    As a result of Mr. Kimball's egregious conduct, Mr. Ryan stated at the BOS meeting that Mr. Kimball committed a "fatal mistake" and called for Mr. Kimball to resign from the BOS.

**Response No. 175**     The Respondents admit that Mr. Ryan called for Mr. Kimball to resign from the BOS.

176.    When Mr. Kimball refused, Mr. Ryan stormed out of the meeting and stated that Kimball "should own up to what he did and resign."

**Response No. 176**     The Respondents admit the allegations contained in Paragraph 176.

177.    On June 21, 2018, Mr. Chiocca filed an open meeting law complaint against Mr. Kimball and the BOS with the Massachusetts Attorney General's Office ("AG").

**Response No. 177**     The Respondents admit that Mr. Chiocca filed an open meeting law complaint against Mr. Kimball and the BOS with the Massachusetts Attorney General's Office.

178.    On July 2, 2018, Attorney Clifford, wrote to the AG on behalf of the BOS and requested an extension to July 21, 2018 to respond.

**Response No. 178**     The Respondents admit the allegations contained in Paragraph 178.

179.     Also on July 2, 2018, Attorney Ryan concluded her investigation.

**Response No. 179**     The Respondents admit that, on or about July 2, 2018, Attorney Ryan
completed a report captioned "Investigation of Complaints Against Deirdre
Hall and Allan Chiocca: Findings of Fact, Conclusions and
Recommendations."

180.     Attorney Ryan's investigation was incredibly thorough and included interviews with Mrs.
Hall, Mr. Chiocca. Ms. Ide, Ms. Birmingham, Ms. Callahan, Ms. Flipp, Mary Jane Martin
(Assistant Town Accountant), Mr. Kimball, Mr. Hart, Mr. Mullen, Mr. Hall, Mr. Ryan and
Mr. O'Loughlin, and her review of 20 exhibits, including the Rockland Charter, the
Rockland Sexual Harassment Policy, text messages between Ms. Hall and Ms. Kimball,
text messages between Ms. Hall and Mr. Kimball, emails from Ms. Hall to Mr. Chiocca,
texts between Ms. Hall and Mr. Chiocca, May 1, 2018 video of Town Hall, May 16, 2018
video of RBG, email regarding Mr. Chiocca's interview in Marblehead, May 15, 2018,
BOS Executive Session meeting minutes, affidavit of Paul Jacobson, Affidavit of Mr.
Kimball, May 11, 2018 email from Attorney Clifford to the BOS, texts between Ms. Hall
and Mr. Hall, affidavit of Steven Verronneau, email regarding video tampering, receipt
from RBG, Mr. Chiocca's administrative leave, and Committee to Elect Deirdre Hall
Facebook page.

**Response No. 180**     The allegations contained in Paragraph 180 reference a written document
which speaks for itself.

181.     After making Findings of Fact that are substantially set forth above, Attorney Ryan made
the following Conclusions:

- It is **undisputed** based on what Ms. Hall reported to her husband and what was reported by Mr. Chiocca, that during that evening there was a conversation between Mr. Chiocca and Ms. Hall about his contract and there was a reference to sexual activities.

- It is **undisputed** that the BOS had been discussing Mr. Chiocca's contract for weeks prior to May 1, 2018 and continued after May 1, 2018. Mr. Chiocca was asking for a contract extension and a raise and Ms. Hall would be one of the five votes that would decide this.

- Mr. Chiocca **did not want to have a sexual encounter with Ms. Hall . . . . Regardless, she persisted**.

- Both while driving in Mr. Chiocca's truck and while standing on the Town Hall plaza, Ms. Hall made comments to Mr. Chiocca about engaging in sexual activities while reminding him that she was his supervisor and would be voting on his contract and raise. **As a result**, Mr. Chiocca agreed to engage in sexual activities in his office. **But for the fact that Ms. Hall was his supervisor and would be voting on his contract, Mr. Chiocca would not have agreed to this**.

- Although Ms. Hall did not make any requests for sexual relations after the Incident, she demonstrated a similar pattern of trying to position herself in Mr. Chiocca's space. To the contrary, Mr. Chiocca exhibited behavior of trying to avoid Ms. Hall and this was corroborated by other Town employees following the Incident.

- Accordingly, I find by a preponderance of the evidence that Ms. Hall was Mr. Chiocca's supervisor and she sought sexual relations in exchange for her vote on his contract extension and raise. As such, **Ms. Hall sexually harassed Mr. Chiocca in violation of the Town's Sexual Harassment Policy on the night of the Incident.**

- After reviewing the video of her at Town Hall, Ms. Hall is seen walking without assistance and talking to Mr. Chiocca. She appears to be aware of the circumstances that she is in and appears to be in control of her activities.

