Shafran Decl., Exhibit A

```
 1                                        VOLUME:  I
                                          PAGES:   1 - 17
 2

 3

 4

 5    *   *   *   *   *   *   *   *   *   *   *   *

 6
      ROCKLAND BOARD OF SELECTMEN
 7    MEETING OF ALLAN R. CHIOCCA

 8
      EXECUTIVE SESSION
 9

10    *   *   *   *   *   *   *   *   *   *   *   *

11

12

13

14

15

16         THE EXECUTIVE SESSION OF THE BOARD OF

17    SELECTMEN MEETING OF ALLAN R. CHIOCCA,

18    before Aida C. Sousa, Court Reporter and

19    Notary Public in and for the Commonwealth of

20    Massachusetts, at the Rockland Town Hall,

21    242 Union Street, Rockland, Massachusetts,

22    commencing at 7:13 p.m. on Tuesday, July 10,

23    2018.

24
```

```
 1   APPEARANCES:

 2   CLIFFORD & KENNY, LLP
     (By John J. Clifford, Esq.)
 3   31 Schoosett Street, Suite 405
     Pembroke, Massachusetts  02359
 4   Representing the Town of Rockland

 5   PIERCE DAVIS & PERRITANO LLP
     (By Jason Crotty, Esq.)
 6   10 Post Office Square
     Boston, Massachusetts  02109
 7   Insurance counsel

 8

 9   Board of Selectmen:   Larry Ryan (Chairman)

10                         Mike Mullen, Jr.

11                         Mike O'Loughlin

12
     Also present:  John Llewllyn
13                  Marcy Birmingham

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                P R O C E E D I N G S
 2         MR. RYAN:  Now, Mr. Chiocca.
 3         MR. CLIFFORD:  Mr. Chairman, as the
 4   board is aware, we received the
 5   investigation from Attorney Ryan, and
 6   Attorney Ryan's investigation and her report
 7   was specifically limited to whether or not
 8   there were violations of the town's
 9   discriminatory harassment policy, and it was
10   determined, as you're aware, that
11   Mr. Chiocca had not violated that policy.
12         There were, however, findings of fact
13   that raised serious concerns as to other
14   potential misconduct that may not have been
15   a violation of that policy but may have been
16   a violation of other policies.
17         In order for the board to take any
18   action under Section 2.18 of the Charter, it
19   requires a vote of four members.
20   Mr. Chiocca has to receive 60 days notice as
21   to the effective date of suspension or
22   termination.  It requires 60 days severance
23   in lieu of the notice period, at least 30
24   days prior to the effective date of the
```

```
 1   notice period of severance.  You have to
 2   file a preliminary resolution with the town
 3   clerk and basically give Mr. Chiocca the
 4   opportunity for a hearing.  He can ask
 5   within ten days of getting that notice for a
 6   hearing.
 7           Unfortunately, the terms of this
 8   particular situation, the entire process
 9   requires four votes from the Board of
10   Selectmen.  That language is not unusual.  A
11   lot of charters have that language requiring
12   a super -- majority of the Board of
13   Selectmen because what is anticipated and
14   what can happen is it becomes a political
15   decision.  A board changes three to two to
16   different a way of thinking, and then it
17   becomes an initiative to remove the town
18   administrator.  So the charter language is
19   not unwise.  It is not unusual.  It is there
20   for a reason.  This entire situation where
21   you would not have four members even
22   available to vote is very unusual.
23           So at this point, I'm recommending
24   that the board take no action because
```

```
 1   legally there is no action that you can take
 2   at this time with regard to Mr. Chiocca's
 3   employment.
 4            MR. RYAN:  You can't put him out in
 5   administrative leave without pay?
 6            MR. O'LOUGHLIN:  Or suspension?
 7            MR. CLIFFORD:  That is actually
 8   considered a suspension.  I should introduce
 9   Jason Crotty who was appointed by the town's
10   insurer as insurance counsel, and I'm
11   guessing that he would concur with my
12   opinion, but that is considered punitive.
13   You're taking disciplinary action without
14   giving him the due process that's called for
15   in the charter.
16            So there is some circumstances where
17   you can suspend an employee without pay, but
18   they really have to be charged with a
19   felony.
20            MR. RYAN:  So I would just -- you
21   know, the people of the town want this free
22   ride to end, quite frankly, and it's gone on
23   long enough.  And he's -- you know, he's
24   sitting back there laughing at us, and, you
```

```
 1   know, quite frankly, if it had been handled
 2   properly in the beginning, we wouldn't be
 3   sitting here right now, so, why are we even
 4   meeting then until we get the fourth person?
 5   And then we'll fire him.  So that's all I
 6   can say.  Anybody else want to speak on the
 7   matter; otherwise we might as well go home.
 8             MR. CROTTY:  So if I can chime in
 9   real quick, I introduced myself earlier.  My
10   name is Jason Crotty.  I'm an attorney at
11   Pierce Davis in Boston, and we were retained
12   by Klinefelter (phonetic) which is
13   Rockland's insurer to sort of come in, and
14   we're going to handle the inevitable
15   litigation.  So just to be completely
16   upfront, Klinefelter reached out to us
17   yesterday.  I was in -- I don't know where I
18   was yesterday.  I was in Boston in my
19   office.  I was in Easton this morning.
20             I got file material from town counsel
21   from Klinefelter and sort of did my best to
22   get through it over the last few hours.
23   There's certainly a lot of moving parts, but
24   I completely concur with what has been said
```

