UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Allan Chiocca,<br><br>    Plaintiff<br><br>v.<br><br>The Town of Rockland, Deirdre Hall,<br>Edward Kimball, Larry Ryan,<br>Michael Mullen Jr., Michael O'Loughlin,<br>Richard Penney and Kara Nyman,<br><br>    Defendants | C.A. No. 1:19-cv-10482-WGY |

**LEAVE TO FILE GRANTED ON JULY 27, 2021**

**PLAINTIFF'S REPLY IN SUPPORT OF HIS OMNIBUS MOTION
TO COMPEL DEFENDANTS TO RESPOND TO DISCOVERY**

Mr. Chiocca's Motion should be granted. Other than labeling Mr. Chiocca's requests, Defendants' opposition does little to justify their conduct, and nothing to demonstrate that Mr. Chiocca is not entitled to the discovery he seeks. Mr. Chiocca submits this Reply to refute the few surface-level arguments they make.

**I.    The Second Requests**

    *a. There are Eight Defendants, but One Plaintiff*

As a reason to deny his Motion for financial discovery, Defendants complain that Mr. Chiocca has issued a total of 394 Requests for the Production of Documents during this litigation (only a subset of which is even relevant to this Motion). Opposition, p.10. Still, on average, that means each Defendant received around fifty (50) requests, give or take. Meanwhile, Defendants

issued 125 document requests to Mr. Chiocca.[1] On average, that means Mr. Chiocca received 150% more requests for production than each Defendant received, and he responded to all of them. Even without considering that Defendants misrepresent Mr. Chiocca's Motion,[2] it is a bit insincere to ask this Court not to condone "discovery tactics" that they have already benefited from and, as demonstrated below, they are currently abusing in many ways.

### b. The Financial Requests are Not Premature or Otherwise Improper

Defendants do not contend that Mr. Chiocca has failed to make out a case for punitive damages against each Defendant. They contend, the financial requests are (i) premature because it is "highly improbable" that Mr. Chiocca will prevail; and (ii) overly broad, unduly burdensome, and disproportionate to the needs of the case. Opposition, pp.11-12.

To start, Defendants' overly-long opposition[3] characterizes the likelihood of Mr. Chiocca's success as "highly improbable." Opposition, p.11. Rule 26 permits discovery of information that is relevant to the claims and defenses at issue and is proportional to the needs of the case. Courts do not curtail discovery simply because a party erroneously claims to have the upper hand.

---

[1] Defendant Hall's First Request for the Production of Documents included sixty-five (65) requests. Defendant Kimball's included twenty-two (22). And, the Town issued thirty-eight (38). And, Defendant Hall issued another seventy-one (71) requests to the Town Collective (against which she has cross claims).

[2] Defendants appear to intentionally misrepresent that Mr. Chiocca's Motion asks the Court to compel the production of documents responsive to Requests 1-16, another 113 additional requests to the Town, 18 additional requests upon Kimball, and 20 additional requests upon Hall. Opposition, p.10. First, Defendants know that the Town has agreed to produce a document containing the information Mr. Chiocca requested in his Second Requests, so the first thirty-four financial requests to the Town are not in issue. Second, Defendants appear to intentionally misrepresent that the financial requests Mr. Chiocca refers to as "Requests 1-16" are distinct from the financial requests made to each Individual Defendant when they are not.

[3] With respect to the Rule 7.1 certification set forth in Defendants' Motion for Leave to File a Memorandum of Over 20 Pages (Dkt. 130), it is true that Defendant Hall's counsel called and left a voicemail for one of Mr. Chiocca's attorneys a little after 5:30 p.m. on the day Defendants' opposition was due. Mr. Chiocca is represented by two other attorneys, neither of whom received an e-mail or voicemail on the matter. That, together with the fact that the opposition was seven pages longer than permitted by the Local Rules, leaves Plaintiff's counsel skeptical of Defendants' certification that "once [Defendants] realized that additional pages would be needed" they made a good-faith effort to confer. Nonetheless, counsel for Mr. Chiocca assented after the fact to Defendants' motion for leave to file an opposition of more than twenty pages.

