UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
ALLAN CHIOCCA,                                    )
      Plaintiff,                                )
v.                                                )
                         )    C.A. NO. 1:19-cv-10482-WGY
TOWN OF ROCKLAND et al.                           )
      Defendants.                               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT OF DEFENDANTS TOWN OF ROCKLAND, LARRY RYAN, MICHAEL
MULLEN, JR., MICHAEL O'LOUGHLIN, RICHARD PENNEY & KARA NYMAN**

**I.    BRIEF STATEMENT OF UNDISPUTED FACTS[1]**

       This action stems from events that occurred in the evening of May 1, 2018 leading into the

early morning hours of May 2, 2018. On May 1, 2018, the Plaintiff Alan Chiocca ("Chiocca"), the

Town Administrator, had numerous alcoholic drinks with Defendant Diedre Hall ("Hall"), a first

term Town of Rockland Selectwoman, at the Rockland Bar & Grill. [SOMF at ¶ 1].[2] Chiocca was

well aware that Hall was distraught and had been drinking that evening. [SOMF at ¶ 2]. Rather

than ensuring she had a safe means to return home, Chiocca left the Rockland Bar & Grill with

Hall, drove her to Town Hall in his vehicle, used his code to gain access to Town Hall, used his

keys to open his locked office, let her into his office, and poured her more wine. [SOMF at ¶ 2].

At this point, Chiocca and Hall engaged in sexual conduct. [SOMF at ¶ 3]. Chiocca alleges that

Hall threatened to withhold her vote to extend his contract unless he permitted her to perform oral

sex on him. [SOMF at ¶ 4]. Hall alleges that Chiocca took advantage of her sexually while she was

too intoxicated to consent. [SOMF at ¶ 5].

---

[1] The Town and Board have filed a separate statement of material facts under Local Rule 56.1,
which is hereby incorporated by reference.
[2] References to the Concise Statement of Material Fact is cited as [SOMF] at [paragraph].

The Town first learned of the May 1-2 incident on the morning of May 18, 2018. [SOMF at ¶ 10]. Town Counsel, Chiocca, and Edward Kimball met that afternoon. [SOMF at ¶ 11]. During that meeting, Chiocca never claimed to have been sexually assaulted, harassed, or otherwise victimized by Hall, nor did he claim that Hall threatened his contract. [SOMF at ¶ 12-13]. For the next several days, Chiocca's and Hall's attorneys negotiated toward an agreement that would include non-disclosure and non-disparagement provisions. [SOMF at ¶ 19-20]. A preliminary agreement was reached on May 22, 2018. [SOMF at ¶ 19]. The next day, the media learned of the incident and the preliminary agreement between Chiocca and Hall fell apart. [SOMF at ¶ 21].

The Board placed Chiocca on paid administrative leave on May 29, 2021 pending an independent investigation. [SOMF at ¶ 22]. On November 20, 2018, the Board unanimously voted to continue Chiocca's paid administrative leave (subject to any further vote to suspend or terminate him) [SOMF at ¶ 55] and unanimously voted not to renew his contract that was set to expire on June 30, 2019. [SOMF at ¶ 58]. The two votes were based on a myriad of factors, including: the Board's view that Chiocca could no longer be an effective leader [SOMF ¶ 70], Chiocca's return to Town Hall after hours for non-work related activities [SOMF ¶ 67], Chiocca opening a bottle of wine at Town Hall [SOMF ¶ 69], Chiocca referring to Hall as a dyke [SOMF ¶ 73], Chiocca referring to Mike Mullen (a member of the Board) as a girl [SOMF ¶ 74], Chiocca placing drunk telephone calls to Town employees [SOMF ¶ 75], Chiocca discussing his erectile disfunction with Town employees [SOMF ¶ 76], and the general culture of fear and intimidation that Chiocca fostered around Town Hall [SOMF ¶ 68].

Because the vast majority of Chiocca's claims fundamentally fail as a matter of law, the defendants, Town of Rockland (the "Town"), Larry Ryan, Michael Mullen, Jr., Michael O'Loughlin, Richard Penney and Kara Nyman (the "Board") hereby move, pursuant to

Fed.R.Civ.P. 56, for partial summary judgment as to Counts 1-5 and complete summary judgment as to Counts 7-8, 10-20, 22-26, 29-30, & 35-37 alleged against them.

