UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN CHIOCCA,<br>　　　Plaintiff,<br><br>v.<br><br>TOWN OF ROCKLAND, DIERDRE<br>HALL, EDWARD KIMBALL, LARRY<br>RYAN, MICHAEL MULLEN, JR.,<br>MICHAEL O'LOUGHLIN, RICHARD<br>PENNEY and KARA NYMAN,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　　C.A. NO. 1:19-cv-10482-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' TOWN OF ROCKLAND, LARRY RYAN, MICHAEL MULLEN, JR.,
MICHAEL O'LOUGHLIN, RICHARD PENNEY & KARA NYMAN LOCAL
RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS AS TO
<u>WHICH THERE IS NO GENUINE ISSUE TO BE TRIED</u>**

Pursuant to L.R. 56.1 of the Local Rules of the United States District Court for the District

of Massachusetts, the Defendants Town of Rockland, Selectman Larry Ryan, Michael Mullen, Jr.,

Michael O'Loughlin, Richard Penney and Kara Nyman submit the following concise statement of

the material facts of record as to which Defendants contend there is no genuine issue to be tried:

1. In the evening of May 1, 2018, the Plaintiff Alan Chiocca ("Mr. Chiocca"), the Town
Administrator, had numerous alcoholic drinks with Defendant Diedre Hall ("Mrs.
Hall"), a first term Town of Rockland Selectwoman, at the Rockland Bar & Grill.
[<u>Exhibit A at 170:11-19</u>;[1] <u>Exhibit C at 156:224, 157:1-4</u>].

2. Mr. Chiocca was well aware that Mrs. Hall was distraught and had been drinking that
evening. [<u>Exhibit A at 196:7-10; 204:17-20, 222:5-8, 18</u>]. Rather than ensuring she had
a safe means to return home, Mr. Chiocca left the Rockland Bar & Grill with Mrs. Hall
[<u>Exhibit A at 194</u>], drove her to Town Hall in his vehicle [<u>Exhibit A at 201:3-5</u>], used
his code to gain access to Town Hall [<u>Exhibit A at 204:4-7</u>], used his keys to open his
locked office [<u>Exhibit A at 224:14-16</u>], ushered her into his office [<u>Exhibit A at 213-
214</u>] and poured her more wine [<u>Exhibit A at 217:7-10, 235:23-25, 236:1-9</u>].

3. Mr. Chiocca and Mrs. Hall engaged in sexual conduct while in his office at Town Hall.

---

[1] Deposition testimony is cited as [page]:[line] – [line].

[Exhibit A at 237, 242:20-24, 243:5-11].

4.  Mr. Chiocca alleges that Mrs. Hall threatened to withhold her vote to extend his contract unless he permitted her to perform oral sex on him. [Exhibit A at 196:12-20].

5.  Mrs. Hall alleges that Mr. Chiocca took advantage of her sexually while she was too intoxicated to consent. [Exhibit D  at 55:14-17; 137:21-24; 138:1-4].

6.  On April 15, 2018 (two weeks before the night in question) Mr. Chiocca implied that he would like to have sex with Mrs. Hall.  Specifically, Mr. Chiocca stated to Selectman O'Loughlin that there was "something sexy about a woman in power" and that he would "climb that mountain" if given the opportunity. [Exhibit I at 63:4-17].

7.  During the day on May 2, 2018, Mr. Chiocca and Mrs. Hall met in his office during working hours on May 2, 2018, and he agreed to keep the events of the previous evening between the two of them. [Exhibit A at 282:9-25; Exhibit D at 188:19-22].

8.  Despite their agreement not to discuss the matter, Mr. Chiocca made numerous telephone calls to various women at Town Hall, during which he appeared to be intoxicated and told them that "shit was going to hit the fan." [Exhibit A at 258:4-25; Exhibit F at 35:1-24; Exhibit G at 36:3-9].

9.  Mr. Chiocca also told numerous Town employees about his erectile disfunction and that he was unable to engage in sexual acts because he required medication. [Exhibit F at 135:2-11; Exhibit G 49:12-19; Exhibit H at 87:18-21, 88:3-5].

