# G

**CERTIFIED COPY**

**In The Matter Of:**

*Allan Chiocca v. THE TOWN OF ROCKLAND, DEIRDRE HALL, EDWARD KIMBALL, LARRY RYAN, MICHAEL MULLEN JR., MICHAEL O'LOUGHLIN, RICHARD PENNEY AND KARA NYMAN,*

_____

*Susan Ide*

*October 1, 2021*

_____

*A Plus Reporting Service LLC*
*55 Whiting Street, Suite 1A*
*Plainville, CT 06062*
*203.269.9976*

*This page left intentionally blank*

Page 1

```
                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


C.A. No. 1:19-CV-10482-WGY

ALLAN CHIOCCA  ,
                Plaintiff,
VS.                            October 1, 2021

THE TOWN OF ROCKLAND,
DEIRDRE HALL, EDWARD KIMBALL,
LARRY RYAN, MICHAEL MULLEN, JR.,
MICHAEL O'LOUGHLIN, RICHARD PENNEY
AND KARA NYMAN,
                Defendants.


             DEPOSITION OF:  SUSAN IDE




             Deposition of SUSAN IDE, taken on
behalf of the Defendant Deirdre Hall in the
hereinbefore entitled action, pursuant to F.R.C.P.,
before Karen L. Vibert, a duly qualified Notary Public
in and for the State of Connecticut, held remotely for
all participants, commencing at 10:08.m., on October 1,
2021.




             Karen Vibert, CT CSR No. 00064
```

Page 2

```
APPEARANCES:

For Allan Chiocca:
RUDOLPH FRIEDMANN, LLP
92 State Street
Boston, Massachusetts  02109
(617) 723-7700
By:  Adam J. Shafran, Esquire
     ashafran@rflawyers.com
and

MARSHALL HALEM
17 Mica Lane
Wellesley, Massachusetts  02481
By:  Samantha Halem, Esquire
(781) 235-4855
     shalem@marshallhalem.com

For Deirdre Hall:
ROSE KALLOR
750 Main Street, Suite 309
Hartford, Connecticut  06103
(860) 361-7999
By:  Cindy Cieslak, Esquire
     ccieslak@rosekallor.com
and

BURNS & LEVINSON, LLP
25 High Street
Boston, Massachusetts  02110
(617) 345-3000
By:  Ellen J. Zucker, Esquire
     ezucker@burnslev.com

For Town of Rockland, Larry Ryan,
Michael O'Loughlin, Kara Nyman,
Richard Penney and Michael Mullen:
PIERCE, DAVIS & PERRITANO, LLP
10 Post Office Square
Boston, Massachusetts  02109
(617) 350-0950
By:  Justin Amos, Esquire
     jamos@piercedavis.com
```

Page 3

```
APPEARANCES (continued)

For Edward Kimball:
TODD & WELD, LLP
One Federal Street
Boston, Massachusetts  02110
(617) 720-2626
By:  Tara Dunn, Esquire
     tdunn@toddweld.com


ALSO PRESENT:
     Allan Chiocca
     Deirde Hall
```

Page 4

```
                S T I P U L A T I O N S


            It is hereby stipulated and agreed by
and among counsel for the respective parties that
all formalities in connection with the taking of
this deposition, including time, place, sufficiency
of notice and the authority of the officer before
whom it is taken may be and are waived.

            It is further stipulated and agreed
that objections other than as to form are reserved
to the time of trial.

            It is further stipulated and agreed
that the reading and signing of said deposition by
the witness are not waived.

            It is further stipulated that the
proof of the qualifications of the Notary Public
before whom the deposition is being taken is hereby
waived.
```

