M

# In The Matter Of:

*Allan Chiocca vs.*
*The Town of Rockland, et al.*

*Richard E. Penney*
*Vol. I*
*August 19, 2021*



DORIS O. WONG ASSOCIATES, INC.
COURT REPORTERS

50 Franklin St., Boston, MA 02110
Phone (617) 426-2432

*Original File PENNEY_Richard.txt*
Min-U-Script® with Word Index

# Notes

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 4 of 11

Allan Chiocca vs.
The Town of Rockland, et al.

Richard E. Penney - Vol. I
August 19, 2021

Page 1

```
                            Volume I
                            Pages 1 to 126
                            Exhibits 1 to 2

            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                   :
 ALLAN CHIOCCA,                    :
         Plaintiff,                :
                                   :
     vs.                           : C.A. No.
                                   : 1:19-cv-10482-WGY
 THE TOWN OF ROCKLAND, DEIRDRE     :
 HALL, EDWARD KIMBALL, LARRY       :
 RYAN, MICHAEL MULLEN, JR.,        :
 MICHAEL O'LOUGHLIN, RICHARD       :
 PENNEY and KARA NYMAN,            :
         Defendants.               :
- - - - - - - - - - - - - - - - -x
```

        VIDEOCONFERENCE DEPOSITION OF RICHARD E.
PENNEY, appearing remotely from Rockland,
Massachusetts, a witness called by the Plaintiff,
taken pursuant to the Federal Rules of Civil
Procedure, before Alexander K. Loos, Registered
Diplomate Reporter and Notary Public in and for the
Commonwealth of Massachusetts, appearing remotely
from Melrose, Massachusetts, on Thursday, August 19,
2021, commencing at 9:33 a.m.

Page 2

PRESENT:

```
   VIA VIDEOCONFERENCE
   Rudolph Freidmann, LLP
       (By Adam J. Shafran, Esq.)
       E-mail: Ashafran@rflawyers.com
       92 State Street
       Boston, MA 02109
       617.723.7700
       for the Plaintiff.

   VIA VIDEOCONFERENCE
   Pierce, Davis & Perritano, LLP
       (By Jason W. Crotty, Esq.)
       E-mail: Jcrotty@piercedavis.com
       10 Post Office Square
       Suite 1100N
       Boston, MA 02109
       617.350.0950
       for the Defendants The Town of Rockland,
       Larry Ryan, Michael Mullen, Jr., Michael
       O'Loughlin, Richard Penney and Kara Nyman.

   VIA VIDEOCONFERENCE
   Rose Kallor, LLP
       (By Cindy M. Cieslak, Esq.)
       E-mail: Ccieslak@rosekallor.com
       750 Main Street
       Suite 1108-3
       Hartford, CT 06103
       860.361.7999
       for the Defendant and Plaintiff in
       Counterclaim Deirdre Hall.

   VIA VIDEOCONFERENCE
   Burns & Levinson, LLP
       (By Neerja Sharma, Esq.)
       E-mail: Nsharma@burnslev.com
       125 High Street
       Boston, MA 02110
       617.345.3000
       for the Defendant and Plaintiff in
       Counterclaim Deirdre Hall.
```

(Continued on the following page)

Page 3

PRESENT (Continued):

```
    VIA VIDEOCONFERENCE
        Todd & Weld, LLP
        (By Tara D. Dunn, Esq.)
        E-mail: Tdunn@toddweld.com
        One Federal Street
        Boston, MA 02110
        617.624.4748
        for the Defendant Edward Kimball.


    ALSO PRESENT: Allan Chiocca (Via videoconference)
                  Edward Kimball (Via videoconference)
```

