UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Allan Chiocca,**

        **Plaintiff**

        **v.**                       **Civ. A. No.: 1:19–cv–10482–WGY**

**The Town of Rockland, Deirdre Hall,
Edward Kimball, Larry Ryan,
Michael Mullen Jr., Michael O'Loughlin,
Richard Penney, and Kara Nyman**

        **Defendants**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**PLAINTIFF/COUNTERCLAIM DEFENDANT ALLAN CHIOCCA'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON HIS CLAIMS AND IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON DEFENDANT DEIRDRE HALL'S AND EDWARD KIMBALL'S COUNTERCLAIMS**</u>

        Pursuant to Local Rule 56.1, Plaintiff Allan Chiocca ("Mr. Chiocca") submits this concise statement of materials facts as to which he contends there are no genuine issues of material fact.[1]

<u>**Background**</u>

        1.      Mr. Chiocca began his employment as the Town Administrator for the Town of Rockland, Massachusetts in March of 2008. *See* Allan Chiocca Employment Contracts with the Town of Rockland, Plaintiff's Response to First Request for Production of Document, Response No. 7, AC 00254-00339, AC 00668-00729, attached to the Declaration of Samantha C. Halem ("Halem Decl.") as Exhibit A.

---

[1] Mr. Chiocca reserves the right to assets additional and/or different facts in any subsequent proceeding.

2.      Mr. Chiocca's contract was renewed in 2009 and several times thereafter. *See id.*, AC00254-00339, AC 00668-00722.

3.      Mr. Chiocca's most recent three-year contract ("2016 Contract") with the Town of Rockland ("the Town") was entered into on January 5, 2016 and was slated to run through on June 30, 2019.  *See id.*  at AC00254-00262 and AC 00668-00676.

4.      The Town understands that the 2016 Contract sets forth the terms and conditions of Mr. Chiocca's employment with the Town. See Fed. R. Civ. P. 30 (b)(6) deposition transcript, attached to the Declaration of Samantha C. Halem as Exhibit B, ("Town Depo.") at 110:5-8.

5.      The Town understands that the rights and obligations set forth in the 2016 Contract only govern Mr. Chiocca's employment, and no other Town employee's employment. *See id.* at 125:11-17.

6.      The 2016 Contract contains a section governing the Town's right to suspend Mr. Chiocca. It states:

> Employer may suspend the Employee for good cause, with pay and benefits, at any time during the term of this agreement, in accordance with Section 2.18(a) of the Rockland Town Charter (as amended by Chapter 58 of the Acts of 2005).

*See* Halem Decl. Ex. A.

7.      Section 2.18(a) of the Rockland Town Charter as amended by Chapter 48 of the Acts of 2005 states in relevant part:

> The board of selectmen by affirmative vote of at least 4 members may suspend or remove the town administrator from office. If the board of selectmen affirmatively votes to suspend or remove the town's administrator, the board shall give at least 60 days' notice as to the effective date of his suspension or termination, or provide 60 days of severance pay, or a combination of both notice and severance pay equivalent to at least 60 days. At least 30 days before the proposed suspension or termination becomes effective the board of selectmen shall file a preliminary written resolution with the town clerk setting

forth in detail the specific reason for the proposed suspension or termination. A copy of the resolution shall be delivered to the town administrator. The town administrator may within 10 days of service of the resolution, reply in writing to the resolution and may request a public hearing. If the town administrator so requests, the board of selectmen shall hold a public hearing not earlier than 20 days nor later than 30 days after the filing of the request. After the public hearing, if any, otherwise at the expiration of 30 days following the filing of the preliminary resolution, the selectmen may suspend or terminate the town administrator from duty.

*See* Section 2.18(a) of the Rockland Town Charter as amended by Chapter 48 of the Acts of 2005, attached to the Declaration of Samantha C. Halem as Exhibit C.

8.      The Town is governed by an elected and unpaid volunteer five-member Board of Selectmen ("Board"). *See* Halem Decl. Ex. B, Town Depo.at 18:24-19:9.

9.      The Board does not have the power to force any of its members to resign or step down from their position on the Board. *See* Deposition of Edward Kimball transcript, attached to the Declaration of Samantha C. Halem as Exhibit D ("Kimball Depo."), Vol. I at 119:14 – 124:22.

10.      Defendant Edward Kimball ("Mr. Kimball") was first elected to the Board in April of 2010. *See* Halem Decl. Ex. D, Kimball Depo., Vol. I at 51:9-11

11.      Defendant Deirdre Hall ("Ms. Hall") was elected to the Board in April 2017. *See* Deposition of Deirdre Hall transcript, attached to the Declaration of Samantha C. Halem as Exhibit E ("Hall Depo."), Vol. I at 52:24-53:9.

12.      Ms. Hall was also a candidate for State Representative for the Fifth Plymouth District in the winter and spring of 2018. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 43:20-24.

13.      Defendant Larry Ryan ("Mr. Ryan") was first elected to the Board in April of 2012. *See* Deposition of Larry Ryan transcript, attached to the Declaration of Samantha C. Halem as Exhibit F ("L. Ryan Depo.") at 32:8 - 33:6.

14.     Defendant Michael Mullen, Jr. ("Mr. Mullen") was first elected to the Board in the spring of 2016. *See* Deposition of Michael Mullen, Jr. transcript, attached to the Declaration of Samantha C. Halem as Exhibit G ("Mullen Depo.") at 16:18-19.

15.     Defendant Michael O'Loughlin ("Mr. O'Loughlin") was first elected to the Board in the spring of 2017. *See* Deposition of Michael O'Loughlin transcript, attached to the Declaration of Samantha C. Halem as Exhibit H ("O'Loughlin Depo.") at 23:15 – 24:19.

16.     In the spring of 2018, the Board was comprised of Mr. Kimball, Ms. Hall, Mr. Ryan, Mr. Mullen, and Mr. O'Loughlin. *Compare* Plaintiff's Complaint attached to the Declaration of Samantha C. Halem as Exhibit I, at ¶ 19 with Rockland Answer to Complaint attached to the Declaration of Samantha C. Halem as Exhibit J at ¶ 19 (admitting allegation).

17.     On May 1, 2018, Mr. Kimball was the Chairman of the Board. *See* Halem Decl. Ex. D, Kimball Depo. Vol. I at 54:1-5.

18.     On May 1, 2018, Ms. Hall was Vice-Chairman of the Board. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 56:7-10.

19.     The unpaid members of the Board are the highest elected officials in the Town. *See* Halem Decl. Ex. B, Town Depo. at 18:24 – 19:9.

20.     The members of the Board are unpaid volunteers. *See* Town of Rockland Board Minutes of June 5, 2018, attached to the Declaration of Samantha C. Halem as Exhibit K, at Attachment 1.

21.     The Town Administrator reports to the Board, which was the case when Mr. Chiocca was the Town Administrator. *See* Halem Decl. Ex. B, Town Depo. at 24:21 – 25:2.

22.     The Board oversees the Town Administrator's employment, which was the case when Mr. Chiocca was the Town Administrator. *See id*. at 25:3-8.

23.     The Board has the authority to, *inter alia*, hire the Town Administrator, fire the Town Administrator, extend or not extend the Town Administrator's contract, and review the Town Administrator's performance. *See* Halem Decl. Ex. F, L. Ryan Depo. at 28:11-23.

24.     As a member of the Board, Ms. Hall was one of Mr. Chiocca's supervisors. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 62:15-21; Halem Decl. Ex. D, Kimball Depo. Vol. I at 62:19 – 63:1; Halem Decl. Ex. F, L. Ryan Depo. at 144:4-6; *compare* Exhibit I at ¶ 24 *with* Exhibit J at ¶ 24 (admitting allegation).

25.     Ms. Hall and Mr. Chiocca had a somewhat tense relationship. They were able to work together, despite disagreeing on some issues. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 60:12-62:4, 94:1-97:8; Deposition of John Clifford, Esq., attached to the Declaration of Samantha C. Halem as Exhibit L ("Clifford Depo."), at 35:5-24.

26.     Prior to May 1, 2018, Ms. Hall did not feel fearful of or intimidated by Mr. Chiocca. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 69:6-10.

27.     During the spring of 2018, the Board was actively reviewing Mr. Chiocca's request for a contract extension and salary increase. *See* Deposition of Allan Chiocca transcript, attached to the Declaration of Samantha C. Halem as Exhibit M ("Chiocca Depo."), Day 1 at 136:3-11; Halem Decl. Ex. F, L. Ryan Depo.at 65:1 – 68:11 and Ex. 6; Halem Decl. Ex. D, Kimball Depo. Vol. I at 65:9 - 68:17, 238:17-22, 240:7 – 241:2.

28.     This proposed contract extension and raise was the first one for Mr. Chiocca considered by the Board since Ms. Hall's election to the Board. *See* Halem Decl. Ex. A; Halem Decl. Ex. E, Hall Depo. Vol. I at 52:24-53:9 (Ms. Hall elected to Board in 2017, a year later).

29.     Ms. Hall declared her candidacy for State Representative in January of 2018. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 43:21 - 44:7.

30.     Ms. Hall and Mr. Kimball carried on a "physical and emotional affair" beginning in March and continuing through April of 2018. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 98:20 - 101:15; *see also* Halem Decl. Ex. D, Kimball Depo. Vol. I at 29:24 - 30:3, 71:6-15, 123:7 - 124:24, 129:4-24.

