# In The Matter Of:

*Allan Chiocca vs.*
*The Town of Rockland, et al.*

*Douglas A. Lapp*
*Vol. I*
*October 26, 2021*



# DORIS O. WONG ASSOCIATES, INC.
COURT REPORTERS

50 Franklin St., Boston, MA 02110
Phone (617) 426-2432

*Original File LAPP_Douglas.txt*
*Min-U-Script® with Word Index*

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 2 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

Page 17

1  administrator for the town of Rockland in May of
2  2018, correct?
3  A. Yes.
4  Q. And if you could, summarize for me what you
5  understand were Mr. Chiocca's primary job
6  responsibilities.
7     MR. AMOS: Objection.
8     You can answer.
9  A. So a town administrator is the chief
10 administrative staff person for the town, reports to
11 the board of selectmen, supervises staff that are
12 under his control, helps prepare the town's budget,
13 oversees the finances and generally carries out the
14 policy direction as set forth by the elected board
15 of selectmen.
16 Q. Okay. Are there any other job
17 responsibilities of Mr. Chiocca that you consider to
18 have been his primary responsibilities?
19    MR. AMOS: Objection.
20    You can answer.
21 A. There are a lot of job -- there are a lot
22 of responsibilities.
23    Would you like -- are you asking me to list
24 every single part of the -- of the job?

Page 18

1     I'm not sure I understand exactly what
2  you're asking.
3  Q. I just want to understand what the town
4  considers to be the primary job responsibilities of
5  the town administrator.
6     MR. AMOS: Objection.
7     You can answer, Doug.
8  A. So I -- I believe that the primary
9  responsibility of a town administrator in Rockland,
10 as well as in any other town, is to carry out the
11 policy direction of the board of selectmen. That's
12 job number one.
13    In addition to that, there are all the
14 administrative functions that follow, such as
15 budget, and personnel management, procurement.
16 Those are -- those are probably some of the most
17 important aspects of the job.
18 Q. Okay. Has the -- have the primary
19 responsibilities of the Rockland town administrator
20 changed since Mr. Chiocca was the town
21 administrator?
22 A. No. I would say they have not -- the
23 primary responsibilities have not changed, no.
24 Q. Okay. What is the Rockland board of

Page 19

1  selectmen?
2  A. The Rockland board of selectmen are an
3  elected body comprised of five people that have
4  authority, under state law and under the town of
5  Rockland charter, that are the highest elected
6  officials; and they set the policy for -- for the
7  town and have a variety of power and authority
8  that's conferred to them under the charter and under
9  state law.
10 Q. Okay. Maybe you just answered this next
11 question in part, but what does the town understand
12 the primary responsibilities of the board of
13 selectmen to be?
14 A. So again it would be all the powers and
15 duties under state law and under the town's special
16 act charter.
17    In general, one of the primary
18 responsibilities of a board of selectmen involves
19 calling town meetings, deciding what items that
20 could be included on a warrant for town meetings.
21 That -- that would be the simplest way to -- to
22 answer the question.
23 Q. Okay. The members of the board of
24 selectmen are elected officers, correct?

Page 20

1  A. Correct.
2  Q. And they are the chief elected executive
3  officers of the town, correct?
4  A. Correct.
5     MR. AMOS: Objection.
6  Q. And the board of selectmen sets policies
7  and procedures that govern all town boards and
8  officials under their supervision, correct?
9  A. Could you ask that again?
10 Q. The board of selectmen sets policies and
11 procedures, correct?
12 A. I would -- I will -- no, I would not agree
13 with that exactly.
14    I would say that the board sets policies,
15 broad policies, and then it's up to the town
16 administrator to help determine how best to
17 implement that. That could possibly be procedures
18 that go back to the board of selectmen for formal
19 approval, or it can be left up to a town
20 administrator to implement those procedures. It
21 would depend on the details.
22    And also many of the -- many -- the board
23 of selectmen does not have total control over the
24 entire town. There are other boards and committees

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 3 of 13

Douglas A. Lapp - Vol. I
October 26, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 21

1  that may be elected that they -- that the selectmen
2  can't -- don't have authority over.
3      So that would --
4  Q. Right.
5  A. -- be my answer to that question.
6  Q. So just to clarify, because my initial
7  question -- it is true that the board sets policy --
8  the board of selectmen sets policy for town boards
9  and officials under their supervision?
10     MR. AMOS: Objection.
11 Q. That's correct, right?
12 A. It's a -- that's a very complicated answer.
13 In -- and I could expand if you asked.
14 Q. Please.
15 A. So the board sets general policies in terms
16 of, say, the overall town budget, coming up with a
17 set of personnel policies. But to the extent there
18 are other boards or committees that are elected,
19 there's a lot of gray area as to how much authority
20 the board of selectmen has in determining what those
21 other elected boards or committees can do in
22 their -- within their jurisdictions, and, by
23 extension, any other employees that report to other
24 elected boards or committees. It can -- it can be

Page 22

1  complicated.
2  Q. Okay. The board of selectmen is
3  responsible for enforcing the town of Rockland's
4  charter, correct?
5  A. Charter enforcement, I would also argue,
6  from my experience, is a complicated issue. There
7  is -- there is no charter police.
8      So the charter is a legal -- the charter is
9  a legal document. It's a special act charter that's
10 approved by the state legislature.
11     But when it comes to enforcement, it would
12 be -- I would have to think about answering that
13 question on a specific case-by-case basis.
14 Q. Okay. I'm going to just share my screen
15 with you for a second.
16     MR. SHAFRAN: Alex, would you mind allowing
17 me to do that?
18     THE REPORTER: One moment.
19     Okay.
20     BY MR. SHAFRAN:
21 Q. Can you see my screen?
22 A. Yes.
23 Q. Do you know, or can you -- do you know what
24 it is that we're looking at?

