UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN CHIOCCA,<br>  Plaintiff,<br><br>v.<br><br>TOWN OF ROCKLAND, DIERDRE<br>HALL, EDWARD KIMBALL, LARRY<br>RYAN, MICHAEL MULLEN, JR.,<br>MICHAEL O'LOUGHLIN, RICHARD<br>PENNEY and KARA NYMAN,<br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. NO. 1:19-cv-10482-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF ALLAN CHIOCCA'S RESPONSES TO DEFENDANT AND COUNTERCLAIM PLAINTIFF EDWARD KIMBALL'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1[1]

Pursuant to L.R. 56.1 of the Local Rules of the United States District Court for the

District of Massachusetts, the Plaintiff Allan Chiocca hereby responds to the Defendant Edward

Kimball's Supplemental Statement of Undisputed Material Facts[2]:

1.  As of May 2018, Mr. Kimball was Chair of the BOS and a business owner.

[Exhibit AA at 39, 54]. In his position as Chair, Town Counsel referred to him as a very active

member that was "thoughtful, very evenhanded, and good with handling disputes . . . [and] . . .

---

[1] **This filing is identical to the filing found at ECF Doc. No. 218 except that it corrects certain citation errors contained in the prior filing as described in Plaintiff's Assented-to Motion for Leave to File Corrected Statement of Facts in Support of His Opposition to Defendant Edward Kimball's Motion for Summary Judgment. ECF Doc. No. 254. One of the three citation errors corrected in this filing is the inadvertent omission of a single page of the deposition transcript of Defendant Richard Penney. This additional page is submitted in conjunction with this filing. All other exhibits referred to herein remain the same as those previously filed with the Court and are not being refiled. Plaintiff also includes the same redactions in this filing as those found in ECF Doc. No. 218 and will provide an unredacted copy to the Court and the parties.**

[2] Kimball's Supplemental Statement of Facts indicates that he joins with the Statement of Facts submitted by the Defendants Town of Rockland, Larry Ryan, Michael Mullen, Jr., Michael O'Loughlin, Richard Penney, and Kara Nyman ("Town Defendants"). As such, Mr. Chiocca incorporates herein his responses to the Town Defendants' Statement of Facts.

one of the best selectmen [he] had worked with." [Exhibit BB at 43].

> **Response**: Admitted, but with clarification. Admitted that as of May 2018, Kimball was the Chair of the BOS and a business owner. Page 43 of Exhibit BB cited to by Kimball in support of the second sentence in the above statement of fact was not included as part of Exhibit BB. Town Counsel, Attorney Clifford also described Kimball as agitated and not calm and cool with Kimball called Attorney Clifford regarding the May 1, 2018 incident between Chiocca and Hall. *See* Declaration of Attorney Adam Shafran ("Shafran Decl.") at Ex. A, Clifford Depo. at 110:16-111:4.[3] Attorney Clifford also described Kimball as having "personally engaged in conduct that embarrassed the Town and undermined the efforts of its residents and leaders to build a great community. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to former counsel for Kimball, Brian Palmucci ("Attorney Palmucci"). Selectman Richard Penney ("Penney") described Kimball's behavior at the Board of Selectmen's meeting in June 2018, while Attorney Regina Ryan's investigation was pending, as an embarrassment and black eye for the town. *See* Shafran Decl. at Ex. B, Penney Depo. at 39:13-40:13. Penney further testified that in the 160-plus Town of Rockland committee meetings that he has attended, that he never saw someone behave like Kimball behaved at the June 2018 BOS meeting. *Id.* at 40:33-41:12. Selectman Michael O'Loughlin ("O'Loughlin") found Kimball's behavior at the June 2018 BOS meeting inappropriate, aggressive, and not the way to conduct business. *See* Shafran Decl. at Ex. C, O'Loughlin Depo. at 117:6-118:9.

