UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Allan Chiocca,<br><br>    Plaintiff<br><br>v.<br><br>The Town of Rockland, Deirdre Hall,<br>Edward Kimball, Larry Ryan,<br>Michael Mullen Jr., Michael O'Loughlin,<br>Richard Penney and Kara Nyman,<br><br>    Defendants | C.A. No. 1:19-cv-10482-WGY |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH DEFENDANT EDWARD KIMBALL'S SUBPOENA TO CASEY SHERMAN[1]**

# INTRODUCTION

The parties have submitted 16 summary judgment briefs in the aggregate[2], and in one of those briefs Defendant Edward Kimball (the party who served Sherman Subpoena) argues that "**the critical facts** as to each Counter-Plaintiff's [invasion of privacy] claim has been admitted such that liability as a matter of law has been established . . . ." Memorandum in Support of Motion for Summary Judgment by Counter-Plaintiffs Deidre Hall and Edward Kimball, p. 1 (hereinafter, "Hall/Kimball Memo, p. __"). Notwithstanding Kimball's assertion and the fact that he was able to move for summary judgment on all of Chiocca's claims against him and his own counterclaim, he seeks to take additional fact discovery that will serve no purpose in this litigation other than to further burden the parties with redundant, unnecessary, and disproportionate discovery in this

---

[1] Casey Sherman is the public relations expert retained by Chiocca and his counsel in June 2018 after Chiocca was placed on administrative leave by the Town of Rockland. A copy of Kimball's subpoena to Sherman ("Sherman Subpoena") is attached hereto as Exhibit A.

[2] Motions, oppositions, and replies.

laboriously litigated case. Even if that were not the case, the majority of the information sought by Kimball through the Sherman Subpoena is, as described below, privileged and/or work product.

Accordingly, the Court should quash the Sherman Subpoena.

## ARGUMENT

### I. The Sherman Subpoena Seeks Information Beyond The Scope Of Rule 26.

Federal Rule of Civil Procedure 45 authorizes a court to quash a subpoena to protect a party from "undue burden," and Rule 26 provides that the Court must limit discovery if it "is not proportional to the needs of the case, considering [*inter alia*] the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2).

"'As a general rule, a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests.'"[3] *Cabi v. Boston Children's Hospital*, 2017 WL 8232179, * 2 (D. Mass 2017) (quoting *Patrick Collins, Inc. v. Does 1-38,*, 941 F.Supp.2d 153 (D. Mass 2013). However, "[i]ndependent of any privilege-related concerns, and regardless of whether [a party] ha[s] standing, Rule 26 contemplates that the Court may take its own steps to ensure that the discovery to be produced comes within the scope of Rule 26(b)(1), that is, that it is relevant to Plaintiffs' claims and proportional to the needs of the case." *Cabi*, at * 3 ((citing Fed. R. Civ. 26(b)(2)(C)(iii) and quashing subpoena requests on proportionality grounds). "A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *In re New England*

---

[3] "A showing of personal right or privilege 'need not be weighty,' and is met where a party can 'show some personal right or privilege in the information sought.'" *Cabi*, at *2 (quoting *Green v. Cosby*, 2017 WL 1377593, at *2 (D. Mass. 2017). As described below, Chiocca has a claim of privilege related to the information sought.

2

*Compounding Pharmacy, Inc. Products Liability Litigation*, 2013 WL 6058483, *4 (D. Mass 2013) (citing *Miller v. Allstate Fire & Cas. Ins. Co.*, 2009 WL 700142, *2 (W.D. Pa. 2009).

Federal Courts quash subpoenas served upon non-parties like Mr. Sherman when the evidence is sought is beyond the scope of Rule 26. *See* Fed. R. Civ. Proc. 26(b)(2); *Parker v. Four Seasons Hotels, Ltd.* 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quashing the plaintiff's subpoena served upon a non-party because either the documents sought were duplicative of discovery requests directed to the defendant or the requests were invalid as overly broad, burdensome, irrelevant or previously could have been the subject of discovery); *Ameritox, Ltd. v. Millennium Labs, Inc.*, No. 12–cv–7493, 2012 WL 6568226, at *2–3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"); *Burns v. Bank of Am.*, No. 03-cv-01685 (RMB) (JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-cv-00035 (HKS), 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013). It is proper to quash a subpoena to a non-party even if the party to whom the same discovery was requested refuses to produce it. *See Tresona Multimedia, LLC v. Legg et al.*, No. 15-cv-4834, 2015 WL 4911093, at *4 (N.D. Ill. Aug. 17, 2015).

