UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN CHIOCCA,<br><br>       Plaintiff,<br><br>   v.<br><br>TOWN OF ROCKLAND, DIERDRE HALL,<br>EDWARD KIMBALL, LARRY RYAN,<br>MICHAEL MULLEN, JR., MICHAEL<br>O'LOUGHLIN, RICHARD PENNEY and<br>KARA NYMAN,<br><br>       Defendants. | CIVIL ACTION NO. 1:19-cv-10482-WGY |

**DEFENDANT EDWARD KIMBALL'S OPPOSITION TO PLAINTIFF CHIOCCA'S
MOTION TO QUASH SUBPOENA TO CASEY SHERMAN**

The counterclaims asserted by Edward Kimball and Deirdre Hall ("Defendants) against

Plaintiff Alan Chiocca for invasion of privacy are by now familiar ground in this litigation.  The

Defendants charge Chiocca with disclosing sensitive private facts which were contained in a

highly confidential investigative report compiled for the Town of Rockland.  The investigation

was precipitated by events that took place on May 1-2, 2018 and was conducted by Regina Ryan

during the month of June 2018.   The report was turned over to Town Counsel on July 2, 2018

and provided to Mr. Chiocca's counsel on July 6, with a legend on each page that the report was

"confidential" and "not to be released or distributed without the permission of the Rockland

Board of Selectmen."  ECF No. 195, SUMF[1] ¶68. On July 10, the Board decided not to release

the report, announcing its conclusory findings in a two sentence statement.  As recounted in

numerous pleadings, the next day and at various times thereafter, the report, which contained

---

[1] "SUMF" refers to the Defendants and Counterclaim Plaintiffs Deirdre Hall and Edward Kimball's Statement of
Undisputed Material Facts.

sexual and marital histories of the Defendants and which had been deliberately and carefully protected by Rockland officials from disclosure, was released to electronic and print media outlets across state, to the distress of and serious damage to the Defendants and their families.

Plaintiff Chiocca has filed a motion to quash the deposition subpoena of Casey Sherman, a public relations professional who was retained by Plaintiff's attorney, Adam Shafron, at the beginning of June 2018 to mount a publicity campaign for his client. ECF No. 265, Pl's Memorandum, Ex. B Aff. of Shafran. On July 11, and thereafter, Sherman was the one who personally contacted media organizations, sending them the entire unexpurgated confidential report, and urged its publication.  In a cover note to his first broadcast email, he explained, "Mr. Chiocca's attorney Adam Shafran has decided to release the full 29 page investigation to provide . . .  missing context" to the Town's decision to release the May 1 surveillance video. He further explained that since "Mr. Chiocca has not entered into any confidentiality agreement and is free and clear to share the results of the investigation as the media is free to use the report in broadcast or print." [2]

Mr. Sherman has proved to be a most elusive witness.  Defendant was not aware of Sherman's role until just before the deposition of Adam Shafron on October 20, 2021 (a deposition which the Plaintiff had likewise attempted, although unsuccessfully, to prevent). Sherman's involvement had been concealed until hours before Mr. Shafron's deposition was to take place when Shafran produced the July 11 Sherman cover email – sought by Defendant for almost two years -- that revealed Sherman's involvement.[3]  There followed months of frustrating efforts by Mr. Kimball's attorneys to secure service of a subpoena upon Sherman. Then there

---

[2] Attached hereto as Exhibit A (Casey Sherman "Urgent" email: "Attention reporters and editors," dated July 11, 2018).
[3] See note 2 supra.

was delay after further delay.  ECF No. 223, SOF ¶¶133-138;[4]  Plaintiff's counsel and the deponent finally agreed to schedule the deposition, (Exhibit B), but in the end, Plaintiff reneged and filed this motion, waiting to file until just before the scheduled deposition date, and on the eve of Summary Judgment arguments.

Plaintiff argues that the information sought is beyond the scope of Rule 26 and is privileged.  These claims are beyond frivolous.

## ARGUMENT

### A.   The Information Sought Is Well Within the Scope of Rule 26.

Plaintiff Chiocca's principal argument is that any information sought from Mr. Sherman is so far beyond the scope of discovery that the burden of collecting it exceeds any benefit to be obtained.  Plaintiff actually concedes that he lacks standing to make this claim (ECF No. 265, Pl's Memorandum p. 2), but goes on to invite the Court to deny the evidence to the Defendant, "tak[ing] its own steps."  *Id.*  Even if Plaintiff had standing he would face an overwhelming burden.  "Prohibiting the taking of depositions is an extraordinary measure.  The moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts" that would justify such an order."  *Prozina Shipping Co., Ltd., v. Thirty-Four Automobiles*, 179 F.R.D. 41 (1998)."  The invitation should be declined.

