UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Allan Chiocca,

    Plaintiff

    v.                    Civ. A. No.: 1:19–cv–10482–WGY

The Town of Rockland, Deirdre Hall,
Edward Kimball, Larry Ryan,
Michael Mullen Jr., Michael O'Loughlin,
Richard Penney, and Kara Nyman

    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DECLARATION OF DR. LOUISE FITZGERALD

I, Dr. Louise Fitzgerald, declare as follows:

1. I am a clinical psychologist and Managing Partner at Fitzgerald Collinsworth & Associates. I hold a bachelor's degree, master's degree, and Ph.D. in Psychology. I am also Professor Emeritus of Psychology and Gender & Women's Studies at the University of Illinois at Urbana-Champaign. My areas of expertise are: Organizational Psychology, particularly sexual harassment prevention and remediation; Clinical and Counseling Psychology, particularly psychological assessment, diagnosis, and the impact of sexual violence and victimization; and Gender and Women's Studies.

2. I have been in practice and retained as an expert witness in various cases for over 30 years. I have testified in both federal and state court on my areas of expertise in the following caselaw areas: Civil Rights, Criminal Law, Labor & Employment, Personal Injury, and Wrongful Death.

3. I was engaged by counsel at Marshall Halem and Rudolph Friedmann to conduct an independent medical examination/full psychological profile related to the claims and events at issue in this case.

4. As part of my independent investigation, I spoke with Plaintiff Chiocca.

5. I did not interview Mr. Chiocca's wife, other family members, or friends, or anyone else, because none of these people are "neutral" with sufficient knowledge of the case or situation. It is not the function of the evaluator to function as a fact finder or investigator to seek out additional witnesses. Moreover, it would have been extremely difficult to find an unbiased percipient witness to be interviewed due to the enormous publicity around this case.

6. In conducting Mr. Chiocca's independent medical examination, I relied on Mr. Chiocca's statements, his medical records, his psychological test results, and the results of his structured diagnostic interview to render my diagnoses. His responses on the validity scales of the psychological tests indicate that he made no attempt to misrepresent himself.

7. In preparing my Report, I interviewed Chiocca over multiple days, and reviewed all the pertinent documents in the case, including Chiocca's medical records and the deposition testimony of both Hall and Chiocca. I conducted extensive psychological testing, including hours of interviewing and structured diagnostic interviewing, both of which are over and above the normal standard of care in psychological evaluations. Each administered test has corresponding validity scales.

8. During our conversations, I spoke with Mr. Chiocca about his marriage, career, job, age, stage of life, physical health, and mental health history to evaluate Mr. Chiocca for previous trauma, depression and screened for other psychological disorders. I found none. There

is nothing in any of the case materials to suggest that Mr. Chiocca was anything but a vigorous, affable, and ambitious man before the events of May of 2018.

9. There is no reason to believe that Mr. Chiocca had marital problems; indeed, he described his wife in glowing terms and with much affection.

10. Mr. Chiocca reported that he was not suffering from career dissatisfaction; indeed, he stated that he loved his job and that it was a major component of his identity and self-worth. This is supported by the fact that prior to May of 2018, he was seeking to secure an extended contract to continue in the job he loved.

11. Mr. Chiocca never spoke of any concerns about the ill health of himself or others; there was no indication that he feared "impending death."

12. Researchers estimate that 50-60% of men over the age of 60 suffer from erectile dysfunction. It is a relatively common developmental experience for which there are excellent treatment options, of which Mr. Chiocca availed himself when he sought a prescription for Cialis from his physician.

13. A review of Mr. Chiocca's medical record indicates that there was no evidence of any "other poor health complications" related to Mr. Chiocca.

14. My screening of Mr. Chiocca for previous trauma and depression yielded no results. Based on all of the foregoing, I concluded that Mr. Chiocca's trauma symptoms are specific to his experiences with Hall on May 1, 2018, as well as Hall and the Town's conduct in the months and years following.

15. At the conclusion of my evaluation, I provided a 21-page Report, with exhibits, ("Report") detailing the methodology, resources, and conclusions I drew from my interviews with Mr. Chiocca, a review of his medical records, a review of all of the case materials from this

case, social science research on this topic, and my over thirty years of experience in this field. Because the scientific literature documents widespread misunderstanding of and stereotypes about the sexual victimization of men, I also summarized the social science literature on this topic to educate fact finders concerning factual material that is not commonly known. A true and correct copy of the Report is attached hereto as Exhibit A.

16. In preparing the report, I relied on numerous scientific research studies published in prestigious journals, none of which should be characterized as "anecdotal."

17. Some of the studies relied upon for the Report involved survey data from victims of sexual harassment and assault, including national studies conducted by relevant agencies of the U.S. government. For such survey-based studies, there are many scientific checks on the reliability of such data before it is published. All empirical studies upon which I relied have computable error rates.

