UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALLAN CHIOCCA,<br><br>    Plaintiff,<br><br>VS.<br><br>TOWN OF ROCKLAND, DEIRDRE HALL, EDWARD KIMBALL, LARRY RYAN, MICHAEL MULLEN, JR., MICHAEL O'LOUGHLILN, RICHARD PENNY and KARA NYMAN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. NO. 1:19-cv-10482-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT EDWARD KIMBALL'S RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS AS TO <u>WHICH THERE IS NO GENUINE ISSUE TO BE TRIED</u>**

1. In the months leading up to the Incident between Chiocca and Defendant Deirdre Hall ("Hall"), Kimball and Hall were involved in a physical and emotional affair. See Halem Decl. at Ex. E, Hall Depo at 98:20-21; 104:10-14.

**RESPONSE:** *Disputed.* The evidence cited does not support the characterization of "emotional affair." Ms. Hall testified that they were in an "intimate relationship." *Id.* at 104:10-14. Additionally, *disputed* as to the characterization of "leading up to the incident." The cite doesn't contain the date of the incident or an indication of the "months leading up to the Incident" *See.* (*Id.* 98:20-21).

2. In or about May 17 or 18, 2018 Kimball embarked on his own investigation into the May 1, 2018 incident between Chiocca and Hall without disclosing his affair with Hall to either Attorney Clifford or any of the other Board members. See Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci.

1

**RESPONSE**: *Disputed* as to the truth and veracity of the proposition above. After Ms. Hall reported that something had happened, Mr. Kimball went to Town Hall to watch the video footage of the night of May 1. He observed Ms. Hall in the footage at Town Hall looking unsteady in her gait. *See* Dunn November '21 Affidavit (ECF #196) [Exhibit BB at 159:11-24; 159:16-20; 159:21-24 to 160:1-4; 172:5-7, 11-21]; *id.* [Exhibit DD at 73]. Shortly after his conversation with Ms. Hall concerning May 1, Mr. Kimball contacted Mr. Clifford, who took action from there. *See id.* [Exhibit BB at 200:12-22]; *id.* [Exhibit CC at 40]. Mr. Clifford took the lead, recommended, and hired an investigator after the BOS collectively voted to do so. *Id.* [Exhibit BB at 202:12-14]. Otherwise, *admitted* that Mr. Clifford discussed the above proposition in his letter to Mr. Palamucci.

3. Kimball failed to abstain from the May 29, 2018 votes to place Chiocca on so-called administrative leave and begin an independent investigation. See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n/SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 7:31.

**RESPONSE**: *Disputed*. The evidence cited does not support the statement of fact that Mr. Kimball *failed* to abstain from the May 29, 2018 vote to place Mr. Chiocca on administrative leave, as the link and pincite time for the recording does not display the content in the statement. The evidence simply supports that there was a unanimous vote for a third-party investigation.

4. Kimball lied to Board members about the scope of his relationship with Hall. See Halem Decl. at Ex. GG, letter from Attorney Clifford to Attorney Palmucci; see also Halem Decl. at Ex. FF, O'Loughlin Facebook post dated July 11, 2018.

**RESPONSE**: *Disputed* as to the truth and veracity of the proposition above. Also *disputed* as to the ambiguous meaning of "scope" and the statement's characterization of Mr. Kimball's decision not to disclose his relationship as being an act of lying. *See e.g.,* [Shafran Decl. at Ex. B, Penney Depo. at. 90:8-16].

5. While the Town's independent investigator Regina Ryan ("Attorney Ryan") was in the midst of her investigation of the Incident, Kimball publicly referred to the investigation as a "sham". See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of

2

Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 8:50.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

6. While Attorney Ryan was in the midst of her investigation of the Incident, Kimball publicly implied that there were allegations of criminal sexual assault against Chiocca. See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 9:16.

**RESPONSE**: *Disputed*. The statement of fact above mischaracterizes Mr. Kimball's statement and takes his statement out of context. In response to Mr. McLoughlin's question directed at Mr. Kimball as to whether Mr. Chiocca or Ms. Hall "brought charges forth" (*See* Halem Decl. at Ex. U at 9:00) Mr. Kimball responded that he "didn't know" but if there were indications of sexual assault, it was the Board's duty to notify the authorities. *Id.* at 9:03-9:09.

