# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:19-CV-10482-WGY

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

ALLAN CHIOCCA,

     Plaintiff,

v.

TOWN OF ROCKLAND, DEIRDRE HALL,

EDWARD KIMBALL, LARRY RYAN,

MICHAEL MULLEN, JR., MICHAEL

O'LOUGHLIN, RICHARD PENNEY and

KARA NYMAN,

     Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


DEPOSITION OF REGINA RYAN, ESQUIRE

OCTOBER 6, 2021

10:13 A.M.


BURNS & LEVINSON, LLP

125 HIGH STREET

BOSTON, MASSACHUSETTS

Job #33873

REPORTER:  TRACY COFFMAN



**EcoScribe Solutions**

www.EcoScribeSolutions.com

888.651.0505

```
 1            don't remember the word bragging.  I don't

 2            remember the word victim.

 3                      And I don't remember, I don't think

 4            I heard climaxing so.

 5   Q.   Given the somewhat delicate issues in the

 6            matter --

 7   A.   Yes.

 8   Q.   -- that Mr. Chiocca would've called Mr.

 9            Clifford on the Saturday after being

10            confronted privately to brag that he had

11            climaxed, that could have been very material

12            in your consideration of matters before you,

13            isn't that right?

14   A.   If I had known that?

15   Q.   Yes.

16   A.   Would that have been a fact I would have

17            considered?

18   Q.   Yes.

19   A.   I would've considered that.

20   Q.   And it could've affected the outcome of this

21            case, correct?

22   A.   It could have.

23   Q.   Now were you ever aware that Mr. Clifford, in

24            his conversation with Mr. Chiocca on the
```

```
 1          left at 11:00 and five glasses of wine had
 2          been ordered for Ms. Hall, that may have been
 3          material to your analysis of what was going
 4          on, right?
 5    A.    Right, because I -- she represented, I don't
 6          think she represented that she had five
 7          glasses of wine.
 8    Q.    She represented that she couldn't remember,
 9          right?
10    A.    I thought she represented that she had two to
11          three.
12    Q.    Well, looking at this receipt, that may have
13          been material?
14    A.    It could've been.
15    Q.    And had you had the receipts, given Ms. Hall
16          telling you that she was having trouble with
17          her memory, you could have shown them to her,
18          right?
19    A.    If I had these, yes.
20    Q.    And you could have asked Mr. Chiocca why his
21          signature was on both bills and what that
22          said about the level of drinking that was
23          going on, right?
24    A.    Yes.
```

1  Q.  Right?

2  A.  I could've, yes.

3  Q.  And you would agree that knowing -- by the

4      way, if you had known that Ms. Hall had

5      consumed five glasses of wine, or at least

6      the receipts suggests that perhaps she had,

7      that could've been material to your findings,

8      right?

9  A.  That could've been.

10 Q.  And you didn't have subpoena power so you

11     couldn't do what Cindy did, which is to

12     require the RGB to give you the receipts,

13     right?

14 A.  Correct.

15 Q.  And so knowing that level of wine consumption

16     may have affected the way you viewed events

17     on that evening?

18 A.  I could've considered it.

19 Q.  And it may have affected the outcome of your

20     consideration, right?

21 A.  It could've.

22 Q.  Now were you aware that Ms. Hall also takes

23     medication?

24 A.  I remember her talking about pills falling

```
 1            with the evidence that I had, I came to these

 2            conclusions.

 3   Q.    Okay, and you understood that there were

 4            facts about that evening that were not

 5            available to you, either because Ms. Hall's

 6            memory was not complete or, as you learned

 7            today, certain witnesses may not have been

 8            available to you or forthcoming in their

 9            presentation, is that fair?

10                     MR. SHAFRAN:   Objection.

11   A.    It's fair to say that there's definitely more

12            information, that I was not made aware of,

13            about what happened that night that may have

14            been disclosed through discovery.

15   Q.    And given that, the limitations of your

16            investigation that were just, you know, you

17            didn't have ability to put people under oath,

18            you didn't have the ability to subpoena

19            documents.

20                     Mr. Chiocca, who would've had those

21            receipts because it's his credit card, didn't

22            give you both receipts, right?

23   A.    I did not have both receipts, that is

24            correct.
```

1   Q.   He didn't provide them to you?

2   A.   Correct.

3   Q.   And had you had that information, it may have

4        affected where you landed in your internal

5        investigation, correct?

6                 MR. SHAFRAN:  Objection, asked and

7        answered.

8   A.   It could've.  The receipts offered more

9        information about -- it would've given me, I

10       would've asked more questions.

11                Because I don't think I knew that

12       he, there were four ultras (sic) ordered or

13       five ultras ordered.  It was my understanding

14       that he hadn't had that much alcohol.

15                These would've led me to ask more

16       questions and make further inquiry of both

17       parties and it could have impacted my

18       findings.

19  Q.   And it may have affected your assessment of

20       Mr. Chiocca's credibility, right?

21  A.   It could've.

22  Q.   Now it is also the case that for whatever

23       reason, experts in trauma, memory

24       intoxication, were not made available to you?

1  A.   That could be correct.

2  Q.   And we've seen that through the course of

3       this day, haven't we?

4  A.   Yes.

5  Q.   Is that right?

6  A.   Yes.

7  Q.   So you wouldn't want your notes ever to be

8       seen by a jury as a transcription of what

9       actually was said, right?

10 A.   Yes.

11 Q.   Because in fact we've caught today certain,

12      certain comments in your notes that you've

13      caught as perhaps not accurate, or as

14      confusing, right?

15 A.   What was not accurate?

16 Q.   Well, remember you said --

17 A.   There was one that.

18 Q.   An important one, Ms. Hall indicating that

19      she was, it was not like her?

20 A.   Correct.

21 Q.   Right?

22 A.   Yes.

23 Q.   And so you would never want those notes to go

24      back and sit with a jury as something that

```
 1                        CERTIFICATE

 2    Commonwealth of Massachusetts

 3    Middlesex, SS.

 4                    I, Tracy Coffman, a Court Reporter

 5    and Notary Public duly qualified in and for the

 6    Commonwealth of Massachusetts, do hereby certify

 7    that the witness whose deposition is hereinbefore

 8    set forth, was duly sworn by me and that such

 9    deposition is a true record of the testimony given

10    by the witness.

11                    I further certify that I am neither

12    related to or employed by any of the parties in or

13    counsel to this action, nor am I financially

14    interested in the outcome of this action.

15                    In witness whereof, I have hereunto

16    set my hand and seal this 12th day of October 2021.

17

18

19                         Tracy Coffman

20                         Tracy Coffman

21                         Notary Public

22                         My Commission Expires

23                         July 31, 2026

24
```