- When considering her interactions and communications before she went to Town Hall, she could communicate with Mr. Chiocca about his contract with the Town, her affair with Mr. Kimball, her desire to have relationships outside her marriage and the BOS meeting that she chaired earlier in the evening. Further, when she arrived home within minutes of leaving Mr. Chiocca, she never expressed concern about the fact that she had sexual relations with him and did not exhibit any signs to her husband of being upset. Further, Ms. Hall was capable of engaging in coherent discussions with her husband for approximately one hour when she got home and the

subjects that they covered that evening spanned from her extramarital affair with Mr. Kimball, their son's neurological appointment, her husband calling in sick from work and other topics. In addition, she could drive her motor vehicle home and back it into a parking spot with another motor vehicle beside it without incident. She was also capable of texting her husband at 9:45 PM, "'Be ready for me when I get home because I'm going to want you' and then at 2:25 AM 'love you, it gonna be a tough ride the next couple of weeks ttyl.'"

- Moreover, the following day Ms. Hall went to Mr. Chiocca's office and asked for "discretion" and asked that he agree not to tell anyone. During this conversation, she never mentions to Mr. Chiocca that she had no memory of the Incident and never tells him she did not consent.

- Accordingly, I find by a preponderance of the evidence, that Ms. Hall was capable of consenting to sexual relations during the Incident, and she did consent, and I also find that Mr. Chiocca believed that she was capable of consenting.

- Accordingly, I find by a preponderance of the evidence, that **Mr. Chiocca did not violate the Town's Sexual Harassment Policy** in that he did not engage in any unwelcomed touching of Ms. Hall during the Incident.

**Response No. 181**    The allegations contained in Paragraph 181 reference a written document

which speaks for itself.

182.   Based on the Conclusions set forth above, Attorney Ryan then made the following

Recommendations:

- Based on the fact that Ms. Hall is an elected official, she cannot be disciplined by the Town nor can corrective action be issued for violations of the Sexual Harassment Policy. Accordingly, I recommend that the [sic] she and the other members of the BOS receive training on preventing discrimination and harassment in the workplace.

- With regard to Mr. Chiocca, I recommend that he be **removed from administrative leave and returned to the position of Town Administrator for the Town** and that he be reminded that any retaliation in the workplace for reporting harassment will not be tolerated.

**Response No. 182**    The allegations contained in Paragraph 182 reference a written document

which speaks for itself.

183.    On July 10, 2018, the BOS held a meeting to, *inter alia*, disclose the results of Attorney

        Ryan's investigation.

**Response No. 183**        The Respondents admit that on July 10, 2018, the BOS held a meeting to

                    discuss the items on the posted Agenda, a written document which speaks

                    for itself.

184.    Given the anticipated public turnout, the meeting was moved from its regular Town Hall

        location to the Rockland High School auditorium. Hundreds of citizens attended the

        meeting.

**Response No. 184**        The Respondents admit the allegations contained in Paragraph 184.

185.    At the beginning of the meeting and during open session, Mr. Kimball stated in relevant

        part:

        In 2018, this Board has turned an allegation of sexual assault into a spectacle. That's
        my ruling as Chair, you can overrule me, and continue with a majority vote.

**Response No. 185**        The Respondents admit the allegations contained in Paragraph 185.

186.    The Board then voted in favor of removing Mr. Kimball as Chair and in favor of making

        Mr. Ryan the new Chair.

**Response No. 186**        The Respondents admit the allegations contained in Paragraph 186.

187.    The Board then voted to go into Executive Session.

**Response No. 187**        The Respondents admit the allegations contained in Paragraph 187.

188.    At the beginning of the Executive Session, Mr. Ryan stated to Mr. Kimball:

        The report does speak for itself, but I would just like to mention that, as you accused
        us all of covering up everything and then, quite frankly, the only person who
        covered anything up was you, your affair with Ms. Hall, your – when you came to
        the meeting, your – when you heard that something happened. She didn't report
        that. You did, according to the report that I read. And, quite frankly, we don't need
        you anymore.

I think you should resign, quite frankly, and save the town the embarrassment because everybody in town hall been on edge since this happened.

**Response No. 188**    The Respondents admit the allegations contained in Paragraph 188.

189.    Mr. Ryan then asked Attorney Ryan how she assessed Mr. Kimball's credibility, and

Attorney Ryan responded as follows:

So I interviewed Mr. Kimball two times in person and one time over the telephone. During the first interview that I had with him, he told me that he had been untruthful to the members of the Board of Selectmen, to the women at town hall and to his wife. He said that he was untruthful about the extent of the relationship that he had with Deirdre Hall.

I observed other inconsistencies during the examination of Mr. Kimball from Day One to Day Two. So, for instance, on his first day of testimony, he told me that he told John Clifford that he had called . . . Allan Chiocca the night before the 18th. So on the 17th, he called Allan Chiocca and said, you know, a board member's husband called me tonight and said, you know, something about blowjobs and contracts.