1  so far.  I mean, there's really nothing we
2  can do at this point with just three of you.
3  And I don't necessarily think it would be
4  wise with -- you know, let's see where we
5  are for a little bit.
6         I understand the -- you know, if I
7  lived in town, I wouldn't be really happy
8  about it either.
9         MR. RYAN:  It depends.  Like right
10 now, we only have four board members, and
11 one of them has to recuse himself, so now we
12 have three board members who vote
13 unanimously to do everything, if we wanted
14 to.  And that's a majority vote right there
15 available of Board of Selectmen, only three,
16 and you have a complete unified, you know,
17 see you later guy type of thing.  You know,
18 we would stick together.  And how can that
19 be against the charter?
20         I just don't think -- very first
21 thing in the books says -- in the charter
22 books says, the Town of Rockland is a
23 majority ruled town.  And if we have 100
24 percent of the Board of Selectmen says,

1  you're gone, that's 100 percent of the Board
2  of Selectmen.  It's not a minority vote.
3  It's not a three to one vote.  If it was a
4  three to one vote, I would give it to you.
5  But it's not.  Right now, this is the only
6  board we got, and we're voting 100 percent.
7          MR. CLIFFORD:  We're coming up on
8  three months at this point.
9          MR. RYAN:  Right.
10         MR. CLIFFORD:  And over that three
11 months, you three have taken the right
12 position at all times, and that position is
13 protect the town from further exposure and
14 further liability.  Based on the report, I
15 think that the town potentially has serious
16 exposure already.  And, you know, you have
17 not done anything to add to that exposure,
18 and I know it's a difficult non-decision for
19 you this evening.  But you're in a no win
20 position.  But that's somewhat consistent
21 with what the position you've been in from
22 the beginning of this thing.  But I think
23 the only correct decision is to not take any
24 action because it could potentially increase

```
 1   our exposure
 2           MR. RYAN:  I agree with you, but I
 3   just want him to know that --
 4           MR. O'LOUGHLIN:  During --
 5           MR. RYAN:  -- it's not a picnic here.
 6           MR. O'LOUGHLIN:  In that
 7   investigation, it was determined that every
 8   act -- every action that he took that night
 9   was out of concern that he was threatening
10   his contract.  So all of that got lumped in,
11   so, in a sense, the report exonerated every
12   action that he took that night, so --
13           MR. RYAN:  That's where I --
14           MR. O'LOUGHLIN:  But that's what the
15   report -- I agree.  There is what we know,
16   but there is also what is on print and on
17   paper.  Right now, he's holding that paper.
18           MR. RYAN:  The paper says that he did
19   not pursue her.  That she pursued him.  It
20   doesn't say he got off the hook for being
21   drunk on the job.  It doesn't say he gets
22   off for drinking.  This is the second time
23   he has been caught in Rockland drunk on the
24   job.  So, I mean, he only had one day in
```