Second, with respect to Defendants' prematurity argument and the cases relied upon, those cases support Mr. Chiocca's position. The one that does not is distinguishable because discovery was bifurcated. The *John Does I-VI v. Yogi* court did not prohibit the discovery of financial information like Defendants ask this Court to do; it ruled that "discovery is relevant" and would be "revealed when necessary to prove up punitive damages." 110 F.R.D. 629, 633 (D.D.C. 1986). The word "revealed," however, did not mean "produced" as Defendants would have this Court believe. It meant "publicly filed." *Id*. at 635 (in ruling on motion for protective order, requiring that "documents containing information concerning a party's financial status . . . be ***filed*** bearing the [confidentiality] legend described" in the court's order) (emphasis supplied). As that court concluded, "it is better not to straight-jacket the discovery procedure in advance on the basis of speculative assumptions." *Id.* at 634. The *Davis v. Ross* court sat in diversity and applied a New York state law that other courts have not applied in cases like this one. *See Wade v. Sharinn & Lipshie, P.C.*, No. 07CV2838, 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009); *Hazeldine v. Beverage Media, Ltd.*, No. 94CV3466, 1997 WL 362229, at *2–3 (S.D.N.Y. June 27, 1997). The *Chenoweth v. Schaaf* court recognized that "discovery of the financial condition of the defendant will be allowed—pretrial" when a complaint alleges in more than conclusory terms that a defendant's conduct merits an award of punitive damage as Mr. Chiocca's undoubtedly does. 98 F.R.D. 587, 589 (W.D.Pa. Jul 27, 1983). And, unlike here, discovery was bifurcated in the case of *Rupe v. Fourman*. 532 F.Supp. 344, 350-51 (S.D. Ohio Dec. 8, 1981). There is no split.[4]

---

[4] Defendants' admonition of Mr. Chiocca for "only cit[ing] three district court decisions" when claiming a majority of courts permit pre-liability net worth discovery is not well taken. *See, e.g. Zuniga v. W. Apartments*, 2014 WL 2599919, at *4 (C.D. Cal. Mar. 25, 2014) (granting motion to compel where evidence of defendant's current net worth was "relevant and admissible to establish the appropriate amount of punitive damages"); *Westbrook vs. Charlie Sciara & Son Produce Co.*, W.D. Tenn., No. 07-2657 MA/P (Mar. 27, 2008) ("Thus, defendants' financial affairs and condition-in addition to their net worth-are relevant to punitive damages, and therefore the defendants must produce more than just affidavits of their net worth"); *James vs. Heuberger Motors, Inc.*, No. 10-CV-01648-CMA- (D. Colo. Jan. 28, 2011) (the Court finds that Plaintiff has alleged a prima facie case of unlawful conduct by Defendant's

*c. Defendants Refused to Compromise*

Defendants disingenuously imply that they agreed to provide financial discovery in a narrower form. Opposition, p.13 (representing that Defendants "conducted various Rule 7.1 conferences in an attempt to limit the scope of Mr. Chiocca's overly broad request ***by agreeing to submit an interrogatory*** from each defendant identifying their current net worth") (emphasis supplied). Attached as Exhibits 1-3 are e-mail exchanges from Mr. Chiocca's counsel requesting a compromise and getting outright rejected or, from counsel to Defendant Hall, no answer. Having refused to compromise or help alleviate whatever burden Mr. Chiocca's requests would impose, Defendants' complaints about breadth, burden, and proportionality should fall on deaf ears.

## II. The Other Requests

*a. Communications and Documents about the Hall/Kimball Affair or about Defendant Hall's Campaign for State Representative*

Defendants Hall and Kimball provide no legitimate basis to withhold documents or communications about their affair or work on her campaign for state representative. The best they can do is claim irrelevance and, in the case of Defendant Kimball, make a side-show.[5] The

---

employees that was, at the very least, "in gross disregard of plaintiff's rights," if not wilful and malicious. Accordingly, Plaintiff may discover information related to Defendant's financial condition.") (internal citation omitted); *Searcy v. Esurance Ins. Co.*, Case No. 2:15-cv-00047-APG-NJK, 2015 WL 9216573, at *1 (D. Nev. Dec. 16, 2015) ("plaintiff is not required to make a prima facie showing of merit on its punitive damages claim before permitting discovery of a defendant's net worth"); *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 52-53 (D.D.C. 2008); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D.Fla. 2005); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D.Kan. 2004); *United States v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D.Ohio 2001); *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 329–30 (D.Mont. 1988); *St. Joseph Hospital v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 25–26 (D.Me. 1987); *Marsillo v. National Surety Corp. (In re Bergeson)*, 112 F.R.D. 692, 696 (D.Mont. 1986); *Fretz v. Keltner*, 109 F.R.D. 303, 310–11 (D.Kan. 1986); *Lackawanna Refuse Removal, Inc. v. Procter and Gamble Paper Products Co.*, 26 Fed.R.Serv.2d 375, 376 (M.D.Pa. 1978); *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 140 (W.D.Okla. 1977); *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D.Haw. 1975); *Holliman v. Redman Development Corp.*, 61 F.R.D. 488, 490–91 (D.S.C.1973).