## II.     STANDARD OF REVIEW

Summary Judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "[A] fact is 'material' only if it potentially affects the outcome of the suit and a dispute over it is 'genuine.'" <u>Internl. Assn. of Machinists & Aero. Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199-200 (1st Cir. 1996). Where there are no genuine issues of material fact, summary judgment should be granted if the opposing party's "evidence is merely colorable, or not significantly probative." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); see <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997) ("conclusory allegations, improbable inferences, and unsupported conclusions will not suffice to survive summary judgment."). This Court should ignore bald assertions and mere speculation as well as allegations "which have been conclusively contradicted by concessions or otherwise." <u>Chongris v. Bd. of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

## III.     ARGUMENT

### A.  <u>Partial Summary Judgment is Appropriate as to Plaintiff's Chapter 151B and Title VII Claims (Counts 1-5).</u>[3]

---

[3] Although the Town and Board emphatically dispute Chiocca's claims for *quid pro quo* sexual harassment and retaliation under M.G.L. c. 151, § 4 and/or Title VII of the Civil Rights Act of 1964, they do not seek summary judgment on those theories of liability.

3

As relevant to this motion, Chiocca asserts liability under Chapter 151B and Title VII based on hostile work environment, unlawful suspension, constructive discharge, and wrongful termination. Because Chiocca was never terminated and he never resigned, the claim for wrongful termination (under its usual or constructive discharge theories) and his hostile work environment claim fail of a matter of law. Furthermore, the hostile work environment claim fails because Chiocca cannot meet his *prima facie* burden.

1. <u>Chiocca Has No Reasonable Expectation of Proving Wrongful Termination,  Constructive Discharge, or Hostile Work Environment</u>.

Chiocca has no reasonable expectation of prevailing on his claims for wrongful termination for the simple and inescapable reason that he was never discharged or terminated [<u>SOMF at ¶ 79</u>], and he never resigned from his employment. Among the elements of the *prima facie* case for wrongful termination is proof that Chiocca was terminated. <u>Dunn v. Trustees of Bos. Univ</u>., 761 F.3d 63, 68 (1st Cir. 2014). Here, Chiocca indisputably was never terminated from his position as the Town Administrator; rather, he was placed on paid administrative leave. Chiocca is thus left to proceed on a constructive discharge theory of wrongful termination.

As the Supreme Court aptly put it: "[t]he constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." <u>Green v. Brennan</u>, 578 U.S. 547, 555 (2016) (quotation omitted). In such circumstances, "Title VII treats that resignation as tantamount to an actual discharge." <u>Id</u>. (citation omitted). Chiocca must not only "prove [] that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" but also "that he actually resigned. In other words, an employee cannot bring a constructive-discharge claim until he is constructively discharged. Only after both elements are

satisfied can he file suit to obtain relief." Id. (quotation omitted);[4] accord Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000) ("If a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged"); Zeigler v. Atrius Health, Inc., No. 15-CV-13384-IT, 2018 WL 4232900, at *3 (D. Mass. Sept. 5, 2018) (Talwani, J.) ("despite Zeigler's erroneous legal conclusion that the constructive discharge claim was complete when he was placed on leave, under Green [v. Brennan], that claim did not accrue until he resigned."). Because Chiocca indisputably *never* resigned from his position, he cannot sustain a constructive discharge theory of wrongful termination.

Even if Chiocca's placement on paid administrative leave constituted termination or resignation—it does not—as a general matter, "[a] single, isolated act of an employer (or an agent of the employer) usually will not be enough to support a constructive discharge claim." GTE Prod. Corp. v. Stewart, 421 Mass. 22, 34 (1995). "In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." Id. (quoting Turner v. Anheuser–Busch, Inc., 7 Cal.4th 1238, 1247 (1994)). No rationale view of the summary judgment record supports a conclusion that a single, isolated incident of alleged *quid pro quo* sexual harassment—which Chiocca failed to report and by his own actions did not diminish his employment to the degree that he resigned— was unusually aggravated or amounts to a continuous pattern of harassing conduct.

Likewise, Chiocca is foreclosed from asserting a hostile work environment claim here. Under Massachusetts law, "a hostile work environment is a unitary cause of action based on the

---

[4] Massachusetts law appears to be in accord. See GTE Prod. Corp. v. Stewart, 421 Mass. 22, 33– 34 (1995) ("a constructive discharge is legally regarded as a firing rather than a resignation.") (quotation omitted).