10. The Town first learned of the events of May 1-2, 2018 when Edward Kimball, then the Chairman of the Board of Selectmen, called Town Counsel, John Clifford, on the morning of May 18, 2018. [Exhibit N at 40:12-24, 41:1; Exhibit E at 200:12-16].

11. After learning of the allegations, Town Counsel, Mr. Kimball, and Mr. Chiocca met in the afternoon of May 18, 2018. [Exhibit A at 258:16-21; Exhibit E at 201:22-24; Exhibit N at 44:21-24, 45:1-3].

12. During that meeting, Mr. Chiocca never claimed to have been sexually assaulted, harassed, or otherwise victimized by Mrs. Hall. [Exhibit E at 206:1-3, 207:9-12, 209:15-18; Exhibit N at 48:19-21, 49:2-5].

13. During that meeting, Mr. Chiocca never claimed that Mrs. Hall threatened his contract. [Exhibit E at 206:1-3, 207:9-12, 209:15-18; Exhibit N at 48:23-24, 49:1].

14. During that meeting, Mr. Chiocca "brag[ged]" that he was able to ejaculate during the sexual encounter. [Exhibit N at 63:4-23].

15. Mr. Chiocca expressed to Town Counsel that "he wanted things to go away, that he was embarrassed by it, and he was afraid his family was going to find out." [Exhibit N at 51:21-23; Exhibit E at 200:20-22, 206:1-3]. Mr. Chiocca reiterated this concern later that same afternoon, when he called Town Counsel on the telephone. [Exhibit N at 61].

16. Town Counsel informed Mr. Chiocca that he would need to be put on paid administrative leave, which would require a vote of the Board. [Exhibit E at 202:12-16; Exhibit N at 52:7-12].

17. Mr. Chiocca protested and, instead, sought to avoid an investigation altogether. [Exhibit N at 52:4-5]. Mr. Chiocca also sought to remain in his position while an investigation was pending. [Exhibit N at 52:5-7]. Ultimately, Mr. Chiocca agreed to use vacation days to avoid a Board vote. [Exhibit N at 52:12-14; Exhibit E at 202:12-16, 203:1-7].

18. Town Counsel's understanding was that Mr. Chiocca admitted he had acted inappropriately and was looking for a way out so that his family would not find out. [Exhibit N at 53-54; Exhibit E at 211:5-11].

19. On May 22, 2018 Mr. Chiocca and Mrs. Hall reached a preliminary agreement that included a nondisclosure agreement as to the events of May 1-2, 2018. [Exhibit N at 71:23-24; Exhibit U].

20. As of May 23, 2018, it was the Town's understanding that Mr. Chiocca and Mrs. Hall agreed to a non-disclosure, non-disparagement agreement. [Exhibit N at 71: 23-24]. Chiocca further agreed to leave his employment and that he would be paid into September 2018. [Exhibit N at 72:1-9]. Although every detail had not been nailed down, the Town understood that the "most of the details . . . were pretty much finalized." [Exhibit N at 72:20-22].

21. On or about May 23, 2018, the media learned of the incident. [Exhibit A at 266:3-16; Exhibit E at 262:2-3].

22. At a Board of Selectmen meeting held on May 29, 2018, the Board voted to place Mr. Chiocca on paid administrative leave pursuant to its then-existing Discriminatory Harassment Policy. [Exhibit N at 138:14-17; Exhibit O at 25:9-14; Exhibit R at 15].

23. Mr. Chiocca's employment contract does not require notice prior to placing him on paid administrative leave. [Exhibit O at 197:8-13, 23-24, 198:1-7; Exhibit S]

24. The Rockland Town Charter does not require notice prior to placing a Town Administrator on paid administrative leave. [Exhibit O at 197:8-13, 23-24, 198:1-7; Exhibit T]

25. Mr. Chiocca's employment contract does not require the Board to file a list of reasons prior to placing him on paid administrative leave. [Exhibit O at 197:8-13, 23-24, 198:1-7]

26. The Rockland Town Charter does not require the Board to file a list of reasons prior to placing a Town Administrator on paid administrative leave. [Exhibit O at 197:8-13, 23-24, 198:1-7].