Page 5

1       (Proceedings commenced at 10:08 a.m.)
2
3       THE COURT REPORTER: Attorney Shafran,
4  would you like to order a copy of the transcript?
5       MR. SHAFRAN: That will go through
6  Samantha. She can tell you what we need.
7       MS. HALEM: I'll order it.
8       THE COURT REPORTER: Attorney Amos, would
9  you like to order a transcript?
10      MR. AMOS: Yes. Can we get a full and a
11 mini PDF.
12      THE COURT: Attorney Dunn, would you like
13 to order a copy of the transcript?
14      MS. DUNN: Yes, please. A full and mini.
15      MS. CIESLAK: You know what I want, and
16 I'll get that on behalf of Deirdre and her counsel.
17      THE COURT REPORTER: Do all counsel agree
18 to waive the in-person oath or affirmation.
19      (All counsel agreed.)
20             SUSAN IDE,
21  having been first duly sworn, testified as follows:
22      MR. SHAFRAN: Cindy, just before we begin,
23 the other stipulations that we agreed to in the
24 other depositions -- all objections except to the
25 form of the question and motions to strike are

Page 6

1  reserved?
2       MS. CIESLAK: Yes.
3       MR. AMOS: Are we also doing objection by
4  one, objection as to all??
5       MS. CIESLAK: Yes. As we have done in
6  other depositions, an objection by any of the Town
7  Defendants, Ms. Hall's counsel or Mr. Kimball's
8  counsel will count as an objection for any one of
9  those parties. Then an objection by Mr. Shafran or
10 Ms. Halem will count for both of them.
11      MR. SHAFRAN: Yes.
12          DIRECT EXAMINATION
13 BY MS. CIESLAK:
14      Q    Good morning, Ms. Ide. How are you?
15      A    I'm fine, thank you.
16      Q    My name is Cindy Cieslak. I am an
17 attorney representing Deirdre Hall in the matter
18 between Allan Chiocca, and Deirdre Hall,
19 Mr. Kimball, the Town of Rockland and the board of
20 selectmen members.
21           Have you ever been deposed before?
22      A    No.
23      Q    Okay. I'll go over a few of our ground
24 rules, just to kind of get you used to this.
25           Do you understand that the oath you

Page 7

1  just took is the same oath that you would have taken
2  in court and that you're obligated to answer
3  truthfully today?
4       A    Yes.
5       Q    And I know we are virtual. Sometimes the
6  audio cuts in and out. So, if you don't hear
7  something I say, let me know and P I'll repeat it.
8       A    Okay.
9       Q    If you don't understand a question I ask,
10 let me know and I'll try to rephrase it so that you
11 can understand.
12      A    Okay.
13      Q    If you answer the question, I'm going to
14 assume that you heard it and understood it.
15      A    Okay.
16      Q    We have had instances in the past where
17 people get kicked out of the deposition, whether
18 it's an internet connection or whatever it may be.
19 So, if that happens, if anyone notices it, we will
20 stop the deposition and allow that party to get back
21 on. Okay?
22      A    Okay.
23      Q    You're doing great with verbal answers.
24 Sometimes we get into the habit of nodding our head
25 or shaking our head, but the court reporter can't

Page 8

1  take down those types of cues, and so if you can
2  continue to answer verbally, that would be great.
3       A    Okay.
4       Q    The last one is -- and you're doing great
5  not talking over me. I will do my best to not talk
6  over you. That way the court reporter can take down
7  everything we say accurately. Okay?
8       A    Okay.
9       Q    If you need a break at any time -- I don't
10 expect this to go all that long, but you never know
11 where we go. So, if you need a break at any time
12 for some water or to use the restroom, just let me
13 know and we can take a break. All that I ask is if
14 there's a question pending, you answer it.
15      A    Okay.
16      Q    Okay. Can you tell me what your -- can
17 you tell me, do you currently work for Rockland?
18      A    Yes, I do.
19      Q    In what position?
20      A    I'm the executive assistant for the board
21 of selectmen.
22      Q    How long have you worked in that position?
23      A    Since 2014.
24      Q    At that point in time Mr. Chiocca was
25 already the town administrator; is that accurate?