                        * * * * *

Page 4

```
 1                    I N D E X
 2
 3   WITNESS              DIRECT   CROSS   REDIRECT   RECROSS
 4   RICHARD E. PENNEY
 5    BY MR. SHAFRAN         6               121
 6    BY MS. DUNN                    93
 7    BY MS. CIESLAK               113
 8    BY MS. SHARMA                118
 9
10                       * * * *
11                    E X H I B I T S
12   NO.             DESCRIPTION                      PAGE
13   Exhibit 1   MassLive article "Affairs, sex         63
                 at Town Hall, and a $40K
14               investigation; What's Going on
                 in Rockland?"
15
     Exhibit 2   Facebook post from                     87
16               Mr. O'Loughlin, dated 7/17/18,
                 and reply posts
17
18                       * * * *
19
20
21
22
23
24
```

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 5 of 11

Richard E. Penney - Vol. I
August 19, 2021
Allan Chiocca vs.
The Town of Rockland, et al.

Page 5

1     P R O C E E D I N G S
2           RICHARD E. PENNEY
3  a witness called for examination by the Plaintiff,
4  having been satisfactorily identified by the
5  production of his driver's license and being first
6  duly sworn by the Notary Public, was examined and
7  testified as follows:
8        MR. SHAFRAN: So, Jason, just before we
9  begin, as we've been doing, we'll put the same
10 stipulations on the record:
11       All objections, except as to the form of
12 the question, and motions to strike are reserved
13 until trial. The witness will have 30 days to read
14 the transcript and will waive the notary
15 requirement.
16       Correct?
17       MR. CROTTY: Yes.
18       And do you want to do an objection by one
19 is an objection by all, just as we've been doing?
20       MR. SHAFRAN: An objection by one is an
21 objection by all, that's fine.
22       MR. CROTTY: Okay.
23
24

Page 6

1         **DIRECT EXAMINATION**
2     **BY MR. SHAFRAN:**
3  Q.  Good morning, Mr. Penney.
4  **A.  Good morning.**
5  Q.  My name is Adam Shafran. I am Allan
6  Chiocca's counsel.
7      Can you please state your full name and
8  spell it for the record.
9  **A.  Richard Penney.**
10     **Do you need my middle name as well?**
11 Q.  Sure.
12 **A.  Richard Edward Penney.**
13 Q.  And --
14 **A.  R-i --**
15 Q.  -- can you spell that --
16     I'm sorry.
17 **A.  R-i-c-h-a-r-d E-d-w-a-r-d P-e-n-n-e-y.**
18 Q.  Thank you.
19     Have you been deposed before, Mr. Penney?
20 **A.  I have, yes.**
21 Q.  And how many times have you been deposed?
22 **A.  Once.**
23 Q.  Okay. So some of this may be what you've
24 heard before, but I just want to go over some of the

Page 7

1  basic ground rules for the deposition today so we're
2  on the same page as we proceed.
3       Okay?
4       Please answer all of my questions with a
5  verbal response -- a "yes," a "no," or whatever your
6  response is -- as opposed to any, you know, head
7  shaking or movements or anything to that effect so
8  the court reporter can get your response down.
9       Okay?
10 A.  Yes.
11 Q.  Okay. If you don't understand a question,
12 please let me know. If you answer my question, I'm
13 going to assume you understood it. So if you don't
14 understand anything about my question, just tell me,
15 and I'll try to rephrase it for you.
16 A.  Yes, sir.
17 Q.  Okay. Let's do our best to not talk over
18 each other. Obviously, it's Zoom, so it makes it
19 even a little more difficult than when we're in
20 person. I'll ask my question in full; I'll stop,
21 and I'll let you answer the question in full.
22      Okay?
23 A.  Yep. That's fine.
24 Q.  At the bottom of the screen here you'll see

Page 8

1  a button that says "chat." I'm sure you've done
2  plenty of Zooms over the last year and a half plus.
3  There may be times today when I want to show you a
4  document, and if I do that, what I will do is click
5  into the chat screen and I'll paste a link into the
6  chat bar and you'll be able to click it and bring it
7  up.
8       Okay?
9  A.  Okay.
10 Q.  If you have any problems, just let us know;
11 we'll fix that for you.
12      You understand you're under oath today?
13 A.  Yes.
14 Q.  And you understand that your testimony here
15 today is as if you were testifying in court?
16 A.  Yes.
17 Q.  Okay. Have you taken any medications or
18 any other substance that might impact your ability
19 to testify truthfully today?
20 A.  No.
21 Q.  Okay. How would you describe your memory?
22 A.  Okay.
23 Q.  Okay. Have you ever been diagnosed with
24 any memory-related conditions?