31.     After the affair ended at Mr. Kimball's behest, Ms. Hall and Mr. Kimball continued to speak to each other on the phone, via text and email, and at occasional in-person meetings both with and without others present. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 104:12 - 106:17, 108:13 - 112:6, 114:6 - 116:21, 119:17 - 120:8, 149:14 - 152:10; *see also* Halem Decl. Ex. E, Kimball Depo. Vol. I, at 31:17 – 32:11, 74:6-20; Vol. II at 23:9 - 28:18, 34:14-22, 36:8 - 37:18, 39:17 – 42:4, 43:4 - 47:23, 53:9 - 55:3, 58:19 - 60:17, 94:6 - 96:10.

### May 1, 2018

32.     On or around May 1, 2018, Mr. Kimball's wife, Dawn Kimball ("Ms. Kimball") discovered the affair and confronted Ms. Hall via a series of text messages. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 104:4-7, 126:3-6, and Ex. 4; Halem Decl. Ex. D, Kimball Depo. Ex. 1.

33.     Board Chair Mr. Kimball did not attend the Board meeting on May 1, 2018, at the request of his wife, and Ms. Hall stepped up as Vice Chair to run the meeting. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 154:19 - 156:5; Halem Decl. Ex. D, Kimball Depo. Vol. I at 94:19 - 95:3.

34.     During the Board meeting, Ms. Hall received a text from Ms. Kimball which read "I know what happened. You make me sick." She was in the middle of running the meeting and did not respond to this text. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 134:12 - 135:10, 154:19 - 155:20 and Ex. 4.

35.     It was customary for some members of the Board and other attendees of the Board meetings to go out for drinks after their regular meetings, often at the Rockland Bar & Grill. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 157:9 -158:11; Halem Decl. Ex. D, Kimball Depo. Vol. I at 98:18 - 100:3.

36.     After the Board meeting on the evening of May 1, 2018, Ms. Hall and Mr. Chiocca went to the Rockland Bar & Grill for drinks. Ultimately, no one joined them. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 157:1-158:4.

37.     While Ms. Hall was at the Rockland Bar & Grill, she exchanged texts with her husband, Chris Hall ("Mr. Hall") and received additional texts from Ms. Kimball. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 126:3-18, 134:12-135:10, 166:22 – 169:15 and Ex. 4.

38.     Ms. Hall asked Mr. Chiocca if she could use his cell phone to check social media on a town Facebook site that she did not have access to on her phone. Mr. Chiocca obliged. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 160:10 -161:12.

39.     At approximately 8:00 p.m., Mr. Kimball called Ms. Hall to advise her that he had told his wife about the physical nature of the affair and "not to worry about [his] wife." *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 126:23 -127:11, 140:16 -141:2, 162:6 - 163:23; *see also* Halem Decl. Ex. D, Kimball Depo. Vol. I at 111:19 – 112:14, 119:7 – 120:24.

40.     Ms. Hall was concerned about what Ms. Kimball would do and specifically whether she would spread the information around on social media. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 127:1-15, 140:24 -141:5, 163:4-13.

41.     Ms. Kimball wrote Ms. Hall a text at approximately 8:33 p.m. stating "Yes this is Dawn [Kimball]. Did you really think I wouldn't find out? Your [sic] a disgusting human. The both of you are disgusting. I'm not about threatening anyone just so you know. But I haven't

decided how I am going to handle this. 35 years of marriage now means nothing and I have you to thank for that." *See id.* at Ex. 4.

42.     Despite the fact that they were not close friends, Ms. Hall confided in Mr. Chiocca about her affair with Mr. Kimball, although she does not recall the specific point in the conversation at which she told him. *See id.* at 60:12 – 62:10, 123:21 -126:22, 145:13 -148:6.

43.     Just after 9:00 p.m., after both parties had consumed multiple drinks and food, Ms. Hall texted her husband, Mr. Hall, saying "I'm having drinks with Allan. Be ready for me because I am going to want you." *See id.* at 167:19 -169:20 and Ex. 5.

44.     At some point in the evening, Mr. Chiocca and Ms. Hall left the Rockland Bar & Grill and drove to another restaurant, the Banner Pub, and he and Ms. Hall sat in Mr. Chiocca's car in the parking lot. *See id.* at 171:22 - 172:19, 185:2 -187:24.

45.     After sitting in the parking lot at the Banner Pub, Mr. Chiocca and Ms. Hall drove to the Rockland Town Hall. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 20:24 - 21:9.

46.     At approximately 11:45 p.m., Mr. Chiocca and Ms. Hall entered the Town Hall building and Ms. Hall used the restroom. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 222:7-14; *see also* Surveillance Video from Rockland Town Hall, May 1-2, 2018, referenced in the Declaration of Samantha C. Halem as Exhibit N.

47.     Ms. Hall and Mr. Chiocca then left the Town Hall but continued to talk on the stairway leading down to the parking lot. They spoke at the top of the staircase for approximately seven minutes. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 223:4 – 229:10; Halem Decl. Ex. N.

48.     Eventually, they both reentered Town Hall and went into Mr. Chiocca's office. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 229:8 – 230:12, 236:4-12, 242:6-13.

49.     Mr. Chiocca left his office to retrieve items from the women's restroom (Ms. Hall's purse, at her request) and his car. *See id.* at 238.

50.     When Mr. Chiocca returned, he opened a bottle of wine that he had received as a gift from another town employee, Marcy Birmingham, earlier that day. *See* Deposition of Marcia Birmingham transcript, attached to the Declaration of Samantha C. Halem as Exhibit O ("Birmingham Depo."), at 120:20 – 121:4; *see also* Halem Decl. Ex. M, Chiocca Depo. Day 1 at 235:14-22, 284:20-23.

51.     In pouring the wine, Mr. Chiocca spilled some of it on the table and the floor. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 21:21 – 23:11.

52.     At some point, Ms. Hall performed oral sex on Mr. Chiocca, although Ms. Hall testified that she does not remember how Mr. Chiocca's penis got into her mouth. *See* Halem Decl. Ex. E, Hall Depo. Vol, I at 247:46, 252:12 -257:10.

53.     Ms. Hall states that Mr. Chiocca touched her breasts outside her shirt but has no memory of Mr. Chiocca touching her anywhere else on her body besides her breasts. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 26:24 – 27:1; 103:10-13. This memory did not allegedly come back to Ms. Hall until the winter of 2018 or 2019. *See id.* at 27:5-15.

54.     Ms. Hall has no memory of resisting or saying "no" to any physical contact between herself and Mr. Chiocca. *See* Halem Decl. Ex. E, Hall Depo. Vol. I 78:1-12, 124:3 - 126:22, 167:6-8, 169:16-20, 171:19 – 173:6, 177:8 – 179:12, 180:11 – 181:12, 182:10 – 187:24, 188:12-16, 191:2 – 192:4, 195:13 – 196:11, 197:15 – 209:11, 212:18[2] – 214:24, 218:17 – 219:9, 220:4-16, 221:1 – 224:11, 225:21 – 228:1, 228:8 – 233:3, 235:24 – 240:11, 242:10 – 262:6 and Vol. II at 10:12 – 13:22, 14:10 – 15:5, 19:22 – 24:2, 26:22 – 27:18, 35:18-20, 38:6 – 39:5, 40:12

---

[2] Page 212 of Ms. Hall's deposition is not included in Exhibit E but has been filed under seal by Ms. Hall.

– 41:3, 47:17-19, 48:3 – 50:8, 52:21 – 54:6, 55:8 – 58:17, 75:7 -23, 94:15 – 95:4, 103:10-13, 243:10 – 244:1, 245:10 – 246:1, 247:7-16, *see also* Deirdre Hall's Answers to Plaintiff's Revised Interrogatories, attached to the Declaration of Samantha C. Halem as Exhibit P, at Response No. 14.

55.     Ms. Hall and Mr. Chiocca left Town Hall shortly after 2:00 a.m. *See* Halem Decl. Ex. N; *see also* Halem Decl. Ex. E, Hall Depo. Vol. II at 39:6-10.

56.     Mr. Chiocca dropped Ms. Hall off at the Rockland Bar & Grill to retrieve her car, and they both drove to their respective homes. *See* Halem Decl. Ex. M, Chiocca Depo. Day 1 at 246:2-7.

57.     Ms. Hall arrived at home at 2:20 a.m. on May 2, 2018 and shortly thereafter, texted Mr. Hall, saying "love you. it gonna be a tough ride the next couple of weeks ttyl." *See* Halem Decl. Ex. E, Hall Depo. Ex. 5.

58.     After her return home, Ms. Hall and her husband had a conversation, but Ms. Hall claims to have no memory of what was said in this conversation. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 169:16-20, 191:9-11 and Vol. II at 48:3 – 50:8.

**The Next Day (May 2, 2018)**

59.     When Ms. Hall awoke on the morning of May 2, 2018, she claimed to have no memory of the prior evening past the point of being at the Rockland Bar & Grill except for Mr. Chiocca putting the door code in to access Town Hall. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 195:10 - 197:21, 226:17 – 227:14.

60.     On the morning of May 2, Ms. Hall e-mailed Mr. Chiocca and requested a meeting. He agreed to meet with her. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 10:5 – 11:17.

61.     During this conversation, Ms. Hall asked Mr. Chiocca for "discretion" relating to the events of the previous evening. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 11:18 - 12:12.

62.     Mr. Chiocca referred to Ms. Hall as a "predator" and "the aggressor" in the May 1-2, 2018 encounter. *See* Halem Decl. Ex. E, Hall Depo. Vol. II. at 13:10-22.