Page 23

1  A. That is the official town of Rockland
2  website.
3  Q. Okay. And I'm scrolling down.
4      Can you see that I'm scrolling?
5  A. I can.
6  Q. And the town of Rockland website has a web
7  page within the website dedicated to the board of
8  selectmen, correct?
9      MR. AMOS: Objection. It's beyond the
10 scope of the notice.
11     You can answer.
12 Q. You can answer.
13 A. Yes.
14 Q. Okay. And I want to just -- do you see
15 where it says "responsibilities"?
16 A. Yep.
17     I'm sorry. Yes. Yes.
18 Q. Okay. The last bullet point here says:
19 "Represent the town before the General
20 Court and enforce the town's charter bylaws
21 and regulations."
22 Do you see the that?
23     MR. AMOS: Objection. It's beyond the
24 scope.

Page 24

1      You can answer that.
2  A. Yes, I do see that.
3  Q. Do you have an understanding of what that
4  means?
5      MR. AMOS: Objection. It's beyond the
6  scope.
7      Doug, you can answer to the extent of your
8  personal knowledge.
9  A. I would say what that means that the board
10 of selectmen generally has the authority over
11 retaining legal counsel and setting the -- the
12 direction for legal representation of the town,
13 which can involve an aspect of the charter or bylaws
14 or regulations.
15     For example -- I won't give an example, but
16 I would say it -- generally it's the board of
17 selectmen that has the authority, again, to hire
18 counsel and to -- to -- to represent the town in --
19 in -- in legal actions and in enforcing various town
20 bylaws and regulations.
21 Q. Okay. The town administrator reports to
22 the board of selectmen, correct?
23 A. Yes.
24 Q. And that was the case when Mr. Chiocca was

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 4 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

Page 25

1  the town administrator, correct?
2  A. Correct.
3  Q. The board of selectmen oversees the town
4  administrator's employment, correct?
5  A. Correct.
6  Q. And that was the case when Mr. Chiocca was
7  the town administrator, correct?
8  A. Correct.
9  Q. Okay. On May 29th of 2018, the town placed
10 Mr. Chiocca on what it has called "administrative
11 leave," correct?
12 A. Yes.
13 Q. Okay. And the administrative leave that
14 Mr. Chiocca was placed on was with pay, correct?
15 A. Correct.
16    MR. SHAFRAN: Okay. I'm going to share a
17 document with you.
18    Alex, if you could mark that as Exhibit 2.
19    (Document marked as Rockland
20    Exhibit 2 for identification)
21    BY MR. SHAFRAN:
22 Q. And Mr. Lapp, if you could let me know when
23 you see this document.
24 A. Yes, I can see the document.

Page 26

1  Q. Okay. Do you know what this document is?
2  A. Yes. That is a letter from the town to
3  Mr. Chiocca, which is a notice of placement on paid
4  administrative leave.
5  Q. This is a letter that was sent by the town
6  to Mr. Chiocca, correct?
7  A. Correct.
8  Q. Informing him that the town was placing him
9  on administrative leave effective immediately,
10 correct?
11 A. I'm just reading the effective date of the
12 letter. Bear with me.
13 Q. Sure.
14 A. Yes. Effective immediately, correct.
15 Q. And that would mean effective May 29th,
16 2018, correct?
17 A. Correct.
18 Q. Okay. Would you like to take -- I'm going
19 to ask you some questions just about the letter and
20 Mr. Chiocca's administrative leave.
21    Would you like to take a moment to read the
22 letter?
23 A. Yes, please.
24 Q. Okay. Sure. Why don't you do that and let

Page 27

1  me know when you're done.
2  A. Okay.
3     Okay. I've read the letter. I'm ready.
4  Q. Okay. Thank you.
5     While Mr. Chiocca was on administrative
6  leave, he was not permitted to enter Rockland town
7  hall, correct?
8  A. Correct.
9  Q. And while on administrative leave, he was
10 not permitted to enter any building or property
11 owned by the town of Rockland, correct?
12 A. Correct.
13 Q. While on administrative leave, Mr. Chiocca
14 was not permitted to perform any of his job
15 responsibilities, correct?
16 A. Correct.
17 Q. And upon his placement on administrative
18 leave, Mr. Chiocca was required to return to the
19 town all town property in his possession, correct?
20 A. Correct.
21 Q. And that included any keys, cell phone, or
22 computer in his possession, correct?
23 A. Correct.
24 Q. Okay. Was there any aspect of his job that

Page 28

1  Mr. Chiocca was permitted to perform once he was
2  placed on administrative leave?
3     MR. AMOS: Objection.
4     You can answer.
5  A. Not that I'm aware of.
6  Q. Okay. Do you see where it says in the
7  first sentence that he has been placed on -- placed
8  on paid administrative leave pending the outcome of
9  an investigation effective immediately?
10 A. Yes.
11 Q. What does the town understand the phrase
12 "pending the outcome of an investigation" as used in
13 that sentence to mean?
14 A. I would say that pending the outcome of an
15 investigation would mean the conclusion of -- of all
16 aspects of the town investigating the incident that
17 occurred on May 1st and May 2nd of 2018, which would
18 include, but not be limited to, the investigation
19 conducted by the independent investigator, plus any
20 additional investigations or determinations by
21 the -- by the board of selectmen or other
22 appropriate town officials or consultants.
23 Q. Okay. Did the town conduct an
24 investigation into the events that allegedly

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 5 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