2.      Mr. Kimball knew nothing about the May 1st sexual episode involving Mr.

Chiocca and Mrs. Hall at Town Hall until Mrs. Hall called him on May 17. [Exhibit BB at

159:11-24]. She said that she believed something inappropriate had happened on May 1, 2018 at

the Town Hall after she and Mr. Chiocca had returned to town hall after drinking at a local pub,

that she could not remember precisely what happened and that she had been drunk. [Exhibit BB

at 159:16-20]. She said that the next day Mr. Chiocca had thanked her for the "birthday present."

[Exhibit BB at 169:17-24].

> **Response**: Admitted in part and disputed in part. Admitted that Kimball knew nothing about the May 1st sexual episode involving Chiocca and Hall at Town Hall until Hall called him on May 17. Disputed that Hall said to Kimball she believed something inappropriate happened on May 1, 2018 at the Town Hall or that she said she had been

---

[3] Where evidentiary support for Plaintiff's responses to Kimball's Supplemental Statement of Facts are contained within an exhibit appended to the Declaration of Samantha Halem ("Halem Decl.") (previously filed in conjunction with Plaintiff's Statement of Material Facts in support of his motions for summary judgment at ECF Doc. No. 175 with attached exhibits at ECF Doc. Nos. 175-1 to 175-26 and 176-1 to 176-18), citation is made thereto. To the extent Mr. Chiocca's responses to any of Mr. Kimball's Supplemental Statement of Facts are not supported by reference to the Halem Declaration, additional evidentiary support is attached to the Shafran Declaration submitted herewith.

drunk. *See* Shafran Decl. at Ex. D, Hall Depo. at 83-21-85:24. Hall testified that she told Kimball she went out for drinks with Chiocca, but that she did not elaborate on her statement that "something had happened", and that she did not use the phrase "inappropriate conduct." *Id*. Hall's description of her telephone conversation with Kimball on May 17th did not include any statements concerning Chiocca allegedly thanking her for the "birthday present." *Id*. Hall also told Attorney Ryan that "she never said to Kimball that anyone had engaged in inappropriate behavior." *See* Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen Meeting of July 10, 2018 at AC02202-AC2203.

3.       Mr. Kimball then went to Town Hall and viewed the surveillance tape from May

1. [Exhibit BB at 159:21 to 160:1-4, 172:5-7, 11-21]. It showed Mr. Chiocca and Mrs. Hall

returning to Town Hall that night and that Mr. Chiocca had his arm around her to assist her up

the stairway. [Exhibit BB at 194:2-6]. In the video, Ms. Hall appeared to be uneven in her gait

and at times leaning heavily into Mr. Chiocca. [Exhibit DD at 73]. The video also showed Mr.

Chiocca later exiting his office with his shirt in disarray. [Exhibit BB at 197:13-18]; [Exhibit DD

at 73]. Mr. Kimball's impression after reviewing the video footage was that Mr. Chiocca took

advantage of Ms. Hall who seemed intoxicated based on the video footage. [Exhibit AA at

261:7-14]; [Exhibit DD 76:4-12].

> **Response**: Admitted in part and disputed in part. Admitted that Kimball viewed the Town Hall surveillance tape from May 1. Admitted that Chiocca and Hall returned to Town Hall on the night of May 1, 2018. Disputed that Chiocca had his arm around Hall to assist her up the stairway. *See* Halem Decl. at Ex. N, Rockland Town Hall May 1, 2018 surveillance video. Disputed that Hall appeared to be uneven in her gait or at times leaning heavily into Chiocca. *Id*. Disputed that Chiocca's shirt was ever in disarray. *Id*. Admitted that Kimball claims that his impression after reviewing the video footage was that Chiocca took advantage of Hall. Disputed that his impression was reasonable. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci (describing Mr. Kimball's assessment of the May 1, 2018 incident as "based on personal animus arising out of his own illicit relationship with a woman [Mrs. Hall] who was not his wife."). Disputed that Hall was intoxicated based on the video footage. *See* Halem Decl. at Ex. N, Rockland Town Hall May 1, 2018 surveillance video.