As described above, Kimball argues that "the critical facts as to each Counter-Plaintiff's [invasion of privacy] claim has been admitted such that liability as a matter of law has been established . . . ." Hall/Kimball Memo, p. 1. In relevant part, Kimball has asserted that (1) Mr. Chiocca hired Attorney Shafran; who (2) hired a public relations expert (Sherman); who (3) caused the media to publish Attorney Regina Ryan's Report ("Report"). Hall/Kimball Memo, p.3. If, as Defendant Kimball argues, he is already in possession of sufficient evidence to prevail on his

3

motion for summary judgment, Mr. Sherman's testimony and document production is unnecessary and duplicative.

To be sure, Mr. Chiocca opposed Defendant Kimball's motion for summary judgment on his invasion of privacy claim, and indeed moved for summary judgment on that claim himself. But Plaintiff does not contest the relevant facts asserted in either submission; he admits that he hired Mr. Shafran, who hired Mr. Sherman. Plaintiff's Response to the Statement of Undisputed Material Facts by Defendants Deidre Hall and Edward Kimball in Support of their Motion for Summary Judgment (Dkt. 221), ¶ 13 (hereinafter, "Response to SOF, ¶ __"). He also admits that Attorney Shafran e-mailed Boston 25 News with a statement that mentioned the purportedly private Hall/Kimball affair on July 10, 2018 (*id.* at ¶ 82 & 83), and that that Mr. Sherman e-mailed a copy of the Report to select media outlets on July 11, 2018 (*id.* at ¶ 84). *See also* Plaintiff's Statement of Uncontested Material Facts in Support of his Motion for Summary Judgment on the Counterclaims by Defendants Hall and Kimball (Dkt. 173), ¶ 193.[4]

Instead, Mr. Chiocca contends that, regardless of whether he caused the Report to be published, Defendant Kimball's invasion of privacy claim fails as a matter of law. *See* Plaintiff's Motion for Summary Judgment on the Counterclaims by Defendants Hall and Kimball, (Dkt. 178) pp. 9-13 (disclosure protected by litigation privilege; is not actionable because the facts are claimed to be false; is not actionable because the facts were already "open to the public view"; is not actionable because it was "of legitimate public concern"; or is not actionable because the Ryan Report is a public record). In sum, neither Defendant Kimball's *prima facie* case nor his ability to

---

[4] During counsels' Local Rule 7.1 Conference relative to this motion, Kimball's counsel indicated that if Chiocca filed this motion that he intends to file a Rule 56(f) affidavit (56(d) in federal court). A Fed. R. Civ. P. 56(d) affidavit is proper when "a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." It would be wholly disingenuous for Kimball to file a 56(d) affidavit now, after he already submitted his opposition to Chiocca's motion and failed to assert in any way that he was unable to "present facts essential to justify [his] opposition."

withstand Mr. Chiocca's defenses will depend on Mr. Sherman's documents or testimony. The information sought by the Sherman Subpoena is beyond the scope of discovery contemplated by Rule 26 because it is not "proportional to the needs of the case," will not assist the court "in resolving the issues," and its "burden or expense . . . outweighs its likely benefit."

## II. The Costs of Proceeding with Mr. Sherman's Deposition and Production far Outweigh the Benefit to this Case.

Both Rule 45 and Federal Rule of Civil Procedure 26 authorize a Court to quash a subpoena or limit discovery to avoid an "undue burden." Assuming for the moment that Mr. Sherman's evidence is not entirely cumulative and duplicative – which it is – the Court should still quash the Sherman Subpoena because the burden and expense of proceeding with a document review, production, and deposition, both generally and in the context of the current procedural posture of the case, far outweighs the benefit of Mr. Sherman's evidence to this matter.