Plaintiff's argument turns logic on its head.  He does not contend that the evidence is irrelevant.  Instead, he argues that it is simply not needed, and therefore, by definition, is too burdensome to produce – all because Kimball, by moving for summary judgement, has conceded that he already has enough evidence and therefore, does not need more.  This is too clever by

---

[4] "SOF" refers to Defendants and Counterclaim Plaintiffs Deirdre Hall and Edward Kimball's Statement of Additional Material Facts.  Defendant extended every courtesy to the deponent as to scheduling, agreeing to his several requests to cancel on account of his need to care for his mother.

half.  Plaintiff *opposes* Kimballs's motion.  Not only that, he *moves* for summary judgment himself.  Likewise, he contends that there were no damages.  Lacking any concession by Chiocca that he is liable for invasion of privacy there can be no plausible basis for denying Kimball the right to collect relevant evidence which supports liability.  And even if Chiocca were to admit liability, Kimball would still have the right to discover the extent of the invasion in order to prove damages.

Mr. Kimball is entitled to discover and prove what was the purpose and scope of the publicity campaign for which Mr. Sherman was retained; how widespread the effort was to broadcast the details of the Defendants' private lives; how successful and extensive it was; exactly how, when and to whom the report was disclosed; to whom it was offered; and what was said to convince the recipients to publish.  Notably, part of Chiocca's defense is the claim that in the weeks prior to his July 11 release of the report, certain private Facebook and online blog posts had reported local rumors about the Defendants and posted comments containing vulgar, even obscene, language -- thus destroying Defendants' reputations before Shafron or Sherman had done anything. ECF No. 220, Chiocca's Opp. to Hall/Kimball MSJ, pp. 8-11.  Putting aside the fact that the blog posts pointed to by Plaintiff were dwarfed by the television and print media which followed disclosure of the report, Mr. Kimball has every right to discover what role Mr. Sherman, who began his work on this engagement in early June, had in promoting or producing any of these prior posts or comments.

At his deposition, Plaintiff Chiocca denied any personal knowledge of how the public outreach was accomplished, referring Kimball's attorneys to Attorney Shafron as the only one with the necessary knowledge of the facts. ECF No. 141-7, Chiocca Depo. Vol. II, pp. 547-49.

So, Mr. Kimball naturally then sought the deposition of Attorney Shafran.  When Shafran moved to quash, Defendant Kimball explained that he needed to learn, among other matters:

> 1) when exactly Attorney Shafran first released the report to the media and the timeframe of subsequent releases; 2) all of the media persons and outlets Attorney Shafran distributed the report to; 3) how he distributed the report each time; 4) how soon he was communicating with the media about allegations of the case prior to the release of the Ryan Report; 5) the contents of his communication with the media concerning the case; and 6) corresponding dates and recipients of communication with the media.

ECF No. 141, Opp to Shafran Motion to Quash, p. 4, ¶5.

The Court agreed, denying Chiocca's motion to quash the Shafron deposition.  ECF No. 142.

In the event, however, Shafron either could not or would not shed any light on the specifics of how the publicity campaign had been conducted.  He either did not know or refused to say (on purported privilege grounds) what specific communications and instructions he had shared with Sherman, and he said that he did not know which or how many reporters and editors received or were on a list to receive the report. ECF No. 193, Joint Appendix Ex. G, Shafran Depo. at e.g. 26:12-28:7; 32:1-37:18; 41:7-45:19.

In short, Mr. Sherman, a critical actor in the drama, has important and relevant information, well within the scope of Rule 26, which Mr. Kimball has been otherwise unable to obtain, in large part because of the resistance and dilatory actions of the Plaintiff and his agents. Indeed, the lengths to which the Plaintiff and his attorney have gone to prevent Defendant from discovering the scope and methods of their publicity campaign itself attests to the importance and need for this discovery.

**B. The Information Sought is Not Privileged by Either the Attorney-Client Privilege or the Work Product Protection.**

Next, Plaintiff argues that the communications between his attorneys and Sherman are protected by both the attorney-client privilege and the work product doctrine.  The Plaintiff bears the burden of establishing the applicability of either privilege.  *See, eg.*, *In re Grand Jury Subpoena*, 273 F. Supp. 3d 296 (D. Mass. 2017) (attorney client privilege); *In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d. Cir. 2003) (work product doctrine).   Neither of these claims have any substance.

### 1. Attorney-client privilege

A disclosure by an attorney to a third party, i.e. someone other than a client, ordinarily is not privileged.  *Commissioner of Revenue v. Comcast Corp*., 453 Mass. 293, 306 (2009).  An exception exists in certain narrow circumstances when the third party is a consultant whose presence is "'necessary' for the "effective consultation' between client and attorney."  *Id* at 307.  In these circumstances, "the privilege extends to communications with agents of [the] attorney who are 'necessary to secure and facilitate the **communication between attorney and client**."  *Id.* at 306, citing *Foster v. Hall*, 29 Mass. 89 93 (1831)(emphasis added).  "The "necessity" element means more than 'just useful and convenient.  .  .  . The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."  *Cavallaro v. United States*, 284 236, 249 (1st Cir. 2002).

Plaintiff contends that all of Mr. Sherman's information is privileged because he was consulted on "how to address the Board and the public," ECF No. 265, Pl's Memorandum, Ex. B Aff. of Shafran. This is very different from assisting the attorney to communicate with the client. Nor is it in any way  "indispensable."  It is undeniably not protected by the attorney-client privilege.