18. I co-authored an article with the following citation in the early 1990s: Fitzgerald, L. et al., *Why Didn't She Just Report Him? The Psychological and Legal Implications of Women's Responses to Sexual Harassment*, 51 J. of SOCIAL ISSUES 117 (1995) (attached as Exhibit D to Hall's motion). Hall asserts this study is inapplicable to this case because "it focuses exclusively on women's responses to sexual harassment." This is incorrect. In fact, this paper was based not only on women's experiences but also on Lazarus & Folkman's (1984) well-validated theory of stress and coping, which applies across gender. I stated, and Ms. Hall in her brief cited, that "the majority of male targets will more or less blow off the situation, unless it is apprised [sic] as highly charged or threatening." Ms. Hall's counsel concludes that I applied a theory that only accounts for women's reaction to sexual harassment, when in fact, the theory of stress and coping I used applies to both women and men. The second clause of the

cited sentence regarding appraisal is critical. Primary appraisal of a stressful situation determines whether it is threatening, neutral, or beneficial; this influences secondary appraisal, which is the decision as to what to do in response (ignore it, avoid it, approach it, appease it, etc.) There are hundreds of papers and several books published about this subject. My particular application of this theory to sexual harassment coping has been tested and applied to men in multiple sexual harassment studies conducted by the Department of Defense beginning in 1995 (Drasgow, F., Fitzgerald, L. F., Magley, V. J., Waldo, C. R., & Zickar, M. J. (1998). *The 1995 Armed Forces Sexual Harassment Survey: Report on scales and measures* (Rep. No. 96015). Arlington, VA: Defense Manpower Data Center.

19. As part of my preparation for this case, I reviewed multiple studies of heterosexual assault, including Sarrel, P.M. & Masters, W.H. (1982) Sexual Molestation of Men by Women, ARCHIVES OF SEXUAL BEHAVIOR, 11(2), 117-131, in which the abstract reads: Although men are far less likely than women to be victims of heterosexual assault, such cases have been reported with increasing frequency in recent years. We compared social judgments about male and female victims of heterosexual and homosexual rape and tested hypotheses concerning social cognitions that are assumed to underlie a male rape mythology. In a 2x2x2 design, 77 male and 89 female assailants were manipulated. Consistent with the hypotheses, the male victim of sexual assaults by females was judged more likely to have initiated or encouraged the sex acts, and more enjoyment and less stress were attributed to him. This pattern of results was more pronounced among male subjects. The results are discussed in relation to stereotypic beliefs concerning male sex roles, sexual motivation, and sexual functioning that are likely to affect the social cognitions of both observers and male victims of heterosexual assault.

20. The Struckman-Johnson paper discussed in the Report is an empirical study using standard methodology with computable error rates. *See* Exhibit F to Hall's motion, Struckman-Johnson, C., et al., 27 (3-4) SEX ROLES: A J. OF RESEARCH 85 (1992). It was published in a highly respected journal and has been cited 283 times (and counting). It has stimulated considerable further research on the topic of male rape myths. The paper is a study of male rape myths, a topic which is not understood by the general public.

21. The Levin-Van Berlo study denounced by Ms. Hall and her counsel in her motion (J. Levin & Will Van Berlo, *Sexual Arousal and Orgasm in Subjects Who Experience Forced or Non-Consensual Sexual Stimulation – A Review*, 11 JOURNAL OF CLINICAL FORENSIC MEDICINE, 82-88 (2004)) is a highly respected and often cited scientific study that was specifically cited as a course by the National Judicial Education Center. A true and correct copy of this publication is attached hereto as Exhibit B.

22. Many studies other than Levin & Van Berlo support the idea that physically responding to something is different than wanting or welcoming that something; the brain-related processes are different. This is why males can get an erection even if they do not want to; sex-related stimulus leads to arousal even in non-sex-related settings. One study noted that "the predictive relationship between genital response and subjective experience is between 10 and 50 percent, which is an enormous range." Chivers, M.L., Seto, M.C., Lalumière, M.L., Laan, E., and Grimbos, T., *Agreement of Self-Reported and Genital Measures of Sexual Arousal in Men and Women: A Meta-Analysis*, ARCHIVES OF SEXUAL BEHAVIOR, 39(1), 5-56 (2010); Hollenstein, T., & Crowell, S. (Eds.) *Whither Concordance? Automatic Psychophysiology and the Behaviors and Cognitions of Emotional Responsibility,*" BIOLOGICAL PSYCHOLOGY (2004).

SIGNED UNDER THE PENALTIES OF PERJURY THIS 20TH DAY OF MARCH, 2022.

*Louise Fitzgerald*
Louise Fitzgerald (Mar 20, 2022 15:29 EDT)

Louise Fitzgerald, Ph.D.

# Dr. Fitzgerald Declaration Final

Final Audit Report                                                                                           2022-03-20

| | |
|---|---|
| Created: | 2022-03-20 |
| By: | Cheryl Hazeltine (manager@marshallhalem.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAI-S-A7q--nUNe901tHIxf1dTsyY55G6q |

## "Dr. Fitzgerald Declaration Final" History

- Document created by Cheryl Hazeltine (manager@marshallhalem.com)
  2022-03-20 - 6:51:58 PM GMT- IP address: 108.20.198.212

- Document emailed to Louise Fitzgerald (lff1353@gmail.com) for signature
  2022-03-20 - 6:53:10 PM GMT

- Email viewed by Louise Fitzgerald (lff1353@gmail.com)
  2022-03-20 - 7:27:35 PM GMT- IP address: 66.102.8.32

- Document e-signed by Louise Fitzgerald (lff1353@gmail.com)
  Signature Date: 2022-03-20 - 7:29:08 PM GMT - Time Source: server- IP address: 73.28.71.252

- Agreement completed.
  2022-03-20 - 7:29:08 PM GMT

Adobe Sign