7. While Attorney Ryan was in the midst of her investigation of the Incident, Kimball publicly implied that Chiocca tampered with evidence. See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 9:16.

**RESPONSE**: *Disputed*. The statement of fact above mischaracterizes Mr. Kimball's statement and takes his statement out of context. In response to Mr. McLoughlin's question directed at Mr. Kimball as to whether Mr. Chiocca or Ms. Hall "brought charges forth" (*See* Halem Decl. at Ex. U at 9:00) Mr. Kimball responded that he "didn't know" but if there were indications of evidence tampering, it was the Board's duty to notify the authorities. *Id.* at 9:03-9:16.

8. While Attorney Ryan was in the midst of her investigation of the Incident, Kimball violated the Open Meeting Law. See Shafran Decl. at Ex. I, Chiocca Open Meeting Law complaint.

3

**RESPONSE**: *Disputed*. The evidence supports that Plaintiff Chiocca filed a complaint *alleging* that Mr. Kimball violated the Open Meeting Law but the evidence cited does not support a ruling on such allegation.

9. Kimball's violations of the Open Meeting Law were subsequently acknowledged by Town. See Shafran Decl. at Ex. J, Town Response to Chiocca Open Meeting Law complaint dated July 18, 2018.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

10. At the June 19, 2018 Board meeting, Kimball announced publicly on live television that he would be the voice of the Board. See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=pIafB-ztN88&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=104 at 6:20.

**RESPONSE**: *Disputed*. The statement of fact above mischaracterizes Mr. Kimball's statement and takes his statement out of context. Mr. Kimball made a motion for an independent investigation by the police department and will be the "voice" of that proposition. *Id.* at 4:00-6:20.

11. During Attorney Ryan's investigation, Kimball lied to Attorney Ryan about facts relevant to the investigation. See Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen Meeting of July 10, 2018 at AC02200-AC2205.

**RESPONSE**: *Disputed* as to the ambiguous phrase "facts relevant to the investigation." Specifically, the statement encompasses five summarized pages of testimony with no indication of what "relevant" facts this statement is referring to. *See id*. Further disputed that the facts cited to are even "relevant" or that Mr. Kimball "lied."

12.     While Attorney Ryan was in the midst of her investigation of the Incident, Attorney Ryan was not aware that Kimball and Hall were speaking for hours at a time. See Shafran Decl. at Ex. K, Depo. of Attorney Ryan at 213:3-11.

**RESPONSE**: *Disputed* as to the characterization and veracity of the description, "hours at a time." Also *disputed* as to any inference or suggestion that Attorney Ryan had no idea Mr. Kimball and Ms. Hall were communicating as she testified that she had a general awareness. *See* Shafran Decl. at Ex. K, Depo. of Attorney Ryan at 212:21-213:10. Otherwise, *admitted* for the purpose of summary judgment only.

13.     Attorney Clifford instructed the Board, including Kimball, that Board members should not be speaking with Hall or Chiocca during the investigation. See Shafran Decl. at Ex. A, Clifford Depo. at 68:18-23.

**RESPONSE:** *Disputed* as to any inference that Mr. Clifford was sure that he gave the instruction, as the statement omits that Mr. Clifford "believed" he told members that they "shouldn't" communicate with either party involved. *See* Shafran Decl. at Ex. A, Clifford Depo. at 68:18-23. Further disputed to the inference that Mr. Clifford directed BOS members not to speak with Hall or Chiocca prior to Mr. Kimball engaging with Ms. Hall, as the statement does not provide a timeframe of when he supposedly gave this instruction. *See id.* Otherwise, *admitted* that Mr. Clifford made the above statement during his deposition.

14.     Kimball communicated with Hall during the investigation, sometimes for over an hour at a time. See Shafran Decl. at Ex. L, Hall phone records.

**RESPONSE**: *Disputed.* The evidence cited alone is not sufficient to support the statement of fact above as it fails to identify dates or identity of the callers.

15.     Hall's cell phone number between May and July of 2018 was 617-861-7921. See Shafran Decl. at Ex. D, Hall Depo. at 31:22-24.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

5

16. Kimball's cell phone number between May and July of 2018 was (this was redacted)

See Shafran Decl. at Ex. M, Kimball Depo. at 23:9-12.