And so the first day, he said, no -- I said, you never told that to Attorney Clifford before you met with him on the 18th to go in and speak to Mr. Chiocca, and he said, no. And then on the second interview, he said, I told Mr. Clifford that morning that I had, in fact, talked to Allan Chiocca the night before. And I thought that was important, and I thought that was a credibility flaw because I did weigh some – I did find it concerning on the first day that he had not told legal counsel that he already disclosed to Allan Chiocca that there was an allegation against him.

. . . .

The other issue is Ms. Hall had, and I found her credible, saying that she never said to Mr. Kimball that anyone had engaged in inappropriate behavior. Those were his words, and that was the word -- those were the words that we used on the leave of absence. And she said she only used those words because he had put them on the leave of absence.

**Response No. 189**    The Respondents admit the allegations contained in Paragraph 189.

190.    After hearing Attorney Ryan's response, Mr. Ryan then stated to Mr. Kimball:

So, quite frankly, it looks like you started an investigation without having probable cause. I mean, if she didn't tell you that something happened, why did you start an investigation? You went down and saw the movies. You went down and said, you know, there's pieces missing. You went down and said all these things, and **none of them are true. Just covering up -- everything for everybody**.

From the day you started that affair with that woman and you slept with her . . . .

That's the issue. [Mr. Kimball] lied to the Board of Selectmen consistently, so there you go. So as far as I'm concerned, I got no more news for you. So you can do whatever you want to do, but that's where I'm standing right now. As far as I'm concerned, the town owns you.

**Response No. 190**     The Respondents admit the allegations contained in Paragraph 190.

191.    Following Mr. Ryan's statement, Attorney Clifford and Mr. Kimball's attorney Brian

Palmucci ("Attorney Palmucci") engaged in a lengthy back and forth discussion. During

the discussion, Attorney Clifford stated in relevant part:

[Y]our client was untruthful, all right, from the beginning of this investigation all the way through. Those are the allegations. . . . It's in the report.

. . . .

[Mr. Kimball] lied. **Is there any dispute, material dispute, on that?** He lied to me. He lied to his fellow board members. He lied to the women in town hall.

. . . .

**It is very relevant** how this investigation started, all right, with an untruthful statement by your client. It's very relevant that he misled all the parties involved all the way through this investigation, and then he accused these two gentlemen and his fellow board member, Mike O'Loughlin, of a coverup. **He went on TV and made that statement**. All right? When all the while, he was the one being untruthful.

**Response No. 191**     The Respondents admit the allegations contained in Paragraph 191.

192.    Then, following his discussion of Mr. Kimball's credibility, and without providing any

detail whatsoever and in direct contradiction to Attorney Ryan's report, Attorney Clifford

recommended that the Board vote to convene a meeting to discipline Mr. Chiocca for

misconduct. Specifically, Attorney Clifford stated:

Mr. Chairman, I'm going to recommend that the board vote to convene a meeting next week to take disciplinary action against Mr. Chiocca for conduct beyond the town's discriminatory harassment policy for serious misconduct.

**Response No. 192**     The Respondents deny the allegations contained in Paragraph 192, as the

Town had grounds to discipline Mr. Chiocca for misconduct.

193.    The Board then voted in favor of the proposed motion.

**Response No. 193**   The Respondents admit the allegations contained in Paragraph 193.

194.   Following the Board's vote, and knowing that Mr. Chiocca and his counsel were not present, Mrs. Hall's attorney Jack McGlone ("Attorney McGlone") asked the Board to refrain from disclosing Attorney Ryan's full report to the public, and in doing so conceded that Mrs. Hall should have already resigned from her position on the Board ("[S]he should have resigned a long time ago, Larry").

**Response No. 194**   The Respondents admit the allegations contained in Paragraph 194.

195.   Following Attorney McGlone's request, and again without providing any detail and in contradiction to Attorney Ryan's report, Attorney Clifford stated that Mr. Chiocca would be disciplined for "misconduct" and would not be allowed to return to work. Specifically, Attorney Clifford stated:

> I don't think it's the sentiment of this board that they want to -- people to leave this meeting thinking that Allan is going to be brought back to work . . . . That is not the board's intention.

**Response No. 195**   The Respondents admit the allegations contained in Paragraph 195 and state

further that the Town had grounds to discipline Mr. Chiocca for misconduct.

196.   Mr. Kimball then correctly observed and asked:

> In the report, the executive summary that Ms. Ryan had wrote regarding Mr. Chiocca, he be reminded that any retaliation in the workplace, report of harassment not be tolerated and should be reported by him. Any action against Mr. Chiocca, is that going to be considered retaliation by this board?

**Response No. 196**   The Respondents admit that Mr. Kimball made the statement attributed to

him but state further that the Town had grounds to discipline Mr. Chiocca

for misconduct.