1   court five or six years ago.  You know, this
2   is the second one.  It has nothing to -- has
3   nothing to do with that report from --
4   Regina Ryan's report.  It has zero to do
5   with that.  What it has to do with is him
6   being in this building.
7           He could have went out down the
8   street, down the stairs, stood outside
9   behind a tree if they wanted to do that.
10  But coming into this building, with his
11  keys, as an employee of the town and to this
12  building drunk with his date, I'm done with
13  that, quite frankly.  If he had gone
14  somewhere else, if he had gone down the
15  hotel and got a room, we wouldn't be sitting
16  here today, but he didn't.  He chose to use
17  this place, to disgrace this place.
18          So I'm just letting you know how I
19  feel because, quite frankly, that's how the
20  town feels.  They're sick and tired of
21  listening to this phony gibberish, you know,
22  that, oh, somebody made a statement in a
23  report.  Big deal.  So that exonerates him
24  for everything?  I don't think so.  Quite

```
 1   frankly, I'm not for giving him another
 2   dime, but I'll acquiesce to the board and do
 3   the right proper thing.  I will because you
 4   know something, it doesn't do any good --
 5   you know, I'm going to sit here until I'm
 6   blue in the face, and all I'm going to do is
 7   get a blue face, so -- but I want that blue
 8   face for people to know when we walk out of
 9   here, this guy had his blue face on because
10   he's sitting there telling them he wants the
11   guy gone because he has violated every
12   common decency thing that this town has ever
13   stood for.
14           MR. MULLEN:  So through this whole
15   process, I mean, I'm like -- I mean, like --
16   actually, the three of us, I don't think
17   honestly -- I've never been more frustrated
18   about a single issue in our lives than this,
19   at least for me.  But I understand the
20   limitations we have as a board right now.
21   And I know it's early, Jason, but do you --
22   it's hard to forecast.  But, I mean, you
23   know, obviously there could potentially be a
24   track with litigation, you know, that like
```

1   is one path in this and maybe another
2   path --
3           MR. CLIFFORD:  I'm sorry to
4   interrupt.  The stenographer is here by
5   Mr. Chiocca's attorney.  If we're going to
6   discuss litigation strategy --
7           MR. MULLEN:  Oh, no, no, no, no, no.
8           MR. CLIFFORD:  -- it shouldn't be
9   part of this discussion, just to make it
10  completely clear.
11          MR. MULLEN:  Yes, I'm sorry.  Thank
12  you for interrupting me because I never went
13  -- I guess our next steps, as a board, with
14  regards to this issue is really my question.
15  Do we have to wait until we have a fourth
16  member, I guess that's my question, or other
17  things will happen, I guess?  I don't know.
18          MR. CLIFFORD:  Without a fourth
19  member present, you really can't begin the
20  process.  That's the difficulty.
21          MR. MULLEN:  Okay.  Thank you.
22          MR. RYAN:  Is there any reason you
23  can't continue the process?  I mean, you
24  talk to his lawyer and come up with a deal,

1  you know.

2         MR. O'LOUGHLIN:  You can mediate?

3         MR. RYAN:  You can mediate, can't

4  you?  Here's the deal we're offering you.

5  Take this or the next time, as soon as you

6  have four people, it's AMF.

7         MR. CLIFFORD:  I think, at this

8  point, town counsel will be taking over any

9  direct discussions in terms of settlement

10 proposals.

11        MR. RYAN:  Insurance guy?

12        MR. CROTTY:  I don't work for --

13        MR. RYAN:  Oh.

14        MR. CLIFFORD:  He --

15        MR. CROTTY:  We'll see what they want

16 to do.