[5] With respect to Mr. Chiocca's request for documents and communications about the affair, Defendant Kimball argues that the Court should look unfavorably on Mr. Chiocca's request because, during meet and confer efforts, he agreed to withdraw a request that sought information that was protected from disclosure, requested documents explicitly deemed admissible by Fed. R. Evid. 603, and sought documents about times where Defendant Kimball may have been previously involved in a similar matter. Opposition, p.23. None of that supports Defendant Kimball's decision to withhold communications with his co-defendant. And, with respect to documents and communications about his work

relevance of the affair is indisputable, as are documents and communications about Defendant Kimball's work on Defendant Hall's campaign. Mr. Chiocca will not waste this Court's time on this topic.

      b. *Communications with Pilgrim Strategies, Delshaune Flipp, Woodward & Curran, and John Sullivan*

Defendants Hall and Kimball resist producing documents and communications (in whole or in unredacted form) between them and Pilgrim Strategies, LLC—the public media firm that Defendant Kimball admits he hired to assist him "concerning the public relations fallout" that followed issuance of the DHS report. Defendant Hall's only reason for that resistance is that Mr. Chapman was not employed by the Town or involved in the Incident. Defendant Kimball's reasoning is that Mr. Chapman is a family friend, a rationale he also uses to justify redactions to text messages between he and Delshaune Flipp. Neither justifies the withholding of relevant information, either entirely or via redactions that strongly suggest an effort to conceal relevant information.[6]

Defendant Hall's purported concession to produce communications with Pilgrim Strategies, Woodward & Curran, or John Sullivan "related to Mr. Chiocca or the event of May 1-

---

on Defendant Hall's campaign, Defendant Kimball falsely claims that Mr. Chiocca modified his request. Mr. Chiocca, as he is required to do, made a showing of relevance with respect to the requested documents (that Defendant Hall quit her campaign because of the Incident and, thus, documents and communications with Defendant Kimball (also involved in both) concerning the campaign or her decision to withdraw are relevant).

[6] On the topic of Pilgrim Strategies, in his Motion Mr. Chiocca brought to this Court's attention that Defendant Kimball had not produced a copy of a statement he drafted which Mr. Chapman said would be harmful to Defendant Hall's case and helpful to Mr. Chiocca's. In opposition, Defendant Kimball states that he "produced his statement of resignation" and, thus, Mr. Chiocca erroneously claimed that Defendant Kimball had not done so. Opposition, p.27 n.24. That is misleading; Mr. Chiocca is not referring to the statement of resignation that Defendant Kimball issued. Mr. Chiocca is referring to the draft statement that Defendant Kimball wrote. *See* Exhibit 4 comparing Kimball000369 (from Defendant Kimball, "I just sent you an email with of draft statement, please tell me your thoughts, thanks") & Kimball000370 (from Mr. Chapman, "what is DH's reaction going to be? This is going to look even worse for her and help Allan."); *with* Kimball000372 (from Defendant Kimball, "I've decided to resign . . . Can you writes something to the effect that I need to be more involved with my business and my family. This has been a stressful situation blah blah") and Kimball000375 (from Mr. Chapman, "Almost done with the statement . . ."). That has not been produced and, if it exists, it should be.

5

2, 2018" is also insufficiency narrow. With regard to Defendant Hall's documents and communications with Pilgrim Strategies, those communications are relevant even if they are about Defendant Kimball's resignation, her own resignation, the investigation, or some other matters that are not strictly "related to Mr. Chiocca or the event of May 1-2, 2018." And as for Woodward and Curran or John Sullivan communications, Mr. Chiocca is not looking for those to describe the events of May 1-2, 2018—he was there when Defendant Hall sexually harassed him. He seeks them as evidence of Defendant Hall's similar conduct in past situations. Her history of abuse in similar circumstances is not only discoverable, it is admissible. *See* Fed. R. Evid. 404(b)(2).

### c. *Hall's Cherry-Picked Redactions from Psychotherapist Records and her Handwritten Notes Are Improper*

Selective redactions Defendant Hall has made to her psychotherapist records and her handwritten journal are not protected by any attorney-client privilege (waived upon disclosure to therapist, if it ever existed) or psychologist-patient privilege (also waived) and should be produced.