cumulative effect of hostile acts over the course of time, not one action based on the sum total of many mutually distinct incidents." Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 533 (2001) (citation omitted). As to Tile VII, the First Circuit has previously "regard[ed] as highly dubious" that a single act of sexual assault subjects an employee "to a hostile work environment based on h[is] sex. . . ." Noviello v. City of Bos., 398 F.3d 76, 97 (1st Cir. 2005) (no hostile work environment where defendant "forcibly unhooked the plaintiff's brassière, ripped it from her body, hung it on the van's outside mirror, and bellowed a crude sexual remark to a fellow employee on the street."). Although "[i]t is also possible to have an actionable hostile work environment claim based on a single act of sexual harassment[,]" Cuddyer, 434 Mass. at 539 n. 21, Chiocca must still show the "objective reasonableness of the claim that the value of the [employment] was diminished for" him. Gnerre v. MCAD, 402 Mass. 502, 508 (1988). Here, it is undisputed that Chiocca continued to highly value his employment: he did not report the incident until he was confronted by Town Counsel and Kimball [SOMF at ¶ 78]; he sought to avoid an investigation of the matter entirely [SOMF at ¶ 17]; he sought to stay in his position pending the investigation [SOMF at ¶ 17]; and he consistently sought to be reinstated to his position. Under these circumstances, it is not objectively reasonable that Chiocca's employment was diminished. His hostile work environment claim fails as a matter of law.

**B.  Summary Judgment is Appropriate as to Plaintiff's Claims for Violation of Equal Protection and Due Process under 42 U.S.C. § 1983 (Counts 7-20).**

Chiocca alleges that the Town and Board violated his equal protection and due process rights, which violations in turn ran afoul of 42 U.S.C. § 1983. The Fourteenth Amendment's "Equal Protection Clause 'prohibits a state from treating similarly situated persons differently because of their classification in a particular group.'" Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 346 (D. Mass. 2016) (Casper, J.) (quoting Mulero–Carrillo v. Román–Hernández, 790

F.3d 99, 105–106 (1st Cir.2015)). Moreover, "[t]he Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of life, liberty, or property, without due process of law." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (quotation omitted). Due process under the Fourteenth Amendment is divided into "substantive and procedural components." Id. For the reasons set forth below, Chiocca's constitutional rights were not violated and, therefore, his § 1983 claims fail as a matter of law.

  1. There Has Been No Violation of Equal Protection (Counts 7-8).

Though far from a model of clarity, Counts 7-8 appear to assert that the Town and Board violated Chiocca's Fourteenth Amendment right to equal protection when they placed Chiocca on paid administrative leave, voted to not renew his contract, and voted to continue his paid administrative leave through the end of his contract term. A § 1983 claim predicated "on violations of the Equal Protection Clause requires proof that compared with others similarly situated, [Chiocca was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Mulero-Carrillo, 790 F.3d at 106 (quotation omitted) (ellipsis in original). This he cannot do because the decisions to place Chiocca on paid administrative leave, not to renew his contract, and continue his paid administrative leave through the end of his contract term were indisputably not based on invidious discrimination. [SOF at ¶¶ 63-78].

Moreover, Chiocca cannot prove that he was treated differently from a similarly situated individual. The "standard is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Mulero-Carrillo, 790 F.3d at 106 (quotation omitted). Chiocca does not and cannot identify *any* comparators who were treated differently because there were no other Town employees who were allegedly involved in the May

7

1-2 events[5] or similar incidents of alleged sexual harassment.[6] As such, there is no evidence that Chiocca was treated disparately based on a suspect classification. See, e.g., Mills v. Maine, 118 F.3d 37, 47 (1st Cir.1997) (a "class of persons characterized by some unpopular trait or affiliation" that indicates a heightened likelihood of bias against them).

>    2.   There Has Been No Violation of Procedural Due Process (Counts 13-19).

The "basic guarantee" of procedural due process is that, before a deprivation of a protected liberty or property interest can take place, a plaintiff "must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quotation omitted). "Whether the deprivation . . . was itself erroneous is beside the procedural due process point." Id. In alleging violation of procedural due process, Chiocca apparently segregates his claims into four buckets: the paid administrative leave pending Attorney Ryan's investigation (Counts 13-14); the paid administrative leave after Attorney Ryan issued her initial report (Counts 15-16); the November 20, 2018 Board vote to continue the paid administrative leave through the end of Chiocca's contract term (Counts 17-18); and an assertion for damage to his reputation (Count 19).

>    a. *Paid Administrative Leave Does Not Implicate a Constitutionally Protected Liberty Interest.*

From the outset, Chiocca argues from a false premise. At no point was he *ever* suspended or terminated [SOMF at ¶ 79]; rather, he was placed on paid administrative leave on May 29, 2018, [SOMF at ¶ 22], which was continued by a unanimous vote of the Board on November 20, 2018

---

[5] To the extent Chiocca would claim that Hall and Kimball were "similarly" situated, such assertion stumbles immediately out of the gate. Neither the Town nor the Board had the authority to remove an individual member of the Board, place an individual member of the Board on paid administrative leave, or decline to extend the tenure of an individual member of the Board. [SOF at ¶ 27].