27. The Board of Selectmen did not have the authority to remove, suspend, or put on leave an individual member of the Board. [Exhibit O at 198:8-18]. By its terms, the then-existing Discriminatory Harassment Policy does not apply to "elective officers" such as the Board. [Exhibit R at 6].

28. At the May 29, 2018 meeting, the Board also voted to retain Attorney Regina Ryan of Discrimination and Harassment Solutions Inc. to conduct an independent investigation. [Exhibit N at 73:1-11; Exhibit O at 92:16-20].

29. Mr. Chiocca was invited to attend the May 29, 2018 meeting, but he did not appear. [Exhibit K at 177:6-24].

30. Mr. Chiocca was notified of his placement on paid administrative leave by letter dated May 29, 2018. [Exhibit O at 26:5-17; Exhibit W].

31. On June 5, 2018 Mrs. Hall announced that she was taking a leave of absence pending the outcome of Regina Ryan's investigation. [Exhibit D at 174-175].

32. Attorney Regina Ryan conducted an investigation over the course of 5-6 weeks. [Exhibit Q at 116:1-4].

33. During the course of Regina Ryan's investigation, numerous individuals came forward expressing their discomfort with Mr. Chiocca returning to his position as Town Administrator. [Exhibit F at 74:15-23, 75:1-3; Exhibit G at 71:8-10, 116:11-15].

34. Several women at Town Hall reported previous incidents of inappropriate conduct by Mr. Chiocca, including: referring to two female employees as "scissor-sisters" [Exhibit G at 128:2-7], describing a male member of the Board as a "girl" [Exhibit F at 56:14-16], referring to Mrs. Hall as a "dyke" [Exhibit F at 43:2-4], discussing how hot young women chased after him at a golf tournament [Exhibit F at 19:2-15], calling employees after hours while he was intoxicated [Exhibit F at 133:24-25 134:1-8], and describing how he needed medication to achieve an erection [Exhibit F at 135:2-11; Exhibit H at 87:18-21, 88:3-5].

35. This behavior was highly inappropriate and subject to discipline, up to and including termination. [Exhibit B at 76:10-16; Exhibit Q at 133:12-14].

36. Mrs. Hall resigned from the Board on or about July 2, 2018. [Exhibit C at 78:13-16].

37. On or about July 6, 2018, Attorney Regina Ryan submitted her draft, written report to the Town. [Exhibit N at 75:23-24, 76:1-2].

38. A copy of the report was provided to Mr. Chiocca's attorney, Adam Shafran, that same day. [Exhibit N at 76:3-5].

39. Accompanying the report was an email from Town Counsel that expressly noted that it was a "confidential personnel record," and warned that "improper release or disclosure of that document may result in an unwarranted invasion of privacy for

persons named in the document." [Exhibit N at 76:6-23; Exhibit V].

40. Town Counsel further instructed Attorney Shafran that the Report "may not be released or distributed without the written permission of the Rockland Board of Selectmen." [Exhibit N at 76:21-23].

41. Mr. Chiocca, who remained a Town employee even while on paid administrative leave [Exhibit O at 198:19-23; Exhibit N at 77:10-12; Exhibit K at 223:17-20], was required to follow directions of the Town, Town Counsel, and/or the Board [Exhibit O at 198:24, 199:1-13; Exhibit N at 77:13-18].

42. On July 11, 2018, Attorney Shafran, at Mr. Chiocca's direction, released a copy of the Confidential Ryan Report to numerous media outlets [Exhibit A at 276:18-222; Exhibit P at 26:12-23; Exhibit N at 81:24, 82:1-3; Exhibit X], notwithstanding the clear instructions that such document was to be kept strictly confidential and could not be disseminated absent a vote of the Board. [Exhibit N at 81:7-23].

43. The unauthorized release of a confidential personnel record was, in and of itself, grounds for suspension and/or termination. [Exhibit N at 77:13-22; Exhibit O at 142:20-24. 143:1-8].

44. Mr. Kimball resigned from the Board on or about July 31, 2018. [Exhibit E at 58:12-14].

45. The Board's vote to accept Attorney Regina Ryan's report was not a vote to adopt every factual finding contained within the report. [Exhibit K at 157: 8-22; Exhibit J at 243:16-24, 244:1-5].