Page 33

```
 1  would he be untruthful in that statement?
 2       A    Yes.
 3       Q    In your opinion, did Mr. Chiocca see
 4  Ms. Hall as someone who was in his way in terms of
 5  getting business done at town hall?
 6            MR. SHAFRAN:  Objection.
 7       A    From what I recall, yes.
 8  BY MS. CIESLAK:
 9       Q    Why do you say that?
10       A    There were times when he would leave his
11  office when she came in.
12       Q    And this was prior to May 1st, right?
13       A    Yes.
14       Q    And I should clarify, for the record,
15  prior to May 1st of 2018?
16       A    Yes.
17       Q    So, in your opinion, he didn't want to
18  work with Ms. Hall on town business even before
19  May 1st of 2018, right?
20       A    Yes.
21       Q    In your opinion, did Mr. Chiocca see
22  Ms. Hall as a challenge to him when it came to
23  getting town business done?
24            MR. SHAFRAN:  Objection.
25       A    Yes.
```

Page 34

```
 1  BY MS. CIESLAK:
 2       Q    Why do you say that?
 3       A    I remember they were both strong --
 4  strong-willed people, opinionated.
 5       Q    Mr. Chiocca would leave his office so that
 6  he didn't have to listen to Ms. Hall's opinion?
 7       A    Occasionally, yes.
 8       Q    Even before May 1st of 2018?
 9       A    Yes.
10       Q    And after May 1st of 2018?
11       A    I'm going to say yes.
12       Q    So, I want to discuss May 18th of 2018
13  with you.  I'll represent to you that the incident
14  between Ms. Hall and Mr. Chiocca occurred on May 1st
15  of 2018 into the early morning of May 2nd of 2018,
16  and there have been some documents in this case to
17  reflect that May 18th is a day where some town
18  employees became aware of at least a portion of the
19  incident.  So.  Do you recall May 18, 2018 in some
20  capacity?
21       A    Yes.
22       Q    I believe you had told Regina Ryan that
23  Mr. Chiocca texted you.  Is that accurate?
24       A    No.
25       Q    Okay.  Did Mr. Chiocca text you on May 18,
```

Page 35

```
 1  2018?
 2       A    No.
 3       Q    Okay.  Ms. Ryan's notes state,
 4  "Allan Chiocca sent her the text.  She was in bed
 5  because she wanted to watch the royal wedding.
 6  Said, 'Call me when you get a chance,' and the note
 7  says, Thought someone died."  So, that statement is
 8  not a statement you made to Ms. Ryan?
 9       A    No, that could be.  I remember a phone
10  call.  I just didn't remember the text.
11       Q    Okay.  So, as you sit here today, you
12  don't recall whether or not you -- whether or not
13  Mr. Chiocca texted you on May 18 before the phone
14  call?
15       A    Correct.
16       Q    Okay.  Do you recall whether or not he
17  called you or you called him?
18       A    I don't recall.
19       Q    Do you recall how long the phone call was?
20       A    Maybe just a few minutes.
21       Q    We have Mr. Chiocca's phone records in
22  this case and his phone records show that at 8:28
23  you called him and the phone call lasted six
24  minutes.  Does that sound accurate?
25       A    That could be, yes.
```

Page 36

```
 1       Q    Tell me everything you remember
 2  Mr. Chiocca saying during that six-minute call.
 3       A    I remember him saying, "The shit has hit
 4  the fan."  I said, "Oh, no.  What's going on?"  And
 5  he repeated, "The shit has hit the fan."
 6            And I do remember he said -- no, I
 7  don't remember.  I think that was probably it.  I
 8  remember saying, "Oh, no."  I still didn't know what
 9  was going on.
10       Q    In connection with, The shit has hit the
11  fan -- actually, let me just ask you a different
12  question, so strike that.
13            Did Mr. Chiocca mention Ms. Hall's
14  name during this six-minute phone call?
15       A    No.
16       Q    I'll report to you that Regina's notes
17  indicate that Deirdre Hall's name was mentioned.
18  Are her notes accurate or inaccurate?
19            MR. SHAFRAN:  Objection.
20       A    I don't recall.
21  BY MS. CIESLAK:
22       Q    Sitting here today, you don't recall
23  Ms. Hall's name being mentioned during the call with
24  Mr. Chiocca?
25       A    Correct.
```