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 6 of 11

Allan Chiocca vs.
The Town of Rockland, et al.

Richard E. Penney - Vol. I
August 19, 2021

Page 49

1  Q. Okay. Did you have an understanding of
2  what Ms. Hall -- excuse me, of what Attorney Ryan
3  concluded as to Ms. Hall's allegations?
4  A. Yeah.
5  Q. What was your understanding at the time?
6  A. That, you know, that she had been drinking
7  and she wasn't fully capable of, you know, making,
8  you know, sound choices.
9  Q. That's your understanding of what --
10 A. In essence.
11 Q. I'm sorry.
12    That's your understanding of what Attorney
13 Ryan concluded in her report?
14 A. Oh, no. I'm sorry.
15    Yeah. That she was -- that she was a
16 victim and that --
17 Q. I want to make sure I'm understanding
18 correctly.
19    You understood, when you read the report in
20 July of 2018, that Attorney Ryan concluded that
21 Ms. Hall was the victim?
22 A. Oh, sorry. No.
23 Q. So --
24 A. When I read it in '18 -- honestly, as I

Page 50

1  read it in '18, through the media, I'm trying to
2  remember exactly what my thoughts were on that.
3  Q. Let me ask the question again.
4     So I want to make sure you're understanding
5  exactly what I'm asking you.
6  A. Okay.
7  Q. You said when the report was released
8  through the "Patriot Ledger" in July of 2018 --
9  A. Yeah.
10 Q. -- you read it in full at least one time,
11 right?
12 A. Yeah. I just went through the report.
13 Yep.
14 Q. Yes. And my question is, what was your
15 understanding of what Attorney Ryan found, what
16 she -- what did she conclude as to Ms. Hall's
17 allegations?
18    MR. CROTTY: Objection.
19    MS. SHARMA: Objection.
20 A. I honestly don't remember what Regina's
21 conclusion was at that point. There's -- it was --
22 I was more so focused on what -- what was happening
23 to the town by the whole incident. I didn't really
24 focus on what her -- her conclusion was, to be

Page 51

1  honest with you.
2  Q. Okay. Did you have an understanding of
3  what Attorney Ryan concluded as to Mr. Chiocca's
4  allegations?
5  A. I honestly don't.
6  Q. You didn't form -- you had no
7  understanding -- I'm not asking you -- my question
8  there is not what was your understanding. My
9  question is, when you read it in July of 2018, do
10 you recall having an understanding of what Attorney
11 Ryan concluded as to Mr. Chiocca's allegations?
12 A. Again, I didn't even focus on what her
13 conclusions were. To me it was irrelevant what her
14 conclusions were.
15 Q. Tell me --
16 A. It was both -- both were -- it shouldn't
17 have happened.
18 Q. Okay. Why did you believe Attorney Ryan's
19 conclusions were irrelevant?
20 A. As a citizen and at that time in July of
21 '18 --
22 Q. Yeah.
23 A. -- I wasn't -- I wasn't focused on what her
24 findings -- her specific findings were. At the end

Page 52

1  of the day, when that little -- the little clip came
2  out in the public of the video, and then the report
3  came out, the -- my opinion was all three of them
4  can't be representing the town, and that was my
5  whole focus. I didn't -- I didn't -- I didn't look
6  at who was -- what allegations were -- or, you know,
7  who was more at fault. I didn't -- I didn't look at
8  that.
9  Q. It didn't matter to you if one or the other
10 of their allegations were corroborated by an
11 independent investigator?
12 A. At that point, it really didn't matter.
13    MS. SHARMA: Objection.
14 Q. You were just going to draw your own
15 conclusions?
16    MR. CROTTY: Objection.
17 A. Well, the information that came out, the
18 conclusion I made was all of them could not be
19 representing us as a community.
20 Q. So --
21 A. That was my only conclusion.
22 Q. -- did you understand that the board, in
23 retaining Regina Ryan, asked Regina Ryan to make
24 recommendations to the board?