**The Aftermath**

63.     On May 4, 2018, Ms. Hall again requested to speak with Mr. Chiocca. *See id.* at 52:21.

64.     During this conversation, Mr. Chiocca again referred to Ms. Hall as a "predator." *See id.* at 13:10-20.

65.     At some point between May 1-4, 2018, Mr. Kimball told Mr. Chiocca that Mr. Kimball's wife had accused [Mr. Kimball] of having an affair with Ms. Hall. *See id*. at 90:15 - 92:2; Halem Decl. Ex. D, Kimball Depo. Vol. I at 138:22 - 140:13.

66.     Mr. Chiocca started avoiding Ms. Hall. *See* Halem Decl. Ex. O, Birmingham Depo. at 90:12-21, 97:3-99:5; *see also* Halem Decl. Ex. M, Chiocca Depo. Day 1 at 287:3 – 288:19 and Day 3 at 34:14-20; Halem Dec. Ex. J ¶146.

67.     For example, Mr. Chiocca had been scheduled to attend a ceremony at the Massachusetts State House relating to recognition for a grant that the Town of Rockland had received. *See id.* at 30:3-21.

68.     When Mr. Chiocca found out that Ms. Hall was also planning to attend, he excused himself from the event, and Marcy Birmingham informed Ms. Hall of this change. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 63:6 – 64:14; Halem Decl. Ex. O, Birmingham Depo. at 30:4 -31:8.

69.     On May 11, Town Counsel John Clifford ("Attorney Clifford") sent an email to the Board regarding the need to discuss Mr. Chiocca's contract. *See* Halem Decl. Ex. L, Clifford Depo. at 104:3-19.

70.     The letter suggested that before the Board decided on whether to grant the contract extension, they should have a candid discussion with Mr. Chiocca about any job performance issues. *See id.*

71.     On May 15, 2018, the Board held a regular meeting. *See* Meeting Minutes of Board of Selectmen Meeting of May 15, 2018, attached to the Declaration of Samantha C. Halem as Exhibit PP.

72.     Mr. Ryan and Mr. O'Loughlin expressed surprise at communications from Ms. Hall to the Town of Rockland School Superintendent without the knowledge of other members of the Board. *See* Halem Decl. Ex. F, L. Ryan Depo. at 86:16 – 88:12 and Ex. 10.

73.     The Board discussed Mr. Chiocca's contract in executive session. *See id.* at 77:12 - 80:16 and Ex. 9.

74.     On May 16, 2018, Mr. Ryan sent an email to the Board expressing his frustration with the May 15 Board meeting and criticizing Ms. Hall. *See id.* at 87:3 – 89:2 and Ex. 10.

75.     When Ms. Hall received the email from Mr. Ryan, she contacted Mr. Kimball to discuss it, which they did over two separate phone calls. Halem Decl. Ex. E, Hall Depo. Vol. II at 66:7 – 13.

76.     On May 16, Ms. Hall contacted Mr. Mullen to talk about Mr. Chiocca and his contract and mentioned that she had been drinking with Mr. Chiocca the night of May 1 but did not recall anything that happened that night with the exception of Mr. Chiocca putting the access

code in for entry to Town Hall. *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 196:6 – 197:22; Vol. II at 70:1 – 75:23; Halem Decl. Ex. G, Mullen Depo.at 207:7 - 210:24.

77.     During this conversation, Ms. Hall stated that Mr. Chiocca had told her that she drove around town with Mr. Chiocca after going to the Rockland Bar & Grill and that they "might have ended up at Town Hall." *See* Halem Decl. Ex. G, Mullen Depo. at 210:9-10; *see also* Halem Decl. Ex. E, Hall Depo. Vol. II at 70:19-24.

78.     Ms. Hall asked Mr. Mullen not to tell anyone about what she had revealed to him about the events of May 1. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 74:7-8.

79.     Ms. Hall did not tell Mr. Mullen that Mr. Chiocca harassed or assaulted her in any way. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 74:15 - 75:10.

80.     On May 17, 2018, Larry Ryan sent an e-mail to the entire Board of Selectmen and Mr. Chiocca, complaining about Ms. Hall.  Specifically, he stated that Ms. Hall was "making her own deals with the school committee promising votes on items not discussed in our board."  He accused her of Open Meeting Violations.  He suggested that the Board "revisit the VC [vice chair] and liaison positions at [their] next meeting", essentially threatening to strip Ms. Hall of her titles.  He went on to say, "[w]e the Board of Selectmen make the decisions not one member… Ms. Hall yells when she has no back up data but doesn't supply any when she is in charge.  This was a board dividing move and we should correct it." *See* May 17 Email from Larry Ryan to Board, attached to the Declaration of Samantha C. Halem as Exhibit Q.

81.     Over the next few days, Mr. Chiocca and Ms. Hall were in the same space multiple times. Ms. Hall made no effort to avoid Mr. Chiocca. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 64:15-19.

82.     For example, on May 16, Mr. Chiocca was at the Rockland Bar & Grill and was seated with two other men who had been involved with the Town Meeting. Ms. Hall approached his table and sat down with him and others. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 77:6 - 79:8.

83.     Mr. Chiocca left shortly after Ms. Hall joined the group at the table. *See id.* at 78:3-17.

84.     Mr. Chiocca had been planning to attend a Metropolitan Area Planning Council ("MAPC") event. Ms. Birmingham learned on May 17, 2018, that Ms. Hall would be attending the event as well. *See id.* at 81:20 – 82:2; *see also* Halem App. Ex. O, Birmingham Depo.at 92:2-10.

85.     When he found out that Ms. Hall was going to the MAPC event, Mr. Chiocca did not attend. *See* Halem Decl. Ex. O, Birmingham Depo.at 92:11-14.

86.     During a conversation on the phone on May 17, Ms. Hall told Mr. Kimball that she had been out with Mr. Chiocca on the night of May 1, 2018, that she did not remember what had happened, but that she thought whatever happened might have been inappropriate. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 83:21 – 84:17; Halem Decl. Ex. D, Kimball Depo. Vol. I at 159:7-22, 168:14 – 169:19, 182:3 - 184:16 and Ex. 3.

87.     Ms. Hall did not tell Mr. Kimball that Mr. Chiocca harassed or assaulted her in any way. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 84:7-9, 85:15 – 86:9; *see also* Halem Decl. Ex. D, Kimball Depo. Vol. I at 204:17 – 205:12.

88.     That same day, Mr. Kimball asked Eric Hart for the Town Hall security camera footage for the night of May 1, 2018, and [Mr. Kimball] reviewed the tapes. Halem Decl. Ex. D, Kimball Depo. Vol. I at 159:23 – 160:2, 186:1 - 191:7, 243:4-11.

89. In the evening of May 17, Mr. Kimball and Ms. Hall went for a walk on the rail trail in Rockland, during which they discussed the night of May 1st, Ms. Hall continued to state that she had no memory of what occurred. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 86:1 – 87:4; Halem Decl. Ex. D, Kimball Depo. Vol. I at 173:6-24.

90. Mr. Kimball and Ms. Hall spoke twice by phone the night of May 17, 2018. *See* Halem Decl. Ex. E, Hall Depo. Ex. 9.

91. Mr. Kimball also instructed Ms. Hall not to talk to Mr. Chiocca, and she complied. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 120:1-24 and Ex. 8; *see also* Halem Decl. Ex. D, Kimball Depo. Vol. II at 14:2-8.

92. Ms. Hall asked Mr. Kimball not to talk with Mr. Chiocca about her. *See id.*

93. Mr. Kimball then called Mr. Chiocca to tell him about a "strange conversation with the husband of a Board member" alleging that Mr. Chiocca had made a comment to Ms. Hall about a "blow job for a contract." *See* Halem Decl. Ex. D, Kimball Depo. Vol. I at 164:4 – 165: 6, 174:8-18, 201:1-11, 220:1-10, 234:11-17.

94. On May 18, Mr. Kimball met with Attorney Clifford and Mr. Chiocca. Mr. Chiocca immediately admitted to having sexual contact with Ms. Hall on the night of May 1st. During this conversation, Mr. Chiocca referred to Ms. Hall as "the aggressor." Halem Decl. Ex. D, Kimball Depo. Vol. I at 205:19-21, 208:19 – 209:9, 210:9-15), *see also* Halem Decl. Ex. L, Clifford Depo. at 112:6-16.

95. Mr. Kimball and Mr. Clifford requested that Mr. Chiocca refrain from coming to Town Hall until they learned more about what happened between Ms. Hall and Mr. Chiocca. Mr. Chiocca agreed to use some vacation time and stay out of the office. *See* Halem Decl. Ex. L,

Clifford Depo.at 52:4 -53:10; Halem Decl. Ex. D, Kimball Depo. Vol. II at 295:1-4 ; Halem

Decl. Ex. M, Chiocca Depo. Day 1 at 258:16 - 259:8, 292:24 - 293:1.

96.     Mr. Kimball, at the behest of Attorney Clifford, asked Ms. Hall and Mr. Chiocca

to enter into a non-disclosure agreement. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 152:5-17;

Halem Decl. Ex. D, Kimball Depo. Vol. I at 214:21 - 215:10, 224:20 - 225:19, 228:6-11.

97.     By May 22, there was already a lot of "chatter" on social media about the May 1

events. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 158:11-159:16; Halem Decl. Ex. D,

Kimball Depo. Vol. I at 268:20-22.

98.     Because of the talk that had already started in town about Ms. Hall and Mr.

Chiocca, Ms. Hall evaluated whether she needed to pull out of the State Representative race. *See*

Halem Decl. Ex. E, Hall Depo. Vol. II at 159:9-16.