Page 65

1  those are some examples of what I mean by that term.
2  Q. And the town is of the belief that
3  Mr. Chiocca's conduct -- and by "conduct," I mean
4  the sexual acts that he engaged in -- met the term
5  that you just defined.
6     Is that correct?
7     MR. AMOS: Objection. Beyond the scope of
8  the notice.
9     You can answer.
10 A. When I was speaking, I was referring to all
11 of his conduct that night, which included drinking
12 and driving, returning to town property, drinking on
13 town property and engaging in sexual conduct.
14    What I was speaking to was all of those
15 actions are -- are -- would widely be considered by
16 any town in the Commonwealth to be highly
17 inappropriate.
18 Q. Okay. So maybe there was a
19 misunderstanding because my question was focused
20 solely on the sexual conduct. Nothing else.
21    Do you understand that?
22    MR. AMOS: Objection.
23 A. I do now.
24 Q. Okay. Does the town consider just the

Page 66

1  sexual conduct that Mr. Chiocca engaged in to meet
2  the definition of "highly inappropriate" that you
3  just provided?
4     MR. AMOS: Object to form. It's also well
5  beyond the scope of the notice.
6     THE WITNESS: Should I answer?
7     MR. AMOS: You can answer to the extent you
8  have personal knowledge.
9  A. I would say yes, just the sexual acts alone
10 would also be deemed to be highly inappropriate.
11 Q. Okay. And when I was asking you earlier, a
12 moment ago, about whether the conduct -- the town
13 believes the conduct violated any policies, were you
14 answering that question as to all of the conduct on
15 the evening in question or just the sexual conduct?
16    MR. AMOS: Objection.
17    You can answer.
18 A. I thought you were only asking about the
19 sexual conduct that evening.
20 Q. Okay. So the answers you gave a moment ago
21 as to those -- those questions in terms of violating
22 policies was specific to the sexual conduct; is that
23 right.
24 A. Correct.

Page 67

1  Q. Okay. Thank you.
2     I'd like to direct your attention back to
3  the administrative leave letter, if you could bring
4  that up again, please.
5  A. Okay. I have it.
6  Q. One second.
7     Do you see the second sentence in the first
8  paragraph:
9     "The matters under investigation
10    include the allegations of inappropriate
11    conduct toward a member of the town of
12    Rockland board of selectmen."
13 A. I see that, yes.
14 Q. Is the town aware, did Ms. Hall receive a
15 document describing to her what the scope of Regina
16 Ryan's investigation was?
17    MR. AMOS: Objection. Beyond the scope of
18 the notice.
19    You can answer, if you know.
20 A. I am not sure.
21 Q. Okay. Is there any reason why the letter
22 doesn't state that the matters under investigation
23 also include allegations of inappropriate conduct
24 towards Mr. Chiocca?

Page 68

1     MR. AMOS: Objection. Beyond the scope of
2  the notice.
3     You can answer, if you can.
4  A. Could you -- could you explain your
5  question again or state your question again, please.
6  Q. Sure. Let me take a step back.
7     What is the town's understanding of what
8  Ms. -- or Attorney Ryan was tasked with
9  investigating?
10 A. I -- if I may, could I refer to her report,
11 because I know that what she was tasked with is
12 specifically outlined on Pages 1 and 2?
13 Q. Okay. Why don't you do that.
14 A. On Page 2 of the July 2nd, 2018, report
15 from Attorney Ryan, she says:
16    "... this investigation addresses
17    whether (1) Mr. Chiocca violated the
18    town's sexual harassment policy by engaging
19    in nonconsensual sexual activities with
20    Ms. Hall during the incident and, if so,
21    what discipline is recommended; and (2)
22    whether Ms. Hall, as a supervisor of
23    Mr. Chiocca, violated the town's sexual
24    harassment policy by requesting sexual

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 6 of 13

Douglas A. Lapp - Vol. I
October 26, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 69

 1   favors during the incident in exchange for
 2   actual or promised job benefits."
 3       That was the scope.
 4  Q.  Okay.  The scope included the two items as
 5   you just read to me, correct?
 6  A.  Yes.
 7  Q.  It included investigating whether
 8   Mr. Chiocca's conduct towards Ms. Hall violated the
 9   discrimination policy, and whether Ms. Hall's
10   conduct towards Mr. Chiocca violated that policy,
11   correct?
12  A.  Correct.
13  Q.  Okay.  If you could refer back to the
14   administrative leave letter.
15  A.  Yep.  I have that in front of me.
16  Q.  And do you see that the second sentence it
17   says:
18       "The matters under investigation
19   include the" allegation -- "allegations of
20   inappropriate conduct toward a member of
21   the Rockland board of selectmen"?
22  A.  Yes, I see that.
23  Q.  That would be the first item in Regina
24   Ryan's report that you just read, correct?

Page 70

 1  A.  Correct.
 2  Q.  Is there anywhere in this letter that
 3   the -- that describes the second item in Regina
 4   Ryan's report that you just read?
 5      MR. AMOS:  Objection.
 6      You can answer.
 7  A.  I'm just reading the second item again,
 8   whether --
 9  Q.  Please.
10  A.  -- whether Ms. Hall...
11      No, it's not referenced in the letter.
12  Q.  Okay.  Is the town aware of whether
13   Ms. Hall received a letter informing her the second
14   item you just read from the report would be part of
15   the investigation?
16      MR. AMOS:  Objection.  It's beyond the
17   scope of the notice.
18      You can answer, if you know.
19  A.  I don't know if Ms. Hall received a similar
20   letter or not.
21  Q.  Okay.  Is there any reason why the second
22   piece, as you just read from Regina Ryan's report,
23   was not included in this letter to Mr. Chiocca?
24      MR. AMOS:  Objection.  Beyond the scope of