4.       Later on May 17, Mr. Hall, Mrs. Hall's husband called him and told Mr. Kimball

that when Mrs. Hall came home that night she was really drunk and said something about

"blowjobs" and "contracts." It seemed to him that something sexual must have happened.
[Exhibit BB at 160:1-9].

> **Response**: Admitted that Kimball testified in accordance with the above statement of
> fact, although the term "him" in the second sentence is ambiguous.

5.      At that point, Mr. Kimball contacted John Clifford, the town counsel the morning

of May 18, 2018. [Exhibit BB at 200:12-22]; [Exhibit CC at 40]. Clifford suggested that the two

of them meet Mr. Chiocca together. [Exhibit CC at 44:8-24]; [Exhibit BB at 200:12-22]. When

they met, around 12:30 in the afternoon, on May 18, Chiocca stated that there had been a

"blowjob." [Exhibit BB at 200:20-22]; [Exhibit CC at 41, 45]. Mr. Chiocca never stated anything

about a contract or being a victim. [Exhibit AA at 260 13-19]; [Exhibit CC at 48-49]. He was

simply trying to find a way to exit his employment from the Town. [Exhibit AA at 260; 13-19].

> **Response**: Admitted in part and disputed in part. Admitted that Kimball and Attorney
> Clifford testified that Kimball contacted Attorney Clifford and that Attorney Clifford
> suggested that the two of them meet with Chiocca together. Admitted that Chiocca
> acknowledged that Hall performed oral sex on him. Disputed that Chiocca never stated
> anything about a contract or being a victim. During the meeting, Chiocca indicated that
> Hall was the aggressor and she threatened his contract. *See* Shafran Decl. at Ex. E, Chiocca
> Depo. at 445:17-446:21. On the same day as Chiocca's meeting with Attorney Clifford and
> Kimball, Attorney Clifford spoke for the first time with the Town's independent
> investigator Regina Ryan. During that conversation Attorney Clifford informed Regina
> Ryan that both Hall and Chiocca were claiming that they were victims. *See* Shafran Decl.
> at Exhibit F (AC02556), ████████████████████████████████████
>
> Disputed that Chiocca was trying to find a way to exit his employment from the Town. *See*
> Shafran Decl. at Ex. E, Chiocca Depo. at 445:17 – 446:21; *see also* Shafran Decl. at Exhibit
> A, Clifford Depo. at 52:6 ("I think he talked about continuing to work . . . .").

6.      Town counsel stated that there would have to be an investigation. [Exhibit BB at

202:12-14].

> **Response**: Admitted that Kimball testified that Town counsel stated that there would have
> to be an investigation.

7.      Town counsel informed Mr. Chiocca that he would have to be put on paid

administrative leave, and the Board so voted on May 29, 2018. AC00189; [Exhibit CC at 52].

4

**Response**: Admitted the Board voted to place Chiocca on what it has called "administrative leave" on May 29, 2018. The testimony cited by Kimball in support of this statement of fact states that Town counsel stated to Chiocca "that he would have to probably go on paid administrative."

8.      In all of his actions concerning Mr. Chiocca, Mr. Kimball relied upon the information provided by Mrs. Hall and Mr. Hall. [Exhibit BB at 192:22-24 to 193:1-5]. This is conceded by Mr. Chiocca, who claims that Mr. Kimball was "played" i.e. deceived [sic] Ms. Hall and her husband. [Exhibit HH at 42:11-19; 44:9-24; 45:1-5].