At the moment of this instant briefing, the parties are in the midst of briefing Daubert motions, taking exert depositions, finalizing their pretrial memorandum, and preparing for the summary judgment hearing. If Mr. Sherman is to comply with the Subpoena, each of the four separately-represented parties will need to marshal their respective counsel to prepare for and question Mr. Sherman at a deposition. That preparation, in the midst of the substantial work the parties are currently undertaking, will require all counsel to obtain and review any documents Mr. Sherman produces, and then to prepare exhibits and questions for that deposition. Even assuming each party expeditiously performed the above tasks and only a single attorney for each party attended the deposition, there is no reason to believe that each party will put in fewer than five hours to prepare for, participate in, and analyze Mr. Sherman's deposition.[5] Given the reputation

---

[5] The shortest deposition taken yet in this matter, of Kara Nyman, was on the record for one hour and thirty minutes. That does not include any time counsel spent at the deposition either before or after Ms. Nyman's testimony, counsel's

5

and experience of counsel in this matter, it is safe to assume that the Parties in the aggregate spend upwards of $2,000.00 for each hour they collectively put into this case. To the absolute financial floor of $10,000.00, the Court should add the cost of the stenographer and other deposition costs, not to mention the time and expense that Mr. Sherman will incur collecting the materials and attending his deposition.

That financial and time burden has to be weighed against the benefit in obtaining Mr. Sherman's evidence. As set forth in Part I, *supra*, Defendant Kimball will not obtain any facts relevant to the adjudication of his claim. Mr. Chiocca expects Kimball to argue that Mr. Sherman holds the key to one lingering question that Attorney Shafran was unable to answer at his deposition: to which media outlets did Mr. Sherman send the Report? While it is true that Attorney Shafran did not know the names of the recipients of Mr. Sherman's e-mail, those recipients are irrelevant. *See* Response to SOF, ¶¶ 84-85, 94-95. In theory, to the extent Kimball was damaged by the public disclosure of the Report (he was not for all the reasons described in Mr. Chiocca's summary judgment briefing), it would not have been because Mr. Sherman sent the Report to a handful of news reporters, but because the news outlets for whom those individuals worked published stories about the Report. To the extent any such stories exist, they are not in Mr. Sherman's possession, but rather available to Kimball to the same extent as any other individual.

### III. Mr. Sherman's Communications with Attorney Shafran are Protected Attorney-Client Communications and as Work Product.

Even if the Court finds that Mr. Sherman should produce and testify as to his communications with the media, his communications with Attorney Shafran and Attorney

---

time preparing for Ms. Nyman's testimony, counsel's time reviewing the transcript and exhibits, or counsel's time deciding what testimony and other evidence, if any, to use in preparing this case for trial.

Friedmann[6] should not be produced because they are protected from disclosure as attorney-client communications and attorney work product.

The First Circuit applies an eight-factor test to determine if communications are protected from disclosure as attorney-client communications. Those factors include:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 239-40 (1st Cir. 2002). The First Circuit also follows the "*Kovel*" Doctrine, named for the Second Circuit decision in *United States v. Kovel,* which protects communications with third parties who are "necessary, or at least highly useful," to an attorney in rendering legal advice. When applying *Kovel* to facts similar to this case, the Southern District of New York succinctly held that "(1) confidential communications (2) between lawyers and public relation consultants (3) hired by the lawyers to assist them in dealing with the media in cases [or litigation] (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney client privilege." *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003).

Mr. Chiocca's is a very unique case. The members of the Town's board of selectmen ("Board") are elected by town residents. When Mr. Shafran hired Mr. Sherman, the Board had already suspended Mr. Chiocca pending its investigation, and Defendant Hall—Vice Chairman of that Board—had already publicly accused Mr. Chiocca of wrongdoing. *See* Affidavit of Attorney Adam J. Shafran attached hereto as Exhibit B at ¶¶ 2-3. Attorney Shafran's initial representation of Mr. Chiocca related to the Town's investigation and the Board's use thereof to make decisions regarding Mr. Chiocca's employment. *Id*. at ¶ 4. As part of that effort, Attorney Shafran enlisted

---

[6] Attorney Friedmann is Attorney Shafran's partner and co-counsel in this matter.