### 2.  Work Product Doctrine

#### a.  Anticipated Litigation

The materials subpoenaed by defendant from Mr. Sherman are likewise not protected by the work product doctrine.  The purpose of the doctrine "is to establish a 'zone of privacy for strategic litigation planning . . . to prevent one party from piggybacking on the adversary's preparation.' " *Attorney General v. Facebook, Inc.*,487 Mass. 109 (2021).  Accordingly, the protection applies only when the materials are prepared "in anticipation of litigation."  This means that the documents had to be created **"because of"** existing or expected litigation." *Commissioner of Revenue v. Comcast, supra* at 316 (emphasis added). "[A] document is within the scope of the rule if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared *because of* the prospect of litigation." *Id.,* at 317 (emphasis in original).  Documents which "have been prepared 'irrespective of the prospect of litigation'" are not covered by the doctrine.  *Attorney General v. Facebook, supra,* at 127.  Applying these principles, courts have held that public relations materials concerning the effect on the public generally "fall outside the scope of work product protection*." See, e.g., In re Prograf Antitrust Litig.,* no. 1:11–md–02242–RWZ, 2013 WL 1868227, at *3 (D.Mass. 2013) (Zobel, J.);  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 436 (S.D.N.Y. 2013)("public relations advice, even if it bears on anticipated litigation, [generally] falls outside the ambit of the work product doctrine.");  *Burke v. Lakin Law Firm*, PC, No. 07–CV–0076–MJR, 2008 WL 117838, at *3 (S.D.Ill. 2008) ("the work product doctrine .  .  does not protect documents that were merely prepared for one's defense in the court of public opinion").

The Plaintiff cannot reasonably contend that these materials were "because of" anticipated litigation.  Attorney Shafran says that he "hired Mr. Sherman to create and facilitate public statements on Mr. Chiocca's behalf that would tell the Board's constituents the truth behind the Board's suspension of Mr. Chiocca and the investigation which ensued." ECF No. 265, Pl's Memorandum, pp. 9-10.  Unquestionably, the motive for the publicity campaign and the disclosure of the report was to put out the so-called "truth" to the public. Indeed, when Mr. Sherman sent  his broadcast email, on Mr. Shafran's instructions, litigation would hardly have been foreseen since the major point of publicizing it was to tell the world that Chiocca had been cleared while Ms. Hill was found guilty. [5]

**b. Waiver**

Consistent with its purpose, the work product doctrine protects only information that is maintained as confidential and kept from the eyes of any adversary.  Thus, when materials are shared with the world, work product protection is necessarily waived. *See e.g., Data General Corp. v. Grumman Systems Support Corp.*, 139 F.R.D. 556 (D. Mass. 1991); *Ace American Insurance Company, v. Riley Brothers, Inc.*, 30 Mass.L.Rptr. 116 (2012).  Such a disclosure waives work product protection "as to all non-opinion work-product on the same subject matter as that disclosed."  *In re Martin Marietta Corp. v. Pollard*, 856 F.2s 619 (4th Cir. 1988).

Mr. Sherman's initial cover email, attaching the report,[6] revealed that he had received his instructions from Mr. Shafron, and also what he said Shafron had told him concerning the nature, purposes, justifications, and the content of what should be disclosed to the recipients. Accordingly, as to these subject matters, even if otherwise covered by the doctrine, any

---

[5] Moreover, this lawsuit was not filed until March 2019, almost a year after release of the report.  Certainly, if the lawsuit was anticipated when the report was published, one would expect that Sherman's broadcast email would have been disclosed when documents were first requested.
[6] See note 2 supra.

protection is waived.  And, of course,  any communications that Sherman had with outside persons, what he received from third parties, others, and the identity those he contacted are clearly not covered, as well.

### c.   Substantial Need

Finally, unless one were to accept Plaintiff's twisted logic that one who moves for summary judgement on liability has no need for anything more, it cannot be denied that Defendant has a "substantial need" for the information which Sherman surely possesses, and that he has been otherwise unable to obtain it.  Since the documents sought by the Sherman subpoena would contain at best "fact work product," there is therefore no other obstacle under Rule 26(b)(3) to their production.  The movant has not produced any evidence, or even claimed that any information Sherman has consists of "opinion work" product, which would call for a higher standard for production.  *See, e.g. Attorney General v. Facebook, supra* at 128 (standards of production for fact and opinion work product).

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to quash the Sherman subpoena should be denied.


Dated:  March 18, 2022                              Respectfully submitted,

                                                    EDWARD KIMBALL

                                                    By his attorneys,

                                                    */s/ Max D. Stern*
                                                    Howard M. Cooper (BBO # 543842)
                                                    Max D. Stern (BBO # 479560)
                                                    Lorraine Belostock (BBO #692183)

TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA  02110
T: 617-720-2626
hcooper@toddweld.com
mdstern@toddweld.com
lbelostock@toddweld.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on March 18, 2022.

*/s/ Lorraine Belostock*
Lorraine Belostock