**RESPONSE**: *Disputed.* The evidence cited alone is not sufficient to support the dates "May and July of 2018" as stated above. Otherwise, *admitted* for the purposes of summary judgment only.

17. Kimball's home office phone number between May and July of 2018 was (this was redacted). Id. at 46:8-16.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

18. Kimball's wife cell phone number between May and July of 2018 was (this was redacted). Id. at 142:17-19.

**RESPONSE**: *Disputed.* The evidence cited alone is not sufficient to support the dates "May and July of 2018" as stated above. Otherwise, *admitted* for the purposes of summary judgment only.

19. During the period of time from when the Town voted to launch the investigation (May 29, 2018) to the date of Attorney Ryan's initial report, Hall's phone records indicate a combined 838 minutes of talk activity between Hall's cell phone and the three cell phone numbers listed in statement of facts paragraphs 16-18. See Shafran Decl. at Ex. L, Hall phone records.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

20. Kimball submitted an affidavit in support of Hall's motion for a temporary restraining order through which Hall sought to block the public release of the Town Hall video

surveillance tapes. See Shafran Decl. at Ex. N, Hall motion for temporary restraining order and Kimball affidavit.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

      21.      Selectman O'Loughlin described Kimball's conduct as follows:

Throughout the entire investigation the former Chairman [Kimball] lied and misrepresented facts to the board and to the Town of Rockland. He misrepresented the original report on May 17, 2018. He lied to the members of the Board of Selectmen about the nature of his relationship with the former Vice Chairman [Hall]. He made false statements in an affidavit adverse to the town's interests. He disclosed confidential information to the former Vice Chairman after being advised not contact her. He falsely accused fellow board members of participating in a cover up, violated open meeting laws, and exposed the town to significant liability. He undermined the public's faith in town government and made the Town of Rockland a laughing stock. . . . His relationship with the former Vice Chairman has compromised his ability to do what is best for the Town of Rockland.

See Halem Decl. at Ex. FF, O'Loughlin Facebook post.

**RESPONSE**: *Disputed* as to the truth or veracity of the post and the characterization of Mr. Kimball's conduct. Additionally, in terms of Mr. Kimball's actions regarding the May 1 event and investigation, he acted out of concern for a fellow board member that had potentially been sexually assaulted or harassed. *See* Dunn November '21 Affidavit (ECF #196) [Exhibit CC at 44]; [Exhibit AA at 270, 294]; *id.* [Exhibit AA at. 270:10-13, 294] . Otherwise, *admitted* that Mr. O'Loughlin posted the statement above.

      22.      Selectman Ryan described Kimball's conduct as follows:

[T]he only person who covered anything up was you [Kimball], your affair with Ms. Hall, your – when you came to the meeting, you – when you heard that something happened. She didn't report that. You did . . . . So, quite frankly, it looks like you started an investigation without having probable cause. I mean, if she didn't tell you that something happened, why did you start an investigation? You went down and saw the movies. You went down and said, you know, there's pieces missing. You went down and said all these things, and none of them are true. Just covering up – everything for everybody. . . . The fact of the matter is from the that start, you lied to us. You lied and lied and lied and lied.

7

See Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen Meeting of July 10, 2018 at AC02196; AC02257.

**RESPONSE**: *Disputed,* as the evidence misquotes Selectman Ryan. Also, *disputed* as to the truth or veracity of the statement, especially the contention that Mr. Kimball "lied from the start" and that Mr. Kimball "lied" about Ms. Hall reporting that "something happened." *See* Dunn November '21 Affidavit (ECF#196) [Exhibit BB at 159:16-20] (testimony that Ms. Hall contacted Mr. Kimball describing that something inappropriate had happened May 1, 2018). Mr. Kimball acted promptly and in accordance with the Town's Sexual Harassment Policy once his colleague reported that something inappropriate may have happened. *See id.* [Exhibit CC at 44]; [Exhibit AA at 270, 294]; *id.* [Exhibit AA at. 270:10-13, 294]. Mr. Kimball also incorporates his response from Paragraph 2 above. Otherwise, *admitted* that Mr. Ryan made the statement above for the purposes of summary judgment only.

23.     Selectman Richard Penney testified that he believed it was "ironic" that Kimball called the investigation as "sham" being that he was the one who called for it. See Shafran Decl. at Ex. B, Penney Depo. at 41:13-23.