197.   The conversation then returned to Attorney McGlone's request to not release the full report, during which Attorney McGlone effectively acknowledged that Mrs. Hall's complaint

seeking an injunction to prevent the release of the video tapes was frivolous. Specifically, Attorney McGlone stated:

The last thing I want to do is file an injunction. That was absolutely ridiculous. And she was listening to the wrong people, and she was listening to certain members.

**Response No. 197**   The Respondents lack sufficient information to admit or deny what "Attorney McGlone effectively acknowledged" as described in Paragraph 197 and call upon the Complainant to prove same.

198.   The parties then continued a lengthy discussion about releasing a substantially shortened summary of the report to the public in exchange for Mrs. Hall's resignation from the BOS.

**Response No. 198**   The Respondents admit the allegations contained in Paragraph 198.

199.   Without Mr. Chiocca present, the parties ultimately agreed to the foregoing, but before doing so, the BOS voted in favor of accepting Attorney Ryan's full report.

**Response No. 199**   The Respondents admit the allegations contained in Paragraph 199.

200.   Accordingly, the BOS does not dispute any of Attorney Ryan's Factual Findings, Conclusions or Recommendations.

**Response No. 200**   The Respondents deny the allegations contained in Paragraph 200.

201.   The BOS concluded the Executive Session by voting to acknowledge that it violated the Open Meeting Law at the June 19, 2018 BOS meeting.

**Response No. 201**   The Respondents deny the allegations contained in Paragraph 201, as the Board only voted at that time to have Attorney Clifford address the pending Open Meeting Law complaint, rather than retain outside counsel.

202.   The BOS then closed the Executive Session and returned to the Open Session.

**Response No. 202**   The Respondents admit the allegations contained in Paragraph 202.

203.    When they returned to the Open Session, Attorney Ryan read only two findings to the

public. She stated:

I do not substantiate Ms. Hall's allegation that if she engaged in sexual activities
with Mr. Chiocca on May 1st and 2nd, 2018, it was non-consensual as she was
incapable of consenting due to her level of intoxication.

I substantiate Mr. Chiocca's allegation that on May 1st and 2nd, 2018, **Ms. Hall used
her position as member of the Board of Selectmen, who was actively reviewing
and would soon be voting on his request for contract extension and salary
increase to pressure him into engaging in sexual activities with her.**

**Response No. 203**    The Respondents admit the allegations contained in Paragraph 203.

204.    Attorney Clifford then, without providing the public with any detail, stated:

Pursuant to a board vote in executive session, it is important for the public to
understand that while Mr. Chiocca was found not to have violated the Town's
discriminatory harassment policy, other serious misconduct was identified in the
investigation. The board has voted to convene a meeting next Tuesday July 17th to
consider what actions should be taken against Mr. Chiocca for other misconduct.

**Response No. 204**    The Respondents admit that Mr. Clifford made the statement quoted in

Paragraph 204.

205.    One week later, on July 17, 2018, the BOS held another meeting that primarily consisted

of an Executive Session to discuss the potential discipline of Mr. Chiocca.

**Response No. 205**    The Respondents admit that on July 17, 2018, the BOS held a meeting to

discuss the items on the posted Agenda, a written document which speaks

for itself.

206.    Only three BOS members attended this meeting (Mr. Ryan, Mr. Mullen and Mr.

O'Loughlin) as Mrs. Hall had resigned and Mr. Kimball was not present.

**Response No. 206**    The Respondents admit the allegations contained in Paragraph 206.

207.    The Executive Session began with Attorney Clifford falsely stating to the BOS that

Attorney Ryan's investigation "raised serious concerns as to other potential misconduct

[that Mr. Chiocca engaged in] that may not have been a violation of [the Town's discriminatory harassment policy] but may have been a violation of other policies."

**Response No. 207**    The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

208.    Attorney Clifford then noted that the BOS could not terminate Mr. Chiocca's employment as the BOS did not have the requisite four votes as required by the Town Charter.

**Response No. 208**    The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

209.    Mr. Ryan, Mr. Mullen, Mr. O'Loughlin, Attorney Clifford and Attorney Jason Crotty ("Attorney Crotty") (counsel assigned to the Town by the Town's insurer) then engaged in a lengthy discussion regarding how to handle any potential discipline towards Mr. Chiocca.

**Response No. 209**    The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

210.    During this discussion, and again without articulating any specific misconduct that Mr. Chiocca engaged in, Mr. Ryan stated that the three present BOS members were unanimously in agreement to terminate Mr. Chiocca's employment.

**Response No. 210**    The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

211.    Attorney Clifford then again advised Mr. Ryan that the BOS could not terminate Mr. Chiocca's employment at that point with only three members because it would increase the Town's liability to Mr. Chiocca even further. In doing so, Attorney Clifford expressly acknowledged that the Town already had serious liability to Mr. Chiocca. Specifically, Attorney Clifford stated:

Based on [Attorney Ryan's] report, I think that the town potentially has serious exposure already.