17        MR. CLIFFORD:  And let me say this,

18 I've worked with Attorney Crotty before and

19 his firm before.  They represent the town,

20 so it is the town's interest.  But, you

21 know, one of the things that, you know, in

22 any settlement, the insurer will certainly

23 play a large role.  But Attorney Crotty will

24 be representing the town and Attorney Davis.

```
 1              MR. CROTTY:  We're not representing
 2    the insurance company's interests.  They're
 3    just paying our bill.  I'll be here and John
 4    will be here.  John is on vacation today.
 5    And I live close by, so we're -- we'll be
 6    representing the town's interests in this
 7    case.
 8              MR. RYAN:  Beautiful.
 9              MR. CROTTY:  We worked together on
10    some other cases.  We have kind of an
11    interesting thing going on in Marshfield
12    right now
13              MR. RYAN:  Are we done then?
14              MR. MULLEN:  Thank you.
15              MR. O'LOUGHLIN:  I guess I'm going to
16    ask this, and obviously there's been a lot
17    of attention given to this.  There has been
18    a lot of questions from the general public.
19    Are you guys able to get some kind of
20    statement as to what happened today outside
21    of -- not as the minutes.  But some kind of
22    press release saying that we decided to take
23    the position of waiting for a fourth member
24    in order to take whatever action?  Whatever
```

```
 1   it might be.
 2          I'm sure you will find whatever
 3   language that's proper.  But give us
 4   something so we can communicate to the
 5   general public because we're the ones taking
 6   the bullets at this point.  We're the ones
 7   -- you know, we've done nothing wrong.  And
 8   we're the ones taking the bullets and trying
 9   to do whatever we can to, in the best
10   interest of the town, and not expose the
11   town to any further litigation at this time.
12   You know, that might be a foregone
13   conclusion, but, you know, trying to prevent
14   this from really spiraling further out of
15   control.  So anything you guys can give us
16   for us to give to the general public would
17   be appreciated.
18          MR. CLIFFORD:  We'll talk and come up
19   with the statement and summarize --
20          MR. RYAN:  They'll be waiting outside
21   for us.  I don't mind making a general
22   statement saying that, you know, on the
23   advice of counsel, we're not allowed to say
24   anything.
```

```
 1            MR. O'LOUGHLIN:  I'll make that
 2    motion.
 3            MR. MULLEN:  Can I just ask one
 4    question about, separate from this line, in
 5    fairness to Mr. Fontaine, should we visit,
 6    at his request, in this meeting?  I think it
 7    would be -- he has waited a little bit of
 8    time --
 9            MR. RYAN:  You're absolutely right.
10            MR. MULLEN:  -- if we can like end
11    the session on Mr. Chiocca and get back to
12    Vinny's issue?  I think it might be helpful
13    for him to have at least --
14            MS. BIRMINGHAM:  Mr. Chairman, if
15    it's not out of order, can I make a brief
16    statement about the veteran agent's
17    contract.
18            (Executive session of Allan R.
19            Chiocca concluded.)
20            (Whereupon, the executive session
21            concluded at 7:27 p.m.)
22
23
24
```

```
 1                C E R T I F I C A T E

 2

 3

 4

 5

 6         I, Aida C. Sousa, Court Reporter and

 7   Notary Public in and for the Commonwealth of

 8   Massachusetts, do hereby certify that the

 9   foregoing transcript of the executive

10   session of the Rockland Board of Selectmen

11   Meeting of Allan R. Chiocca, on Tuesday,

12   July 17, 2018, is true and accurate to the

13   best of my knowledge, skill and ability.

14         IN WITNESS WHEREOF, I have hereunto

15   set my hand and seal this       17th

16   day of       July     , 2018.

17

18

19
                              Aida C. Sousa
20                            Aida C. Sousa

21                            Notary Public

22

23

24   My commission expires:  June 7, 2024
```