With respect to Defendant Hall's redacted psychotherapist records, assume for the moment that the court applied the "narrow" approach, as Defendants ask the Court to do. Opposition, p.15. That is only the beginning of the analysis. The "narrow" approach prevents waiver by a party for merely alleging severe emotional distress—that is, it prevents the party from using the records as a sword while also maintaining the privilege shield. That is precisely what Defendant Hall attempts to do here; Defendant Hall produced the records ***so that she could use them*** in her affirmative case. Opposition, p.17 (admitting the records will likely be used). She has also acted far beyond merely alleging severe emotional distress, which the narrow approach says is not enough to waive privilege. Defendant Hall produced all the records except a chosen few. She then provides no legal support for her contention that the narrow approach permits her to produce "hundreds of pages" of psychologist records, and yet, redact segments of those records that she believes "are

6

beyond the general requirement of discovery." Opposition, pp. 14-15 ("Under a 'narrow' approach, Ms. Hall would be allowed to provide records and claim privilege as to any portions that she believes are beyond the general requirement of discovery.").

>   *d. Defendants Have Not Demonstrated that a Privilege Protects Co-Defendant Communications*

Defendant Kimball's decision (which is being made jointly with Defendant Hall) to withhold communications between he and Defendant Hall is, obviously, concerning to Mr. Chiocca. Opposition, p.22. Now, for the first time ever, Defendant Kimball takes that indefensible position a step further, claiming for the first time that ***his communications with Defendant Hall are protected attorney-client communications*** because she "provided legal advice at various capacities leading up to litigation." *Id.* Meanwhile, Defendant Kimball does not provide the Court with a joint-defense agreement between he and Defendant Hall, an engagement letter showing Defendant Hall acted as counsel, or even provide a declaration claiming that he communicated with Defendant Hall for the purpose of obtaining legal advice and, if he did so, when that occurred. Nor has he listed a single communication in a privilege log.

Quite simply, as the party withholding discoverable and relevant information, Defendant Kimball bears the burden to show that the communications are protected, and he has not done so. He has admitted that the communications were between he and Defendant Hall—not her attorney—and the First Circuit does not recognize a joint defense privilege when communications do not involve another defendant's attorney. Opposition, p.22; *see United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29 (1st Cir. 1989) ("When a person provides information to another without first consulting his own attorney, it is difficult to see how the information was given as part of a joint defense, even when the recipient may be viewed as a party with similar interests."). And he has failed to make the required showing to prove that his

7

communications with Defendant Hall are protected attorney-client communications. *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (the essential elements being: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived").

### III. An *In Camera* Review, Not Denial, is the Only Reasonable Alternative to Compelled Production

If the Court is on the fence about compelling the full, unredacted production of any communications, psychologist records, or handwritten notes, it should first consider the questionable "privilege" redactions Defendant Hall has made thus far. At Exhibit 5 is a copy of an e-mail produced by Defendant Hall in redacted form on the basis that the record is protected attorney work-product. At Exhibit 6 is a copy of the same e-mail produced by Defendant Kimball without redactions. There was absolutely no legal basis for Defendant Hall's redaction, yet she made and stood by it until Mr. Chiocca moved to compel its production. Now, she tells this Court the "issue is moot" because the unredacted copy was produced. Opposition, p.17 n.13. That questionable redaction should convince this Court to conduct an *in camera* review of any document that Defendants plan to redact or withhold from production on privilege grounds.

### CONCLUSION

The Court should order a prompt production of the documents and interrogatory answers requested in Mr. Chiocca's Motion, and order Defendants to otherwise cure their defective discovery responses within fourteen (14) days.

Respectfully submitted,
Allan Chiocca

By his attorney,

8

/s/ *Adam J. Shafran*
Adam J. Shafran, BBO#670460
Eric J. Walz, BBO#687720
*ashafran@rflawyers.com*
*ewalz@rflawyers.com*
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)

/s/ *Samantha C. Halem*
Samantha C. Halem BBO#649624
Kelly A. Hoffman BBO#673409
*shalem@marshallhalem.com*
*khoffman@marshallhalem.com*
Marshall Halem LLC
27 Mica Lane, Suite 102
Wellesley, MA  02481
Phone:  (781) 235-4855

## **CERTIFICATE OF SERVICE**

I, Eric J. Walz, do hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 27, 2021.

*/s/ Eric J. Walz*
Eric J. Walz