[6] Chiocca fares no better under the so-called class-of-one theory, as he must still show comparators. See, e.g., Cordi-Allen v. Conlon, 494 F.3d 245 (1st Cir. 2007).

[SOMF at ¶ 55]. Paid administrative leave does not "result in deprivation of a protected property

interest." Chrabaszcz v. Johnston Sch. Comm., No. CV 03-133S, 2005 WL 8174458, at *5 (D.R.I.

Dec. 27, 2005) (Almond, M.J.), *report and rec. adopted*, No. CIV.A. 03-133S, 2006 WL 858097

(D.R.I. Mar. 31, 2006) (Smith, J.). Indeed, as Magistrate Judge Almond noted in Chrabaszcz:

> The great weight of authority reviewed by this Court holds that "any
> constitutionally protected property interest [a public employee] ha[s] as a result of
> his employment contract has been satisfied by payment of the full compensation
> due under the contract." Royster v. Bd. of Trustees, 774 F.2d 618, 621 (4th Cir.
> 1985). See also Pitts v. Bd. of Educ., 869 F.2d 555, 556 (10th Cir. 1989)
> ("suspension with pay d[oes] not invade any recognized property interest."),
> Although Plaintiff had a property interest in continued employment prior to June
> 30, 2000, such interest did not "extend to the right to possess and retain a particular
> job or to perform particular services." Fields v. Durham, 909 F.2d 94, 98 (4th Cir.
> 1990) (citations omitted). In other words, the command that Plaintiff not report to
> work did not deprive him of any protected property interest.

Id. at *6 (alterations in original). Here, Chiocca was not deprived of a constitutionally protected

property interest when he was placed on paid administrative leave. As the First Circuit noted in

the case of Bennet v. City of Boston, there are no procedural due process concerns attendant to

paid administrative leave. 869 F.2d 19, 22 (1989) ("There is no significant evidence that the

suspension hurt Bennett, because it was with pay.") (citing Cleveland Board of Education v.

Loudermill, 470 U.S. 532, 544-545 (1985) (suspension with pay might not raise due process

concerns). The same is true here. Consistent with the Town's then-existing Discriminatory

Harassment Policy—which was created at Chiocca's direction [SOMF at ¶ 80]—Chiocca was

placed on paid administrative leave.[7] He was paid the entirety of his salary and benefits until the

expiration of his contract. [SOMF at ¶ 81]. As such, there was no violation of any constitutionally

---

[7] To the extent Chiocca argues that either his employment contract or the Town Charter required
specific notice and/or an opportunity for a hearing prior to placing him on paid administrative
leave, such notice was required only where a Town Administrator is suspended or terminated.
[SOMF at 56-57].

protected liberty interest; the absence of which precludes as a matter of law a violation of procedural due process. See Chrabaszcz, 2005 WL 8174458, at *5, and cases cited.

> b. *Chiocca Had No Constitutionally Protected Interest in Renewal of his Contract.*

Chiocca additionally alleges that he had a constitutionally protected interest in the renewal of his contract (along with the attendant salary raise) past June 2019. This claim is absurd, contradicted by the terms of his employment contract, and foreclosed by law. Chiocca's employment contract does not require the Board to give Chiocca any notice whatsoever of its intent *vel non* to renew his contract. [SOMF at 56-57].[8] Instead, the contract specifically and unambiguously provides that:

> The term of this Agreement shall be effective from July 1, 2016, through June 30, 2019, unless sooner terminated in accordance with the provisions hereof. . . . Absent an affirmative vote by at least four (4) members of the Board of Selectmen to extend this agreement or re-appoint the Employee, employment shall terminate on June 30, 2019.

[Contract at 2, § 2 par. 1]. Generally, where "a clear contractual provision" sets forth a specific term of employment, there is "no property interest in employment beyond the specified term." Lovelace v. Se. Massachusetts Univ., 793 F.2d 419, 421 (1st Cir. 1986) (specific term of employment within teaching context). And although "[t]he Supreme Court left open the possibility that some employees could have a property interest in the renewal of their term contracts[,]" a "mere subjective expectancy of renewal is not enough, the policies and practices of an institution might give rise to such a claim." Hatfield-Bermudez v. Aldanondo-Rivera, 496 F.3d 51, 59–60 (1st Cir. 2007) (citing Perry v. Sindermann, 408 U.S. 593, 594-595, 601-602 (1972)). Here, Chiocca's contract was for a finite term of three years, which expired on June 30, 2019. [Exhibit

---

[8] The only contractual notice requirement relates to whether Chiocca would be entitled to severance pay. [Contract at 4, § 4F].