46. The Board's vote to accept Attorney Regina Ryan's report was not a vote to adopt every conclusion contained within the report. [Exhibit K at 157:8-22; Exhibit J at 243:16-24, 244:1-5].

47. The Board's vote to accept Attorney Regina Ryan's report was not a vote to adopt every recommendation contained within the report. [Exhibit K at 157: 8-22; Exhibit J at 243:16-24, 244:1-5].

48. Neither the Town nor the Board were required to accept anything contained in Regina Ryan's Report. [Exhibit Q at 139:20-24, 140:1-3].

49. Kara Nyman was elected to the Board of Selectmen in November 2018. [Exhibit L at 32:16-23].

50. Knowing the facts presented in the report, Selectwoman Nyman had not formed an opinion as to whether Mr. Chiocca should be reinstated or not. [Exhibit L at 51:2-6]. Prior to being elected, she was not aware that the board was intending to extend Mr. Chiocca's contract. [Exhibit L at 51:7-12]. She had heard that Mr. Chiocca created a poor culture at Town Hall. [Exhibit L at 51: 16-24].

51. Selectwoman Nyman believed the findings in the Regina Ryan Report are one-sided because Mrs. Hall didn't have a memory of that night. [Exhibit L at 66:2-7].

52. Richard Penney was elected to the Board of Selectmen in November 2018. [Exhibit M at 66:24, 67:1-6].

53. Selectman Penney found the Regina Ryan Report "very, very hard to believe." [Exhibit M at 59:14-9].  Mr. Chiocca was always in control of what he wanted.  [Exhibit M at 59:6-9]. Attorney Regina Ryan didn't get an equal amount of information from both parties. [Exhibit M at 98:19-21]. Selectman Penney found it difficult to believe that Mr. Chiocca did anything that he didn't want to do. [Exhibit M at 97:13-18]. Selectman Penney didn't focus on what Attorney Regina Ryan's conclusions were, as he believed it was irrelevant what her conclusions were. [Exhibit M at 51:12-14].

54. Selectman Penney recalls discussions with the Board and had previously formed his own opinions about the poor culture that Mr. Chiocca had created at Town Hall. [Exhibit M at 77:14-17]. Selectman Penney's opinion was the Mr. Chiocca wasn't able to be an effective leader in the town. [Exhibit M at 57:20-21]. The Regina Ryan Report played a part in forming this opinion, as did knowing Mr. Chiocca on a professional level. [Exhibit M at 58:6-12].

55. On November 20, 2018, the Board unanimously voted to continue Mr. Chiocca's paid administrative leave (subject to any further vote to suspend or terminate him) [Exhibit O at 42: 22-24, 43:2-4].

56. Mr. Chiocca's employment contract does not require notice prior to the Board voting not to renew his contract. [Exhibit O at 197:22-24, 198:1-7; Exhibit S].

57. The Rockland Town Charter does not require notice prior to the Board voting not to renew his contract. [Exhibit O at 197:22-24, 198:1-7; Exhibit T]

58. On November 20, 2018, the Board unanimously voted not to renew Mr. Chiocca's contract that was set to expire on June 30, 2019. [Exhibit O at 42: 22-24, 43:2-4].

59. Mr. Chiocca's employment contract did not require the Board to file a list of reasons prior to the Board voting not to renew his contract. [Exhibit S].

60. The Rockland Town Charter did not require the Board to file a list of reasons prior to the Board voting not to renew a Town Administrator's contract. [Exhibit T].

61. Attorney Regina Ryan's Report was only one of several factors the Board took into account when making its two votes on November 20, 2018. [Exhibit K at 110:12-17; Exhibit I at 125:1-9; Exhibit J at 180:6-12, 184:18-23, 185:14-23; Exhibit M at 58:3-4 & 6-12].

62. Because of Mrs. Hall's memory issues, Attorney Regina Ryan only had one side of the story. [Exhibit J at 194:1-17].

63. Larry Ryan questioned the entire findings of the Regina Ryan Report because of its one-sided nature and because, having known Mr. Chiocca for a long period of time, Larry Ryan never knew Mr. Chiocca to be intimidated by anyone.  [Exhibit K at 150: 5-10].