Page 49

1  A   I spoke with Marcy Birmingham.
2  Q   What did you and Ms. Birmingham discuss
3  with each other?
4  A   We didn't know what was going on.  She
5  received a call also and pretty much we didn't have
6  any idea what -- what was going on.
7  Q   Did Ms. Birmingham tell you what
8  Mr. Chiocca had told her about what happened on
9  May 1, 2018?
10 A   I don't recall what she said.  I'm sure
11 she did; but, I do not recall her exact words.
12 Q   Does it sound familiar that Ms. Birmingham
13 had told you that Mr. Chiocca said that he needed
14 medication to engage in sexual relations?
15     MR. SHAFRAN:  Objection.
16     MR. AMOS:  You can answer.
17 A   Yes, that sounds familiar.  That sounds
18 familiar.  Something that Marcy would probably have
19 told me.
20 BY MS. CIESLAK:
21 Q   Okay.  And it was shocking to you to hear
22 that Mr. Chiocca had discussed his sex life with
23 Ms. Birmingham, correct?
24     MR. SHAFRAN:  Objection.
25 A   That's correct, yes.

Page 50

1  BY MS. CIESLAK:
2  Q   And it's highly inappropriate for
3  Mr. Chiocca to have discussed his sex life with his
4  subordinate, Ms. Birmingham, correct?
5      MR. SHAFRAN:  Objection.
6  A   Yes, that's correct.
7  BY MS. CIESLAK:
8  Q   Based on your conversation with
9  Ms. Birmingham and your conversation with
10 Mr. Chiocca, at that point in time you had
11 understood that something sexual in nature had
12 occurred between Mr. Chiocca and Ms. Hall, correct?
13     MR. SHAFRAN:  Objection.
14 A   I don't recall.
15 BY MS. CIESLAK:
16 Q   Well, you had just indicated that
17 Ms. Hall's name was mentioned by Mr. Chiocca, right?
18 During the May 18th conversation?
19 A   Well, that was in the notes; but, I don't
20 recall her name being mentioned.
21 Q   I'm sorry.  I thought we had just gone
22 over the notes and it did refresh your recollection
23 that Ms. Hall's name was mentioned during that
24 May 18th conversation with Mr. Chiocca.
25 A   No.  I thought I said I didn't really

Page 51

1  recall her name being mentioned.
2  Q   But nevertheless, when Ms. Birmingham
3  called you, Ms. Birmingham had mentioned Ms. Hall's
4  name, correct?
5  A   Correct.
6  Q   And Ms. Birmingham had also indicated to
7  you that Mr. Chiocca had told her that he needed
8  medication to engage in sexual relations, correct?
9      MR. SHAFRAN:  Objection.
10 A   Marcy did, yes.
11 BY MS. CIESLAK:
12 Q   So, based on what Marcy had reported to
13 you from Mr. Chiocca, you were able to conclude that
14 something sexual in nature had occurred between
15 Mr. Chiocca and Ms. Hall, right?
16     MR. SHAFRAN:  Objection.
17 A   That's what we were assuming, yeah.
18 BY MS. CIESLAK:
19 Q   After May 18, 2018, did you speak with
20 Mr. Chiocca again?
21 A   No.
22 Q   Did you have any text correspondence with
23 him?
24 A   No.
25 Q   I'm going to show you Ms. Ryan's notes