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 7 of 11

Allan Chiocca vs.
The Town of Rockland, et al.

Richard E. Penney - Vol. I
August 19, 2021

Page 57

1 report.
2      So being a member of the finance committee
3 and where I was, people did ask me. And the only --
4 the only thing that I ever said -- and I was pretty
5 consistent in this -- is that the whole thing is an
6 embarrassment to the town; we need to get this
7 behind us.
8      I never got into specifics on the report
9 with anyone.
10  Q.  Do you recall ever articulating an opinion
11 one way or the other after you read the report as to
12 what the town should do as to Mr. Chiocca's
13 employment status?
14  A.  Me -- did I articulate it to anyone?
15  Q.  Uh-huh.
16  A.  Not that I recall.
17  Q.  Did you form an opinion?
18  A.  I did.
19  Q.  And what was the opinion you formed?
20  A.  That he would no longer be able to be an
21 effective leader in the town of Rockland.
22  Q.  And you formed that opinion from reading
23 the report?
24      MR. CROTTY: Objection to form.

Page 58

1  A.  No.
2  Q.  What --
3  A.  That was just one of -- that was just one
4 of -- one of several things.
5  Q.  What else are you referring to?
6  A.  So the detail in the report certainly
7 played a part of it. But also the -- knowing
8 Mr. Chiocca to the extent that I did -- and again,
9 it was only on -- on a professional level, but I had
10 felt his -- his brand of leadership was -- was
11 starting to wear thin within the town, and I had
12 felt that for a little while.
13  Q.  Okay. Is there any other reasons than what
14 you've just described that caused you to form the
15 opinion, after you read the report, that Mr. Chiocca
16 shouldn't return to his employment with the town?
17  A.  Well, my personal opinion had already
18 started to form before the report and even before
19 this incident, quite honestly, that he was -- he was
20 becoming less and less of an effective leader in the
21 town.
22  Q.  For what reasons?
23  A.  So he certainly was contributing to a
24 culture within the town hall that was not conducive,

Page 59

1 I think, to a good work environment. He had
2 certainly, as he got more and more comfortable in
3 the role, became less and less willing to work with
4 others. He was -- he was very, very much -- at
5 least in my opinion -- "This is how we're going to
6 do it." You know, there were ins -- I'll give you a
7 simple example of -- of him and how he controlled
8 things and how he had kind of gone beyond just being
9 a town administrator.
10      He actually created parking tickets where
11 he would hand them out to -- to vehicles in the town
12 hall parking lot if they were parking in the parking
13 lot and they weren't there on official business.
14 And how I found that out was my wife actually got a
15 parking ticket on her vehicle that was given by
16 Mr. Chiocca.
17      That was -- I don't even know when that
18 was. '16/'17?
19      And those are the types of behaviors that,
20 as he became more and more comfortable in his role,
21 we were -- we were seeing more and more of, and I
22 was hearing more and more of.
23      So --
24  Q.  These -- okay.