99.     Ms. Hall consulted with Mr. Kimball as to whether she should pull out of the race

because she was worried that a claim of sexual harassment or news of her affair with Mr.

Kimball could hurt her campaign. *Id.* at 134:3-13.

100.    Despite efforts to contain the story, on or around May 23, 2018, the news media

learned of the events of May 1, 2018, at the Rockland Town Hall. *See* Halem Decl. Ex. E, Hall

Depo. Vol. II at 161:11 – 162:14; *see also* Halem Decl. Ex. D, Kimball Depo. Vol. I at 260:15-

24, 262:2-6, 268:20 - 269:8.

101.    On May 29, 2018, the Board held a meeting during which it voted in executive

session to retain Attorney Regina Ryan ("Attorney Ryan") of Discrimination and Harassment

Solutions, LLC to conduct an investigation into the events of May 1-2, 2018. *See* Board Meeting

Minutes dated May 29, 2018 attached to the Declaration of Samantha C. Halem as Exhibit R; *see

also* Halem Decl. Ex. B, Town Depo.at 85:8-11.

102.    The Town understood that Attorney Ryan was tasked with investigating the following: "whether (1) Mr. Chiocca violated the town's sexual harassment policy by engaging in nonconsensual sexual activities with Ms. Hall during the May 1-2 incident and, if so, what discipline is recommended; and (2) whether Ms. Hall, as a supervisor of Mr. Chiocca, violated the town's sexual harassment policy by requesting sexual favors during the May 1-2 incident in exchange for actual or promises job benefits." *See* Halem Decl. Ex. B, Town Depo. at 68:7 – 69:3.

103.    When it retained Attorney Ryan, the Town understood that she was going to report her findings and conclusions concerning the events of May 1, 2018 back to the Town. *See id*. at 97:10-13.

104.    On May 29, 2018, at the same Board meeting when the Town voted to retain Attorney Ryan to investigate the events of May 1-2, 2018, the Town also voted in executive session to place Mr. Chiocca on what it has referred to as "administrative leave." *See* Halem Decl. Ex. R; *see also* letter titled "Notice of Placement on Paid Administrative Leave dated May 29, 2018 attached to the Declaration of Samantha C. Halem as Exhibit S.

105.    The administrative leave letter does not contain any details about the reasons why Mr. Chiocca was put on administrative leave. *See id.*

106.    The Town did not file a written resolution with the town clerk explaining its reasons for putting Mr. Chiocca's administrative leave. As a result, Mr. Chiocca did not receive a copy of any resolution filed with the town clerk explaining the reasons for his placement on administrative leave. *See* Halem Decl. Ex. B, Town Depo. at 128:3 – 131:4.

107.    Mr. Chiocca's status on administrative leave was "effective immediately" - i.e., effective May 29, 2018. The letter placing him on administrative leave contained the following:

a. He was being investigated for "alleged misconduct", specifically "inappropriate conduct toward a member of the Town of Rockland Board of Selectman"
b. He was "ordered to attend an investigative interview … conducted by the Town's investigator."
c. He was told "to have a legal representative accompany [him] to this interview."
d. He was told "further disciplinary action … including termination" could be taken.

*See* Halem Decl. Ex. S*; see also* Halem Decl. Ex. B, Town Depo.at 26:5-17.

108.   The administrative leave was with pay. *See* Halem Decl. Ex. S*; see also* Halem Decl. Ex. B, Town Depo.at 25:13-15.

109.   While on administrative leave, Mr. Chiocca was not permitted to perform any of his job responsibilities. *See* Halem Decl. Ex. S; *see also* Halem Decl. Ex. B, Town Depo.at 27:13-16.

110.   While on administrative leave, Mr. Chiocca was required to return to the Town all Town property in his possession. *See* Halem Decl. Ex. S; *see also* Halem Decl. Ex. B, Town Depo.at 27:17-23.

111.   While on administrative leave, Mr. Chiocca was not allowed on Town Property. See Halem Decl. Ex. B, Town Depo. at 27:9-12.

112.   Larry Ryan, one of the selectmen who voted to place Mr. Chiocca on administrative leave, has no understanding of any difference between administrative leave and suspension. *See* Halem Decl. Ex. F, L. Ryan Depo. at 51:17-20.

113.   Michael O'Loughlin, another one of the selectmen who voted to place Mr. Chiocca on administrative leave testified that there is "no real difference" between administrative leave and suspension. *See* Halem Decl. Ex. H, O'Loughlin Depo. at 238:21 – 239:6.

114.   When the executive session at the Board's May 29, 2018 meeting ended, the Board returned to open session during which Attorney Clifford announced the Board's votes to

retain Attorney Ryan to investigate the events of May 1-2, 2018 and its placement of Mr.

Chiocca on administrative leave. *See* Halem Decl. Ex. R.

115.    The open session during which Attorney Clifford made the aforementioned

announcements, was, like all open sessions of Board meetings, broadcast on live television. *See*

Halem Decl. Ex. G, L. Ryan Depo.at 127:11-15.

116.    On May 30, 2018, Ms. Hall announced on her Facebook page titled "Committee

to Elect Deirdre Hall" that she was withdrawing her candidacy. *See* Hall Facebook page

announcement attached to the Declaration of Samantha Halem as Exhibit T; *see also* Halem

Decl. Ex. E, Hall Depo. Vol. I at 57:6-20.

117.    In the aftermath of the events of May 29, 2018 and May 30, 2018 described

above, there was media attention surrounding the events of May 1, 2018, and Attorney Ryan's

investigation. *See* News Articles attached hereto as Exhibit V.

**The Investigation**

118.    Ms. Hall and Mr. Kimball continued to speak regularly in early June of 2018. *See*

Halem Decl. Ex. E, Hall Depo. Vol. II at 169:6-24; Halem Decl. Ex. D, Kimball Depo. Vol. II at

124:16 - 127:20, 130:5 - 132:2, 138:7 - 139:17 and Ex. 8.

119.    Mr. Kimball and Ms. Hall had a text exchange where Ms. Hall stated that they

should not be putting their discussions in writing. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at

103:14 - 104:9, 170:16 -171:13; Halem Decl. Ex. D, Kimball Depo. Vol. I at 235:20 - 236:7,

246:7-12, and Ex. 5.

120.    On June 5, 2018, Mr. Kimball and Ms. Hall discussed Ms. Hall taking a leave of

absence from the Board. *See* Halem Decl. Ex. D, Kimball Depo. Vol. II at 56:7 -16,  119:10 -

123:24.

121.    The Board held a meeting on June 5, 2018. *See* Halem Decl. Ex. K.

122.    At the publicly televised Board meeting, Ms. Hall made a statement regarding her leave of absence. In relevant part, she stated:

> I recently reported an incident of inappropriate behavior by the Town Administrator, and since the weeks that those allegations have emerged it has been very challenging for me and my family. False rumors and gossip have spread, particularly on social media, about me, about the devotion to my spouse, my husband Chris, and our children and our town. Indeed, I no longer feel that my children, my son, is comfortable taking the bus, and I feel that my kids often times are not safe or comfortable participating in some community activities. And this is a deeply disappointing consequence of my decision to stand up for myself in a situation where I believe I was treated improperly.

*See* Halem Decl. Ex. E, Hall Depo. Vol. II at 173:2-8 and Ex.11; *see also* Halem Decl. Ex. K at Attachment 2.

123.    On June 6, 2018, Investigator Attorney Ryan of Discrimination and Harassment Solutions LLC met with Ms. Hall. This was the first of three meetings Ms. Hall had with Attorney Ryan. Halem Decl. Ex. E, Hall Depo. Vol. II at 176:6-21.

124.    Ms. Hall shared with Ms. Ryan that if she had known that the parties could "keep this quiet and have it all go away, I would never have made a public, you know, accusation. I think it was in all our interests to keep this quiet." *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 195:16-23.

125.    Attorney Ryan also met with Mr. Chiocca multiple times over the course of the investigation. *See* Halem Decl. Ex. M, Chiocca Depo. Day 3 at 23:7-16.

126.    In June of 2018, Attorney Ryan met with several members of the Board, as well as multiple Town of Rockland employees and various other witnesses, in order to conduct her investigation. *See* Halem Decl. Ex. L, Clifford Depo. Ex. 2, page 3.

127.     When Ms. Hall met with Attorney Ryan, she did not tell Attorney Ryan that Mr. Chiocca harassed or assaulted her in any way on the night of May 1-2, 2018. *See* First Report of Regina Ryan ("First Ryan Report)" dated July 2, 2018 and attached to the Declaration of Samantha C. Halem as Exhibit W.

128.     On June 13, 2018, while Attorney Ryan's investigation was pending, Ms. Hall filed a Verified Complaint for Injunctive Relief against the Town, the Board, Mr. Kimball, Mr. Mullen, Mr. Ryan, Mr. O'Loughlin, Town Clerk Donna Shortall, Town Police Chief John Llewellyn, and Mr. Chiocca in Plymouth County Superior Court, as well as a motion for a temporary restraining order and supporting affidavits (collectively, "Hall Complaint"). *See* Hall Complaint, attached to the Declaration of Samantha C. Halem as Exhibit X.

129.     Mr. Kimball filed an affidavit in support of her request for injunctive relief.  *See id.*

130.     Through the Hall Complaint, Ms. Hall sought a restraining order enjoining the Town and its officers, agents, employees and successors from releasing surveillance tapes showing Mr. Chiocca and Ms. Hall present at Rockland Town Hall on the night of the May 1-2, 2018. *See id.*

131.     On June 15, 2018, Attorney Clifford, at the behest of the Board, issued a press release that described the Hall Complaint as "misleading, based on conjecture, or just false." *See* Press Release attached to the Declaration of Samantha C. Halem as Exhibit Y.