Page 71

 1   the notice.
 2       You can answer it, if you know.
 3  A.  I would assume that that's because this
 4   letter was addressed to Mr. Chiocca.
 5  Q.  And the town understands that Mr. Chiocca
 6   made allegations, correct, against Ms. Hall, right?
 7      MR. AMOS:  Objection.
 8      You can answer.
 9  A.  Correct.
10  Q.  Okay.  The week prior to Mr. Chiocca being
11   placed on administrative leave the town understands
12   that he was on vacation, correct?
13  A.  Correct.
14  Q.  Was there anyone within the town who
15   suggested to Mr. Chiocca that he go on vacation that
16   week?
17      MR. AMOS:  Objection.  Beyond the scope of
18   the notice.
19      You can answer, if you know.
20  A.  I believe there were discussions with
21   Mr. Chiocca about whether vacation could be used to
22   try to avoid -- to try to avoid having the situation
23   escalate.
24  Q.  That was a suggestion made by Attorney

Page 72

 1   Clifford to Mr. Chiocca, correct?
 2      MR. AMOS:  Objection.  Beyond the scope of
 3   the notice.
 4      You can answer, if you know.
 5  A.  I'm not certain if it was suggested by, but
 6   I believe they discussed it.
 7  Q.  Okay.
 8  A.  I'm not sure who may have initiated the
 9   idea.
10  Q.  Is the town aware of any similar
11   discussions taking place with Ms. Hall prior to the
12   town voting to begin an investigation?
13      MR. AMOS:  Objection.  Beyond the scope of
14   the notice.
15      You can answer, if you know.
16  A.  I think that would be -- I'm not sure I
17   understand the question, because Ms. Hall was an
18   elected official, or was not a paid employee
19   accruing vacation time.  So I don't think that
20   question makes sense in how I'm processing their
21   different roles in the organization.
22  Q.  Okay.  Let me rephrase it this way:
23       Were there any discussions between
24   representatives of the town and Ms. Hall about her

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 7 of 13

Douglas A. Lapp - Vol. I
October 26, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 85

1  MR. AMOS: Objection. Beyond the scope.
2  You can answer.
3  A. I believe so, yes.
4  Q. Okay. And it is at that executive session
5  where the board of selectmen voted to place
6  Mr. Chiocca on administrative leave, correct?
7  A. I believe so, yes.
8  Q. And it is at that executive session that
9  the board voted to have an investigation conducted
10  by Regina Ryan, correct?
11  A. I believe so, yes.
12  Q. Okay. And Mr. Kimball signed this letter,
13  correct?
14  A. Yes, he did.
15  Q. And he was the chairman of the board of --
16  of the board of selectmen at the time, correct?
17  A. Correct.
18  Q. And he did not recuse himself from either
19  of the two votes that occurred in that executive
20  session, correct?
21  MR. AMOS: Objection.
22  MS. DUNN: Objection.
23  MR. AMOS: You can answer, if you know,
24  Doug.

Page 86

1  A. I would have to double-check the minutes.
2  I don't recall off the top of my head.
3  Q. Okay. The meeting minutes from that
4  executive session would tell us the answer to that
5  question, correct?
6  MR. AMOS: Objection. It's beyond the
7  scope of the notice.
8  You can answer, if you know.
9  A. I believe they would, yes.
10  Q. Okay. Was the town aware of Mr. Kimball's
11  relationship with Ms. Hall as of the date, May 29th,
12  2018?
13  MR. AMOS: Objection.
14  MS. DUNN: Objection.
15  MR. AMOS: Objection to the form, and it's
16  well beyond the scope of the notice.
17  Adam, we're getting into harassing
18  territory. Ask questions within the scope of the
19  notice. We're not here to depose him individually.
20  MR. SHAFRAN: I'm not. I'm not asking
21  any -- let me talk for a minute.
22  MR. AMOS: I'm putting my objection on the
23  record.
24  MR. SHAFRAN: I know. You did already, and

Page 87

1  now I'm going to talk. I don't know why you're
2  getting so angry.
3  MR. AMOS: The witness is not prepared to
4  testify about what occurred in that executive
5  session. It's not one of the topics, nor is whether
6  or not Ed Kimball recused himself during that
7  executive session one of the topics.
8  MR. SHAFRAN: The only things that --
9  MR. AMOS: My objection is beyond the scope
10  of the notice as well as the form of the question.
11  MR. SHAFRAN: So there were two votes taken
12  at that executive session, Justin: One, placing
13  Mr. Chiocca on administrative leave; two, retaining
14  Regina Ryan to conduct an investigation. Those were
15  the two things that were discussed at that -- at
16  that meeting. Two items that are specifically
17  included in the notice.
18  So my questions are about what knowledge
19  the town had about specific facts when they made
20  those two votes. I'm not asking about any intimate
21  details. I'm not asking about what specific
22  knowledge they had about what conduct Ms. Hall and
23  Mr. Kimball were engaged in. All I'm asking is that
24  when they voted to do those two things -- which are

Page 88

1  subject to the notice -- if the town had knowledge
2  of that one fact. That is it.
3  MR. AMOS: So can you tell me, Adam, in
4  what topic you asked about whether Ed Kimball
5  recused himself from any votes as a member of the
6  board of selectmen?
7  MR. SHAFRAN: Justin, obviously a 30(b)(6)
8  notice is not going to be an outline of questions,
9  but it goes to the vote -- it goes to Mr. Chiocca
10  being placed on leave and it goes to the town
11  retaining an investigator to conduct an
12  investigation. These were facts that occurred that
13  night when those things happened.
14  MR. AMOS: So I guess -- a 30(b)(6) notice,
15  a schedule of topics is specifically for the purpose
16  of ensuring that I can reasonably prepare a designee
17  to testify about those topics.
18  Now that you have admitted that there is no
19  topic asking about Ed Kimball's recusal from any
20  vote, I stand by my objection. It's beyond the
21  scope of the notice. We have not been reasonably
22  put on notice that that was a topic for which I
23  needed to prepare this witness. It is beyond the
24  scope of the notice.