> **Response**: Disputed. The testimony cited by Kimball in support of the first sentence in this statement of fact does not support the statement. The testimony cited to says nothing about Mr. Hall, and as to Mrs. Hall only states, "I had pressed her to find out what, in fact, happened, and there was the same response that she couldn't remember multiple times." Kimball's actions were based on the interpretation of the information Mrs. Hall provided him which was tainted by personal animus arising out of his own illicit relationship with Mrs. Hall. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci. O'Loughlin also described Kimball's actions as follows: "[t]hroughout the entire investigation the former Chairman lied and misrepresented facts to the board and to the Town of Rockland. He misprepresented the original report on May 17th, 2018. He lied to members of the Board of Selectmen about the nature of his relationship with the former Vice Chairman. He made false statements in an affidavit adverse to the town's interests. He disclosed confidential information to the former Vice Chairman after being advised not to contact her. He falsely accused fellow board members of participating in a cover up, violated open meeting laws, and exposed the town to significant liability." *See* Halem Decl. at Ex. FF, O'Loughlin Facebook post. Selectman Richard Penney testified that Mr. Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. B, Penney Depo. at 107:11-109:17. Selectman Larry Ryan testified that Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. G, Larry Ryan Depo. at 134:7-23. Selectman Mullen testified that Mr. Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. H, Mullen Depo. at 155:2-159:15. Disputed that Chiocca conceded that Kimball's actions were based on his reliance on the information provided by Mrs. Hall. The testimony cited by Kimball supports the proposition that Chiocca believes Kimball was played by Mrs. Hall inasmuch as Mrs. Hall and her husband fabricated the allegations against Chiocca. Chiocca contends that the reason Kimball was able to be played was, as Attorney Clifford described, because of Kimball's personal animus arising out of his own illicit relationship with Mrs. Hall. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci.

9.      As Chairman of the BOS, Mr. Kimball's actions in response to Ms. Hall and Mr. Hall's reports of potential sexual harassment and assault of Ms. Hall on May 1 was out of concern

for someone who may have been sexually assaulted. [Exhibit CC at 44]; [Exhibit AA at 270, 294].

Mr. Kimball "did what [he] thought was right. [He] did what [he] thought was right . . ." and what

he "thought was – in [his] heart was the best interest for the town . . ." [Exhibit AA at 270:10-13,

294].

> **Response**: Disputed. Kimball's actions were based on his personal animus arising out of his own illicit relationship with Hall. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci. O'Loughlin also described Kimball's actions as follows: "[t]hroughout the entire investigation the former Chairman lied and misrepresented facts to the board and to the Town of Rockland. He mispresented the original report on May 17th, 2018. He lied to members of the Board of Selectmen about the nature of his relationship with the former Vice Chairman. He made false statements in an affidavit adverse to the town's interests. He disclosed confidential information to the former Vice Chairman after being advised not to contact her. He falsely accused fellow board members of participating in a cover up, violated open meeting laws, and exposed the town to significant liability." *See* Halem Decl. at Ex. FF, O'Loughlin Facebook post. Selectman Richard Penney testified that Mr. Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. B, Penney Depo. at 107:11-109:17. Selectman Larry Ryan testified that Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. G, Larry Ryan Depo. at 134:7-23. Selectman Mullen testified that Kimball's actions were improperly motivated by his relationship with Mrs. Hall. *See* Shafran Decl. at Ex. H, Mullen Depo. at 155:2-159:15.

10.    According to the 2018 Town of Rockland Employee Handbook, the Sexual

Harassment policy requires a "prompt" reaction by the official in which the allegations were

reported to and that "all" investigations be conducted as "expeditiously as possible." [Exhibit EE

at 203, 204, 205]. Mr. Kimball [sic] actions in reporting Ms. Hall's May 1 allegations of sexual

harassment and assault [sic] consistent with Town policy. [Exhibit EE at 205, 206].

> **Response**: Admitted in part and disputed in part. Disputed that the Town of Rockland's Sexual Harassment policy "requires a prompt reaction by the official in which the allegations were reported." The policy provides, "we will respond promptly to complaints of harassment." Admitted that the Town's Sexual Harassment policy strives for investigations to be completed in an "expeditious manner." Disputed that Hall ever made allegations of sexual harassment and assault. *See* Shafran Decl. at Ex. D, Hall Depo. at 83-21-85:24. Hall testified that she told Kimball she went out for drinks with Chiocca, but that she did not elaborate on her statement that "something had happened", and that she did not use the phrase "inappropriate conduct." *Id*. Hall's description of her telephone conversation with Kimball on May 17th did not include any statements concerning sexual harassment or

assault. *Id*. Hall also told Attorney Ryan that "she never said to Mr. Kimball that anyone had engaged in inappropriate behavior." *See* Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen Meeting of July 10, 2018 at AC02202-AC2203.