7

the help of Mr. Sherman[7] who advised Attorney Shafran and Chiocca when and how to speak publicly on matters of concerning Mr. Chiocca's legal rights, and, in that way, was inexplicably intertwined with Attorney Shafran's advocacy for Mr. Chiocca. *Id*. at ¶ 5.

Mr. Sherman played a vital role in navigating several other matters that arose at or shortly after Attorney Shafran engaged him. Attorney Shafran consulted Mr. Sherman on how to address the Board and the public after Defendant Hall named Mr. Chiocca in a lawsuit supported by then-Chairman of the Board Defendant Kimball to block the release of Town Hall video surveillance tapes, and again after Defendant Kimball committed open-meeting law violations during Board meetings that were held because of the Investigation into Mr. Chiocca. *Id*. at ¶ 7. These events and Mr. Sherman's professional expertise were also inextricably intertwined with Attorney Shafran's legal representation. As such, communications between Attorney Shafran, Attorney Friedmann, Mr. Chiocca, and Mr. Sherman are protected privileged communications. *See Stardock Systems, Inc. v. Reiche*, No. 17-07025-SBA, 2018 WL 6259536, at *3 (N.D. Cal. Nov. 30, 2018) (communications between counsel and public relations expert protected).

If not protected pursuant to the attorney-client privilege, the communications between Attorney Shafran, Attorney Friedmann and Mr. Sherman are protected attorney work product. Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that, "on a timely motion, the court . . . must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." In turn, Rule 26(b)(3)(A) states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party **or its representative** . . . ." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

---

[7] There is no formal, written retainer agreement governing Mr. Sherman's retention. *Id*. at ¶ 6.

The work product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). While the attorney-client privilege exists to protect confidential communications and maintain the sanctity of the attorney-client relationship, the work-product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Id*. (citing *United States v. AT & T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). "Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018). "Work product protection prevents most inquiries into an attorney's work files and mental impressions." *Id*. at 1335. "The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id*. (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

There is no question that the Sherman Subpoena seeks "documents or tangible things." *See* Exhibit A. Moreover, there is no dispute that Attorney Shafran hired Mr. Sherman in anticipation of litigation to provide public relations services. And, the requested documents—about services provided to Mr. Chiocca, communications between Mr. Sherman and Attorney Shafran, Attorney Friedmann or the law firm Rudolph Friedmann LLP, notes, texts, and other written documents about Mr. Sherman's representation of Mr. Chiocca—are documents "by or for [Mr. Chiocca] or [his] representative." Fed. R. Civ. P. 26(b)(3). Mr. Shafran hired Mr. Sherman in June 2018, a few weeks after the media first learned about the events of May 1, 2018 and after Defendant Hall made damaging public remarks about Mr. Chiocca. *Id*. at ¶ 2.  Attorney Shafran hired Mr. Sherman to create and facilitate public statements on Mr. Chiocca's behalf that would tell the Board's

9

constituents the truth behind the Board's suspension of Mr. Chiocca and the investigation that ensued. *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55-56 (S.D.N.Y. Dec. 5, 2000) (concluding documents drafted or selected and presented by counsel to a public relations expert, as well as notes and other documents reflecting counsel's stance or opinion of the pending litigation, are protected work product). At minimum, documents responsive to Request Nos. 1, 3, 4, and 6 are protected work product. *Id.* That leaves only Request Nos. 2, 5, 7 and 8, all of which concern the scope of Mr. Sherman's distribution of the report. As set forth in Part I, *supra*, this evidence is irrelevant and unnecessary given Kimball's assertion that all of the "critical facts" relevant to his claim have been established.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this motion is **ALLOWED**.


Respectfully submitted,
Allan Chiocca

By his attorney,

  *Adam J. Shafran*
Adam J. Shafran, BBO#670460
Eric J. Walz, BBO#68772
ashafran@rflawyers.com
ewalz@rflawyers.com
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
617-723-7700
617-227-0313 (fax)

## **CERTIFICATE OF SERVICE**

I, Adam J. Shafran, do hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 10, 2022

*/s/ Adam J. Shafran*
Adam J. Shafran