**RESPONSE**: *Admitted* for the purposes of summary judgment only.

24.     Penney testified that he felt Kimball lied to the Board members about the scope of his relationship with Hall. Id. at 90:8-16.

**RESPONSE**: *Disputed.* The evidence cited does not support the proposition that Mr. Kimball lied about the "scope" of the relationship. Mr. Penney clarified that by "lie" he meant that Mr. Kimball did not "tell[] them what the situation was – well, between [Mr. Kimball] and Ms. Hall, he didn't let the board know that there was a relationship between him and Ms. Hall." In other words, Mr. Penney testified that Mr. Kimball simply did not disclose the evidence. *Id.* at 90:8-16.

25.     When asked at deposition by Kimball's counsel to describe why it was significant to him that Kimball lied about the scope of his relationship with Hall, Penney testified:

> So you want to go down the road of unethical? You want to go
> down the road of immoral? Do you want to go down the road of, you know, whatever adjective you want to use to describe it? When – when two leaders of a board are having a relationship that no one else is aware of that impacts the direction of that board, that can't happen.

Id. at 108:5-12.

8

**RESPONSE**: *Admitted* for the purposes of summary judgment only that Penney testified to the above statements, but *disputed* as to the truth or veracity and the characterization of the statements.

26. Penney went further and described how Kimball's relationship with Hall improperly influenced Board decisions even prior to the Incident:

> Deirdre was actually put in positions within the town that, in my opinion, as a new member of the board, should not have been, wasn't qualified for. And the only reasons she was, after the fact – because, again, sitting from the outside, this was – not as a member of the board, her – her position that was put in in the school in particular, as someone who was on the finance committee and very involved in the school, and someone who didn't have a background all of a sudden put in a position at the school that became very impactful was very puzzling to me, and I couldn't understanding it. And it kind of came clear, once the report came out, on why she was put in that position. And there wasn't – there were tow members on the board that were more qualified and clearly more capable at that time to be in that position, but they were overpassed in – when Ms. Hall was put in there. And it was very – for me, at the time, being on the FinComm, and being that we were represented with the board, it was very – very confusing, very troubling why that happened. And they didn't know why. It kind of came clear after the fact.

Id. at 108:16-109:17.

**RESPONSE**: *Admitted for* the purposes of summary judgment only that Penney testified to the above statements, but *disputed* as to the truth or veracity and the characterization of the statements.

27. Selectman Mullen artfully testified about the impact of Kimball publicly calling the investigation a "sham":

> You know, I mean – and what was said – and what was said on June 19th, in my opinion, like interfered with how – you know, like interfered with how – you know, like the outside investigation inasmuch that – like in all my experiences and based on what I know, when there is an investigation launched, like, all parties don't talk about the investigation. They let – essentially they let the investigation happen with the understanding that if any – if anything is said during the course of any investigation, it has – it has a chance to either shape how the investigation happens, like how members of the generally public actually perceive the investigation.

See Shafran Decl. at Ex. H, Mullen Depo. at 168:10-23.

**RESPONSE**: *Admitted* for the purposes of summary judgment only that Mullen testified to the above statements, but *disputed* as to the truth or veracity and the characterization of the statements.

28. Selectmen Mullen further testified that Kimball calling the investigation a "sham" was "interference with the investigation . . . because it call[ed] into question the integrity of it." Id. at 168:24-169:8.

**RESPONSE**: *Disputed* as the statement of fact improperly infers that Mr. Mullen is referring to the "sham" statement. Mr. Mullen did not actually refer to the "sham" comment himself and instead discussed "comments" that were made during the Selectmen Meeting on June 19, 2018. See Shafran Decl. at Ex. H, Mullen Depo. at 168:8-23.

29. Attorney Clifford was authorized to speak on behalf of the Board/Town on all matters related to the Incident and investigation. Id. at 213:24-214:8.

**RESPONSE**: *Disputed* as to whether Attorney Clifford was "authorized" to speak on behalf of the Town. The cite simply states that Clifford made statements on behalf of the Town but whether the Board actually authorized those statements through a vote is not reflected in the cite above.