**Response No. 211**     The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

212.   Mr. O'Loughlin then stated and correctly observed as follows:

In that investigation, it was determined that **every act – every action that [Mr. Chiocca] took that night was out of concern that he was threatening his contract**. So all of that got lumped in, so, in a sense, **the report exonerated every action that he took that night** . . . .

**Response No. 212**     The Respondents object to this paragraph as it seeks to disclose communications which are attorney client-privileged.

213.   In response, Mr. Ryan acknowledged the findings in Attorney Ryan's report ("The paper says that he did not pursue her. That she pursued him"), but then falsely stated that Mr. Chiocca was "drunk on the job . . . [t]his is the second time he has been caught in Rockland drunk on the job," and that "it has to do with . . . him being in [Town Hall]."

**Response No. 213**     The Respondents deny the allegations contained in Paragraph 213.

214.   Nowhere in Attorney Ryan's report did she find that Mr. Chiocca was drunk on the evening of May 1, 2018/early morning of May 2, 2018.

**Response No. 214**     The Respondents deny the allegations contained in Paragraph 214. Mr. Chiocca consumed alcohol at the Rockland Bar and Grill, drove his vehicle, consumed more alcohol at Town Hall, and again drove his vehicle.

215.   Attorney Ryan's report further found that Mr. Chiocca returned to Town Hall with Mrs. Hall based on her threats about his contract and raise.

**Response No. 215**     The Respondents deny the allegations contained in Paragraph 215. Mr. Chiocca consumed alcohol at the Rockland Bar and Grill, drove his vehicle, consumed more alcohol at Town Hall, and again drove his vehicle.

216.     Attorney Ryan's report did not identify any misconduct that Mr. Chiocca engaged in.

**Response No. 216**     Paragraph 216 references a written document which speaks for itself.

217.     After expressing his unlawful, retaliatory opinion, Mr. Ryan then stated that the Town should propose a resolution to Mr. Chiocca, and that if he did not agree to it, as soon as there are four voting members on the BOS, "it's AMF"; i.e. adios mother fucker.

**Response No. 217**     The Respondents deny the allegations contained in Paragraph 217.

218.     Following Mr. Ryan's statement, the BOS discussed a few other matters, and the meeting ended.

**Response No. 218**     The Respondents lack sufficient information to admit or deny the allegations described in Paragraph 218 and call upon the Complainant to prove same.

219.     After the meeting ended, and without regard to its retaliatory nature, Mr. Ryan stated publicly to the press that the BOS unanimously agreed to terminate Mr. Chiocca's employment but could not do so until the BOS had at least four members.

**Response No. 219**     The Respondents deny the allegations contained in Paragraph 219.

220.     The following day, July 18, 2018, Attorney Clifford wrote to Attorney Shafran to respond to Mr. Chiocca's Open Meeting Law Complaint.

**Response No. 220**     The Respondents admit the allegations contained in Paragraph 220.

221.     Attorney Clifford acknowledged that Mr. Kimball's conduct at the June 19, 2018 BOS meeting was a violation of the Open Meeting Law, and that the BOS would, *inter alia*, "at

its next schedule meeting . . . read a statement that include[s] . . . [a]n admission that the statements made by then Chairman Edward Kimball regarding an investigation at the June 19, 2018 meeting were a violation of the Open Meeting Law, as that matter was not on the agenda for that meeting."

**Response No. 221**    Paragraph 221 references a written document which speaks for itself.

222.    Attorney Clifford's letter further acknowledged that the BOS could not compel Mr. Kimball individually to take any of the remedial actions sought by Mr. Chiocca in his Open Meeting Law complaint.

**Response No. 222**    Paragraph 222 references a written document which speaks for itself.

223.    The same day, July 18, 2018, Mr. O'Loughlin publicly libeled Mr. Chiocca on a Facebook page routinely frequented by Rockland citizens (i.e. the "Rockland Hub Facebook page").

**Response No. 223**    The Respondents deny the allegations contained in Paragraph 223.

224.    Specifically, Mr. O'Loughlin accused Mr. Chiocca of lying during the investigation when he falsely wrote on the Facebook page, "It's important to keep in mind that this was caused by 3 parties that weren't being truthful from the start."

**Response No. 224**    The Respondents deny the allegations contained in Paragraph 224.

225.    At no point did Mr. Chiocca lie to anyone about any of the events that occurred between him and Mrs. Hall on the evening of May 1, 2018, and Attorney Ryan specifically found that Mr. Chiocca was honest and credible.

**Response No. 225**    The Respondents deny the allegations contained in Paragraph 225.

226.    Following this comment and the BOS's decision to keep Mr. Chiocca on administrative leave, on July 19, 2018, Attorney Shafran wrote to Attorney Clifford regarding the status of Mr. Chiocca's employment. In relevant part, Attorney Shafran wrote as follows:

Per our call yesterday, and in light of recent public statements made by members of the Rockland Board of Selectmen, I write to again inform you that the Town is in continuing breach of its own Charter.