S]. Unlike Perry, Chiocca cannot point to any policy or practice of the Town or the Board that would support a legitimate, reasonable expectation that his contract would be renewed. Compare Piccirilli v. Town of Halifax, Massachusetts, No. 21-CV-11039-ADB, 2021 WL 3036879, at *5 (D. Mass. July 19, 2021) (Burroughs, J.) (denying motion for preliminary injunction because "[a]t most, Piccirilli has shown that the Town, for many years, has reappointed those salaried officials who wanted to be reappointed, but it is far from clear that this is sufficient to establish a property interest."). To the extent Chiocca would rely upon his subjective belief that the Board intended to vote to renew his contract prior to the events of May 1, 2018, Massachusetts law is clear: "Expectations and negotiations fall far short of a binding agreement." Willitts v. Roman Cath. Archbishop of Bos., 411 Mass. 202, 208 (1991). As such, Chiocca had "no property interest in employment beyond" June 30, 2019. Id.

> c. *Any Damage to Chiocca's Reputation was Self-Inflicted and Not Traceable to any action by the Town or Board.*

The First Circuit has held "that 'the Fourteenth Amendment procedurally protects reputation only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected.'" Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997) (quoting Beitzell v. Jeffrey, 643 F.2d 870, 878 (1st Cir.1981)) (footnote and citations omitted). "Damage to one's reputation alone, however, is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause.'" Temple v. Inhabitants of City of Belfast, 30 F. Supp. 2d 60, 66 (D. Me. 1998) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)). Instead, "[o]nly loss of reputation, coupled with a tangible alteration of a right or status previously guaranteed by law, will trigger a deprivation of a constitutionally protected liberty interest. Id. (citing Paul, 424 U.S. at 708-709). Thus, "no cognizable constitutional injury occurs absent a showing of injury in addition to the reputational harm." Id.

Here, Chiocca has no such additional injury; as shown above, he had no protected right to renewal of his contract and due process was not implicated by his placement on paid administrative leave. See, e.g., Lyons v. Sullivan, 602 F.2d 7, 11 (1st Cir. 1979) (dismissing complaint where allegedly defamed employee was not terminated but instead resigned); Koelsch v. Town of Amesbury, 851 F.Supp. 497 (D. Mass. 1994) (dismissing complaint where allegedly defamed employee was not terminated or otherwise tangibly affected in his employment rights); Cabrero v. Ruiz, 826 F.Supp. 591, 597 n. 19 (D.P.R. 1993) (granting summary judgment where allegedly defamed plaintiff never lost his job and therefore could not show accompanying deprivation of tangible interest).

Even assuming this Court concludes that Chiocca has a constitutionally protected liberty interest here (he does not), it is undisputed that Chiocca himself was responsible for disseminating the details of the events occurring on May 1-2, 2018. [SOMF at ¶ 42]. "[T]he municipality terminating the employee must also be responsible for the dissemination of defamatory charges, in a formal setting (and not merely as the result of unauthorized "leaks"), and thereby significantly have interfered with the employee's ability to find future employment." Silva, 130 F.3d at 32-33. Prior to the Confidential Ryan Report being leaked to the media by Chiocca's own counsel, Attorney Shafran—with Chiocca's "knowledge and approval"—, there is absolutely no evidence that the Town or the Board was responsible for revealing any information to the public.

This case is therefore similar to Beitzell, wherein the First Circuit concluded there was no due process violation because "Beitzell's drinking became known to the Grievance Committee as a result of Beitzell's attorney asking that the memo be placed in the record. The meeting was in private, and there is no evidence that University officials were responsible for spreading the information on campus." 643 F.2d at 879. The First Circuit went on to note that "[a]ny information spread on campus was the result apparently of unauthorized 'leaks'. In terms of likely stigmatizing

effect, there is obviously a world of difference between official charges (say, of excessive drinking) made publicly and a campus rumor based upon hearsay extracted from one witness by Beitzell's attorney at a closed meeting." <u>Id</u>. The same is true here. At no time were the Town or the Board responsible for "spreading the information" to the media or public. <u>Id</u>. To the contrary, Chiocca, his counsel, and their hired public relations person (Casey Sherman) collectively decided how and when to make a mass release of the Confidential Ryan Report to numerous media outlets. [SOMF at ¶ 42].