64. Mr. Chiocca referred to himself as the "Puppet Master" of the Board of Selectmen. [Exhibit F at 12:11-20; Exhibit J at 69:21-70:2; Ryan 150:12-18]. Mr. Chiocca could heavily influence the BOS.  [Exhibit N at 32:23-33-22] Mr. Chiocca could not be pushed around by anyone. [Exhibit N at 34:23-35-4].

65. The votes on November 20, 2018 were based on the totality of the circumstances. [Exhibit K at 110:19-24; Exhibit J at 197:20].

66. It was appropriate for the Board to consider the totality of the circumstances before making its decision. [Exhibit Q at 139:4-9]

67. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca returning to Town Hall after hours on non-Town related business. [Exhibit K at 110: 22-24; Exhibit J at 196:8-14; Exhibit L at 60:4-7]

68. The two votes on November 20, 2018 were based, in part, on reports from multiple Town employees expressing discomfort at the prospect of Mr. Chiocca returning to his position. [Exhibit K at 197-199; Exhibit I at 126:2-13; Exhibit J at 192:6-18; Exhibit L at 78: 4-10].

69. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca opening a bottle of alcohol while at Town Hall. [Exhibit K at 110:22-24; Exhibit I at 129:4-8 & 21-22, 248:9-11; Exhibit J at 196:8-14; Exhibit L at 60:4-7]

70. The two votes on November 20, 2018 were based, in part, on the Board's belief that Mr. Chiocca wasn't able to be an effective leader in the town [Exhibit J at 195:17-23; Exhibit M at 57:20-21, 59:1-23].

71. The two votes on November 20, 2018 were based, in part, on the public's distrust of town government caused by Mr. Chiocca's actions. [Exhibit L at:6-8]

72. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca's poor judgment, including in operating his vehicle after drinking on the night of May 1, 2018. [Exhibit L at 59:14-15 & 24, 60:1].

73. The two votes on November 20, 2018 were based, in part, on reports that Mr. Chiocca had referred to Mrs. Hall as a "dyke." [Exhibit L at 77:20-24, 78:1-1].

74. The two votes on November 20, 2018 were based, in part, on reports that Mr. Chiocca had referred to Selectman Mullen as a "girl." [Exhibit L at 77:13-19; Exhibit I at 251:9-12].

75. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca calling

Marcia Birmingham and Susan Ide on May 18, 2018 while he was intoxicated. [Exhibit K at 197:20-24, 198:1-2; Exhibit L at 76:11-24, 77:1-12; Exhibit I at 198:20-24, 199:1-4; Exhibit O at 194-195].

76. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca discussing his erectile disfunction with his subordinates. [Exhibit L at 76:11-24; Exhibit I at 248:19-2, 249:1-2; Exhibit J at 249:7-24; Exhibit O at 194-195].

77. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca stating to Selectman O'Loughlin that he would "climb that mountain" in reference to having sex with Mrs. Hall. [Exhibit I at 248:6-8].

78. The two votes on November 20, 2018 were based, in part, on Mr. Chiocca's failure to report that the incident had occurred. [Exhibit K at 197:4-7, 205:11-14; Exhibit J at 229].

79. Mr. Chiocca was never terminated from his position as Town Administrator. [Exhibit O at 83:16].

80. The Town's then-existing Discriminatory Harassment Policy was created at the direction of Mr. Chiocca. [Exhibit H at 32:9-13].

81. Mr. Chiocca was paid the entirety of his salary and benefits until the expiration of his contract in 2019. [Exhibit N at 140: 12-25, 141:1-6].

Respectfully submitted,

Defendants,

TOWN OF ROCKLAND, LARRY RYAN,
MICHAEL MULLEN, JR., MICHAEL O'LOUGHLIN,
RICHARD PENNEY AND KARA NYMAN,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Jason W. Crotty*
_____

Jason W. Crotty, BBO #656313
Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100
Boston, MA 02109
(617) 350-0950
jcrotty@piercedavis.com
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on November 15, 2021.

*/s/ Justin L. Amos*
_____

Justin L. Amos, Esq.