Page 52

1  again, which we have marked as Exhibit 1.
2  A   Okay.
3  Q   I have scrolled to the bottom half of the
4  first page of Exhibit 1.  Can you read to yourself
5  these notes that are appearing on your screen here?
6  We had already discussed the notes that say "Friday
7  night, 8:34 p.m."  And so from when it says, "She
8  called Ms. Birmingham," to the bottom.  Let me know
9  when you're finished.
10 A   Okay.
11 Q   After reading Ms. Ryan's notes, does it
12 refresh your memory that by May 18, 2018, you knew
13 what had happened between Mr. Chiocca and Ms. Hall
14 was bad and that it had to do with Ms. Hall?
15     MR. SHAFRAN:  Objection.
16 A   Yes.
17 BY MS. CIESLAK:
18 Q   And I believe I had asked you, Did you
19 have any text correspondence with Mr. Chiocca
20 following May 18th, and you had indicated no.  Do
21 these notes refresh your recollection as to whether
22 or not there was any text correspondence between you
23 and Mr. Chiocca?
24 A   Yes.
25 Q   Okay.  What is your memory now regarding

Page 69

1  to be alone with Ms. Hall, correct?
2         MR. SHAFRAN:  Objection.
3     A    Never once?  Could you -- I don't
4  understand the question.
5  BY MS. CIESLAK:
6     Q    Sure.  Following May 1, 2018, he never
7  said to you that he doesn't want to be physically
8  present with Ms. Hall, correct?
9         MR. SHAFRAN:  Objection.
10    A    Correct.
11    Q    Mr. Chiocca never expressed to you that he
12 didn't want to be alone with Ms. Hall after May 1,
13 2018, correct?
14        MR. SHAFRAN:  Objection.
15    A    Correct.
16 BY MS. CIESLAK:
17    Q    I think talked about earlier that when you
18 became the executive assistant to the board of
19 selectmen and during your tenure as the executive
20 assistant for the board of selectmen, you weren't
21 friends with Mr. Chiocca, correct?
22    A    Right, we were not friends.
23    Q    You just are a professional working
24 relationship, correct?
25    A    Yes, that's correct.

Page 70

1     Q    So, you didn't necessarily feel that he
2  had the liberty to call you, shit faced, on May 18,
3  2018, while you were on vacation to tell you that
4  something had occurred, correct?
5         MR. SHAFRAN:  Objection.
6     A    Yes, that's correct.
7  BY MS. CIESLAK:
8     Q    And the fact that he broke those
9  boundaries with you is one of the reasons that you
10 did not feel comfortable for him to come back to
11 town hall after the investigation, correct?
12        MR. SHAFRAN:  Objection.
13    A    Yes.  That's correct.
14    Q    Okay.  I have no further questions.
15                 CROSS EXAMINATION
16 BY MS. DUNN:
17    Q    Can you hear me now?
18    A    Yes, I can.
19    Q    Good afternoon.  I just have a few
20 questions for you.  I'm Attorney Tara Dunn.  I'm
21 representing Mr. Kimball.
22             Ms. Ide, after you learned about the
23 May 1st incident, did you speak with Mr. Kimball
24 about how you felt about Mr. Chiocca returning to
25 work?

Page 71

1     A    I would call it -- yeah, it was -- Ed came
2  into the office.  So, yes, I'm sure I did.
3     Q    Do you recall what you said to him about
4  how you felt if Mr. Chiocca were to return to work?
5     A    I recall having a conversation,
6  Marcy Birmingham and I., I think we were just
7  talking.  I don't know exactly what was said.
8     Q    Did you ever express that you felt
9  uncomfortable if he were to return to work?
10    A    Yes, I said that.
11    Q    Okay.  Just so I completely understand it,
12 you expressed to Mr. Kimball that you felt
13 uncomfortable if Mr. Chiocca were to return to work?
14    A    That was probably part of that
15 conversation, yes, with Marcy, yes.
16    Q    Okay.  So you did say that?
17    A    As far as I can recall, yes.
18    Q    Okay.  Was it your understanding at some
19 point after the May 1st incident that Mr. Chiocca
20 was placed on administrative leave?
21    A    After May 18th, yes.
22    Q    Okay.  Do you know who wrote the notice
23 placing Mr. Chiocca on administrative leave?
24    A    No, I do not know who wrote the letter.
25    Q    And you didn't witness who actually