Page 60

1      So these cultural issues around town hall
2 that you've just described, you were -- you were
3 aware of those issues prior to the events between
4 him and Ms. Hall?
5  A.  I was aware of some of them, yeah.
6 Absolutely.
7  Q.  Okay. Did you have any understanding,
8 prior to being elected to the board, of how the
9 town -- excuse me, of how the board of selectmen
10 intended to remedy those issues?
11  A.  No.
12      MR. CROTTY: Objection.
13  Q.  You had no understanding, did you?
14  A.  Of -- of the board of selectmen before I
15 was on?
16  Q.  So you just described a bunch of culture --
17 what you've described as cultural issues around town
18 hall that Mr. Chiocca was creating, right?
19  A.  Yes.
20  Q.  And you were aware of many of those issues
21 prior to the events in question, right?
22  A.  Yes. Yep.
23  Q.  And my question is, did you have any
24 knowledge of how the board of selectmen intended to

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 8 of 11

Allan Chiocca vs.
The Town of Rockland, et al.

Richard E. Penney - Vol. I
August 19, 2021

Page 65

1   Q. So what -- what did you mean by that when
2 you said -- when you said what you said there?
3   A. Exactly what I said. There must be
4 something that the board members know.
5   Q. Why -- why, in your mind, must there
6 have -- why, in your mind, must there have been
7 something the board members knew that town residents
8 didn't?
9   A. Well, we know that the report was redacted,
10 so there was information in -- in what was released
11 to the public that the public wasn't aware of.
12   Q. Uh-huh.
13   A. And I also was making an assumption that
14 there were other things going on that the
15 townspeople didn't know, whether it's other
16 information that they had, whether it's, you know,
17 direction from legal counsel.
18      That was it.
19   Q. Well, you had read everything, right, the
20 redacted version of the report at that time, as you
21 said, right?
22   A. I had -- I had read the report once that
23 was made public to the people, yes.
24   Q. Right.

Page 66

1      And having read that, you still,
2 nonetheless, said to this reporter, that there had
3 to be something else beyond that, that you and the
4 members of the public --
5   A. I knew -- I knew for a fact that there was
6 information in the report that -- that we, as public
7 citizens, did not see. That's why I said that. I
8 knew that the board of selectmen had more
9 information than we did in the public, because we
10 had a redacted report. I was assuming they had a
11 report that wasn't redacted. Thus they would have
12 more information than we would in the public.
13   Q. And why would that be of relevance? I
14 mean, why did you articulate that to Ms. Tempera?
15      MR. CROTTY: Objection.
16   A. Because they would have more information
17 than the general public would, so they would have a
18 better understanding on what to do going forward.
19   Q. You weren't able to make that understanding
20 because you didn't think you had the same amount of
21 information that the board had, right?
22   A. Correct.
23   Q. All right.
24      You were elected to the board in November

Page 67

1 of 2018, correct?
2   A. Correct.
3   Q. On election day in November of 2018, right?
4 That was the day you were elected, election day in
5 2018?
6   A. Yeah. It was in November, yes.
7   Q. Okay. And you understood, when you were
8 elected, that the board of selectmen is the town's
9 highest governing body, right?
10   A. Correct.
11   Q. And you understood at that time that the
12 town administrator reported to the board of
13 selectmen, correct?
14   A. Correct.
15   Q. You understood that the board of selectmen
16 over -- oversaw the town administrator's employment,
17 correct?
18   A. Correct.
19   Q. And you understood that the board made
20 decisions for the town through the collective vote
21 of its members, correct?
22   A. Correct.
23   Q. And you understood that the vote, the
24 outcome of a vote, would dictate the course of

Page 68

1 action the town is to take with respect to the issue
2 being voted on, correct?
3   A. Correct.
4   Q. Okay. After -- after you were elected,
5 what materials do you recall reviewing related to
6 the Hall/Chiocca allegations that you had not
7 reviewed prior to your election?
8   A. I got the unredacted report of -- Regina
9 Ryan's report.
10   Q. Okay. Do you recall the only information
11 that was redacted was medical-related information,
12 right?
13   A. Yeah, it was.
14      MS. SHARMA: Objection.
15   A. There was more specifics in it.
16   Q. There was nothing that was redacted that
17 related to actually the events that occurred that
18 evening, right?
19      MR. CROTTY: Objection.
20   A. Not that I recall, correct.
21   Q. Okay. So you just said after you were
22 elected you had the opportunity to read the
23 unredacted report, right?
24   A. (Nodding head)