132.     After the press release, Ms. Hall withdrew her lawsuit relating to the surveillance tapes. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 191:23 – 192:15.

133.    The filing of the Hall Complaint, and its eventual dismissal, led to additional media coverage. *See* News Articles attached to the Declaration of Samantha C. Halem as Exhibit Z.

134.    In mid-June, Mr. Kimball disclosed his affair with Ms. Hall to the other members of the Board. *See* Halem Decl. Ex. D, Kimball Depo. Vol. I at 80:10 – 85:12.

135.    On June 15, 2018, a post was made in a Facebook group titled, "The 'REAL' Rockland (semi-uncensored)~~~the good, the bad, & the ugly" that stated in relevant part, "Word on the Rockland streets in that the Town Administrator Allan Chiocca wasn't the only one having sex with Selectmen Deirdre Hall. Selectman Edward Kimball was sleeping with her too! That would explain why he went the extra mile in filing an affidavit for his side piece Deirdre Hall. What the hell is going on in Rockland? Time to elect some new 'official'." *See* Facebook post attached to the Declaration of Samantha C. Halem as Exhibit AA.

136.    Mr. Kimball claims that prior to the next Board meeting on June 19, Mr. Ryan was "going around town telling everyone that it was okay for Ed Kimball to fuck Deirdre Hall but not Allan Chiocca." *See* Halem Decl. Ex. D, Kimball Depo. Vol. I at 126:3 – 128:10; *see id*., Vol. II at 161:17.

137.    In mid-June, Mr. Kimball received a screen shot of the above-quoted Facebook post that stated, "Word on the Rockland streets is that Town Administrator Allan Chiocca wasn't the only one having sex with Selectman Deirdre Hall. Selectman Ed Kimball was sleeping with her, too." *See* Halem Decl. Ex. D, Kimball Depo. Vol. II at 190:15 - 193:11 and Ex. 13.

138.    On June 19, 2018, the Board held a Selectmen's meeting. *See* Meeting Minutes attached to the Declaration of Samantha C. Halem as Exhibit BB.

139.     At the June 19, 2018 meeting, Mr. Kimball read a statement in which he stated, "[i]n order to address rumors circulating on social media that have come to my attention, I wanted to make clear that with the support and love of my family, I have no intention of leaving of the Board of Selectmen." *See id*.; *see also* [video recording of Jun 19, 2018 BOS open session], *available on* YouTube (link in footnote)[3] and referenced in the Declaration of Samantha C. Halem as Exhibit U, at 3:04.

140.     Mr. Kimball made a motion to refer the investigation to the Rockland Police Department and asserted, with no support, that the majority of the Board did not want to go through with the independent investigation by Attorney Ryan. *See id; see also* Halem Decl. Ex. U, [June 19, 2018 video recording] at 4:02.

141.     After Mr. Kimball made this motion, Attorney Clifford advised Mr. Kimball that he was "discussing something that was not on the agenda that impacts the rights of others involved." *Compare* Halem Decl. Ex. I at ¶ 219 *with* Halem Decl. Ex. J at ¶ 219 (admitting allegation); *see also* Halem Decl. Ex. L at 133:20 -134:5; Halem Decl. Ex. BB; Halem Decl. Ex. U, [June 19, 2018 video recording] at 4:32.

142.     In response, Mr. Kimball stated, "I can discuss what I like," and instructed Attorney Clifford to "hold his words." *Compare* Halem Decl. Ex. I at ¶ 220 *with* Halem Decl. Ex. J at ¶ 220 (admitting allegation); *see* Halem Decl. Ex. L at 133:20 -134:5; *see also* Halem Decl. Ex. BB; Halem Decl. Ex. U, [June 19, 2018 video recording] at 4:35.

143.     Mr. Kimball then called the independent investigation a "sham," and suggested that Mr. Chiocca engaged in criminal conduct. *See* Halem Decl. Ex. L, Clifford Depo.at 135:6-14; *see also* Halem Decl. Ex. U, [June 19, 2018 video recording] at 8:49.

---

[3] [https://www.youtube.com/watch?v=pIafB-ztN88&t=5s]

144.    In response to Mr. Kimball's comments, Mr. Ryan stated that Mr. Kimball made "mistakes one right after another, which Ryan described as follows: "Mr. Kimball spoke one falsehood after another. Prior to this night, I mean, he told us he was not involved, he didn't have an affair [with Ms. Hall], he was only emotionally involved. It turns out that he was physically involved. And they were making decisions for the two of them on the board, as far as I was concerned." *See* Halem Decl. Ex. F, L. Ryan Depo. at 134:1-19.

145.    The events which took place at the June 19, 2018 Selectmen's meeting led to additional media coverage. *See* News Articles attached to the Declaration of Samantha C. Halem as  Exhibit CC.

146.    Ms. Hall and Mr. Kimball both testified that information about their affair was known to people in the community. *See* Halem Decl. Ex. E, Hall Depo. Vol. II, at 254:10 – 256:22; Halem Decl. Ex. D, Kimball Depo. Vol. I at 80:10 – 85:24, 126:8 -129:24, 144:18 – 145:2; Vol. II at 161:8 – 162:12, 190: 4 - 193:22, 199:12 -23, 223:21 – 224:13, 229:3 – 230:15.

147.    Attorney Ryan released her first investigative report on July 2, 2018. *See* Halem Decl. Ex. W.

148.    The First Ryan Report included the following findings:

- Mr. Kimball and Ms. Hall were involved in an "intense physical" and emotional affair during the months of March and April 2018, at which time Ms. Hall professed her love for Mr. Kimball (interview of Mr. Kimball.) Mr. Kimball's wife, Dawn Kimball (hereinafter "Ms. Kimball") believed the relationship had been going on for at least a year but confirmed her suspicion on April 28, 2018 (interview of Ms. Hall).

Halem Decl. Ex. W at Finding of Fact ¶ 22.

- Mr. Kimball first confronted Ms. Hall about the affair through a text message sent to Ms. Hall, while she was chairing the BOS meeting on May 1, 2018. At 6:58 PM Ms. Kimball texted Ms. Hall, "I know what happened. You make me sick" (exhibit 3.)

*Id*. at Finding of Fact ¶ 24.

- The BOS meeting concluded at approximately 7:30 PM and the members stood on Town Hall plaza chatting when Mr. Chiocca stated that he was going to the Rockland Bar & Grill (hereinafter, "RBG") for a drink. Ms. Hall stated that she was going to join him. They drove separately and no one else joined them. They arrived at approximately 8:00 PM and Ms. Hall ordered a glass of wine and Mr. Chiocca ordered a beer (interviews of Mr. Chiocca and Ms. Hall).

*Id*. at Finding of Fact ¶ 25.

- At approximately 8:33 PM, Ms. Kimball again texted Ms. Hall stating, "Yes this is Dawn. Did you really think I wouldn't find out? You're a disgusting human being. The both of you are disgusting. I'm not about threatening anyone just so you know. But I haven't decided how I'm going to handle this. 35 years of marriage now means nothing and I have you to thank for that" (see Exhibit 3.) Ms. Hall did not respond to the texts that evening (interview of Ms. Hall). Upon receipt of the texts from Ms. Kimball, Ms. Hall was not concerned that her husband would find out about her affair with Mr. Kimball, but rather the impact the news of the affair would have on her candidacy for State Representative should Ms. Kimball post it on social media (Id.).

*Id*. at Finding of Fact ¶ 26.

- While at RBG with Mr. Chiocca, Ms. Hall received a call from Mr. Kimball, who assured her that Ms. Kimball would not post news of the affair on social media (interview of Ms. Hall).

*Id*. at Finding of Fact ¶ 27.

- Ms. Hall then asked Mr. Chiocca if she could use his cell phone because she wanted to check social media to see if Ms. Kimball posted anything (Id.). He inquired as to why she wanted to use his phone and she explained that his phone had access to a Facebook page that hers did not and she wanted to check for a specific posting. During this explanation, Ms. Hall divulged to Mr. Chiocca that she was in love with Mr. Kimball and had been having an affair with him since March 2018. She further explained that Ms. Kimball, who recently became aware of it, had forbidden Mr. Kimball from communicating with her (Id.). Mr. Chiocca had no idea that they were having an affair (interview of Mr. Chiocca.).

*Id*. at Finding of Fact ¶ 28.

- After her second glass of wine Ms. Hall began to make sexually suggestive comments to Mr. Chiocca about began to rub his leg and touch his arm. She reiterated that she wanted to step out of her marriage and felt restricted. [Remainder of paragraph redacted].

*Id*. at Finding of Fact ¶ 31.

- Ms. Hall then asked if they could go for a ride in his truck. Again, feeling obliged to satisfy his supervisor, Mr. Chiocca agreed, and they drove around Town for 20-30 minutes before stopping in the parking lot of the Banner Pub where they talked some more. At this time, Ms. Hall, who continued to pressure Mr. Chiocca to have sex with her, reminded him that she was his boss and would be voting on his contract extension. Although not inclined to accept Ms. Hall's advances Mr. Chiocca was concerned that if he thwarted her advances, she would not vote in favor of his contract extension and increase in compensation (interview of Mr. Chiocca.).

*Id*. at Finding of Fact ¶ 34.

- Ms. Hall then stated that she had to go to bathroom but did not want to use the facilities at the Banner Pub because they are not clean. Mr. Chiocca recommended, and Ms. Hall agreed that they go to Town Hall, so she could use the facility there (interview of Mr. Chiocca.).