Case 1:19-cv-10482-WGY Document 175-2 Filed 11/15/21 Page 8 of 13

Douglas A. Lapp - Vol. I
October 26, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 109

1 MR. SHAFRAN: Mr. Lapp, I'm going to show
2 you a document that I'm going to paste into the chat
3 window.
4 And Alex, if you can mark that as
5 Exhibit 5, please.
6 (Document marked as Rockland
7 Exhibit 5 for identification)
8 THE WITNESS: I see it.
9 BY MR. SHAFRAN:
10 Q. And what is that document?
11 A. That's the employment contract for Allan
12 Chiocca.
13 Q. Between the town of Rockland and
14 Mr. Chiocca, correct?
15 A. Correct.
16 Q. Okay. Do you know who drafted this
17 document?
18 A. I would assume that that document was a
19 negotiated document between Mr. Chiocca and the
20 town's attorney, John Clifford.
21 Q. Okay. Okay.
22 And the board of selectmen would have been
23 a party to that negotiation?
24 A. The board of selectmen ultimately signs the

Page 110

1 agreement, so yes.
2 Q. Okay. And the -- and Attorney Clifford
3 would have been negotiating on behalf of the board?
4 A. Correct.
5 Q. Okay. And the town understands that this
6 contract sets forth the terms and conditions of
7 Mr. Chiocca's employment with the town, correct?
8 A. Correct.
9 Q. If you could go to Page 2, please.
10 A. Okay.
11 Q. What does the town understand to be the
12 term of this contract?
13 A. It says right in the document:
14 "The term of the agreement shall be in
15 effect from July 1, 2016, through June 30,
16 2019, unless sooner terminated in
17 accordance with the provisions hereof."
18 Q. Okay.
19 A. And then it also says:
20 "Absent an affirmative vote by at
21 least four members of the board of
22 selectmen to extend the agreement or
23 re-appoint the employee, employment shall
24 terminate on June 30, 2019."

Page 111

1 Q. Okay. So absent some other step taken by
2 the board to terminate it or extend it, the term of
3 this contract is from July 1, '16, to June 30th,
4 2019, correct?
5 A. Correct.
6 Q. Okay. If you could go to Page 3.
7 A. Yes.
8 Q. Do you see where it says:
9 "B. On or about, February 1..."
10 A. B, it says "termination for malfeasance."
11 Oh, I'm sorry.
12 The first.
13 Q. Yeah. The first --
14 A. Yep.
15 Q. -- 3 -- let me just say it for the record
16 so it's clear:
17 3B on Page 3.
18 A. Yes.
19 Q. Do you see that?
20 A. I do.
21 Q. Okay. It says:
22 "On or about February 1, 2016, and on
23 or about February 1st of each year of this
24 agreement, the board of selectmen shall

Page 112

1 meet with the employee to review
2 performance and establish goals and
3 objectives for the following ... year."
4 Did I read that sentence correctly?
5 A. Yes.
6 Q. Did that occur on February 1st of each year
7 of this contract?
8 A. I am not certain.
9 Q. Okay. During the term of this contract did
10 the town do anything to evaluate Mr. Chiocca's
11 performance?
12 MR. AMOS: Objection.
13 You can answer.
14 A. In general -- I would say this way:
15 I am sure there were discussions about
16 performance, but I don't know if there was a formal
17 performance evaluation that was done or not.
18 Q. Okay. Is the town aware of Mr. Chiocca --
19 excuse me.
20 Is the town aware of members of the board
21 of selectmen having any discussions about
22 Mr. Chiocca's performance during the term of this
23 contract?
24 MR. AMOS: Objection.

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 9 of 13

Douglas A. Lapp - Vol. I
October 26, 2021

Allan Chiocca vs.
The Town of Rockland, et al.

Page 125

1  that it was negotiated between Mr. Chiocca and the
2  town, and Mr. Clifford was an agent of the board of
3  selectmen. So I think I just used more words in my
4  answer. It wasn't just Mr. Chiocca and
5  Mr. Clifford. It was Mr. Clifford representing the
6  board of selectmen, acting on behalf of the town.
7  Q. In that negotiation Mr. Clifford was
8  authorized to speak on behalf of the town?
9      MR. AMOS: Objection. Beyond the scope of
10 the notice.
11     You can answer, if you know.
12 A. I would assume that -- I'm speculating, but
13 I would assume that to be true.
14 Q. Okay. And can you would agree these are
15 the terms that ultimately the board and Mr. Chiocca
16 settled on as it relates to the terms that govern
17 his employment, correct?
18 A. Yes. This is a document that the board of
19 selectmen, Mr. Chiocca and town counsel all signed.
20 Q. Okay. No other town employee is subject to
21 the terms of this document, correct?
22 A. I'm not -- well, many -- when I started
23 working in Rockland, there were --
24 Q. Uh-huh.

Page 126

1  A. -- many, many town employees that were
2  non-union employees but also had individual
3  employment agreements. I'm sure that they were not
4  identical to this agreement, but many employees had
5  individual employment agreements.
6      So I -- I just -- I have to have that as
7  part of my answer, because that's -- that's just a
8  fact.
9      So I'm -- so I'm not sure if that answers
10 your question or not.
11 Q. Right. I just want to make sure that I
12 understand -- that the town -- is it the town's
13 understanding that the rights and obligations set
14 forth in this document only govern Mr. Chiocca's
15 employment, no other employee's employment?
16 A. Yes. This document is only for
17 Mr. Chiocca.
18     MR. SHAFRAN: Okay. I'm going to show you
19 another document in a moment.
20     I just pasted a link to another document.
21     And Alex, if you could mark that as
22 Exhibit 6.
23     (Document marked as Rockland
24     Exhibit 6 for identification)