11.     On June 13th 2018, Mr. Kimball abstained from the vote regarding how the Town was going to handle Mr. Kimball's affidavit that he wrote in support of Ms. Hall's Motion for Temporary Restraining Order to stop the release of the video. [Exhibit AA at 23-24; p. 244:4-11].

**Response**: Admitted that Kimball testified that he abstained from a vote regarding how the Town was going to handle his affidavit that he wrote in support of Hall's Motion for Temporary Restraining Order to stop the release of the video.

12.     During the BOS Executive Meeting on July 10, 2018, when the board voted to accept the full investigative report, Mr. Kimball abstained from the vote. [Exhibit FF at 62:11-16]; [Exhibit AA at 241:7-24].

**Response**: Admitted.

13.     Mr. Kimball did not attend the BOS hearing regarding Mr. Chiocca's discipline on July 17, 2018. [Exhibit AA at 243:24; 244:1-3].

**Response**: Admitted.

14.     Mr. Kimball was not a member of the BOS when it voted to decline Mr. Chiocca's contract extension on November 20, 2018. See Defendants' SOF ¶¶ 64-78.

**Response**: Admitted that Kimball was not a member of the BOS when it voted to decline Chiocca's contract extension on November 20, 2018. Chiocca incorporates by reference his responses to the Town Defendants' Statement of Facts paragraphs 64-78.

## **PLAINTIFF'S CORRECTED STATEMENT OF ADDITIONAL MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

1.     In the months leading up to the Incident between Chiocca and Defendant Deirdre Hall ("Hall"), Kimball and Hall were involved in a physical and emotional affair. *See* Halem Decl. at Ex. E, Hall Depo at 98:20-21; 104:10-14.

2.     In or about May 17 or 18, 2018 Kimball embarked on his own investigation into

the May 1, 2018 incident between Chiocca and Hall without disclosing his affair with Hall to either Attorney Clifford or any of the other Board members. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci.

3.      Kimball failed to abstain from the May 29, 2018 votes to place Chiocca on so-called administrative leave and begin an independent investigation. *See* Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 7:31.

4.      Kimball lied to Board members about the scope of his relationship with Hall. *See* Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci; *see also* Halem Decl. at Ex. FF, O'Loughlin Facebook post dated July 11, 2018.

5.      While the Town's independent investigator Regina Ryan ("Attorney Ryan") was in the midst of her investigation of the Incident, Kimball publicly referred to the investigation as a "sham". *See* Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 8:50.

6.      While Attorney Ryan was in the midst of her investigation of the Incident, Kimball publicly implied that there were allegations of criminal sexual assault against Chiocca. *See* Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 9:16.

7.      While Attorney Ryan was in the midst of her investigation of the Incident, Kimball publicly implied that Chiocca tampered with evidence. *See* Halem Decl. at Ex. U, Video

recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at

https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-
3JFMM22qHA2Uv3krGX08V&index=104 at 9:16.

8.      While Attorney Ryan was in the midst of her investigation of the Incident,
Kimball violated the Open Meeting Law. *See* Shafran Decl. at Ex. I, Chiocca Open Meeting Law
complaint.

9.      Kimball's violations of the Open Meeting Law were subsequently acknowledged
by Town. *See* Shafran Decl. at Ex. J, Town Response to Chiocca Open Meeting Law complaint
dated July 18, 2018.

10.     At the June 19, 2018 Board meeting, Kimball announced publicly on live
television that he would be the voice of the Board. *See* Halem Decl. at Ex. U, Video recording of
June 19, 2018 Rockland Board of Selectmen Meeting, available at

https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-
3JFMM22qHA2Uv3krGX08V&index=104 at 6:20.