30. Attorney Clifford described Kimball's conduct at the July 10, 2018 Board meeting as follows:

> It is very relevant how this investigation started, all right, with an untruthful statement by your client [Kimball]. It's very relevant that he mislead all the parties involved all the way through this investigation . . . . When all the while, he was the one being untruthful.

See Halem Decl. at Ex. EE, Transcript from Executive Session of Rockland Board of Selectmen Meeting of July 10, 2018 at AC02209.

**RESPONSE:**  *Disputed* as to the truth and veracity of the statement above. Mr. Kimball incorporates his responses from Paragraphs 2 and 4. Additionally, there is reason to believe that that Mr. Clifford's statement was made in support of his close friend, Mr. Chiocca. As testified during his deposition, Mr. Chiocca and Mr. Clifford went on golf trips together, invited each other to their children's weddings, were golf partners, and their wives were close. (See Joint Appendix, Ex. B, Chiocca Depo. Vol. II at e.g. 357:17-358:6; and Ex. H, Kimball Depo at 18:1-20:7). This presented an obvious conflict of interest, especially because Mr. Clifford had the power to advise the Board on actions to take, hired the investigator, and spoke on behalf of the Board. The nature of the relationship between Mr. Chiocca and Mr. Clifford further calls into question the truth of the statement above and motivations for making such statement.  Otherwise, *undisputed* for summary judgment purposes only that Mr. Clifford made this statement at the July 10 meeting.

31.     On June 15, 2018, describing the affidavit that Kimball submitted on June 13, 2018 in support of Hall's motion for a temporary restraining order to block the release of the Town Hall video surveillance tapes, Attorney Clifford issued the following press release which stated in relevant part:

This firm serves as Town Counsel for the Town of Rockland, and the following statement is being issued at the best of the Board of Selectmen.
Unfortunately, there has been a steady stream of information improperly disseminated during the investigation, much of which was false. The release of false and/or misleading information has only served to hamper our efforts to get this investigation done. On Wednesday, June 13th, a motion for an emergency restraining order was filed on behalf of Ms. Hall. Much of the information contained in that filing was misleading, based on conjecture, or just false. It was my intention to appear in Brockton Superior Court this afternoon and make it clear that the facts and legal conclusions in that filing were not only wrong, but obtained in an improper manner. The circumstances surrounding the filing [sic] this motion are troubling from a legal perspective . . . .

Unfortunately, the documents filed in Brockton Superior Court on Wednesday contain assertions that the video was tampered with or altered in some way. We have consulted with the vendor who installed the surveillance system and he has indicated that the perceived gaps in the video may be due to the fact that the system is activated by motion. If there are individuals some distance from the camera and they are not moving, the system may stop
recording until there is subsequent motion in the range of the camera.

See Halem Decl. at Ex. Y, Attorney Clifford Press Release dated June 15, 2018.

**RESPONSE:**  *Disputed* as to the truth and veracity of the claim, especially in terms of the characterization that the affidavit contained "false and misleading information." Mr. Kimball watched the tapes and became concerned that there were skips in the timeframe of the video footage, and appeared to have missing segments and he asked Mr. John Llewellyn, who was a

11

police chief for the Rockland Police Department to review the tapes for tampering. *See* Dunn February '22 Affidavit [Exhibit D, Kimball depo. pp.169-171]. Further disputed that Mr. Kimball was lying about the tapes being tampered with because he had no confirmation that they weren't at the time he signed the affidavit on June 13. The specialist that Regina Ryan hired to review the video tape, reviewed the tape on June 19, 2018, six days *after* Mr. Kimball signed his affidavit. *See* Dunn February '22 Affidavit [Exhibit C, Verronneau Affidavit]; *id.*[Exhibit B, Kimball Affidavit]. Otherwise, *admitted* that Mr. Clifford issued the press release above for the purpose of summary judgment only.

32. In their answers to Chiocca's interrogatories, the Town Defendants described the false information contained in the affidavit that Kimball submitted in support of Hall's motion for a temporary restraining order to block the public release of the Town Hall video surveillance tapes as follows: "Mr. Kimball provided a sworn affidavit in a complaint filed by Ms. Hall to suppress release of the video recordings from the evening of May 1, 2018 – morning of May 2, 2018. That affidavit contains false statements about the video having "critical missing segments . . ." At all relevant dates prior to release of this document, Mr. Kimball had full access to confidential information relating to the investigation and legal strategy relating to the events of the evening of May 1, 2018 – morning of May 2, 2018. The complaint contained false statements regarding the Massachusetts Public Record Laws, and whether the video files had been tampered with." See Halem Decl. at Ex. JJ, Town of Rockland's Answers to Plaintiff's Interrogatories at Interrogatory number 8.