As you know, on May 29, 2018, Mr. Chiocca was informed via letter from then-BOS Chairman Edward Kimball that he was being "placed on administrative leave pending the outcome of an investigation, effectively immediately."

. . . .

On May 30, 2018, I wrote to you to inform you that the Town's placement of Mr. Chiocca on "paid administrative leave" was a de facto suspension in violation of Section 2.18 of the Town Charter.

. . . .

On May 31, 2018, you replied to my letter and stated that Mr. Chiocca's placement on paid administrative leave was not a suspension. This assertion is incorrect per decisions from both the SJC and U.S. District Court of Massachusetts. In Campatelli v. Chief Justice of the Trial Court, 468 Mass. 455, 457 n. 2 (2014) the SJC expressly stated, "[w]e see no legally cognizable difference between suspension with pay and paid administrative leave, and used the terms interchangeably in this opinion."

. . . .

Based on the foregoing, the Board's initial decision to place Mr. Chiocca on paid administrative leave was a suspension. In that regard, Mr. Chiocca was and still is entitled to know whether this decision was put to a vote, what the result of the vote was, as well as the "**specific reason**" for the suspension. Moreover, in your May 31 letter you first noted that if Mr. Chiocca "wish[es] to consider the Board's action a suspension, [that he is] free to request a public hearing under the Charter," and that you would "request that the Board provide him with a notice detailing the allegations against him, and then convene a public hearing to provide him with the procedural due process . . . ." Per the portion of the Charter quoted above, it is neither Mr. Chiocca's obligation to determine whether the Town's action constitutes a suspension, nor does he have to request a public hearing in order to be entitled to receive written notice detailing the "specific reason" for his suspension. While we certainly think it is clear that Mr. Chiocca has been suspended, that is a conclusion for the Town to make. If the Town continues to feel otherwise, I suggest it is not only wrong, but also causing further damage to Mr. Chiocca. If the Town correctly concludes that Mr. Chiocca has been suspended, that it has a legal obligation to provide him with the "specific reasons" for his suspension.

. . . .

Moreover, and as quoted above, Mr. Kimball's May 29, 2018 letter expressly states that Mr. Chiocca's placement on "paid administrative leave" was "pending the outcome of an investigation," and that Mr. Chiocca would be notified "[i]f further disciplinary action up to and including termination is found to be warranted according to the results of th[e] investigation." As you know, the investigation is now complete, and it is our understanding that Mr. Chiocca remains on "paid administrative leave." For the reasons set forth above, this constitutes a suspension beyond the term that was originally imposed. As such, Mr. Chiocca was and still is

entitled to know whether this decision was put to a vote, what the result of the vote was, as well as the "**specific reason**" for the suspension. This is particularly important given the fact that following the issuance of the investigator's report, you made an ambiguous and defamatory statement that the investigation identified "other serious misconduct." Please provide us with a detailed explanation of the exact misconduct that this statement was based upon.

**Response No. 226**   Paragraph 226 references a written document which speaks for itself.

227.   Neither Attorney Clifford nor anyone else acting on behalf of the Town has responded to Attorney Shafran's July 19, 2018 letter as of the date of this filing.

**Response No. 227**   Paragraph 227 references a written document which speaks for itself.

228.   As of the date of this filing, the Town had still yet to inform Mr. Chiocca of the specific misconduct he engaged in.

**Response No. 228**   The Respondents admit the allegations contained in Paragraph 227, only insofar as the Town has not issued formal notice of discipline for Mr. Chiocca's misconduct. Mr. Chiocca has admitted that during the evening of May 1, 2018, he consumed several alcoholic beverages and acting solely on his own initiative, entered Rockland Town Hall twice during the late evening/early morning hours of May 1-2, 2018. He has also admitted serving alcohol in his office during that time.

229.   On July 31, 2018, Mr. Kimball resigned from his position on the BOS.

**Response No. 229**   The Respondents admit the allegations contained in Paragraph 229.

230.   Shortly thereafter the BOS scheduled a special election for November 6, 2018, to fill the two vacant seats on the BOS.

**Response No. 230**   The Respondents admit the allegations contained in Paragraph 230.

231.    Mr. Chiocca has remained suspended on paid administrative leave to date, but the existing
        BOS members have since doubled down on their retaliatory intent to terminate Mr.
        Chiocca's employment.

**Response No. 231**    The Respondents deny the allegations contained in Paragraph 231.

232.    In or about October 2018, Mr. Ryan stated to MassLive reporter Jacqueline Tempera ("Ms.
        Tempera"):

        "I already told everybody as far as I was concerned there is no way – no possible
        way – [Mr. Chiocca will] walk through the Town Hall doors in the town of
        Rockland again. He'll cause trouble again. That guy is an annoyance that is going
        to end soon."