     d. *The Existence of Adequate Post-Deprivation Remedies Vitiates Any Alleged Procedural Due Process Violation.*

Finally, it is well established that a plaintiff cannot prevail on a procedural due process claim "unless he can show that the state failed to provide him with an adequate post-deprivation remedy." <u>Cronin v. Town of Amesbury</u>, 81 F.3d 257, 260 (1st Cir. 1996) (per curiam). "But for this limitation, federal suits might be brought for countless local mistakes by officials administering the endless array of state laws and local ordinances." <u>Herwins v. City of Revere</u>, 163 F.3d 15, 19 (1st Cir. 1998). Here, Chiocca cannot prevail on his multiple procedural due process claims because he cannot "show that the state failed to provide [him] with an adequate post-deprivation remedy." <u>Cronin</u>, 81 F.3d at 260; accord <u>Zinermon v. Burch</u>, 494 U.S. 113, 115 (1990); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543 (1981); <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).

In <u>Cronin</u>, the Town of Amesbury first suspended with pay and later then terminated its police chief "for falsely denying under oath that he had written a pornographic letter that was found in his desk at the Amesbury Police Department." 81 F.3d at 259. While simultaneously pursuing relief with the Massachusetts Civil Services Commission, the police chief filed suit in federal court alleging violation of 42 U.S.C. §§ 1983 & 1985(3). The district court granted summary judgment and the First Circuit affirmed. <u>Id</u>. at 260-261. Chiefly, the First Circuit concluded that the statutory

scheme permitting appeal to the Civil Service Commission (and eventually to Superior Court) plainly "provided an adequate postdeprivation remedy." Id. at 260. The same is true here. The Massachusetts legislature has, through enactment of M.G.L. c. 151B § 1 *et seq.*, "provided [Chiocca] an adequate postdeprivation remedy." Id. It is inescapable that Massachusetts statutory and common law (as alleged in Counts 1-5, 22-26, 29-30, 35-37) compels a finding that adequate post-deprivation remedies exist. See Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992) ("if a state provides adequate post-deprivation remedies—either by statute or through the common-law tort remedies available in its courts—no claim of a violation of procedural due process can be brought under § 1983."); Cook v. Darrin, No. CIV.A. 95–40158–NMG, 1996 WL 467321, at *2 (D. Mass. Aug. 16, 1996) ("[T]he availability of plainly adequate remedies under Massachusetts common law defeats the possibility of a procedural due process claim under § 1983"). That relief under the available alternative remedies may be delayed, or that damages may be unavailable, does not render them constitutionally inadequate. See Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1994). These available, alternative, and fully adequate remedies renders Counts 13-19 infirm as a matter of law.

3.   There Has Been No Violation of Substantive Due Process (Counts 9-12, & 20).

The substantive component of the Due Process Clause "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). Violations of substantive due process require a showing "*both* that the acts were so egregious as to shock the conscience and that they deprived [plaintiff] of a protected interest in life, liberty, or property." Harron v. Town of Franklin, 660 F.3d 531, 535-36 (1st Cir. 2011) (emphasis in original) (quotation omitted). While courts have not adopted a precise formula for determining whether municipal acts

(such as those by the Town and the Board) "shock the conscience," the First Circuit has held that such acts must be "truly outrageous, uncivilized and intolerable. . . ." Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999). Cases finding a substantive due process violation uniformly involve conduct well beyond the allegations that the Board placed Chiocca on paid administrative leave, decline to renew his contract, and extended his paid administrative leave through the end of his contract term. See, e.g., Harrington v. Almy, 977 F.2d 37, 43–44 (1st Cir.1992) (requiring, as a condition of reemployment, a suspended police officer to undergo a penile plethysmograph); Rochin v. California, 342 U.S. 165, 172 (1952) (forcing an emetic solution through a tube into a person's stomach against their will); Limone v. Condon, 372 F.3d 39, 45 (1st Cir.2004) (intentional "framing of innocent citizens for serious crimes they did not commit"). That conduct maybe be "despicable and wrongful" is not, standing alone, sufficient. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.1991).[9] Simply stated, the Town's and Board's actions of placing Chiocca on paid administrative leave, declining to extend his contract, and extending his paid administrative leave through the end of his contract term do not come anywhere near "truly