Page 72

1  drafted that letter?
2     A    No.  I did not, no.
3     Q    So, Ms. Ryan's notes from your interview
4  state that Mr. Kimball actually drafted that notice
5  placing Mr. Chiocca on administrative leave.  Do you
6  remember seeing that?
7     A    I don't remember.  I didn't see who wrote
8  the letter.
9     Q    Okay.  It would be fair to say that it is
10 incorrect that Mr. Kimball -- strike that.
11             It would be fair to say that you
12 didn't tell Ms. Ryan that Mr. Kimball drafted the
13 administrative leave letter?
14    A    I could have sent a draft.  No, I don't
15 recall.  I don't recall.
16        MS. DUNN:  I have no further questions.
17        MR. SHAFRAN:  Do you have any, Ellen?
18        MS. ZUCKER:  Not at this moment.  Why
19 don't you go.
20        MR. SHAFRAN:  Sure.
21        MR. AMOS:  Let me pin you, Adam, just so
22 she can see you.
23                 CROSS EXAMINATION
24 BY MR. SHAFRAN:
25    Q    Good afternoon, Ms. Ide.

Page 113

1 testified she remembers having numerous
2 conversations with Stacy about town hall.  We can
3 have the court reporter read these questions back,
4 but you are not entitled to ask the same question
5 10 times in slightly different ways to confuse a
6 witness into answering the way you want to.  It's
7 been asked and answered.
8         MR. SHAFRAN:  Okay.  The transcript will
9 certainly speak for itself.
10         MR. AMOS:  Move on to your next question.
11 BY MR. SHAFRAN:
12     Q    When was the last time you spoke with
13 Deirdre Hall?
14     A    Probably 2018.
15     Q    Okay.
16     A    Yeah.  That's a guesstimate.
17     Q    Do you recall whether she was on the board
18 or not, still at the time?
19     A    That would be the only time that I knew
20 Deirdre Hall.
21     Q    So you have no recollection of speaking to
22 her after she resigned from the board; is that
23 correct?
24     A    Correct.
25     Q    Okay.  Do you recall when the last time

Page 114

1 you spoke with Mr. Kimball was?
2     A    Probably when he was resigned from the
3 board.  I can't remember when he resigned from the
4 board.
5         MR. SHAFRAN:  I have no further questions.
6 Thank you.
7         MS. CIESLAK:  I do have five minutes.
8 Maybe three minutes.
9         MS. ZUCKER:  I have some questions for
10 follow-up too, Cindy.  Why don't you go first.
11         MS. CIESLAK:  Ms. Ide, do you need a break
12 at this time?
13         No.  I'm all set.  Thank you.
14             REDIRECT EXAMINATION
15 BY MS. CIESLAK:
16     Q    I believe there was some prior questioning
17 about when you were on vacation in May of 2018.  I
18 want to show you a document.
19         MS. CIESLAK:  For the record, I am sharing
20 my screen.  It's a document marked DHall707.
21 BY MS. CIESLAK:
22     Q    Ms. Ide, can you take a look at this
23 document and tell me what you recognize this
24 document to be?
25     A    That looks like my email reply when I was

Page 115

1 out on vacation.
2     Q    Sometimes your email reply is called an
3 out of office message?
4     A    Correct.
5     Q    Can you just read to me the first line of
6 this document, which I'll mark as Exhibit 4?
7     A    I will be out of the office Monday May 14
8 to Friday May 18, 2018.
9         (Marked for identification, Defendant's
10 Exhibit 4, 05-16-2018 email.)
11 BY MS. CIESLAK:
12     Q    So Exhibit 4 completely confirms that you
13 were on vacation from May 14 through May 18, 2018,
14 correct?
15     A    Correct.
16     Q    I believe that you testified earlier that
17 you were afraid to complain to Allan about his
18 sexual comments around town hall because you were
19 afraid of losing your job.  That's accurate?
20     A    Correct.
21     Q    Is it fair to say that you were also
22 afraid to report his sexual comments to others for
23 fear that he would return to town hall after the
24 investigation?
25         MR. AMOS:  Objection.