Case 1:19-cv-10482-WGY   Document 161-13   Filed 11/15/21   Page 9 of 11

Richard E. Penney - Vol. I
August 19, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 77

1   A. That's what I recall of the previous board.
2   Q. Okay.
3   A. And then -- then everything happened.
4   Q. That's the full scope of what you recall?
5   A. That's the full scope of what I recall,
6   yeah.
7   Q. Okay. After you joined the board, but
8   before you -- you made your vote not to extend
9   Mr. Chiocca's contract, do you recall having
10  discussions with the board about alleged poor
11  culture that Mr. Chiocca had created at town hall?
12  Putting aside totally the alleged events between
13  Hall and Chiocca.
14  A. Yeah. Not only discussions with the board,
15  but I also had my own opinions that I had -- had
16  been formed, I even said it earlier, that -- of
17  interactions that I had --
18  Q. Okay.
19  A. -- before I was anything, yeah.
20  Q. And nobody on the board, as it existed when
21  you joined, informed you that, prior to the events
22  of May 1st, that the board was planning to address
23  those issues by setting goals and objectives for
24  Mr. Chiocca, correct?

Page 78

1       MR. CROTTY: Objection.
2   A. I -- I don't honestly recall.
3       I know that there was some conversations --
4   I know that we had discussed, going forward, that we
5   needed to set goals and objectives not only for this
6   position but other positions in town, because it was
7   something that, you know, was not routinely done.
8   So I can't tell you if we -- if it was specific
9   about Allan previously, but I know we had had
10  discussions about, going forward, we needed to set
11  goals and objectives and do reviews going forward.
12  Q. When you were elected, once you knew you
13  were elected, but before you had attended any board
14  meetings, had you already come to your own personal
15  conclusion that Mr. Chiocca's employment should end?
16  A. No. I -- my only personal opinion at that
17  point was I knew we had a cultural issue. And, like
18  I said, I had felt, over the last couple of years,
19  that his effectiveness in this position was -- was
20  starting to wane.
21  Q. Okay. But when you walked into the first
22  board meeting, you had not yet formed a conclusion
23  as to whether Mr. Chiocca's employment should
24  continue with the town?

Page 79

1   A. I had not made a definite conclusion yet,
2   no.
3   Q. Okay. And the only information you recall
4   specifically, today, discussing at the board
5   meetings you attended before you voted on his
6   contract, the only specific things you recall being
7   informed as to Mr. Chiocca's contract was that there
8   were discussions prior to the events of May 1st
9   about his contract, but no determinations had been
10  made as to whether or not the board was going to
11  extend it.
12      Is that right?
13      MR. CROTTY: Objection.
14  A. At least as far as I'm aware, yeah. Yep.
15  Q. Okay. So when you joined the board, did
16  you have an understanding -- let -- strike that.
17      At any point prior to your election, did
18  you have an understanding as to whether Mr. Ryan,
19  Mr. O'Loughlin or Mr. Mullen felt that Mr. Chiocca's
20  employment should end?
21  A. I never had personal conversations with any
22  of them regarding that.
23  Q. Had you read anything in the news about
24  whether they had articulated an opinion on that?