*Id*. at Finding of Fact ¶ 35.

- As the two arrive at the top of the stairs that leads to the parking lot where Mr. Chiocca's truck is parked, Ms. Hall, who is walking ahead of Mr. Chiocca, stops and turns to face him preventing him from accessing the stairs. They engage in conversation that lasts approximately seven minutes. During this conversation, again Ms. Hall continues to pressure Mr. Chiocca about allowing her to [redacted] while reminding him that she is his supervisor and will be voting on his contract and raise. Feeling pressure to oblige, Mr. Chiocca acquiesces to Ms. Hall's advances and they return to Town Hall. They go directly to Mr. Chiocca's office and close the door (interview or Mr. Chiocca and exhibit 8.).

*Id*. at Finding of Fact ¶ 38.

- While in his office, Mr. Chiocca and Ms. Hall engage in sexual acts. [Remainder of paragraph redacted].

*Id*. at Finding of Fact ¶ 41.

149.   The First Ryan Report included the following conclusion:

   "I find by a preponderance of the evidence that Ms. Hall was Mr. Chiocca's supervisor and she sought sexual relations in exchange for her vote on his contract extension and raise. As such, Ms. Hall sexually harassed Mr. Chiocca in violation of the Town's Sexual Harassment Policy on the night of the Incident.

*Id*. at Conclusions ¶ 9.

150.    Attorney Clifford emailed the First Ryan Report to the parties, and redacted parts

of it. *See* Halem Decl. Ex. L, Clifford Depo. Ex. 2.

151.    The Town does not possess any information to contradict the conclusion in the

First Ryan Report that Hall sexually harassed Chiocca in violation of the Town's Sexual

Harassment policy. *See* Halem Decl. Ex. B, Town Depo. at 186:10 – 187:23.

152.    The Town has acknowledged that it was aware of and understood that Attorney

Ryan's investigation concluded as follows:

> I find by a preponderance of the evidence, that Ms. Hall was Mr.
> Chiocca's supervisor and she sought sexual relations in exchange for
> her vote on his contract extension and raise. As such, Ms. Hall sexually
> harassed Mr. Chiocca in violation of the Town's sexual harassment
> policy on the night of the incident.

*See* Halem Decl. Ex. B, Town Depo., at 100:2-24.

153.    Mr. O'Loughlin understands that the First Ryan Report concluded that Mr.

Chiocca was a victim of quid pro quo sexual harassment. *See* Halem Decl. Ex. H, O'Loughlin

Depo.at 146:15 – 147:3.

154.    Mr. O'Loughlin testified that he publicly acknowledged that he would "support

whatever the outcome [of the investigation] may be, *see id.* at 179:24, and that he understood

that Attorney Ryan concluded that Chiocca "was threatened, his contract extensions, if he did not

do everything that Ms. Hall asked him to do that night," *see id.* at 146:15-21.

155.    Mr. O'Loughlin agrees with everything in the First Ryan Report other than

Attorney's Ryan's recommendation that Mr. Chiocca be returned to his job from administrative

leave. *See id*. at 181:2 – 182:13.

156.     Mr. O'Loughlin believes Attorney Ryan was qualified to conduct the investigation and was not biased towards any party. *See id*. at 106:1– 23.

157.      Mr. O'Loughlin voted in favor of retaining Attorney Ryan to conduct the investigation because he had no experience conducting investigations and felt it was important to retain someone who did. *See id*. at 108:1– 109:17.

158.     Mr. Ryan possesses no documents or information that would contradict the conclusion quoted from the First Ryan Report. *See* Halem Decl. Ex. F, L. Ryan Depo.at 149:16-23.

159.     Mr. Ryan has a hard time understanding that Mr. Chiocca was a victim of Ms. Hall's sexual harassment but does not dispute the conclusion quoted from the First Ryan Report. *See id*. at 152:8-17.

160.     Mr. Ryan believes that Attorney Ryan was qualified to conduct the investigation and was not biased towards any party. *See id*. at 108:13-109:11.

161.     Mr. Mullen believes that the findings in the First Ryan Report that Ms. Hall was the aggressor speak for themselves, and he intended to rely on that finding. *See* Halem Decl. Ex. G, Mullen Depo.at 173:9-175:14.

162.     Mr. Mullen voted to accept the report in full and without any qualifications because failure to do so "would be interfering with an outside investigation that we had engaged." *See id*. at 151:17-152:23.

163.     Mr. Mullen believes Attorney Ryan was qualified to conduct the investigation and was not biased towards any party. *See id*. at 137:3-138:2.

**<u>Board Meeting on July 10, 2018</u>**

164.     On July 10, 2018, the Board held a Selectmen's meeting. *See* Meeting Minutes attached hereto as Exhibit DD.

165.     The Board moved the July 10, 2018 Town Meeting to the high school auditorium in response to significant public interest in the results of the investigation. *See* Halem Decl. Ex. F, L. Ryan Depo. at 169:21 - 170:19; *see also* Halem Decl. Ex. G, Mullen Depo.at 159:22-160:15.

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

167.     Ms. Hall was represented by counsel at the July 10 meeting. *See* Halem Decl. Ex. DD.

168.     The meeting started in an open session during which Mr. Kimball was voted out as Chairman of the Board. *See* Halem Decl. Ex. DD.

169.     After voting Mr. Kimball out as Chair, the Board then went into executive session. *See id*.

170.     The following individuals were present at the July 10, 2018 executive sessions: Selectman Larry Ryan, Selectman Mike Mullen Jr., Selectman Edward Kimball, Rockland Police Chief John Llewellyn, Attorney Ryan, Attorney Brian Palmucci on behalf of  Mr. Kimball, Attorney John J. McGlone, III on behalf of Ms. Hall, Attorney Clifford, and Attorney Jamie Kenny (of Attorney Clifford's office; both for the Town). *See* Halem Decl. Ex. EE, filed under seal.[4]

---

[4] Exhibit EE, a transcript of the Executive Session of the Board of Selectmen Meeting on July 10, 2018, has been filed under seal because of references to Ms. Hall's medical condition existing in the transcript. Exhibit EE is referenced in ¶¶ 166 – 177.

171.    The primary purpose of the July 10, 2018 executive session was to discuss the First Ryan Report. *See generally* Halem Decl. Ex. DD.

172.    During the discussion which took place at the Board's July 10, 2018 executive session, Mr. Mullen stated, "I don't have any questions. I believe – I read the report, and the information speaks for itself, so – thank you. *See* Halem Decl. Ex. EE, Executive Session transcript, at 4:12-15.

173.    During the discussion which took place at the Board's July 10, 2018 executive session, Mr. Ryan stated:

> The report does speak for itself, but I would just to mention that, as you [Mr. Kimball] accused us all of covering up everything and then, quite frankly, the only person who covered anything up was you [Mr. Kimball], your affair with Ms. Hall, your – when you came to the meeting, your – when you heard that something happened. She didn't report that. You [Mr. Kimball] did, according to the report that I read. And, quite frankly, we don't need you anymore. I think you should resign, quite frankly, and save the town the embarrassment because everybody in this town hall has been on edge since this has happened.

*See id*. at 4:16-5:6.

174.    During the discussion which took place the Board's July 10, 2018 executive session, Attorney Clifford stated:

> Your client [Mr. Kimball] lied. Is there any dispute, material dispute, on that? He lied to me. He lied to his fellow board members. He lied to the women in town hall.
> . . . .
>
> Your client [Mr. Kimball] was a witness. All right? It is very relevant how this investigation started, all right, with an untruthful statement by your client [Mr. Kimball]. It's very relevant that he misled all parties involved all the way through this investigation, and then he accused these two gentlemen and his fellow board member, Mike O'Loughlin [sic], of a coverup. He went on TV and made that statement.

> All right? When all the while, he was the one being truthful. And if you don't think a principal witness, somebody who was directly involved in this incident from the very beginning being untruthful is relevant, you can take that up somewhere. All right? But this board has a report, and the findings are what they are. If you want to challenge those findings, I'm sure you know that there are ways of doing that. All right? But the findings are that a material witness, the Chairman of the Rockland Board of Selectmen was untruthful from the beginning of this incident right through – right through today.

*See id.* at 16:11-14; 17:4-18:4.

175.    During the discussion which took place at the July 10, 2018 executive session, Attorney Clifford asked the Board if it "wish[ed] to vote to accept the full investigative report by Discrimination & Harassment Solutions?" Thereafter, the Board voted to accept the report. *See id.* at 62:11-19.

176.    Counsel for Ms. Hall requested that the Board consider limiting the information released to the public at the request of his client. *See id.* at 24:9 – 32:19.

177.    The Board voted to accept Attorney Ryan's report as written but agreed to release to the public only a two-sentence summary portion of the report's findings. *See id.* at 58:16 – 61:4.

178.    After the executive session at the July 10, 2018 Board meeting ended, the Board returned to open session. *See* Halem Decl. Ex. DD.

179.    At the open session, which was in front of an audience in the Rockland High School auditorium and broadcast on live television, Attorney Ryan read the following statement two-sentence public statement:

> "I do not substantiate Ms. Hall's allegation, that if she engaged in sexual activities with Mr. Chiocca on May 1st and 2nd, 2018, it was non-consensual as she was incapable of consenting due to the level of her intoxication.

> I substantiate Mr. Chiocca's allegation that on May 1st and 2nd, 2018, Ms. Hall used her position as a member of the Board of Selectmen, who was actively reviewing, and would soon be voting on his request for contract extension and salary increase, to pressure him into engaging in sexual activities with her."