Page 127

1      THE WITNESS: I see it.
2      BY MR. SHAFRAN:
3  Q. And what is this document?
4  A. This is the Rockland town charter. It
5  looks like this was printed effective December 5th,
6  2019.
7  Q. Okay. If you could scroll down to Page 19.
8  A. Okay.
9  Q. Do you see it says "Chapter 58 of the Acts
10 of 2005"?
11 A. Yes.
12 Q. That's -- this is the section that is
13 referred to in the "suspension" section of
14 Mr. Chiocca's contract, correct?
15     MR. AMOS: Objection.
16 A. Can I refer back be to Mr. Chiocca's
17 contract?
18 Q. Of course.
19 A. So for a suspension it refers to Section
20 2.18(a) as amended by Chapter 58...
21     Yes, I agree.
22 Q. If you can look at -- do you see on that
23 Page 19, where it says Section 2.18 --
24 A. Yes.

Page 128

1  Q. Sorry, 2.18(a)?
2  A. Uh-huh. Yes. I see it.
3  Q. Okay. This is the provision of the town
4  charter that governs the town's right to suspend or
5  remove the town administrator from office, correct?
6  A. Yes.
7  Q. It is the town's understanding that to
8  suspend the town administrator that the town charter
9  required an affirmative vote of at least four
10 members of the board of selectmen, correct?
11 A. Correct.
12 Q. And it is the town's understanding that at
13 least 30 days before the proposed suspension of the
14 administrator were to become effective, that the
15 charter requires the board of selectmen to file a
16 preliminary written resolution with the town clerk,
17 correct?
18 A. Correct.
19 Q. And the town charter that we're looking at,
20 the section we're looking at right now, requires
21 that any such written resolution that is filed with
22 the town clerk, that it must set forth in detail the
23 specific reason for the proposed suspension,
24 correct?

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 10 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

**Page 129**

1  A.  In detail -- yes.
2  Q.  Okay.  And the town understands that this
3  section of the charter requires a copy of any such
4  written resolution to be given to the town
5  administrator, correct?
6  A.  Yes.
7  Q.  Okay.  When the town voted to place
8  Mr. Chiocca on administrative leave on May 29th of
9  2018, did it file a written resolution with the town
10 clerk?
11 A.  Excuse me for one second.  I'm about to
12 cough.  Hang on.
13 Q.  No.  Take a minute.
14 A.  Oh, excuse me.
15 Q.  Are you okay?
16 A.  Yeah.  I'm fine.  Thank you.
17     No, I -- I do not think -- to the best of
18 my knowledge, I don't think the town followed the
19 steps in Section 2.18(a) because the town was not
20 suspending or removing the town administrator.
21 Instead, they were putting him on paid
22 administrative leave, which is not covered under
23 this section.
24 Q.  The town also voted on November 20th, 2018,

**Page 130**

1  to continue Mr. Chiocca's administrative leave for
2  the duration of his -- the term of his contract,
3  correct?
4  A.  Correct.
5  Q.  When the town made that vote, did it file a
6  written resolution with the town clerk detailing the
7  reasons for keeping Mr. Chiocca on administrative
8  leave?
9  A.  To the -- my recollection is -- again,
10 because it was paid administrative leave -- it was
11 not subject to Section 2.18(a), which is what we're
12 talking about here.  So the answer is no.
13     However, I do believe a letter was sent to
14 Mr. Chiocca following that vote that you're
15 describing.  I have to check my files to confirm
16 that, but I believe a letter was sent.  But, again,
17 not pursuant to this section, because this section
18 deals with terminations and removal, and that's not
19 relevant.
20 Q.  But just to be clear, there was never any
21 statement filed by the board with the town clerk
22 detailing the reasons that he was being placed on
23 administrative leave in May or November of 2018,
24 correct?

**Page 131**

1     MR. AMOS:  Objection.
2     You can answer.
3  A.  To the best of my knowledge, no, not filed
4  with the town clerk.
5  Q.  Okay.
6  A.  Can I -- may I add one point to that?
7  Q.  Sure.
8  A.  Other -- other than meeting minutes are, of
9  course, filed with the town clerk.  So to the extent
10 something was discussed and stated at a meeting and
11 was included in meeting minutes, those meeting
12 minutes would be filed with the town clerk.
13 Q.  Okay.  Did the town provide Mr. Chiocca
14 with any meeting minutes that it may have filed with
15 the town clerk?
16 A.  I'm not aware -- to the best of my
17 knowledge, no.  But I'm not certain.
18 Q.  Okay.  You mentioned a moment ago you
19 thought there was some writing to Mr. Chiocca at or
20 around November of 2018.
21 A.  Yeah.  I know there was a letter sent.  And
22 if I can go through --
23 Q.  Please.
24 A.  -- my papers, I can confirm that.  I'm not

**Page 132**

1  sure of the date.
2  Q.  Please.
3  A.  Yes.
4     So there were two letters sent to
5  Mr. Chiocca:  The first was May 29th of 2018, when
6  he was first put on paid administrative leave.  And
7  then there was a second letter sent on November
8  27th, 2018, notifying Mr. Chiocca of their intent
9  not to renew his contract and continuing his paid
10 administrative leave status through June 30th, 2019.
11 Q.  So the first letter that you're referring
12 to was the exhibit that we were looking at earlier,
13 correct?  I believe it's Exhibit 2.
14 A.  Correct.  That's correct.
15 Q.  Okay.  Was that letter ever transmitted to
16 the town clerk?
17     MR. AMOS:  Objection.
18     Which letter, Adam?
19     MR. SHAFRAN:  The May 29th, 2018,
20 administrative leave letter.
21 A.  I don't know.  I'm not certain.
22 Q.  Okay.  The second letter, the November 27th
23 letter, can you read me that letter in full?
24 A.  Sure.