11.     During Attorney Ryan's investigation, Kimball lied to Attorney Ryan about facts
relevant to the investigation. *See* Halem Decl. at Ex. EE, Transcript from Executive Session of
Rockland Board of Selectmen Meeting of July 10, 2018 at AC02200-AC2205.

12.     While Attorney Ryan was in the midst of her investigation of the Incident,
Attorney Ryan was not aware that Kimball and Hall were speaking for hours at a time. *See*
Shafran Decl. at Ex. K, Depo. of Attorney Ryan at 213:3-11.

13.     Attorney Clifford instructed the Board, including Kimball, that Board members
should not be speaking with Hall or Chiocca during the investigation. *See* Shafran Decl. at Ex. A,
Clifford Depo. at 68:18-23.

14.     Kimball communicated with Hall during the investigation, sometimes for over an hour at a time. *See* Shafran Decl. at Ex. L, Hall phone records.

15.     Hall's cell phone number between May and July of 2018 was 617-861-7921. *See* Shafran Decl. at Ex. D, Hall Depo. at 31:22-24.

16.     Kimball's cell phone number between May and July of 2018 was ████████. *See* Shafran Decl. at Ex. M, Kimball Depo. at 23:9-12.

17.     Kimball's home office phone number between May and July of 2018 was ████ ████. *Id.* at 46:8-16.

18.     Kimball's wife cell phone number between May and July of 2018 was ████ ███. *Id.* at 142:17-19.

19.     During the period of time from when the Town voted to launch the investigation (May 29, 2018) to the date of Attorney Ryan's initial report, Hall's phone records indicate a combined 838 minutes of talk activity between Hall's cell phone and the three cell phone numbers listed in statement of facts paragraphs 16-18. *See* Shafran Decl. at Ex. L, Hall phone records.

20.     Kimball submitted an affidavit in support of Hall's motion for a temporary restraining order through which Hall sought to block the public release of the Town Hall video surveillance tapes. *See* Shafran Decl. at Ex. N, Hall motion for temporary restraining order and Kimball affidavit.

21.     Selectman O'Loughlin described Kimball's conduct as follows:

> Throughout the entire investigation the former Chairman [Kimball] lied and misrepresented facts to the board and to the Town of Rockland. He misrepresented the original report on May 17, 2018. He lied to the members of the Board of Selectmen about the nature of his relationship with the former Vice Chairman [Hall]. He made false statements in an affidavit adverse to the town's interests. He

> disclosed confidential information to the former Vice Chairman
> after being advised not contact her. He falsely accused fellow
> board members of participating in a cover up, violated open
> meeting laws, and exposed the town to significant liability. He
> undermined the public's faith in town government and made the
> Town of Rockland a laughing stock. . . . His relationship with the
> former Vice Chairman has compromised his ability to do what is
> best for the Town of Rockland.

See Halem Decl. at Ex. FF, O'Loughlin Facebook post.

22.    Selectman Ryan described Kimball's conduct as follows:

> [T]he only person who covered anything up was you [Kimball],
> your affair with Ms. Hall, your – when you came to the meeting,
> you – when you heard that something happened. She didn't report
> that. You did . . . . So, quite frankly, it looks like you started an
> investigation without having probable cause. I mean, if she didn't
> tell you that something happened, why did you start an
> investigation? You went down and saw the movies. You went
> down and said, you know, there's pieces missing. You went down
> and said all these things, and none of them are true. Just covering
> up – everything for everybody. . . . The fact of the matter is from
> the that start, you lied to us. You lied and lied and lied and lied.

See Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen

Meeting of July 10, 2018 at AC02196; AC02257

23.    Selectman Richard Penney testified that he believed it was "ironic" that Kimball

called the investigation as "sham" being that he was the one who called for it. See Shafran Decl.

at Ex. B, Penney Depo. at 41:13-23.

24.    Penney testified that he felt Kimball lied to the Board members about the scope of

his relationship with Hall. Id. at 90:8-16.