**RESPONSE**: *Disputed* as to the truth and veracity of this statement. Mr. Kimball incorporates his response above in Paragraph 31. Otherwise, *undisputed* that the Town's Interrogatory Answer reflects the above answer.

33. In their answers to Chiocca's interrogatories, the Town Defendants described how the false information contained in the affidavit that Kimball submitted in support of Hall'smotion for a temporary restraining order to block the public release of the Town Hall video surveillance tapes hampered the Town's investigation as follows: "The information contained in the sworn

12

affidavit and accompanying suit forced the Town to defend against the allegations and address specific allegations publicly. Mr. Kimball was privy to information relating to legal strategy and investigation itself, in his capacity as Chairman of the Board of Selectmen. Mr. Kimball's undisclosed collaboration with Ms. Hall, a subject of the investigation, presented a threat to the integrity of the investigation and compromised confidential discussions of the Board regarding legal strategy." Id.

**RESPONSE:** *Disputed* as to the truth and veracity of this statement. Mr. Kimball incorporates his response above in Paragraph 31. Otherwise, *undisputed* that the Town's Interrogatory Answer reflects the above answer.

34. In their answers to Chiocca's interrogatories, the Town Defendants further described the information that was misleading, based on conjecture, or false contained in the affidavit that Kimball submitted in support of Hall's motion for a temporary restraining order to block the public release of the Town Hall video surveillance tapes as follows: "The false information is described in paragraph (a) above. The misleading statements or statements based on conjecture include a statement in the affidavit attributing specific comments to Ms. Hall in the video, even though there is no audio on these recordings. The Town also objected on the basis it was inappropriate for counsel for Ms. Hall to have spoken directly with Mr. Kimball when he was represented by counsel for the Town." Id.

**RESPONSE:** *Disputed* as to the truth and veracity of this statement. Mr. Kimball incorporates his response above in Paragraph 31. Otherwise, *undisputed* that the Town's Interrogatory Answer reflects the above answer.

35. A digital forensic analyst retained by Attorney Ryan in the course of her investigation submitted an affidavit that found, "[f]rom my review of the surveillance video(s)

13

provided, it is my professional opinion that it has not been altered or edited." See Shafran Decl. at Ex. O, Affidavit of Steven R. Verronneau.

**RESPONSE**: *Admitted* for the purposes of summary judgment only but *disputed* as the conclusion is taken out of context; the video review was only conducted on one minute of the hours of video footage. *See id*. Otherwise, *undisputed* as to the quote stated above.

36. Notwithstanding Attorney Clifford's press release regarding the multitude of issues with Kimball's affidavit, at the June 19, 2018 Board meeting, Kimball repeatedly stated that he continued to stand by his affidavit. See Halem Decl. at Ex. U, Video recording of June 19, 2018 Rockland Board of Selectmen Meeting, available at https://www.youtube.com/watch?v=aq1E9qNYMag&list=PLH12n7SsKux-3JFMM22qHA2Uv3krGX08V&index=98 at 8:30.

**RESPONSE**: *Admitted* for summary judgment purposes only that Kimball stood by his affidavit but *disputed* that the evidence cited supports the statement of fact that Attorney Clifford's press release regarded the multitude of issues with Kimball's affidavit.


Dated:  March 22, 2022                    Respectfully submitted,

                                          EDWARD KIMBALL

                                          By his attorneys,

                                          */s/ Lorraine Belostock*
                                          Howard M. Cooper (BBO # 543842)
                                          Max D. Stern (BBO # 479560)
                                          Lorraine Belostock (BBO #692183)
                                          TODD & WELD LLP
                                          One Federal Street, 27th Floor
                                          Boston, MA  02110
                                          T: 617-720-2626
                                          hcooper@toddweld.com
                                          mdstern@toddweld.com
                                          lbelostock@toddweld.com

14

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on March 22, 2022.

*/s/ Lorraine Belostock*
_____
Lorraine D. Belostock