**Response No. 232**    Paragraph 232 references a written document which speaks for itself.

233.    Mr. Ryan then continued with his ambiguous, defamatory statements regarding Mr.
        Chiocca when he stated to Ms. Tempera:

            He's not an innocent bystander. You can infer what you want from that.
            [Mr. Chiocca will be] taken care of.

**Response No. 233**    The Respondents deny the characterization of the quotes attributed to Mr.
        Ryan.

234.    On November 6, 2018, Richard Penney and Kara Nyman were elected as the two new
        members of the BOS.

**Response No. 234**    The Respondents admit the allegations contained in Paragraph 234.

235.    On November 8, 2018, the BOS held their first meeting following the November 6, 2018
        election.

**Response No. 235**    The Respondents admit the allegations contained in Paragraph 235.

236.    At the meeting, Mr. O'Loughlin referred to the Town Administrator position as "vacant",
        and Mr. Ryan referred to Mr. Chiocca as a "former employee" on several occasions, and

defamatorily reassured the town citizens that the BOS is "paving the way for this Town to get up and running again and get rid of the dead wood."

**Response No. 236**      The Respondents deny the allegations contained in Paragraph 236.

237.    Mr. Ryan and the BOS's defamatory and retaliatory statements regarding Mr. Chiocca coupled with the BOS's continued, unjustified suspension of Mr. Chiocca (stripping Mr. Chiocca of all Town Administrator responsibilities) in direct contradiction to Attorney Ryan's report (and in violation of Mr. Chiocca's contract and the Town Charter) have rendered the working conditions objectively intolerable, and as a result have constructively discharged Mr. Chiocca from employment with the Town in violation of the Town Charter, Mr. Chiocca's contract and multiple statutory, common law, and constitutional protections.

**Response No. 237**      The Respondents deny the allegations contained in Paragraph 237.

238.    On November 20, 2018, Mr. Chiocca filed his initial Charge of Discrimination with the Commission.

**Response No. 238**      The Respondents admit the allegations contained in Paragraph 238.

239.    Shortly after the Charge was filed, Attorney Shafran emailed a copy of the Charge to counsel for the Respondents.

**Response No. 239**      The Respondents admit the allegations contained in Paragraph 239.

240.    Later that same evening, the BOS held another Selectmen's meeting.

**Response No. 240**      The Respondents admit the allegations contained in Paragraph 240.

241.    At the meeting, which occurred within hours of the BOS receiving Mr. Chiocca's Charge, the BOS voted unanimously to keep Mr. Chiocca on paid administrative leave through June 30, 2019 and to not renew his contract thereafter.

**Response No. 241**      The Respondents admit the allegations contained in Paragraph 241.

242. The BOS's vote to keep Mr. Chiocca on paid administrative leave constitutes a retaliatory suspension in violation of his contract and Town Charter, and further retaliation against Mr. Chiocca in violation of M.G.L. c. 151 *et seq.*

**Response No. 242**    The Respondents deny the allegations contained in Paragraph 242.

243. The BOS's vote to not renew Mr. Chiocca's contract is express confirmation of the Town's previous constructive discharge of Mr. Chiocca and further retaliation against Mr. Chiocca in violation of M.G.L. c. 151 *et seq.*

**Response No. 243**    The Respondents deny the allegations contained in Paragraph 243.

244. Following the aforementioned votes, Mr. Ryan read a prepared statement.

**Response No. 244**    The Respondents admit the allegations contained in Paragraph 244.

245. In relevant part, Mr. Ryan stated, "[s]ince this controversy is likely to take months or years to litigate, **we would very likely have been required** to pay the remaining balance of Mr. Chiocca's contract, which ends of June 30, 2019.

**Response No. 245**    The Respondents admit that Paragraph 245 quotes some of what Mr. Ryan said on the evening question.

246. Mr. Ryan then proceeded to further defame Mr. Chiocca by stating that "all of [his] claims [are] without any merit," despite also stating that the Town's "independent investigator . . . . determined that Ms. Hall had violated the Town's harassment policy in her role as Mr. Chiocca's supervisor . . . ."

**Response No. 246**    The Respondents deny that Mr. Ryan "defame[d]" Mr. Chiocca by making the partial quotes that are attributed to him.

### CAUSES OF ACTION

### COUNT 1
(Violation of Mass. Gen. Laws c. 151B, § 4(1) and 4(16A) – Quid Pro Quo Sexual Harassment, Hostile Work Environment, Unlawful Suspension and Constructive Discharge)

(Against the Town of Rockland and Deirdre Hall individually)

247.   Mr. Chiocca incorporates by reference the averments in paragraphs 1- 246 above as if fully set forth herein.

**Response No. 247**   The Respondents incorporate their responses to Paragraphs 1- 246 above as if fully set forth herein.