---

[9] Indeed, the First Circuit has rejected substantive due process claims based on conduct more egregious that that asserted by Chiocca here. See Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.1991) (police officer's verbal threat to young children that they would never see their mother's live in companion again and officer's refusal to allow the children to "hug and kiss" him goodbye was not sufficient to "shock the conscience"); Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir.1991) (verbal harassment by supervisor which caused Plaintiff to become physically ill was not conscience shocking); Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995) (no substantive due process violation where district attorney and members of his staff conducted numerous press conferences and other media interviews in which they linked petitioner's son to killings of nine young women even where the son subsequently killed himself); Cruz–Erazo v. Rivera–Montañez, 212 F.3d 617, 622–623 (1st Cir. 2000) (although a close question, months of harassment by police officers which included threats of physical violence, insults, the filing of unjustified burglary charge against plaintiff, and the pushing of plaintiff's pregnant daughter who two days thereafter suffered a miscarriage did not rise to the level of shocking the conscience).

outrageous, uncivilized and intolerable" sufficient to sustain a violation of substantive due process.

Id.

C. **Summary Judgment is Appropriate as to Plaintiff's Claims for Conspiracy and Failure to Prevent Conspiracy (Counts 22-23).**

Section 1985(3) of Title 42 provides a cause of action for conspiracy to deprive or interfere with federally protected rights. The First Circuit has enunciated the proper standard for such a conspiracy:

> First the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). Chiocca's conspiracy claims must fail because "[a] government entity cannot conspire with itself. . . ." Barstad v. Murray Cty., 420 F.3d 880, 887 (8th Cir. 2005).[10] Here, the Town cannot conspire with the members of the Board, because they are for legal purposes the same entity. See, e.g., Williams v. Northfield Mount Hermon Sch., 504 F. Supp. 1319, 1328 (D. Mass. 1981) (Freedman, J.) ("'[s]imply joining corporate officers in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.'") (quoting Cole v. University of Hartford, 391 F.Supp. 889 (D.Conn.1975)).

Moreover, "plaintiffs must allege that the conduct complained of resulted from an invidiously discriminatory *class-based animus*." Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) (emphasis added). That is to say, "plaintiffs must allege facts showing that (1) the defendants conspired against them *because of their membership in a class*, and (2) the criteria defining the

---

[10] See Strahan v. Frazier, 156 F. Supp. 2d 80, 103 n.24 (D. Mass. 2001) (Young, J.) (noting, but not reaching, intercorporate conspiracy doctrine ), *aff'd*, 62 F. App'x 359 (1st Cir. 2003).

class are invidious." Id. (emphasis added). Chiocca fails to allege that Town or Board acted with any animus based upon his membership in a protected class, or indeed that Chiocca is a member of a protected class in the first instance. Therefore, summary judgment is appropriate as to Counts 22-23. "A party may not cry 'conspiracy' and throw [it]self on the jury's mercy." Duca v. Martins, 941 F. Supp 1281, 1291 (D. Mass. 1996). For the same reason, Count 23 alleging failure to prevent a conspiracy also fails as a matter of law.

### D. **Summary Judgment is Appropriate as to Plaintiff's Contractual Claims (Counts 24-26, & 36-37).**

In Counts 24-26, Chiocca alleges that the Town and the Board breached Chiocca's employment contract based on the false belief that placing him on paid administrative leave required following the same notice requirements applicable to suspensions and/or termination. This argument conveniently ignores the clear and unambiguous language of Chiocca's employment contract and the Town Charter. As noted above, there is no requirement that Chiocca receive any particular notice or opportunity to be heard—under either his employment contract or the Town Charter—prior to his placement on paid administrative leave. [SOF at ¶¶ 22, 24]. Rather, the authority to place Chiocca on paid administrative leave springs from the then-existing Discriminatory Harassment Policy, which authorizes "placing the alleged harasser on administrative leave" pending the outcome of any investigation. [Exhibit R at 15, par. 7]. Such an action does not, in any way, violate Chiocca's employment contract or the Town Charter. Chiocca cannot prevail on a necessary element (i.e. breach), and summary judgment should be entered as to Counts 24-26.

Chiocca additionally argues that the Town and Board interfered with contractual/economic relations (Counts 36-37). To sustain such claims under Massachusetts law, Chiocca must establish that (1) he had a contract/advantageous relationship with a third party, (2) the Town and Board

knowingly induced the third party to break that contract/advantageous relationship, (3) the Town's and Board's interference was improper in motive or means, and (4) Chiocca were harmed by the Town's and Board's actions. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014) (contract); Blackstone v. Cashman, 448 Mass. 255, 260 (2007) (economic relations). These claims are meritless on their face, as Chiocca cannot possibly meet the first or second elements. The employment contract is clearly between Chiocca and the Town, not a third-party.[11] Likewise, there is absolutely no evidence that the Town and/or Board induced the non-existent third-party to breach the employment contract or any other advantageous relationship. As such, Counts 36-37 fail as a matter of law.