Page 116

1     A    I'm sorry, could you repeat that question?
2 I got distracted.
3 BY MS. CIESLAK:
4     Q    No problem.
5         Is it fair to say that you were also
6 afraid to report his sexual comments to others
7 within town hall for fear that he was going to
8 return to town hall after the investigation?
9     A    Yes, that's correct.  That's correct.
10 BY MS. CIESLAK:
11     Q    And you were afraid that he would
12 retaliate against you if you spoke out against him
13 in town hall; is that correct?
14         MR. SHAFRAN:  Objection.
15     A    Yes, that's correct.
16         MS. CIESLAK:  I have no further questions.
17             CROSS EXAMINATION
18 BY MS. ZUCKER:
19     Q    Good afternoon, Ms. Ide.  My name is Ellen
20 Zucker and I represent Ms. Hall and her
21 counterclaim.  It's good to meet you.
22     A    Same to you.
23     Q    I'm sorry this has been such a long day.
24 I will try to keep it short.  Maybe famous last
25 words; but, let me do my best.

Page 125

1   MR. AMOS: You can answer.
2   A   Yes, I think that's correct.
3   BY MS. ZUCKER:
4   Q   So, when you spoke with others and you
5   learned that he had shared even more intimate
6   details about his sex life with others, that
7   confirmed for you that this was a man who shouldn't
8   be restored to his position as town administrator,
9   isn't that right?
10   MR. SHAFRAN: Objection.
11   A   Yes, I agree.
12   BY MS. ZUCKER:
13   Q   By the way, you were a little afraid of
14   him, weren't you?
15   MR. SHAFRAN: Objection.
16   A   Yes I was. He intimidated me.
17   BY MS. ZUCKER:
18   Q   And he's -- could you describe, just so
19   that it's in the record, what you see of him today
20   as you've tried to answer questions?
21   MR. SHAFRAN: Objection.
22   A   What I think of him today?
23   BY MS. ZUCKER:
24   Q   As you look on the screen, what do you
25   see? Do you see his full face?

Page 126

1   A   I'm trying not to. It's intimidating.
2   I've lost total respect. It's very sad that this is
3   what he's come down to.
4   Q   Even today, you see a shadow of his face,
5   but you can't even see him, right?
6   A   Correct.
7   MR. SHAFRAN: Objection.
8   BY MS. ZUCKER:
9   Q   That's a little intimidating, isn't it?
10   A   Yes, it is.
11   Q   Has that made it difficult for you today?
12   A   Yes, it has.
13   Q   Now, you were asked a kind of confusing
14   set of questions about what you remembered about
15   your conversation with Regina Ryan. I just want to
16   step back and see if I can just help to clarify
17   that.
18   MR. SHAFRAN: Objection.
19   BY MS. ZUCKER:
20   Q   You met with Ms. Ryan; isn't that right?
21   A   Yes, that's correct.
22   Q   If I understand your testimony correctly,
23   she asked you a series of questions, but you're not
24   clear what the exact contour of each question was;
25   is that right?

Page 127

1   A   That's correct.
2   Q   And you have a general memory, don't you,
3   of having spoken to her on a series of subjects
4   during the course of that discussion, right?
5   A   Yes.
6   Q   And your general memory -- you may not
7   remember the exact words you used, although you
8   certainly remember some of the events you described;
9   isn't that right?
10   A   Yes, that's correct.
11   Q   And when you were asked by counsel for
12   Mr. Chiocca to sort of go through the entire event,
13   you indicated that you couldn't do that. Do you
14   remember that?
15   A   Yes. Yes, and I apologize. I was --
16   Q   Why did you say that you couldn't kind of
17   go from the beginning of the conversation to the end
18   of the conversation giving him every detail in
19   between?
20   A   I was just getting confused. I was
21   feeling really intimidated and just really flustered
22   and nervous. I'm nervous.
23   Q   Okay. So, can you say generally what that
24   conversation with Ms. Ryan was about? Just give us
25   your best general summary of what the conversation