Page 80

1   A. I -- I know Mr. Ryan had an opinion.
2   Q. What is your understanding of what
3   Mr. Ryan's opinion was?
4   A. I mean -- and, again, it was just what was
5   in the paper or social media.
6   Q. That's fine.
7   A. Yeah. Just reading what -- you know, what
8   he was saying, I came to the conclusion that he
9   certainly did not want Mr. Chiocca as town
10  administrator going forward.
11  Q. And you recall it was reported in the paper
12  that Mr. Ryan said that the thought process of the
13  board at that time -- which was just the three
14  individuals -- was unanimous, correct?
15      MR. CROTTY: Objection.
16  A. I take what -- I take what people say with
17  a grain of salt.
18  Q. Well, you knew, at the time that you joined
19  the board, that Mr. Chiocca's employment status
20  couldn't change without a fourth vote, right?
21  A. Correct.
22  Q. You knew that?
23  A. Yep.
24  Q. And you knew that Mr. Ryan -- or had read

Case 1:19-cv-10482-WGY  Document 161-13  Filed 11/15/21  Page 10 of 11

Allan Chiocca vs.
The Town of Rockland, et al.

Richard E. Penney - Vol. I
August 19, 2021

Page 97

1  of that had nothing to do with the allegations on
2  May 1st, 2018?
3     A.  On that specific night, yes, I agree with
4  that.  Yeah.
5     Q.  Okay.
6     A.  Yep.
7     Q.  Did you disagree with Regina Ryan's
8  conclusions?
9     A.  So yeah.  There were parts of that that I
10 found difficult to -- to agree with.  But I also
11 think that she was limited in, you know, getting
12 information from one party.
13        But at the end of the day, I found it very
14 difficult at all to find that, you know, Mr. Chiocca
15 did anything that Mr. Chiocca didn't want to do.
16 Just knowing him and, you know, from the extent I
17 know him, he's not a man that would do anything that
18 he did not want to do.
19    Q.  Okay.  Could you expand on that a little
20 bit?
21    A.  You know, reading the report -- and again,
22 I've now read it twice.  You know, my -- my thought
23 is that it certainly kind of went down the road of
24 Mr. Chiocca being somewhat of a victim, and I

Page 98

1  just -- knowing Mr. Chiocca, I just found that hard
2  to believe.
3        No matter what was in the report, I just,
4  me personally, found it very, very hard to believe
5  that whatever -- whatever happened that night, if
6  Allan didn't want it to happen, it wouldn't have
7  happened.  That's just my own opinion.
8     Q.  Okay.  And you found it hard to believe
9  because he was always in control of what he wanted?
10    A.  Always.
11    Q.  Okay.  You mentioned that Regina Ryan was
12 limited in the investigation.
13        What do you mean by that?
14    A.  I don't mean she was limited.  I mean
15 obviously one of the parties didn't have as much
16 recollection of that night as the other.  So that's
17 what I mean is, I think with the information, I
18 think she did a good job of trying to extract as
19 much information as possible.  I just think she
20 didn't get an equal amount of information from both
21 parties for whatever reason.
22    Q.  So in your opinion, since she didn't get
23 equal amount of information from both parties, her
24 conclusions were incomplete?

Page 99

1     A.  I think her conclusions were complete based
2  on what she had to make a conclusion of.
3     Q.  But you would agree that Ms. Hall's account
4  was not fully indicated in the report?
5     A.  Yeah.  It seemed to be that there were a
6  lot of -- there were a lot more gaps in her
7  recollection of the night.
8     Q.  Okay.  Let's talk a little bit about -- you
9  mentioned that Regina arrived at a -- she did a good
10 job with what she had.
11        Why do you think she did a good job?
12    A.  So again, being a lay person and not having
13 a whole lot of experience with investigations, it
14 certainly seemed like there was a lot of time, a lot
15 of detail.  There was conversations with all of the
16 parties involved.  It was a lot of detail in the
17 report.
18        So it certainly looked like, you know --
19 and, again, based on, you know, my knowledge, you
20 know, she -- she was qualified to do it, and
21 certainly had a lot of information in that report.
22 So that's what I'm basing my conclusion that she,
23 you know, did a good job.
24    Q.  So when you became a member of the board,