*See* Halem Decl. Ex. DD; *see also* video recording of July 10, 2018 Board of Selectmen open session, *available on* YouTube (link in footnote)[5] and referenced in the Declaration of Samantha C. Halem as Exhibit QQ, at 4:47.

180.    After Attorney Ryan read the aforementioned statement, Attorney Clifford announced to the public that Ms. Hall was resigning from the Board effective immediately. *See* Halem Decl. Ex. DD, *see also* Halem Decl. Ex. QQ, July 10, 2018 video recording at 5:34.

181.    Following Attorney Ryan's announcement, Attorney Clifford stated, in relevant part, "Mr. Chiocca was found not to have violated the Town's Discriminatory Harassment Policy . . . ." *See id.,* video recording at 5:57.

182.    Following Attorney Ryan's announcement, Selectman Ryan stated, in relevant part, "Ms. Ryan read a report that sort of exonerates Mr. Chiocca from the sexual activity aspect that he was the one who demanded it. . . ." *See id.*, video recording at 7:00.

183.    Following Attorney Ryan's announcement, Selectmen Mullen spoke and stated in relevant part:

> From the beginning of this whole process I've respected the independent investigation that this Board voted to launch at the end of May. I understood as I mentioned, the seriousness of it, and I expected it to uncover the truth in order for us to be able to address this situation in a fair, honest, and an appropriate manner. And I was shocked, frankly last month, when this investigation was referred to as a sham and its integrity called into question. I was just as appalled when members of this Board were accused of actually trying to cover up this issue. I mentioned a minute ago how seriously I've

---

[5] https://www.youtube.com/watch?v=aq1E9qNYMag&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=98

taken this whole situation, and these efforts to undermine the investigation were completely unacceptable, not only to me, but to all Rockland residents. I believe with every conviction that I have that this investigation was led by a professional and credible investigator, and that we now have information we need to help address this situation and move Rockland move forward. I also believe that the investigation's findings speak for themselves and frankly those findings are disturbing.

*See id.,* video recording at 13:56.

184.    Mr. Mullen testified that it was important to him to make the aforementioned statement, that he believed everything he said when he said it and continues to believe it today. *See* Halem Decl. Ex. G, Mullen Depo. at 162:13-164-2.

185.    The Board then voted to release to the public the video surveillance tapes of Rockland Town Hall during the night May 1-2, 2018. *See* Halem Decl. Ex. QQ, video recording at 7:32.

186.    Later in the July 10, 2018 Board open session, Mr. Ryan stated:

"As far as I'm concerned, Mr. Kimball lied to us, from the beginning of the investigation until recently. Therefore, I have no longer any trust in Mr. Kimball to represent this Board in action."

*See id.*, video recording at 17:15.

187.    During the meeting, a member of the audience yelled out in reference to Mr. Kimball's continuing service as a member of the Board, "if he cheated on his wife, what's going to stop him from cheating the town?" *See id.,* video recording at 17:36.

188.    The next day, July 11, 2018, O'Loughlin posted the following on Facebook:

Throughout the entire investigation the former Chairman lied and misrepresented facts to the board and to the Town of Rockland. He misrepresented the original report on May 17th, 2018. He lied to the members of the Board of Selectmen about the nature of his relationship with the former Vice Chairman. He made false statements in an affidavit adverse to the town's interests. He disclosed confidential

information to the former Vice Chairman after being advised not to contact her. He falsely accused fellow board members of participating in a cover up, violated open meeting laws, and exposed the town to significant liability. He undermined the public's faith in town government and made the Town of Rockland a laughing stock.

Last Tuesday, I sent the Chairman four items to be put on the agenda for last night's meeting. I asked for: reorganization of the Board of Selectmen; that there be an executive session to discuss the results of the investigation into Mr. Chiocca and Ms. Hall, as well as the Chairman's conduct during the investigation; an open session discussion the investigation results into Mr. Chiocca and Ms. Hall, as well as the Chairman's conduct during the investigation; and a vote to release to the public the surveillance footage of the night in question. The former Chairman (who accused the other members on June 19, 2018 of a cover up) refused to allow the reorganization of the board and the open session discussion from being on the agenda. It's because of these actions that I have lost all confidence in his as a member of the Board of Selectmen. His relationship with the former Vice Chairman has compromised his ability to do what is best for the Town of Rockland.

*See* O'Loughlin Facebook post attached to the Declaration of Samantha C. Halem as Exhibit FF.

189.    Mr. O'Loughlin testified that if he would have known Ms. Hall and Mr. Kimball were having an affair at the outset of the investigation, he "would have asked him to probably recuse himself from the very beginning and step down from the chairmanship. *See* Halem Decl. Ex. H, O'Loughlin Depo. at 214:21-215:3.

190.    Mr. O'Loughlin also testified that he knew of Mr. Kimball's affair with Ms. Hall as of June 19, 2018, and that at least as of that date he was taking the position publicly that Mr. Kimball should be removed as Board chair. *See id*. at 119:10-13.

191.    Mr. O'Loughlin believed that Mr. Kimball should have been removed as Board chair as of June 19, 2018 because he "felt that Ed [Kimball] violated the trust of the other

members of the board by not disclosing to [them] about his affair with Deirdre at the time." *See id*. at 119:14-19.

192.    In a letter written by Attorney Clifford to Mr. Kimball's prior counsel, Attorney

Palmucci, Attorney Clifford stated in relevant part:

> The undisputed facts are that Mr. Kimball had a covert extramarital affair with a fellow member of the Board of Selectmen, Ms. Deirdre Hall, and conduct that affair for at least several months. He failed to disclose that affair until *after* he colluded with Ms. Hall in a court action filed against the Town on or about June 13, 2018.
>
> Mr. Kimball, by his own admission, unilaterally conducted an unauthorized investigation into a [sic] May 1, 2018 incident between Mr. Chiocca and Ms. Hall. His "investigation" which took place on May 16-17, 2018 was motivated solely by his romantic physical relationship with Ms. Hall.
>
> Had Mr. Kimball been truthful at the beginning of this matter, he would have been precluded, as a matter of law, from any further participation with regard to Mr. Chiocca's employment status. He misled me and his fellow Board members so that he could improperly influence the outcome of the independent investigation and cover up his own misconduct. Again, these are undisputed facts.
>
> It appears you are also unaware that it is impermissible under the Open Meeting Law to hold a public meeting in a room that would substantially limit the ability of the public to attend. Given the widespread interest in the matter to be discussed, it was clear that the Selectmen's meeting room at Town Hall would not be a large enough venue for the meeting. That venue was also chosen so that the meeting could be broadcast live on local access television.
>
> The undisputed facts prove that Mr. Kimball engaged in conduct that has harmed the Town of Rockland financially, operationally, and reputationally. He initiated an investigation into a subordinate employee based on personal animus arising out of his own illicit relationship with a woman who was not his wife.

*See* Attorney Clifford letter attached to the Declaration of Samantha C. Halem as Exhibit GG.

193.    On July 11, 2018, Mr. Chiocca authorized the release of the First Ryan Report to reporters at certain media outlets. *See* Halem Decl. Ex. M, Chiocca Depo. Day 2 at 340:8-22.

194.    The version of the First Ryan Report that was released per Mr. Chiocca's authorization was a redacted version of the First Ryan Report that contained redactions made by Attorney Clifford. *See id.*

195.    Those redactions made by Attorney Clifford were the only redactions in the document. *See id.*

196.    No one associated with Mr. Chiocca made any redactions. *See* Halem Decl. Ex. L, Clifford Depo. at 131:7 -132:2.

197.    The redactions covered information that Attorney Clifford described as, "medical information, explicit sexual information, children's names, and some other non-material information that should be confidential for other reasons." *See* Attorney Clifford email attached to the Declaration of Samantha C. Halem as Exhibit HH; *see also* Halem Decl. Ex. W.

198.    There was no media coverage following the release of the redacted First Ryan Report relating to Ms. Hall's family or her children. *See* Halem Decl. Ex. V, Ex. Z, Ex. AA, Ex. CC, Ex. FF.

199.    On July 17, 2018, the Board convened and held an executive session meeting. *See* July 17, 2018 executive session transcript attached to the Declaration of Samantha C. Halem as Exhibit II.

200.    The executive session included the following discussion:

> Mr. Clifford: Mr. Chairman, as the board is aware, we received the investigation from Attorney Ryan, and Attorney Ryan's investigation and her report was specifically limited to whether or not there were violations of the town's

discriminatory harassment policy, and it was determined as you're aware, that Mr. Chiocca had not violated that policy. There were, however, findings of fact that raised serious concerns as to other potential misconduct that may not have been a violation of that policy but may have been a violation of other policies. In order for the board to take any action under Section 2.18 of the Charter, it requires a vote of four members. Mr. Chiocca has to receive 60 days' notice as to the effective date of suspension or termination. It requires 60 days severance in lieu of the notice period, at least 30 days prior to the effective date of the notice period of severance. You have to file a preliminary resolution with the town clerk and basically give Mr. Chiocca the opportunity for a hearing. He can ask within ten days of getting that notice for a hearing. Unfortunately, the terms of this particular situation, the entire process requires four votes from the Board of Selectmen. That language is not unusual. A lot of charters have that language requiring a super – majority of the Board of Selectmen because what is anticipated and what can happen is it becomes a political decision. A board changes three to two to different a way of thinking, and then it becomes an initiate to remove the town administrator. So the charter language is not unwise. It is not unusual. It is there for a reason. This entire situation where you would not have four members even available to vote is very unusual. So at this point, I'm recommending that the board take no action because legally there is no action that you can take at this time with regard to Mr. Chiocca's employment.