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 11 of 13

Douglas A. Lapp - Vol. I  
October 26, 2021

Allan Chiocca vs.  
The Town of Rockland, et al.

Page 133

1   It's dated November 27, 2018, sent to Allan
2   Chiocca via e-mail to Attorney Adam Shafran, and it
3   was also sent via certified mail to Mr. Chiocca with
4   a certified mail number.
5      It says:
6   "Dear Mr. Chiocca:
7   "At its meeting of Tuesday, November
8   20th, 2018, the board of selectmen voted
9   unanimously to notify you of their intent
10  not to renew your employment agreement
11  which terminates on June 30th, 2019.
12  "The board also voted unanimously to
13  continue your status on paid administrative
14  leave through June 30, 2019. You will
15  remain on paid administrative leave until
16  that date unless the board takes the future
17  action to suspend or terminate you,
18  pursuant to the terms of your employment
19  agreement or the town charter. If no other
20  action is taken by the board between now
21  and June 30, 2019, your employment with the
22  town terminates on that date.
23  "Throughout the duration of this
24  administrative leave, you are directed and

Page 134

1   ordered to not visit town hall or any other
2   buildings or town property located by the
3   town of Rockland (the 'Town') and are
4   directed and ordered to refrain from the
5   performance of any of your duties and
6   responsibilities as town administrator for
7   the Town until such time as you are
8   scheduled to return to work or are
9   otherwise notified.
10  "During this paid administrative
11  leave, you may be required to attend
12  meetings or interviews and cooperate with
13  investigations that are ongoing or may be
14  undertaken by the town during your leave.
15  "If you have not already done so,
16  you're directed and ordered to turn over
17  forthwith all town property: Keys, cell
18  phone and any computer equipment issued to
19  you.
20  "Should you have any questions, please
21  instruct your counsel to contact town
22  counsel, John Clifford.
23  "Sincerely, Larry Ryan, chairman,
24  board of selectmen, town of Rockland"

Page 135

1      Cc Adam Shafran, Esq., and cc Regina Ryan,
2   Esq.
3   Q. Is there anything in that letter that
4   details the specific reasons that the town voted to
5   continue Mr. Chiocca on administrative leave?
6   A. No.
7   Q. Is there anything in that letter that
8   detailed the specific reasons that the board voted
9   not to renew Mr. Chiocca's contract?
10  A. No.
11  Q. Is the town aware of any writing that was
12  transmitted to Mr. Chiocca during the term of his
13  contract that explains the reasons why it did not
14  renew his contract?
15  A. Well, I would answer it this way:
16     So the first letter, dated May 29, which
17  was the previous exhibit that we spoke about --
18  Q. Uh-huh.
19  A. -- that -- that referenced -- that notified
20  him he's on paid administrative leave pending the
21  outcome of an investigation.
22  Q. Uh-huh.
23  A. And that the matters under investigation
24  include allegations of inappropriate conduct that

Page 136

1   occurred on May 1st and May 2nd of 2018.
2      So that was the first letter.
3      This letter was explaining that it was
4   continuing the paid administrative leave that was
5   notified in this first letter.
6      So I would argue, at a minimum, there was a
7   reference to alleged misconduct that took place on
8   May 1st and 2nd, 2018.
9   Q. Okay. Is there anything in writing that
10  informed Mr. Chiocca that his administrative leave
11  was going to be continued because of misconduct that
12  he engaged in on May 1st and May 2nd of 2018?
13  A. Again, I would say the letter, the first
14  letter referenced the alleged misconduct --
15  Q. Uh-huh.
16  A. -- specifically, and the second letter is
17  continuing the action of paid administrative leave
18  as notified in that first letter, which identified
19  the alleged misconduct on May 1st and 2nd.
20     So yes --
21  Q. Okay.
22  A. -- they're connected.
23  Q. Okay. Is there anything in writing that
24  was given by the town to Mr. Chiocca that explains

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 12 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

Page 137

1  any reason beyond the events of May 1 or May 2 of
2  2018 as the basis for his continuance on
3  administrative leave?
4     MR. AMOS: Objection.
5     You can answer.
6  A. To the best of my knowledge, I'm not aware
7  of anything else in writing that was sent to
8  Mr. Chiocca, no.
9  Q. Okay. Is there anything in writing that
10 explains to Mr. Chiocca the reasons that the board
11 did not renew his contract?
12 A. Other than these letters and the reports
13 from Regina Ryan, I'm not aware of anything -- I'm
14 not personally aware of anything else in writing
15 that was sent to Mr. Chiocca.
16 Q. Okay. And is it the town's --
17 A. I'm --
18    So may I just supplement one thing?
19 Q. Yes.
20 A. There was the -- in addition to this, there
21 was the statement that was read by Mr. Ryan at that
22 November 20th, I think it was, 2018, meeting, which
23 I think is -- I think the legal term is incorporated
24 by reference, right? When, you know, this letter

Page 138

1  references the meeting of November 20th, and that
2  was something stated at the meeting, which was, you
3  know, recorded and available for -- for playback and
4  is -- the contents of which are included in meeting
5  minutes.
6  Q. Okay. That was an oral statement made by
7  Larry Ryan, correct?
8  A. Correct.
9  Q. Okay. Was the -- was a copy of that
10 November 27th, I think you said, right? November
11 27th, 2018, that's the date?
12 A. The date is November 27, 2018, yes.
13 Q. Was that letter ever filed with the town
14 clerk?
15 A. I thought you already asked that question,
16 and I believe I said, to the best of my knowledge,
17 no, I don't think it was. But I'm not certain.
18 Q. Okay. All right.
19    I apologize. I thought I only asked about
20 the May letter, but you might be right.
21    In any event, so I'm going to show you
22 another document.
23    Do you see that link?
24 A. Yes.