25.    When asked at deposition by Kimball's counsel to describe why it was significant

to him that Kimball lied about the scope of his relationship with Hall, Penney testified:

> So you want to go down the road of unethical? You want to go
> down the road of immoral? Do you want to go down the road of,
> you know, whatever adjective you want to use to describe it?

11

> When – when two leaders of a board are having a relationship that
> no one else is aware of that impacts the direction of that board, that
> can't happen.

*Id*. at 108:5-12.

26.     Penney went further and described how Kimball's relationship with Hall

improperly influenced Board decisions even prior to the Incident:

> Deirdre was actually put in positions within the town that, in my
> opinion, as a new member of the board, should not have been,
> wasn't qualified for. And the only reasons she was, after the fact –
> because, again, sitting from the outside, this was – not as a member
> of the board, her – her position that was put in in the school in
> particular, as someone who was on the finance committee and very
> involved in the school, and someone who didn't have a
> background all of a sudden put in a position at the school that
> became very impactful was very puzzling to me, and I couldn't
> understanding it. And it kind of came clear, once the report came
> out, on why she was put in that position. And there wasn't – there
> were tow members on the board that were more qualified and
> clearly more capable at that time to be in that position, but they
> were overpassed in – when Ms. Hall was put in there. And it was
> very – for me, at the time, being on the FinComm, and being that
> we were represented with the board, it was very – very confusing,
> very troubling why that happened. And they didn't know why. It
> kind of came clear after the fact.

*Id*. at 108:16-109:17.

27.     Selectman Mullen artfully testified about the impact of Kimball publicly calling

the investigation a "sham":

> You know, I mean – and what was said – and what was said on
> June 19th, in my opinion, like interfered with how – you know, like
> interfered with how – you know, like the outside investigation
> inasmuch that – like in all my experiences and based on what I
> know, when there is an investigation launched, like, all parties
> don't talk about the investigation. They let – essentially they let the
> investigation happen with the understanding that if any – if
> anything is said during the course of any investigation, it has – it
> has a chance to either shape how the investigation happens, like
> how members of the generally public actually perceive the
> investigation.

12

*See* Shafran Decl. at Ex. H, Mullen Depo. at 168:10-23.

28.     Selectmen Mullen further testified that Kimball calling the investigation a "sham"

was "interference with the investigation . . . because it call[ed] into question the integrity of it."

*Id*. at 168:24-169:8.

29.     Attorney Clifford was authorized to speak on behalf of the Board/Town on all

matters related to the Incident and investigation. *Id*. at 213:24-214:8.

30.     Attorney Clifford described Kimball's conduct at the July 10, 2018 Board

meeting as follows:

> It is very relevant how this investigation started, all right, with an
> untruthful statement by your client [Kimball]. It's very relevant
> that he mislead all the parties involved all the way through this
> investigation . . . . When all the while, he was the one being
> untruthful.

*See* Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen

Meeting of July 10, 2018 at AC02209.

31.     On June 15, 2018, describing the affidavit that Kimball submitted on June 13,

2018 in support of Hall's motion for a temporary restraining order to block the release of the

Town Hall video surveillance tapes, Attorney Clifford issued the following press release which

stated in relevant part:

> This firm serves as Town Counsel for the Town of Rockland, and
> the following statement is being issued at the best of the Board of
> Selectmen.
>
> Unfortunately, there has been a steady stream of information
> improperly disseminated during the investigation, much of which
> was false. The release of false and/or misleading information has
> only served to hamper our efforts to get this investigation done.
>
> On Wednesday, June 13th, a motion for an emergency restraining
> order was filed on behalf of Ms. Hall. Much of the information

13

contained in that filing was misleading, based on conjecture, or just false. It was my intention to appear in Brockton Superior Court this afternoon and make it clear that the facts and legal conclusions in that filing were not only wrong, but obtained in an improper manner. The circumstances surrounding the filing [sic] this motion are troubling from a legal perspective . . . .