248.   Based on the conduct set forth above, the Town of Rockland and Deirdre Hall have violated M.G.L. c. 151B, § 4(1) and 4(16A).

**Response No. 248**   The Respondents deny the allegations contained in Paragraph 248.

249.   Mr. Chiocca has suffered damages as a result of the Respondents' conduct.

**Response No. 249**   The Respondents deny the allegations contained in Paragraph 249.

### COUNT 2
(Violation of Mass. Gen. Laws c. 151B, § 4(4) – Retaliation, Unlawful Suspension and Constructive Discharge)
(Against all Respondents)

250.   Mr. Chiocca incorporates by reference the averments in paragraphs 1- 249 above as if fully set forth herein.

**Response No. 250**   The Respondents incorporate their responses to Paragraphs 1- 249 above as if fully set forth herein.

251.   Based on the conduct set forth above, the Respondents have violated M.G.L. c. 151B, § 4(4).

**Response No. 251**   The Respondents deny the allegations contained in Paragraph 251.

252.   Mr. Chiocca has suffered damages as a result of the Respondents' conduct.

**Response No. 252**   The Respondents deny the allegations contained in Paragraph 252.

### COUNT 3
(Violation of Mass. Gen. Laws c. 151B, § 4(4A) – Coercion or Interference with 151B Rights, Unlawful Suspension and Constructive Discharge)

(Against all individual Respondents)

253.    Mr. Chiocca incorporates by reference the averments in paragraphs 1- 252 above as if fully
        set forth herein.

**Response No. 253**    The Respondents incorporate their responses to Paragraphs 1- 253 above as
        if fully set forth herein.

254.    Based on the conduct set forth above, the Respondents have violated M.G.L. c. 151B, §
        4(4A).

**Response No. 254**    The Respondents deny the allegations contained in Paragraph 254.

255.    Mr. Chiocca has suffered damages as a result of the Respondents' conduct.

**Response No. 255**    The Respondents deny the allegations contained in Paragraph 255.

**COUNT 4**
(Violation of Mass. Gen. Laws c. 151B, § 4(5) – (Aiding and Abetting/Constructive Discharge)
(Against all Respondents)

256.    Mr. Chiocca incorporates by reference the averments in paragraphs 1- 254 above as if fully
        set forth herein.

**Response No. 256**    The Respondents incorporate their responses to paragraphs 1- 256 above as
        if fully set forth herein.

257.    Based on the conduct set forth above, the Respondents have violated M.G.L. c. 151B, §
        4(5).

**Response No. 257**    The Respondents deny the allegations contained in Paragraph 257.

258.    Mr. Chiocca has suffered damages as a result of the Respondents' conduct.

**Response No. 258**    The Respondents deny the allegations contained in Paragraph 258.

**COUNT 5**
(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
– Quid Pro Quo Sexual Harassment, Hostile Work Environment, Unlawful Suspension
and Constructive Discharge)

(Against the Town of Rockland)

259.    Mr. Chiocca incorporates by reference the averments in paragraphs 1- 258 above as if fully
        set forth herein.

**Response No. 259**    The Respondents incorporate their responses to Paragraphs 1- 258 above as
                        if fully set forth herein.

260.    Based on the conduct set forth above, the Town of Rockland and Deirdre Hall have violated
        M.G.L. c. 151B, § 4(1) and 4(16A).

**Response No. 260**    The Respondents deny the allegations contained in Paragraph 260.

261.    Mr. Chiocca has suffered damages as a result of the Respondents' conduct.

**Response No. 261**    The Respondents deny the allegations contained in Paragraph 261.

## ARGUMENT













## CONCLUSION

Respectfully submitted,
Respondents,
TOWN OF ROCKLAND, LARRY RYAN,
MICHAEL MULLEN, JR., MICHAEL O'LOUGHLIN,
RICHARD PENNEY AND KARA NYMAN,
By their Attorneys,
**PIERCE DAVIS & PERRITANO** LLP

Jason W. Crotty, BBO #656313
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100
Boston, MA 02109
(617) 350-0950
jcrotty@piercedavis.com
jdavis@piercedavis.com

Dated: January 22, 2019

## VERIFICATION

Based upon information presently and reasonably available to the Respondents, I hereby affirm under the pains and penalties of perjury that the facts in this answer are true and correct to the best of my present knowledge.

_____
Town of Rockland

Date: Jan. 22, 2019

_____
Larry Ryan

Date: Van. 16, 2019

_____
Michael Mullen, Jr.

Date: January 16, 2019

_____
Michael O'Loughlin

Date: 1/10/19

_____
Richard Penney

Date: January 16, 2019

_____
Kara Nyman

Date: January 16, 2019

I hereby certify that a true copy of the
above document was served upon (each
party appearing pro se and) the attorney + email
of record for each (other) party by mail
(by hand) on _____ 1-22-19

- 76 -