### E. Summary Judgment is Appropriate as to Plaintiff's Claims for Libel (Counts 29-30).

Counts 29-30 fail as a matter of law because Mr. Ryan and Mr. O'Loughlin are entitled to conditional privilege. Under Massachusetts law, "'[s]tatements made by public officials while performing their official duties are conditionally privileged.'" Lawless v. Estrella, 99 Mass. App. Ct. 16, 23 (2020), rev. denied, 486 Mass. 1115 (2021) (quoting Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 630-631 (2012)). As the Massachusetts Appeals Court noted, "[t]he privilege is particularly important with respect to public officials because the 'threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues.'" Id. (quoting Barrows, 82 Mass. App. Ct. at 631). Mr. Ryan's and Mr. O'Loughlin's complained of statements—including Mr. Ryan's statements to the media—were made as members of the Rockland Board of Selectmen about issues that were before the Board. Under these circumstances, Mr. Ryan's and Mr. O'Loughlin's

---

[11] Indeed, the Contract states that it is between Chiocca and "the Town of Rockland . . . by and through its Board of Selectmen. . . ." [Exhibit S at 1, par. 1].

statements were conditionally privileged under Massachusetts law. Counts 29-30 against them therefore fail as a matter of law.

Moreover, Counts 29-30 are clearly an attempt to plead around Mr. Ryan's and Mr. O'Loughlin's personal immunity under M.G.L. c. 258, § 2. The Massachusetts Tort Claims Act immunizes public employees for conduct within the scope of their employment. E.g. McNamara v. Honeyman, 406 Mass. 43, 46 (1989). Mr. Ryan's and Mr. O'Loughlin's statements, made as members of the Board about business before the Board, were clearly made within the scope of their employment as Board members. They are thus immune from suit under M.G.L. c. 258, § 2. Chiocca's libel claims against them should be rejected as a transparent and inartful attempt to plead around their personal immunity.

## F. Summary Judgment is Appropriate as to Plaintiff's Claim for Intentional Infliction of Emotional Distress (Count 35).

Finally, summary judgment is appropriate as to Count 35 alleging intentional infliction of emotional distress because Chiocca has no reasonable likelihood of proving the claim at trial. Intentional infliction of emotional distress under Massachusetts law requires a showing "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)). This standard "is very high[,]" Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996), and the conduct is only "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foley v. Polaroid Corp.</u>, 400 Mass. 82, 99 (1987) (quotation omitted). For the same reasons outlined above regarding the alleged violation of substantive due process, Chiocca cannot show that the Town or the Board acted "so outrageous[ly] in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foley</u>, 400 Mass. at 99 (quotation omitted). Instead, the Board acted reasonably by placing Chiocca on paid administrative leave once the events of May 1-2, 2018 came to light, as provided for under its Harassment and Discrimination Policy. The Board likewise did not act outrageously when it continued the paid administrative leave and elected not to renew Chiocca's contract based on troubling information that surfaced during the investigation. [<u>SOF at ¶¶ 65-76</u>]. Moreover, under Massachusetts law "the exclusivity provision of the workers' compensation act also precludes an action against an employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace" as well as "from a rape or other sexual assault. . . ." <u>Doe v. Purity Supreme, Inc</u>., 422 Mass. 563, 565–566 (1996).

## V.   <u>CONCLUSION</u>

**WHEREFORE**, the defendants, Town of Rockland, Larry Ryan, Michael Mullen, Jr., Michael O'Loughlin, Richard Penney and Kara Nyman, respectfully request that this Honorable Court grant them partial summary judgment as to Counts 1-5 and complete summary judgment as to Counts 10-20, 22-26, 29-30, & 35-37 alleged against them.

Respectfully submitted,

Defendants,

TOWN OF ROCKLAND, LARRY RYAN,
MICHAEL MULLEN, JR., MICHAEL O'LOUGHLIN,
RICHARD PENNEY AND KARA NYMAN,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Jason W. Crotty*
_____
Jason W. Crotty, BBO #656313
Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100
Boston, MA 02109
(617) 350-0950
jcrotty@piercedavis.com
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on November 15, 2021.

*/s/ Justin L. Amos*
_____
Justin L. Amos, Esq.