Page 128

1   was about.
2   A   Well, I know she asked me about the
3   October -- I'm sorry. May 18th phone call, about
4   the mood, Allan's demeanor at town hall in general.
5   I know I brought up, as we said, a comment he made
6   about Marcy and I, scissor sisters. I do remember
7   that.
8   Q   Did looking at notes help you remember --
9   refresh your memory when you were looking at them?
10   A   Yes. A little bit, Yes.
11   Q   Okay. Do you remember that you -- just
12   anything else you generally remember without
13   reference to any notes that can refresh your memory
14   more specifically? Anything else you generally
15   remember about that conversation? Take your time.
16   A   I know. I'm sorry.
17   Q   No, no. Don't apologize. This is hard.
18   A   Yeah no. I'm sorry.
19   Q   Okay. Do you remember you were asked
20   about whether you've described -- whether you
21   described to Ms. Ryan that you had a very good
22   relationship with Mr. Chiocca?
23   A   Right.
24   Q   Right?
25   A   Yes.

Page 137

1  agenda up.
2      Q    Okay.  So, Mr. Chiocca acted as though he
3  was, you know, the overseer of the board, not
4  someone who was controlled by them; is that fair?
5          MR. SHAFRAN:  Objection.
6      A    That's correct.
7          MS. ZUCKER:  I have no further questions.
8          MR. SHAFRAN:  I have no further questions,
9  either.
10         MR. AMOS:  Can we just take a two-minute
11 break for me to look at my notes real quick?
12         (Recessed from 2:29 p.m. until 2:33 p.m.)
13              CROSS EXAMINATION
14 BY MR. AMOS:
15     Q    Sue, I just have a couple questions for
16 you.
17         Did you at some point see
18 Regina Ryan's investigative report?
19     A    Yes, I did.
20     Q    Did you read it?
21     A    Yes.
22     Q    And were there things that you told Regina
23 during her interview of you that were not in the
24 report?
25     A    Yes.

Page 138

1          MR. SHAFRAN:  Objection.
2          MR. AMOS:  What's the objection?
3          MR. SHAFRAN:  It's on objection as to the
4  form of the question.
5          MR. AMOS:  What part of the form?  To see
6  if I need to rephrase it?
7          MR. SHAFRAN:  You're asking entirely
8  leading questions and she's not an adverse party or
9  a hostile witness.
10         MR. AMOS:  Well, my question wasn't
11 leading so I won't rephrase.
12 BY MR. AMOS:
13     Q    Ms. Ide, can you recall any of the things
14 that you told Ms. Ryan in the interview that were
15 not in the report?
16     A    I know my comment, scissor sisters, was
17 not in there, and I know I made that comment to
18 Regina Ryan.
19         I don't recall seeing my comments
20 about the atmosphere at town hall being in there.  I
21 think that's -- yeah, I can't remember.
22         MR. AMOS:  I have no other questions.
23         MR. SHAFRAN:  I just have one question.
24
25

Page 139

1              RECROSS EXAMINATION
2  BY MR. SHAFRAN:
3      Q    Do You recall describing to Regina Ryan
4  the atmosphere at town hall?
5      A    I believe I did, yes.
6          MR. SHAFRAN:  Okay.  I have no further
7  questions.
8          (Concluded at 2:35 p.m.)

Page 140

1           CERTIFICATE OF DEPONENT
2
3              I, SUSAN IDE, have read the
4  foregoing transcript of the testimony given at the
5  deposition on October 0, 2021, and it is true and
6  accurate to the best of my knowledge as originally
7  transcribed and/or with the changes as noted on the
8  attached Errata Sheet.
9
10
11
12                          _____
13                                  SUSAN IDE
14
15     Subscribed and sworn to before me this _____
16 day of _____, 2021
17
18
19                          _____
20 My commission expires:         Notary Public
21
22
23
24 CHIOCCA            ROCKLAND
   SUSAN IDE - October 1, 2021
25 (klv)