Page 100

1  were you aware that, during Regina Ryan's
2  investigation, she did not include a lot of the
3  information from the interviews in the report?
4        MR. SHAFRAN:  Objection.
5     A.  No.
6     Q.  Okay.  Were you aware that evidence was
7  left out of the report that was produced by the
8  restaurant?
9     A.  No.
10    Q.  Were you aware that Regina Ryan did not ask
11 questions about Mr. Chiocca's behavior, you know,
12 outside of that night in terms of the climate that
13 he created in the workplace?
14        MR. SHAFRAN:  Objection.
15    A.  I don't think that was asked of her to do
16 that, so I wouldn't have expected her to do that, I
17 guess.
18    Q.  Do you think that Mr. Chiocca's behavior
19 towards women prior to the night of May 1st is
20 relevant to the allegations?
21    A.  I don't -- I don't know if it's relevant to
22 it.  It certainly is something that I was aware
23 of -- several people were aware of.  And, quite
24 honestly, why I said earlier why, you know, the

Case 1:19-cv-10482-WGY Document 161-13 Filed 11/15/21 Page 11 of 11
Allan Chiocca vs.
The Town of Rockland, et al.
Richard E. Penney - Vol. I
August 19, 2021

Page 121

1 **MR. SHAFRAN:** I have just 45 seconds of
2 follow-up questions, okay, and then we're done.
3    Unless anyone has...
4 **MR. CROTTY:** Yeah. Go ahead.
5    **REDIRECT EXAMINATION**
6 **BY MR. SHAFRAN:**
7 Q. You've never conducted a workplace
8 investigation, have you, Mr. Penney?
9 A. Have I? No.
10 Q. You've never been trained in how to conduct
11 one?
12 A. No.
13 Q. Never had to conduct an investigation of a
14 sexual harassment claim, correct?
15 A. No.
16 Q. You're not an attorney, right?
17 A. Nope.
18 Q. Do you know what the legal definition of
19 sexual harassment is?
20 **A. I do not know the legal definition, no.**
21 Q. Do you have any experience in applying a
22 set of facts to make a determination as to whether
23 those facts meet the legal definition of sexual
24 harassment?

Page 122

1 A. No.
2 **MR. SHAFRAN:** Okay. I have no further
3 questions. Thank you.
4    Thank you, Mr. Penney.
5 **THE WITNESS:** Thank you.
6 **MR. CROTTY:** All right.
7    Rich, you can sign off. Thank you for your
8 time this morning.
9    (Whereupon, the deposition was
10    concluded at 12:19 p.m.)

Page 123

1          C E R T I F I C A T E
2    I, RICHARD E. PENNEY, do hereby certify that I
3 have read the foregoing transcript of my testimony,
4 and further certify under the pains and penalties of
5 perjury that said transcript (with/without)
6 suggested corrections is a true and accurate record
7 of said testimony.
8    Dated at _____, this ____ day of _____,
9 2021.

11             _____

Page 124

1         SUGGESTED CORRECTIONS
2 RE: ALLAN CHIOCCA vs. THE TOWN OF ROCKLAND, DEIRDRE
  HALL, EDWARD KIMBALL, LARRY RYAN, MICHAEL MULLEN,
3 JR., MICHAEL O'LOUGHLIN, RICHARD PENNEY and KARA
  NYMAN
4
  WITNESS: RICHARD E. PENNEY, Vol. I
5
  The above-named witness wishes to make the following
6 changes to the testimony as originally given:
7 PAGE  LINE     SHOULD READ            REASON
8 ____  ____  _____  _____
9 ____  ____  _____  _____
10 ____ ____  _____  _____
11 ____ ____  _____  _____
12 ____ ____  _____  _____
13 ____ ____  _____  _____
14 ____ ____  _____  _____
15 ____ ____  _____  _____
16 ____ ____  _____  _____
17 ____ ____  _____  _____
18 ____ ____  _____  _____
19 ____ ____  _____  _____
20 ____ ____  _____  _____
21 ____ ____  _____  _____
22 ____ ____  _____  _____
23 ____ ____  _____  _____
24 ____ ____  _____  _____