Mr. Ryan: You can't put him out in administrative leave without pay?

Mr. O'Loughlin: Or suspension?

Mr. Clifford: That is actually considered a suspension. I should introduce Jason Crotty who was appointed by the town's insurer as insurance counsel, and I'm guessing that he would concur with my opinion, but that is considered punitive. You're taking disciplinary action without giving him the due process that's called for in the charter.

*See* Halem Ex. II at 3:3-5:15.

201.    At the executive session of the Board's July 17, 2018 meeting, O'Loughlin stated:

> In that investigation, it was determined that every act – every action that he took that night was out of concern that he [sic] was threatening his contract. So all of that got lumped in, so, in a sense, the report exonerated every action that he took that night.

*See id.*at 9:6-12.

202.   Attorney Clifford briefed the Board on the First Ryan Report and stated in relevant part, that the "town potentially has serious exposure already" based on the fact that the First Ryan Report concluded, *inter alia*, that Ms. Hall had violated the Town's sexual harassment policy in her interactions with Mr. Chiocca during the May 1, 2018 Incident. *See* Halem Decl. Ex. II at 8:14-16; *see also* Town's Answers to Plaintiff's First Set of Interrogatories attached hereto as Exhibit JJ at Response to Interrogatory No. 9.

203.   At the July 17, 2018 executive session, the Town took what it has described as "no action" against Mr. Chiocca's employment. *See generally* Halem Decl. Ex. II.

204.   Although the Town took the position that it took no action against Mr. Chiocca's employment on July 17, 2018, Mr. Chiocca was not permitted to exercise any function or authority as town administrator between May 29, 2018 and November 20, 2018. *See* Halem Decl. Ex. B, Town Depo. at 140:9-15.

205.   Starting in late July of 2018, Ms. Hall claimed that she had "flashbacks" of the May 1, 2018 encounter at the Town Hall. She stated that her memories were jogged by a variety of triggers, such as rice spilling out of a measuring cup  (during which she claimed to remember the wine spilling on May 1) wearing glasses (during which she claimed to remember the "crunch" of her glasses pressed against Mr. Chiocca's body while performing oral sex on him on May 1) to watching the movie "Leaving Las Vegas" (during which she remembers Mr. Chiocca's teeth looking like Nicolas Cage's teeth). *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 244:24 – 249:8; *see also id.,* Vol. II at 21:17 – 22:19.

206.   On July 31, 2018, Mr. Kimball resigned from the Board. *See* Board July 31, 2018 Meeting Minutes attached to the Declaration of Samantha C. Halem as Exhibit KK.

207.   Richard Penney ("Penney") and Kara Nyman ("Nyman") were elected to the Board in November 2018 to fill the spots left vacant by Ms. Hall's and Mr. Kimball's resignation. They attended their first Board meeting on November 8, 2018. *See* November 8, 2018 Meeting Minutes, attached to the Declaration of Samantha C. Halem as Exhibit LL.

208.   On November 20, 2018, the Board held a Selectmen's meeting. *See* Board November 20, 2018 Meeting Minutes attached to the Declaration of Samantha C. Halem as Exhibit MM.

209.   During the open session of the Board's November 20, 2018 meeting, the Board voted to continue Mr. Chiocca on administrative leave through June 30, 2019, the end of the 2016 Contract term, and further voted not to extend Mr. Chiocca's employment contract with the Town. *See id*.

210.   Specifically, the Board voted in favor of the following motion, "I move that the Board vote to notify Allan Chiocca of our intent not to renew his employment agreement, which expires on June 30, 2019, and that he further be notified that he is no longer permitted to exercise any function or exercise any authority as Town Administrator from this date until the expiration of his employment agreement on June 30, 2019." *See id.*

211.   The Town understands that to suspend Mr. Chiocca, the Town Charter required an affirmative vote of at least four members of the Board. *See* Halem Decl. Ex. B at 128:7-10.

212.   The Town understands that at least 30 days before the proposed suspension of the Town Administrator becomes effective, that the Town Charter requires the Board to file a

preliminary written resolution with the town clerk setting forth in detail the specific reason for the proposed suspension. *See id.* at 128:12-129:1.

213.    The Town understands that the Town Charter requires a copy of any such written resolution filed with the town clerk to be given to the Town Administrator. *See id.* at 129:2-6.

214.    When the Town voted to place Mr. Chiocca on what it has called administrative leave on May 29, 2018, and when it continued Mr. Chiocca's administrative leave on November 20, 2018, it did not file a written resolution with the town clerk detailing its reasons for doing so. *See id.* at 129:7-131:4.

215.    The Town never provided Mr. Chiocca with any writing explaining the specific reasons for continuing his so-called administrative leave on November 20, 2018. *See id.* at 135:3-6.

216.    The Town has no documents in its possession, custody or control that constitute any "notices sent to the Plaintiff [Chiocca] by the Town in 2018 or 2019 pursuant to §2.18 of the Town Charter." *See* Town's Supplemental Responses to Plaintiff's First Request for Production of Documents, attached to the Declaration of Samantha C. Halem as Exhibit NN, at Request No. 53.

217.    Mr. Chiocca filed a Charge with the Massachusetts Commission Against Discrimination ("MCAD") on January 31, 2019 and filed a Complaint in United States District Court on March 14, 2019. *See* Halem Decl. Ex. I.

218.    Throughout the winter and spring of 2018-2019, Ms. Hall claimed to continue to "remember" bits and pieces of the events of May 1, 2018, including the fact that Mr. Chiocca had told her that they had to leave the Town Hall and that she "needed to get [her] shit together." *See* Halem Decl. Ex. E, Hall Depo. Vol. I at 261-262.

219.    Despite Ms. Hall recalling various memories of the May 1-2 incident after the release of the First Ryan Report, Ms. Hall never remembered saying "no" to sexual contact with Mr. Chiocca on the night of May 1-2, 2018, which was consistent with Attorney Ryan's findings. *See* Halem Decl. Ex. E, Hall Depo. Vol. I 78:1-12, 124:3 -126:22, 167:6-8, 169:16-20, 171:19 – 173:6, 177:8 – 179:12, 180:11 – 181:12, 182:10 – 187:24, 188:12-16, 191:2 – 192:4, 195:13 – 196:11, 197:15 – 209:11, 212:18[6] – 214:24, 218:17 – 219:9, 220:4-16, 221:1 – 224:11, 225:21 – 228:1, 228:8 – 233:3, 235:24 – 240:11, 242:10 – 262:6 and Vol. II at 10:12 – 13:22, 14:10 – 15:5, 19:22 – 24:2, 26:22 – 27:18, 35:18-20, 38:6 – 39:5, 40:12 – 41:3, 47:17-19, 48:3 – 50:8, 52:21 – 54:6, 55:8 – 58:17, 75:7 -23, 94:15 – 95:4, 103:10-13, 243:10 – 244:1, 245:10 – 246:1, 247:7-16, *see also* Halem Decl. Ex. P at Response No. 14and Halem Decl. Ex. W at Finding of Fact ¶42; Conclusions ¶16, ¶19

220.    Despite Ms. Hall recalling various memories of the May 1-2 incident after the release of the First Ryan Report, Ms. Hall never remembered trying to get away or leave the presence of Mr. Chiocca on the night of May 1-2, 2018. *See id.*

221.    Despite Ms. Hall recalling various memories of the May 1-2 incident after the release of the First Ryan Report, Ms. Hall never remembered fighting back or resisting sexual contact with Mr. Chiocca on the night of May 1-2, 2018, *See id.*

222.    Because Ms. Hall had stated that some of her memory had returned, the Town asked Ms. Ryan to reopen the investigation. *See* Halem Decl. Ex. E, Hall Depo. Vol. II at 27:23 – 28:5.

███████████████████████████████████

████████████████████████████████████████

---

[6] Page 212 of Ms. Hall's deposition is not included in Exhibit E but has been filed under seal by Ms. Hall.

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████

224.    Ms. Hall submitted her Answer and stated various counterclaims against Mr.

Chiocca on August 30, 2019. *See* Halem Decl. Ex. E, Hall Depo. Ex. 3.

225.    As a result of this litigation, Mr. Chiocca propounded a set of Interrogatories to

Ms. Hall, and she responded to these Interrogatories and signed the answers to them on July 28,

2020. *See* Responses to Plaintiff's Interrogatories, attached to the Declaration of Samantha C.

Halem as Exhibit P.

226.    In her deposition for this litigation, Ms. Hall affirmed her counterclaims. *See*

Halem Decl. Ex. E, Hall Depo. Vol. I at 38:7-19.

                                    Respectfully Submitted,
                                    Allan Chiocca,

                                    By his attorneys,

                                    /s/ Samantha C. Halem
                                    Samantha C. Halem, Esq. (BBO 649624)
                                    *shalem@marshallhalem.com*
                                    Sarah E. Ruter, Esq. (BBO 708447)
                                    *sruter@marshallhalem.com*
                                    Marshall Halem LLC
                                    27 Mica Lane, Suite 102
                                    Wellesley, MA  02481
                                    (781) 235-4855

/s/ Adam J. Shafran
Adam J. Shafran, Esq. (BBO 670460)
*ashafran@rflawyers.com*
Jonathon D. Friedmann, Esq. (BBO 180130)
*jfriedmann@rflawyers.com*
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617) 723–7700

## CERTIFICATE OF SERVICE

I, Samantha C. Halem, do hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing on November 15, 2021.

/s/ Samantha C. Halem
Samantha C. Halem