Page 139

1     MR. SHAFRAN: So if we can mark that as
2  Exhibit 7.
3     (Document marked as Rockland
4     Exhibit 7 for identification)
5     THE WITNESS: I see the document.
6  BY MR. SHAFRAN:
7  Q. These are meeting minutes from November
8  20th, 2018, correct?
9  A. Yes. The open session of the board of
10 selectmen on that date, correct.
11 Q. Yes. If you go to Number 2 at the bottom,
12 do you see that?
13 A. Yes.
14 Q. Do you see where it starts
15 "Mr. O'Loughlin"?
16 A. Yes.
17 Q. This was the motion that he made, correct?
18 A. Yes.
19 Q. So it says, towards the bottom:
20    "... and that he further be notified
21 that he is no longer permitted to exercise
22 any function or exercise any authority as
23 town administrator."
24 Do you see that?

Page 140

1  A. Yes, I do.
2  Q. At the time that that statement was made,
3  was he permitted to exercise any function or
4  authority as town administrator?
5     MR. AMOS: Objection.
6     You can answer.
7  A. I don't believe so, no, pursuant to the May
8  29, 2018, letter.
9  Q. Okay. So there was no period of time
10 between May 29, 2018, and this statement on November
11 20th, 2018, when Mr. Chiocca was permitted to
12 exercise any function or authority as town
13 administrator, correct?
14    MR. AMOS: Objection.
15    You can answer.
16 A. To the best of my knowledge, that's
17 correct.
18 Q. Okay. When did the town make the
19 determination that it was not going to review --
20 renew Mr. Chiocca's contract?
21 A. When did they -- could you repeat your
22 question, please.
23 Q. When did -- when did the town make the
24 determination that it was not going to renew

Case 1:19-cv-10482-WGY   Document 175-2   Filed 11/15/21   Page 13 of 13

Allan Chiocca vs.
The Town of Rockland, et al.

Douglas A. Lapp - Vol. I
October 26, 2021

Page 185

1  Q. You can just pull it out if you have a hard
2  copy. That's fine, too.
3  A. The one dated --
4  Q. The first one --
5  A. Okay. Hang on. Let me --
6    Yes, I have it in front of me.
7  Q. Is the one you're looking at, does it have
8  Bates stamps at the bottom? Like does it say "AC"
9  with a number?
10   I just want to make it easier to reference
11 pages, because I don't believe it has page numbers.
12 A. I have one that has it.
13 Q. The AC --
14 A. AC00462 at the bottom of the first page.
15 Q. Can you just bring -- let's make sure we're
16 looking at the same one.
17 A. Let me go back into the chat here.
18   MR. AMOS: The one that he has in front of
19 him now is the one that's watermarked, so it is a
20 different one than the one you have marked as
21 Exhibit 4.
22 Q. I want to look at Exhibit 4, then, because
23 I want to make sure we're looking at the exact same
24 document.

Page 186

1  A. I thought Exhibit 4 was the employment
2  contract.
3    MR. AMOS: It's titled "W dash Regina Ryan
4  Initial Ryan Report."
5    THE WITNESS: I think -- here it is. Here
6  it is, right?
7    MR. AMOS: Yep. That's the one.
8    THE WITNESS: I'm with you.
9    BY MR. SHAFRAN:
10 Q. You're looking at the initial report,
11 right?
12 A. Yep. Sorry for the confusion.
13 Q. No. That's okay.
14   It's entitled -- that's entitled,
15 "Investigation of Complaints Against Deirdre Hall
16 and Allan Chiocca: Findings of Fact, Conclusions
17 and Recommendations," correct?
18 A. Yes. Yes.
19 Q. Dated July 2nd --
20 A. Yes.
21 Q. -- of 2018?
22   If you would go to Page 26 of the PDF.
23 A. Okay.
24 Q. Now, we read earlier that Paragraph 9.

Page 187

1    Do you recall that?
2  A. Yes.
3  Q. And do you recall your testimony was that
4  the town was aware that the report said the
5  information in Paragraph 9 as of July 2018, correct?
6  A. Yes.
7  Q. As of that time, July 2018, when it read
8  the report, did the town possess any information to
9  contradict this conclusion?
10   MR. AMOS: Objection. Beyond the scope of
11 the notice.
12   You can answer, if you know.
13 A. I'm not sure.
14 Q. Okay. As you sit here today, does the town
15 possess any information to contradict that
16 conclusion?
17   MR. AMOS: Objection. It's beyond the
18 scope of the notice. It also gets dangerously close
19 to mental impressions of counsel and litigation
20 strategy.
21   So Doug, if you know, if you have personal
22 knowledge, you can answer.
23 A. No. I'm not sure.
24 Q. Okay. Does the town possess any facts that

Page 188

1  causes it not to believe the conclusion set forth in
2  Paragraph 9?
3    MR. AMOS: Objection. It's beyond the
4  scope of the notice.
5    Doug, you can answer to the extent you have
6  personal knowledge.
7  A. I don't have personal knowledge.
8  Q. Okay. And again, I just want to ask, does
9  the town have any -- is the town aware of any facts
10 that causes it to not believe the conclusion in
11 Paragraph 9?
12   MR. AMOS: Well, object to the form.
13   And I'll object, it's beyond the scope of
14 the notice.
15   So Doug, answer to the extent you have
16 personal knowledge.
17 A. I am not sure.
18   MR. SHAFRAN: Okay. All right.
19   Let's take five. I may have a few more
20 questions, but I may be done.
21   MR. AMOS: Sure.
22   (Recess taken)
23   BY MR. SHAFRAN:
24 Q. Mr. Lapp, a moment ago when we were talking