Unfortunately, the documents filed in Brockton Superior Court on Wednesday contain assertions that the video was tampered with or altered in some way. We have consulted with the vendor who installed the surveillance system and he has indicated that the perceived gaps in the video may be due to the fact that the system is activated by motion. If there are individuals some distance from the camera and they are not moving, the system may stop recording until there is subsequent motion in the range of the camera.

*See* Halem Decl. at Ex. Y, Attorney Clifford Press Release dated June 15, 2018.

32.     In their answers to Chiocca's interrogatories, the Town Defendants described the false information contained in the affidavit that Kimball submitted in support of Hall's motion for a temporary restraining order to block the public release of the Town Hall video surveillance tapes as follows: "Mr. Kimball provided a sworn affidavit in a complaint filed by Ms. Hall to suppress release of the video recordings from the evening of May 1, 2018 – morning of May 2, 2018. That affidavit contains false statements about the video having "critical missing segments . . ." At all relevant dates prior to release of this document, Mr. Kimball had full access to confidential information relating to the investigation and legal strategy relating to the events of the evening of May 1, 2018 – morning of May 2, 2018. The complaint contained false statements regarding the Massachusetts Public Record Laws, and whether the video files had been tampered with." *See* Halem Decl. at Ex. JJ, Town of Rockland's Answers to Plaintiff's Interrogatories at Interrogatory number 8.

33.     In their answers to Chiocca's interrogatories, the Town Defendants described how the false information contained in the affidavit that Kimball submitted in support of Hall's motion

for a temporary restraining order to block the public release of the Town Hall video surveillance tapes hampered the Town's investigation as follows:  "The information contained in the sworn affidavit and accompanying suit forced the Town to defend against the allegations and address specific allegations publicly. Mr. Kimball was privy to information relating to legal strategy and investigation itself, in his capacity as Chairman of the Board of Selectmen. Mr. Kimball's undisclosed collaboration with Ms. Hall, a subject of the investigation, presented a threat to the integrity of the investigation and compromised confidential discussions of the Board regarding legal strategy." *Id*.

34.     In their answers to Chiocca's interrogatories, the Town Defendants further described the information that was misleading, based on conjecture, or false contained in the affidavit that Kimball submitted in support of Hall's motion for a temporary restraining order to block the public release of the Town Hall video surveillance tapes as follows: "The false information is described in paragraph (a) above. The misleading statements or statements based on conjecture include a statement in the affidavit attributing specific comments to Ms. Hall in the video, even though there is no audio on these recordings. The Town also objected on the basis it was inappropriate for counsel for Ms. Hall to have spoken directly with Mr. Kimball when he was represented by counsel for the Town." *Id*.

35.     A digital forensic analyst retained by Attorney Ryan in the course of her investigation submitted an affidavit that found, "[f]rom my review of the surveillance video(s) provided, it is my professional opinion that it has not been altered or edited." *See* Shafran Decl. at Ex. O, Affidavit of Steven R. Verronneau.

36.     Notwithstanding Attorney Clifford's press release regarding the multitude of issues with Kimball's affidavit, at the June 19, 2018 Board meeting, Kimball repeatedly stated

that he continued to stand by his affidavit. *See* Halem Decl. at Ex. U, Video recording of June

19, 2018 Rockland Board of Selectmen Meeting, available at

https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-

3JFMM22qHA2Uv3krGX08V&index=104 at 8:30.


              Respectfully Submitted,
              Plaintiff,
              Allan Chiocca,

              By his attorney(s),

              /s/ Adam J. Shafran
              Adam J. Shafran, Esq. (BBO 670460)
              *ashafran@rflawyers.com*
              Jonathon D. Friedmann, Esq. (BBO 180130)
              *jfriedmann@rflawyers.com*
              Rudolph Friedmann LLP
              92 State Street
              Boston, MA 02109
              617–723–7700
              617–227–0313 (fax)


CERTIFICATE OF SERVICE

      I, Adam J. Shafran, do hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 1, 2021.


          /s/ Adam J. Shafran
          Adam J. Shafran